TROY LAW, PLLC
41-25 Kissena Blvd., Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
LETICIA FRANCINE STIDHUM,

                         Plaintiff,

                         **Case No: 21-cv-07163**

          v.

                         **COMPLAINT**

161-10 HILLSIDE AUTO AVE, LLC
    d/b/a Hillside Auto Outlet, and
HILLSIDE AUTO MALL INC
    d/b/a Hillside Auto Mall,
ISHAQUE THANWALLA,
JORY BARON,
RONALD M BARON, and
ANDRIS GUZMAN,

                         Defendants.
------------------------------------------------------------------x

       Plaintiff LETICIA FRANCINE STIDHUM (hereafter referred to as "Plaintiff" or "STIDHUM"), on behalf of herself and others similarly situated, by and through her attorney, Troy Law, PLLC, hereby brings this complaint against Defendants 161-10 HILLSIDE AUTO AVE, LLC d/b/a Hillside Auto Outlet (hereinafter referred to as "Hillside Auto Outlet"); and HILLSIDE AUTO MALL INC d/b/a Hillside Auto Mall (hereinafter referred to as "Hillside Auto Mall"); ISHAQUE THANWALLA (hereinafter referred to as "THANWALLA"), JORY BARON (hereinafter referred to as "J. BARON"), RONALD M BARON (hereinafter referred to as R. BARON), and ANDRIS GUZMAN (hereinafter referred to as "GUZMAN") (hereinafter collectively referred to as "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This action is brought to remedy claims of employment discrimination on the basis of sex, pursuant to the Pregnancy Discrimination Act ("PDA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e *et seq.*; New York State Human Rights Law ("NYSHRL"), NY Exec. § 290 *et seq.*; and New York City Human Rights Law ("NYCHRL") NYC Admin. § 8-107(22), *et seq.* ("NYC Pregnancy Worker Fairness Act").

2.      STIDHUM seeks injunctive and declaratory relief, compensatory and liquidated damages, punitive damages, attorneys' fees, and other appropriate relief.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1391 because the unlawful practices complained of herein occurred in the Eastern District of New York and because Defendants reside in the Eastern District of New York.

4.      This Court has supplemental jurisdiction over STIDHUM's state law claims pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because a substantial portion of the events giving rise to STIDHUM's claims occurred in the district and the Defendants regularly do business within the district.

## PROCEDURAL HISTORY

6.      STIDHUM filed a timely charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on or about April 19, 2019 (EEOC Charge No. 520-2019-04747).

7.      The EEOC issued a Notice of Right to Sue for STIDHUM on July 19, 2019.

8.      On September 25, 2019, STIDHUM filed her employment discrimination lawsuit

in the Eastern District of New York challenging Defendants' discriminatory employment practices in violation of Title VII, 42 U.S.C. § 2000e *et seq*. She additionally raised claims under the New York State Human Rights Law ("NYSHRL"), NY Exec. § 290 *et seq.*; and New York City Human Rights Law ("NYCHRL") NYC Admin. § 8-107(22), *et seq.* ("NYC Pregnancy Worker Fairness Act"), E.D.N.Y. 19-cv-5458 (RPK)(VMS).

9. On June 25, 2021, Judge Kovner issued a Memorandum and Order dismissing the case without prejudice with leave to refile the Complaint "once the EEOC either (i) dismisses her charge and issues her a proper notice of right to sue, or (ii) processes her charge for an additional eighty-nine days and issues her a proper notice of right to sue." *See* Docket Entry No. 30 (Jun. 25, 2021).

10. On September 30, 2021, 97 days after the dismissal of the case without prejudice, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.

**PLAINTIFF**

11. STIDHUM is an adult female resident of the State of New York.

12. STIDHUM was a successful car salesperson who worked for a little over three (3) months at Hillside Auto.

13. At all the times relevant to the Complaint, Plaintiff was an "employee" within the meaning of Title VII, and a "person" under both the NYS Huamn Rights Law and the NYC Pregnancy Worker Fairness Act.

