UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LETICIA FRANCINE STIDHUM,

                               Case No.: 1:21-cv-7163 (HG) (RLM)

               Plaintiff,

      -against-

161-10 HILLSIDE AUTO AVE, LLC d/b/a
HILLSIDE AUTO OUTLET, HILLSIDE AUTO
MALL INC d/b/a HILLSIDE AUTO MALL,
ISHAQUE THANWALLA, JORY BARON,
RONALD M BARON, and ANDRIS GUZMAN,

                  Defendants.
------------------------------------------------------------------X

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

   I.   PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED ............................... 6

   II.  PLAINTIFF'S ADA & PDA CLAIMS MUST BE DISMISSED ........................... 13

   III. THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
      JURISDICTIONOVER THE STATE AND CITY LAW CLAIMS ........................ 13

CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

Alfano v. Costello,
   294 F.3d 365 (2d Cir. 2002)............................................................................. 7

Amaya v. Ballyshear LLC,
   295 F. Supp. 3d 204 (E.D.N.Y. 2018) .............................................................. 9

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)......................................................................................... 5

Assue v. UPS, Inc.,
   No. 16-CIV.-7629 (CS), 2018 U.S. Dist. LEXIS 136532 (S.D.N.Y. Aug. 13, 2018)........ 8

Bell Atlantic v. Twombly,
   550 U.S. 544 (2007).................................................................................... 5, 6

Bennett v. U.S. Navy,
   No. 96-CIV.-1550 (RJD), 1997 U.S. Dist. LEXIS 21702 (E.D.N.Y. Apr. 1, 1997) .......... 6

Burlington N. & Santa Fe Ry. Co. v. White,
   548 U.S. 53 (2006)..................................................................................... 9, 10

Byerly v. Herr Foods, Inc.,
   No. 92-CIV.-7382, 1993 WL 101196 (E.D. Pa. 1993).................................... 13

Cadet v. Deutsche Bank Sec. Inc.,
   No. 11-CIV.-7964 (CM), 2013 WL 3090690 (S.D.N.Y. June 18, 2013) ........................ 11

Carnegie-Mellon Univ. v. Cohill,
   484 U.S. 343 (1988)....................................................................................... 16

Davis-Garett v. Urban Outfitters, Inc.,
   921 F.3d 30 (2d Cir. 2019).............................................................................. 7

Davis v. Koffee Kup Bakery, Inc.,
   No. 2:15-CIV.-152 (CR), 2016 WL 4411399 (D. Vt. Aug. 18, 2016) ...................... 10, 11

Finkel v. Putnam Convertible Opportunities & Income Trust,
   No. 97-7901, 1998 U.S. App. LEXIS 22389 (2d Cir. Mar. 26, 1998)............................... 6

Gaffney v. City of New York,
   101 A.D. 3d 410 (1st Dept. 2012).................................................................. 11

Gong v. City University of New York,
    846 Fed. Appx. 6 (2d Cir. 2021) ................................................................................. 9

Gudenkauf v. Stauffer Communications, Inc.,
    922 F. Supp. 465 (D. Kan. 1996) ............................................................................... 13

Hai Ming Lu v. Jing Fong Rest., Inc.,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007) ....................................................................... 10

Jones v. City of New York,
    No. 14-CIV.-826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951 (E.D.N.Y. Feb. 4, 2015) 8

La Grande v. DeCrescente Distrib. Co., Inc.,
    370 Fed. Appx. 206 (2d Cir. 2010) (summary order) ....................................................... 9

La Porta v. Alacra, Inc.,
    142 A.D. 3d 851 (1st Dept. 2016) ............................................................................ 11

Legg v. Ulster Cty.,
    820 F. 3d 67 (2d Cir. 2016) ............................................................................... 14, 15

Martin v. Citibank, N.A.,
    762 F.2d 212 (2d Cir. 1985) .................................................................................... 12

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ................................................................................................ 15

Mutlu v. Jetblue Airways Corp.,
    No. 08-CIV.-4887 (LAP), 2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. Mar. 31, 2009) ........ 6

Ochei v. Mary Manning Walsh Nursing Home Co.,
    No. 10-CIV.-2548 (CM) (RLE), 2011 U.S. Dist. LEXIS 20542 (S.D.N.Y. Mar. 1, 2011) 8