**DEFENDANTS**

*Corporate Defendant*

14. Hillside Auto Outlet is a domestic business corporation organized under the laws

of the State of New York with a principal address at 161-10 Hillside Avenue, Jamaica NY 11432.

15.     Hillside Auto Mall is a domestic business corporation organized under the laws of the State of New York with a principal address at 150-01 Hillside Avenue, Jamaica, NY 11432.

16.     At all relevant times, Hillside Auto Outlet and Hillside Auto Mall employed between fifteen (15) and one hundred (100) total employees.

17.     Hillside Auto Outlet and Hillside Auto Mall are engaged in the business of selling cars, many of which are produced and purchased from outside of New York and sold to customers who are not domiciled in New York.

18.     Hillside Auto Outlet and Hillside Auto Mall were and are "employers" within the meaning of Title VII and N.Y. Exec. Law § 292(5).

19.     Hillside Auto Outlet and Hillside Auto Mall are about four blocks away from each other, shared common owners and managers, and shared inventory within the period relevant to this lawsuit.

20.     Hillside Auto Outlet and Hillside Auto Mall formed a single enterprise (hereinafter referred to as "Hillside Auto"), or alternatively were joint employers of STIDHUM.

*Owner/ Operator Defendants*

21.     THANWALLA was a part-owner of Hillside Auto Outlet and Hillside Auto Mall, and one of STIDHUM's supervisors at Hillside Auto Outlet.

22.     J. BARON was a part-owner of Hillside Auto Outlet and Hillside Auto Mall.

23.     R. BARON was a part-owner of Hillside Auto Outlet and Hillside Auto Mall.

24.     GUZMAN, as explained more fully below, was a worker in the Finance Department of Hillside Auto Outlet and later a General Manager at Hillside Auto Outlet and a supervisor of

STIDHUM at Hillside Auto Outlet.

## STATEMENT OF FACTS

*Discrimination Claims*

25. On or about May 20, 2018, STIDHUM was interviewed by THANWALLA and non-party General Manager "Jyanique" before being hired by Hillside Auto to work as a car salesperson at Hillside Auto Outlet.

26. Soon after the interview, STIDHUM commenced employment with Hillside Auto on or about May 20, 2018 as a car salesperson.

27. At the time she was hired, STIDHUM was promised pay on the following basis:

    a. Three hundred dollars ($300.00) per week in salary;

    b. One hundred fifty dollars ($150.00) per car sold in bonus; and

    c. Five percent (5%) of the price of any car sold which had a price in excess of three thousand five hundred dollars ($3,500.00) in commission.

28. STIDHUM was supervised by "Jyanique" from on or about May 20, 2018 through on or about August 24, 2018.

29. On or about August 25, 2018, "Jyanique" was replaced as General Manager by Andris Guzman (hereinafter "Guzman").

30. Prior to on or about August 25, 2018, Guzman had worked in the Finance Department of Hillside Auto, and continued to work in the Finance Department after becoming General Manager.

31. In the Finance Department, Guzman reported to non-party Finance Manager "Serge" and THANWALLA.

32. STIDHUM was supervised by Guzman from on or about August 25, 2018 through

on or about January 14, 2019.

33. STIDHUM received her salary, bonus, and commission from on or about May 20, 2018 through on or about August 24, 2018.

34. STIDHUM received her salary and bonus, but was denied her commission, from on or about August 25, 2018 through on or about January 14, 2019.

35. STIDHUM performed her work in an exemplary manner, selling between twenty-five (25) and thirty-one (31) cars per typical month before December 2018.

36. Indeed, prior to December 2018, STIDHUM was given special trust on the basis of her exemplary work performance.

37. Specifically, THANWALLA gave STIDHUM his password to the "Dealertrack" program used by Hillside Auto so that she could help run the credit histories of Hillside Auto customers and pre-fill their automobile purchase financing applications.