Oneida Indian Nation of N.Y. v. Madison Cty.,
    665 F.3d 408 (2d Cir. 2011) .................................................................................... 16

Petrosino v. Bell Atl.,
    385 F.3d 210 (2d Cir. 2004) .................................................................................... 12

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995) ........................................................................................ 15

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
    743 F.3d 11 (2d Cir. 2014) ...................................................................................... 10

Rowe v. Jagdamba, Inc.,
    302 Fed. Appx. 59 (2d Cir. 2008) (summary order) ........................................................ 13

Salen v. Blackburn Bldg. Servs., LLC,
    No. 3:14-CIV.-1361 (VAB), 2017 WL 71708 (D. Conn. Jan. 6, 2017) .......................... 10

Sealy v. State Univ. of New York At Stony Brook,
    408 F. Supp. 3d 218 (E.D.N.Y. 2019) .............................................................................. 9

Short v. Deutsche Bank Sec., Inc.,
    913 N.Y.S. 2d 64 (1st Dept. 2010) .................................................................................. 11

Shukla v. Deloitte Consulting LLP,
    No. 19-CIV.-10578, 2020 WL 3181785 (S.D.N.Y. June 15, 2020) ................................. 13

Sosa v. Rockland Cty. Cmty. Coll.,
    No. 15-CIV.-3329 (JCM), 2017 U.S. Dist. LEXIS 113358 (S.D.N.Y. Jul. 20, 2017) ....... 8

Spence v. Md. Cas. Co.,
    995 F.2d 1147 (2d Cir. 1993) ..................................................................................... 11, 12

Stinnett v. Delta Air Lines, Inc.,
    278 F. Supp. 3d 599 (E.D.N.Y. 2017) ............................................................................ 16

Teachout v. New York City Dept. of Educ.,
    No. 04-CIV.-945 (GEL), 2006 WL 452022 (S.D.N.Y. Feb. 22, 2006) ........................... 10

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) ........................................................................................... 10

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003) ............................................................................................. 7

Tsetseranos v. Tech Prototype, Inc.,
    893 F. Supp. 109 (D. N.H. 1995) .................................................................................... 13

Tulino v. Ali,
    No. 15-CIV.-7106, 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019) ................................... 11

Turner v. Eastconn Regional Educ. Service Center,
    No. 3:12-CIV.-788, 2013 WL 6230092 (D. Conn. Dec. 2, 2013) ................................... 13

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ............................................................................................... 7

Villarreal v. J.E. Merit Constructors, Inc.,
    895 F. Supp. 149 (S.D. Tex. 1995) ............................................................... 13

Woodcock v. Montefiore Med. Ctr. Univ. Hosp.,
    No. 98-CIV.-4420, 2002 WL 403601 (E.D.N.Y. Jan. 28, 2002) ...................................... 12

**Statutes**

28 U.S.C. § 1367 ................................................................................................ 15

42 U.S.C. § 2000e(k) ........................................................................................... 14

42 U.S.C. § 12102 .............................................................................................. 13

42 U.S.C. § 12112 .............................................................................................. 13

**Rules**

Fed. R. Civ. P. 12 .............................................................................................. 5

**Regulations**

29 C.F.R. § 1630.2 ............................................................................................. 14

**Treatises**

5 Wright & Miller, Federal Practice and Procedure § 1216 ............................................ 5

## PRELIMINARY STATEMENT

Plaintiff Leticia Francine Stidhum ("Plaintiff") commenced this case against 161-10 Hillside Auto Ave, LLC d/b/a Hillside Auto Outlet ("Hillside Auto Outlet"), Hillside Auto Mall Inc d/b/a Hillside Auto Mall ("Hillside Auto Mall") (Hillside Auto Outlet and Hillside Auto Mall collectively hereinafter the "Corporate Defendants"), Ishaque Thanwalla ("Thanwalla"), Jory Baron ("Jory"), Ronald M Baron ("Baron"), and Andris Guzman ("Guzman") (Thanwalla, Jory, Baron, and Guzman collectively hereinafter the "Individual Defendants") (the Corporate Defendants and the Individual Defendants collectively hereinafter the "Defendants") a second time after the first case she filed was dismissed for failure to exhaust administrative remedies, realleging the following claims: (i) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act of 1978 ("PDA"); (ii) disability discrimination under the New York State Human Rights Law ("NYSHRL"); (iii) sex discrimination under the NYSHRL; and (iv) pregnancy discrimination under the New York City Human Rights Law ("NYCHRL"). Defendants respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Complaint for failure state a claim upon which relief may be granted.