38. This became necessary because Guzman, whose job in the Finance Department which was running the credit histories of Hillside Auto customers and pre-filling their automobile purchase financing applications, would frequently keep customers waiting longer than necessary, creating poor customer impressions of Hillside Auto's service.

39. THANWALLA did not give his "Dealertrack" password to any other salesperson besides STIDHUM.

40. THANWALLA believed that STIDHUM was a superior worker.

41. STIDHUM was not warned or disciplined for any reason regarding her work performance or conduct prior to the discrimination described below.

42. On or about November 23, 2018, STIDHUM learned that she was pregnant.

43. On or about December 1, 2018, STIDHUM informed THANWALLA, Guzman,

and several of her co-workers—including non-party David Manique and several female employees in the Business Development Center—that she was pregnant.

44. On that day, Plaintiff brought a sonogram image of her baby that she showed to the managers and her coworkers.

45. From on or about early December, 2018 through on or about January 9, 2019, THANWALLA went on vacation.

46. While THANWALLA was on vacation, Guzman was put in charge of the Finance Department.

47. Before STIDHUM announced her pregnancy on or about December 1, 2018, the wait time for Hillside Auto Outlet to speak with the Finance Department was roughly twenty (20) minutes.

48. STIDHUM's wait time was slightly shorter than her coworkers' because rather than making the Finance Department do it, she ran the credit histories of the customers she served and pre-filled their automobile purchase financing applications herself. The only thing the Finance Department had to do for the customers STIDHUM served was to submit their applications to the bank.

49. After she announced her pregnancy, Guzman started making STIDHUM's customers wait for anywhere between forty (40) minutes to sixty (60) minutes.

50. As a result of the longer wait times, the majority of her customers would walk out of Hillside Auto Outlet rather than complete their purchases.

51. Due to Guzman's sabotage, Plaintiff only sold eight (8) to ten (10) cars from on or about December 1, 2018 and through January 14, 2019, her last day of employment.

52. As a result, the STIDHUM's bonus for the weeks from on or about December 1,

2018 and through January 14, 2019, which was based on the number of cars she sold, dropped significantly. During this time, STIDHUM was also denied her commission.

53. From on or about December 1, 2018 and through January 14, 2019, Plaintiff would constantly call Guzman to ask how long the customers would have to wait for the Finance Department, and when they would be able to speak to somebody at the Finance Department.

54. Guzman would reply that everybody had to wait, or that the process took time.

55. However, the wait time for customers attended to by other salespeople at Hillside Auto Outlet—of whom there were approximately four (4) working at any one time, including David Manique, David Parsons, and "Shaun," each of whom was male and never pregnant—remained about twenty (20) minutes from on or about December 1, 2018 through on or about January 14, 2019.

56. On or about January 10, 2019, the morning of his return from vacation, STIDHUM explained to THANWALLA how Guzman had sabotaged her while he was gone.

57. THANWALLA said he would give STIDHUM a "little bonus" of two hundred dollars ($200.00) and thought that would cure everything.

58. THANWALLA took no action to discipline Guzman or to restore STIDHUM's usual wait times.

59. From January 10, 2019 through January 14, 2019, STIDHUM's wait times did not improve, but rather remained at about forty (40) to sixty (60) minutes.

60. Accordingly, on January 14, 2019, STIDHUM quit.

61. THANWALLA did not give STIDHUM her promised "little bonus" of two hundred dollars ($200.00).

62. Accordingly, on January 24, 2019, STIDHUM texted Jory Baron to inform him she

had not been paid.

63. Later on January 24, 2019, Jory Baron called STIDHUM back. STIDHUM calmly explained how she had been sabotaged, why she had quit, and how THANWALLA still owed her money. Jory Baron replied that STIDHUM should "stop ranting," tell him how much STIDHUM felt she was owed, and that he would confirm with THANWALLA and call STIDHUM back the following Monday.