Plaintiff's Title VII, PDA, and – to the extent alleged – ADA claims must be dismissed. In order to state a claim upon which relief can be granted under either statute, plaintiff must plausibly allege that her employer took adverse action against her and that her sex or pregnancy (and any "disability") was a motivating factor in the employment decision.

Here, Plaintiff fails to allege any adverse employment action. She alleges in her complaint that she voluntarily quit her job due to dissatisfaction with the way her complaint about waiting times was handled. Because she was not terminated, she cannot sustain her burden to allege an adverse employment action.

Nor are her allegations regarding the "waiting time" sufficient to constitute an adverse employment action.  As she alleges herself, every salesperson waited for numbers from the finance department.  In addition, Plaintiff received special treatment; she was granted special access to Dealertrack, undercutting any alleged discrimination.  As such, the Title VII claim fails.

In addition, Plaintiff cannot sustain her burden to state a claim under the PDA (or ADA) because she does not allege the existence of a disability.  In her complaint, Plaintiff merely alleges that she is pregnant, with nothing more.  Because it is well established that pregnancy alone does not constitute a disability, Plaintiff's PDA (and/or ADA) claim must also be dismissed.

Finally, the Court should decline to exercise supplemental jurisdiction over the remaining claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

## STATEMENT OF FACTS

Plaintiff filed her Complaint on December 29, 2021.  See Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl.") ¶ 3, Exhibit ("Ex.") A, Docket Entry 1 (hereinafter the "Compl.").  There, she alleges that she is a female and "successful" car salesperson who "worked for a little over three (3) months" at Hillside Auto.[1]  See Compl. at ¶¶ 11-12.

Plaintiff alleges that was interviewed and hired on May 20, 2018 by Thanwalla and a non-party general manager to work as a car salesperson at Hillside Auto Outlet.[2]  Id. at ¶¶ 25-26.

---

[1] Hillside Auto refers to Defendant Hillside Auto Mall.  It is unclear from the complaint which of the Corporate Defendants Plaintiff refers to.  As the claims fail as set forth herein, it is irrelevant.

[2] Hillside Auto Outlet refers to Defendant 161-10 Hillside Auto Ave, LLC, located at 161-10 Hillside Avenue, Jamaica, NY 11432, as set forth in the complaint.  See Compl. ¶ 14.  It is a separate dealership in a completely different location approximately four (4) blocks away from Hillside Auto, which refers to Defendant Hillside Auto Mall Inc., located at 150-01 Hillside Avenue, Jamaica, NY 11432.  Id. at ¶¶ 15, 19.  Plaintiff interchangeably refers to both throughout the pleadings without specifically alleging that she worked for both.

On August 25, 2018, the non-party general manager was replaced by Guzman, who had prior thereto worked in the Finance Department of Hillside Auto and continued serving a role in the Finance Department after becoming the General Manager.  Id. at ¶¶ 28-30.  Guzman supervised Plaintiff through the end of her employment.  Id. at ¶ 32.  She claims, without explaining how, that she was denied commissions once Guzman became the general manager.  Id. at ¶¶ 33-34.

Plaintiff alleges that she sold between twenty-five (25) and thirty-one (31) cars per month between August 25, 2018 and December 2018, and – based on her sales performance – she was given "special trust."  Id. at ¶¶ 35-36.  Specifically, unlike all the other car salespersons, Plaintiff was given Thanwalla's password to the "Dealertrack" program used by Hillside Auto to run credit histories and pre-fill automobile purchase financing applications at some time prior to December 2018.  Id. at ¶¶ 36-37, 39.  Plaintiff alleges that his became necessary because Guzman, whose duty it was to perform these tasks, did so too slowly and created "poor customer impressions" of Hillside Auto's "service."  Id. at ¶ 38.