64. Jory Baron did not call STIDHUM back the following Monday, January 28, 2019, or any time thereafter.

65. There are no other pregnant workers at Hillside Auto.

## STATEMENT OF CLAIMS

### COUNT I.
### [Discrimination on the Basis of Sex in Violation of Title VII and the PDA Brought against Hillside Auto Outlet and Hillside Auto Mall]

66. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67. Title VII as codified within 42 U.S.C. § 2000e-2 prohibits discrimination based upon sex. Further, the PDA as codified at 42 U.S.C. § 2000e(k), explicitly prohibits discrimination based on pregnancy, childbirth, and related medical conditions.

68. Defendants discriminated against Plaintiff because of her pregnancy in violation of the PDA and Title VII.

69. As a proximate result of the discrimination described herein, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

70. As a proximate result of the discrimination described herein, Plaintiff has suffered

and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages in an amount to be determined at trial.

71. The conduct described herein was done in conscious disregard of Plaintiff's rights.

72. Hillside Auto Outlet and Hillside Auto Mall are vicariously liable for the conduct of GUZMAN inasmuch as his conduct was in the character of a supervisor and was endorsed or ignored by the owners, who also ignored and failed to take corrective action with respect to Plaintiff's complaints.

73. Accordingly, Plaintiff is entitled to economic, compensatory and punitive damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## COUNT II.
### [Discrimination on the Basis of Disability in Violation of the NYSHRL Brought against Defendants]

74. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75. Section 296 of the NYSHRL prohibits unlawful discriminatory employment practices on the basis of disability.

76. Plaintiff suffered from a disability as defined by the NYSHRL.

77. Defendants violated the NYSHRL by discriminating against the Plaintiff by taking adverse actions against her based on her disability or perceived disability.

78. As a result of Defendants' intentional and willful disability discrimination, Plaintiff has suffered substantial emotional and financial harm.

79. Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.


## COUNT III.
### [Discrimination on the Basis of Sex in Violation of the NYSHRL
### Brought against Defendants]

80. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

81. Section 296 of the NYSHRL prohibits unlawful discriminatory employment practices based on sex which includes pregnancy and medical conditions relating to pregnancy.

82. By the acts and practices described above, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of pregnancy in violation of the Executive Law.

83. Defendants have unlawfully discriminated against the Plaintiff on the basis of her sex in violation of NYSHRL § 296.

84. As a result of Defendant's discriminatory conduct, Plaintiff has suffered loss of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

85. Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## COUNT IV.
### [Discrimination on the Basis of Pregnancy in Violation of NYCHRL
### Brought against Defendants]

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. By the acts and practices described above, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of pregnancy in violation of Discrimination on the Basis of Pregnancy, Local Law No. 78 (2013) and N.Y.C. Admin Code §8-107(2).

88. As a result of Defendant's discriminatory conduct, Plaintiff has suffered loss of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, embarrassment and humiliation.

89. Accordingly, Plaintiff is entitled to economic and compensatory damages in an amount to be determined at trial, in addition to interest, reasonable attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

90. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on the behalf of the Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under Title VII, the NYSHRL, and the NYCHRL;

   b. An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

   c. An award of back pay, front pay, and attorneys' fees to Plaintiff and other benefits they would have received but for Defendants' unlawful conduct;

   d. An award of compensatory damages to Plaintiff for mental anguish, pain and suffering, and humiliation;

   e. An award of punitive damages to Plaintiff under the PDA and Title VII;

    f.    A judgment against Defendant for compensatory damages for retaliation under the ADEA, with liquidated damages in an amount equal to the compensatory damages awarded;

    g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

    h.    An award of prejudgment and post-judgment fees; and

    i.    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
       December 29, 2021

                                  TROY LAW, PLLC
                                  *Attorneys for the Plaintiff*
                                  /s/ John Troy
                                  John Troy
                                  Aaron Schweitzer
                                  Tiffany Troy
                                  41-25 Kissena Boulevard, Suite 103
                                  Flushing, NY 11355
                                  Tel: (718) 762-1324
                                  Email: johntroy@troypllc.com