On November 23, 2018, Plaintiff learned that she was pregnant and informed Thanwalla, Guzman, and several of her co-workers of same.  Id. at ¶¶ 42-43.  Shortly thereafter, sometime in December 2018, Thanwalla went on vacation until January 9, 2019, at which time Guzman was placed in charge in Thanwalla's stead.  Id. at ¶¶ 45-46.

Before Plaintiff announced her pregnancy on or about December 1, 2018, she alleges that the wait time for Hillside Auto Outlet to speak with the Finance Department was roughly twenty (20) minutes, and that her wait time was "slightly shorter" because she had special access to Dealertrack no other salesperson had which permitted her to run credit histories for her customers and prefill their automobile purchase financing applications, leaving the Finance Department with the task of submitting her customers' applications to the bank.  Id. at ¶¶ 47-48.

However, Plaintiff alleges that after she announced her pregnancy, Guzman started making Plaintiff's customers wait for anywhere between forty (40) minutes to sixty (60) minutes rather than the "slightly shorter" than "twenty (20) minutes" Plaintiff's customers previously had to wait. Id. at ¶¶ 47, 49.  The majority of Plaintiff's customers "walked out" rather than "complete their purchases" as a result of the "longer wait times." Id. at ¶ 50.  Due to this, Plaintiff alleges that she only sold eight (8) to ten (10) cars between December 1, 2018 through January 14, 2019, the last day of her employment, and her bonus – which was based on the number of cars sold – "dropped significantly." Id. at ¶¶ 27, 51-52.

Plaintiff alleges that she complained to Guzman, who responded that "everybody[, i.e., not just Plaintiff,] had to wait or that the process took time." Id. at ¶¶ 53-54.  Notwithstanding, Plaintiff alleges that the wait time for customers attended to by other four (4) salespeople at Hillside Auto Outlet remained about twenty (20) minutes. Id. at ¶ 55.

When Thanwalla returned on January 10, 2019, Plaintiff discussed this issue with him and claimed that Guzman had "sabotaged" her while Thanwalla was gone; in response, Thanwalla offered Plaintiff a bonus of $200.00 and took no action to discipline Guzman or "restore" Plaintiff's "usual wait times." Id. at ¶¶ 56-58.  Plaintiff alleges that her "wait times" did not improve in the four (4) days following her complaint, but "rather remained at about forty (40) to sixty (60) minutes" long. Id. at ¶ 59.  Plaintiff therefore voluntarily quit. Id. at ¶ 60.

Plaintiff alleges that spoke to Defendant Jory on January 24, 2019 – ten (10) days after she quit – to explain why she had done so and that Thanwalla owed her the $200.00 he offered her; she alleges that Jory asked Plaintiff to confirm how much Plaintiff felt she was owed so that he could confirm with Thanwalla and call her back. Id. at ¶ 63.  Without alleging that Plaintiff told Jory how much she felt she was owed, Plaintiff alleges that Jory did not call her back.

Plaintiff concludes by alleging that there are no other pregnant workers at Hillside Auto, with no reference to Hillside Auto Outlet. Id. at ¶ 65.

Similarly, other than alleging that Defendant Baron is a "part-owner" of the Corporate Defendants, there are no allegations concerning him. Id. at ¶ 23.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule") challenges the legal sufficiency of a complaint. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

By contrast, a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alterations omitted). Such factual enhancement is necessary to "nudge[ ] [a] claim[ ] across the line from conceivable to plausible." See Twombly, 550 U.S. at 570. Although this standard "does not impose a probability requirement at the pleading stage," it does require a complaint to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support plaintiff's claims. Id. at 556. Where a complaint fails to do so, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the [C]ourt." Id. at 558 (ellipsis omitted) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1216).

Otherwise, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." Id. at 559.

A motion to dismiss should therefore be granted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  See Finkel v. Putnam Convertible Opportunities & Income Trust, No. 97-7901, 1998 U.S. App. LEXIS 22389, at *2 (2d Cir. Mar. 26, 1998); see also Bennett v. U.S. Navy, No. 96-CIV.-1550 (RJD), 1997 U.S. Dist. LEXIS 21702, at *2 (E.D.N.Y. Apr. 1, 1997); Mutlu v. Jetblue Airways Corp., No. 08-CIV.-4887 (LAP), 2009 U.S. Dist. LEXIS 60164, at *6-7 (S.D.N.Y. Mar. 31, 2009).

## ARGUMENT

## I.   PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED.

Plaintiff alleges that she was discriminated against because she was forced to wait for Guzman to submit financing applications to the bank despite the fact that she was the only salesperson who was given special access to Dealertrack in order to fast-track applications.  This special access Plaintiff admits she was given completely eviscerates her claim of discrimination.

Moreover, Plaintiff admits she voluntarily quit, which renders the required element of an adverse employment action in a Title VII case unmet.  Nor can she take refuge behind the alleged "longer wait times" to have financing applications submitted to the bank, as this does not constitute an adverse employment action for three (3) separate reasons.  First, courts have routinely held that such setbacks do not constitute same.  Second, Plaintiff's pleadings themselves provide that the reason there were longer wait times was because "everyone had to wait" and that "the process took time," eliminating any discriminatory intent.  Finally, Plaintiff's allegations that she had to wait longer while others did not cannot be accepted as true because they rest on the notion that the only reason Plaintiff waited longer was due to her pregnancy, which amounts to speculation and conjecture, and must thus be treated as a conclusory assertion rather than a well-pled fact.

To that end, "[t]o defeat a motion to dismiss … in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  An adverse employment action is "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." See Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 43 (2d Cir. 2019).

The adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." See Vega, 801 F.3d at 85 (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).   Still, a plaintiff must plausibly allege that her protected characteristic was causally linked to the adverse employment action. Indeed, "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." See Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

Here, the Plaintiff only manages to allege that she was in a protected class and qualified for her position, but fails to adequately allege that she suffered any adverse employment action, let alone that any such adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Plaintiff's speculative theory –and bare assertions – of discrimination, without more, are insufficient to plead a *prima facie* case of discrimination.  It is simply not enough for a plaintiff to merely state that she is in a protected class and thus the employer's actions were discriminatory. Indeed, this is a:

> common (and patently defective) pleading technique in cases brought under federal and local antidiscrimination statutes: "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)." As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination.

See Ochei v. Mary Manning Walsh Nursing Home Co., No. 10-CIV.-2548 (CM) (RLE), 2011 U.S. Dist. LEXIS 20542, at *6 (S.D.N.Y. Mar. 1, 2011) (dismissing discrimination complaint containing bald assertion that plaintiff was member of protected class and the people who made decisions about her employment were not); see also Sosa v. Rockland Cty. Cmty. Coll., No. 15-CIV.-3329 (JCM), 2017 U.S. Dist. LEXIS 113358, at *14 (S.D.N.Y. Jul. 20, 2017) (holding that plaintiff did not establish a prima facie case of discrimination where "Plaintiff's claim rest[ed] on nothing more than her subjective belief that she was the victim of discrimination because she is of Hispanic descent"); Assue v. UPS, Inc., No. 16-CIV.-7629 (CS), 2018 U.S. Dist. LEXIS 136532, at *39 (S.D.N.Y. Aug. 13, 2018) ("Plaintiff seems to rely on the fallacy that because he belongs to a protected class, it is reasonable to conclude that anything negative that happened to him at work was because of his membership in that class."); Jones v. City of New York, No. 14-CIV.-826 (CBA) (RLM), 2015 U.S. Dist. LEXIS 13951, at *21 (E.D.N.Y. Feb. 4, 2015) ("In sum, Jones' national origin claim amounts to little more than a flawed syllogism that because she is not Haitian and something unfortunate happened to her, the two must be linked. That falls well short of the pleading bar").

Here, again, Plaintiff's pleadings suffer from the same plight as those cited above.  She essentially alleges that, merely because she is pregnant, she was forced to wait twice or three times longer than four (4) other salespersons who were not pregnant for finance numbers, which allegedly forced customers to leave.

She alleges this even though she concededly was given "special access" to Dealertrack, a crucial judicial admission that Plaintiff was actually treated more favorably than the other salespersons and was *not* discriminated against.  Courts routinely dismiss complaints where, as here, the plaintiff fails to connect the alleged adverse employment action to a protected class.  See Gong v. City University of New York, 846 Fed. Appx. 6, 8 (2d Cir. 2021) (affirming 12(b)(6) dismissal where plaintiff did not connect adverse employment actions to her race or national origin and therefore failed "to provide a contextual basis for inferring discrimination"); see also Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 220 (E.D.N.Y. 2018) (dismissing Title VII claim because "[n]aked assertions of ... discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss").  This Court should do the same here.

Moreover, "wait times" at work are not considered an "adverse employment action" within the meaning of the law.  See La Grande v. DeCrescente Distrib. Co., Inc., 370 Fed. Appx. 206, 211 (2d Cir. 2010) (summary order) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."); see also Sealy v. State Univ. of New York At Stony Brook, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019) (dismissing Title VII discrimination claim based on allegations that, *inter alia*, defendant transferred plaintiff to a more remote work location; denied plaintiff a key to supply room; required Plaintiff to wait 45 minutes to access the supply room; assigned plaintiff a vehicle that was frequently in the shop; and denied plaintiff new tools to be insufficient to allege adverse employment action); cf. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace") (internal quotation marks omitted).

9

Indeed, these kind of trivial complaints concerning wait times and similar issues (which, in the cases cited herein, are arguably more egregious) are routinely dismissed because courts have found that they do not constitute adverse employment actions.  See Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 713 (S.D.N.Y. 2007) (holding that a waiter's assignment to most difficult section of restaurant for two consecutive nights after initiating an employment discrimination action "too trivial" to qualify as an adverse employment action); see also Teachout v. New York City Dept. of Educ., No. 04-CIV.-945 (GEL), 2006 WL 452022, at *10 (S.D.N.Y. Feb. 22, 2006) ("It is doubtful that supplying a mentor for only one month or waiting until after several poor evaluations to provide assistance would qualify as adverse employment actions"); Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 26 (2d Cir. 2014) (allegations that an employee received two disciplinary citations for insubordination over two-year period, was assigned to drive dirty buses, received one late overtime payment, and endured employer's one-time refusal to give him a half-day off for doctor's appointment did not constitute materially adverse employment action); Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) ("Actions that are trivial harms—i.e., those petty slights or minor annoyances that often take place at work and that all employees experience—are not materially adverse") (internal quotation marks omitted) (quoting Burlington, 548 U.S. at 68).

Similarly, Plaintiff alleges that she voluntarily quit and was not terminated.  But this is insufficient to constitute an adverse employment action.  See Salen v. Blackburn Bldg. Servs., LLC, No. 3:14-CIV.-1361 (VAB), 2017 WL 71708, at *16 (D. Conn. Jan. 6, 2017) ("While a defendant's termination of an employee would constitute an 'adverse employment action,' a defendant's termination of an employee who has resigned does not") (quoting Davis v. Koffee Kup Bakery, Inc., No. 2:15-CIV.-152 (CR), 2016 WL 4411399, at *6 (D. Vt. Aug. 18, 2016));

Davis, 2016 WL 4411399, at *6 ("Where an employee voluntarily quits, there is no adverse employment action") (citation omitted); see also Cadet v. Deutsche Bank Sec. Inc., No. 11-CIV.-7964 (CM), 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) ("A voluntary resignation does not constitute an adverse employment action").

Although not raised by the Plaintiff in her pleadings, nor in her opposition to Defendants' letter motion for a pre-motion conference, the Hon. Roanne L. Mann, U.S.M.J. raised the prospect recently that Plaintiff is relying on a theory of "constructive discharge" to support the existence of an adverse employment action. Plaintiff's attempt to do so should be denied as the complaint fails to meet the high threshold necessary to allege a constructive discharge under the law.

In order to adequately plead a constructive discharge, a plaintiff must plausibly allege that the employer "*deliberately created working conditions so intolerable, difficult, or unpleasant that a reasonable person would have felt compelled to resign.*" See Tulino v. Ali, No. 15-CIV.-7106, 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019) (quoting Short v. Deutsche Bank Sec., Inc., 913 N.Y.S. 2d 64, 66 (1st Dept. 2010) (emphasis added)). A plaintiff must allege that Defendants' treatment rose to the level of intolerability. See La Porta v. Alacra, Inc., 142 A.D. 3d 851, 852-53 (1st Dept. 2016). Crucially, the plaintiff must show that a reasonable person would have "*had no alternative but to resign.*" See Spence v. Maryland Cas. Co., 995 F.2d 1147, 1157 (2d Cir. 1993) (emphasis added) (finding no constructive discharge because plaintiff could have lodged complaint to human resources rather than resigning). Indeed, intolerability requires an even higher threshold than a claim of a hostile work environment. See Gaffney v. City of New York, 101 A.D. 3d 410, 411 (1st Dept. 2012).

Here, Plaintiff cannot remotely meet the standard of intolerability necessary to plead a constructive discharge. Her sole complaint is that customers left due to longer waiting times.

Despite this, she admittedly alleges that she was nonetheless able to sell vehicles, just not as many as she sold before.  Giving the complaint every favorable inference, then, the fact that Plaintiff sold only eight (8) to ten (10) cars between December 2018 through January 14, 2019 as compared to twenty-five (25) to thirty-one (31) cars per month every preceding month back to when she first started in May 2018, there could be any number of reasons that Plaintiff sold less cars in the final month of her employment before she chose to resign.  Perhaps customers' money was better spent on holiday shopping and they were unable to afford to buy a car during this time.  Maybe it was too cold during December and January to visit a used car lot and purchase a vehicle.  Or it could just be that Plaintiff was having a bad month and not selling as many cars.  The fact remains that waiting times, alone, were not the sole cause for Plaintiff's failure to sell more vehicles.  The allegation of anything to the contrary is simply implausible.

However, even assuming *arguendo* that the conclusory allegation Plaintiff lost customers solely due to additional waiting times imposed solely against her, this does not remotely rise to the level of intolerability required to meet the standard necessary to plead a constructive discharge. The Second Circuit and other courts have declined to find the pleading standard met for a constructive discharge.  See Spence, 995 F.2d at 1149-54 (no constructive discharge where employer repeatedly criticized plaintiff's work performance, "harangued" plaintiff in front of others, and repeatedly threatened to fire plaintiff); Martin v. Citibank, N.A., 762 F.2d 212, 221 (2d Cir. 1985) (no constructive discharge when plaintiff had difficult relationship with supervisor); Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004) (no constructive discharge, despite 8-year hostile work environment, because employee endured harassment and employer's actions preceding resignation had not "ratcheted" same up to "the breaking point"); Woodcock v. Montefiore Med. Ctr. Univ. Hosp., No. 98-CIV.-4420, 2002 WL 403601 (E.D.N.Y. Jan. 28, 2002)

(finding no constructive discharge where plaintiff resigned months after most of the incidents upon which the constructive discharge claim was premised).

Similarly, to the extent that Plaintiff plausibly raises an inference that she was assigned to less desirable customers or roles (which her complaint fails to raise), such allegations would not serve as a basis to constitute sufficiently material adverse changes in the terms and conditions of employment to serve as an adverse employment action under the law.     See Rowe v. Jagdamba, Inc., 302 Fed. Appx. 59, 62 (2d Cir. 2008) (summary order) ("Rowe alleges isolated incidents of adverse treatment in scheduling and table assignments, and resulting loss of tips and wages, but his allegations do not rise to the level of a 'materially adverse change in the terms and conditions' of his employment"); see also Shukla v. Deloitte Consulting LLP, No. 19-CIV.-10578, 2020 WL 3181785, at *6 (S.D.N.Y. June 15, 2020) (observing that assignments to certain job duties or work assignments "typically do not rise to the level of an adverse employment action, unless such [assignments are] ... so significant as to constitute a setback to the plaintiff's career").

Accordingly, Plaintiff's Title VII claims must be dismissed.

## II.   PLAINTIFF'S PDA CLAIMS MUST BE DISMISSED

The ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual." See 42 U.S.C. § 12112. Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual ..." See 42 U.S.C. § 12102(2). The complaint alleges that Plaintiff was pregnant.  Courts nationwide have held, however, that pregnancy and related medical conditions are not disabilities under the ADA. See, e.g., Gudenkauf v. Stauffer Communications, Inc., 922 F. Supp. 465, 473 (D. Kan. 1996); Villarreal v. J.E. Merit Constructors, Inc., 895 F. Supp. 149, 152 (S.D. Tex. 1995); Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 119 (D. N.H. 1995); Byerly v. Herr Foods, Inc., 1993 WL 101196, at *4 (E.D. Pa. 1993).

These courts based their conclusion in part on the Equal Employment Opportunity Commission's ("EEOC") regulations stating that "conditions, such as pregnancy, that are not the result of a physiological disorder are not impairment," see 29 C.F.R. § 1630.2(h), and that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities," see 29 C.F.R. § 1630.2(j).

These courts also noted that Title VII and the PDA specifically covered employment discrimination on the basis of pregnancy, thereby obviating the need to extend the coverage of the ADA to protect pregnancy and related medical conditions. Because Plaintiff's pregnancy nor its complications are a disability under the ADA, she has failed to state a claim under the ADA upon which relief can be granted.

Thus, Plaintiff's claim against the defendants under the ADA – to the extent her complaint can be construed to raise them – are dismissed.  See Turner v. Eastconn Regional Educ. Service Center, No. 3:12-CIV.-788, 2013 WL 6230092, *7 (D. Conn. Dec. 2, 2013) ("It is well established that pregnancy alone does not constitute a disability").

Turning to her claims under the PDA, the Pregnancy Discrimination Act of 1978 amended Title VII to make explicit that employment discrimination because of sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." See 42 U.S.C. § 2000e(k). It goes on to require that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." Id.

"Like other Title VII discrimination claims, pregnancy discrimination may be proven under a disparate treatment or disparate impact theory of liability." See Legg v. Ulster Cty., 820 F. 3d 67, 72 (2d Cir. 2016).

Plaintiff's theory is that she was treated differently from others on account of her sex, gender, and pregnancy. Thus, "[t]o establish disparate treatment, a plaintiff must show that the defendant's actions were motivated by a discriminatory intent, either through direct evidence of intent or by utilizing the three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Id. (citing Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995)).

Here, Plaintiff's PDA claims fail for the same reasons as her Title VII claims.  See Point I, *supra*.  It merely bears emphasis that although Plaintiff was given special access to Dealertrack at some point prior to December 2018 – which was before she notified Thanwalla and Guzman that she was pregnant on December 1, 2018 – she did not allege, for instance, that her special access to Dealertrack was taken away from her.  In that regard, Plaintiff cannot conceivably claim that she was discriminated against; she was treated more favorably than the other salespersons, and continued to be so treated more favorably even after notifying Thanwalla and Guzman about her pregnancy.

Accordingly, Plaintiff's claims based upon her pregnancy – whether under the PDA or the ADA – must be dismissed.

## III.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE AND CITY LAW CLAIMS

Since the federal claim in this case should be dismissed, the Court would only have supplemental jurisdiction over the remaining claims. The Court should decline to exercise supplemental jurisdiction in this case.

A district court may "decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

In determining whether to exercise supplemental jurisdiction over state-law claims, a district court should consider "the values of judicial economy, convenience, fairness, and comity." See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Generally, "if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." See Oneida Indian Nation of N.Y. v. Madison Cty., 665 F.3d 408, 437 (2d Cir. 2011).

After dismissing Title VII claims, courts in this district have declined to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims. See, e.g., Stinnett v. Delta Air Lines, Inc., 278 F. Supp. 3d 599, 617-18 (E.D.N.Y. 2017) ("As no federal claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and common law claims.").

Here, allowing Plaintiff's state and city law claims to remain in this case would run contrary to judicial economy, convenience, and fairness. The state and city law claims should not proceed in federal court before Plaintiff exhausts her administrative remedies under Title VII. In addition, there have been no proceedings before this Court other than this motion to dismiss.

Therefore, Defendants respectfully request that the Court decline to exercise supplemental jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the instant motion to be granted and such other and further relief as the Court deems just and proper.

16

Dated: Lake Success, New York
       June 27, 2022

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

**VIA ECF**
Troy Law, PLLC
<u>Attn</u>: John Troy, Esq.
4125 Kissena Boulevard, Suite 103
Flushing, NY 11355-3101
johntroy@troypllc.com

*Attorneys for Plaintiff*