UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LETICIA FRANCINE STIDHUM,

          Plaintiff,

v.

161-10 HILLSIDE AUTO AVE, LLC,
HILLSIDE AUTO MALL, INC., ISHAQUE
THANWALLA, JORY BARON, RONALD M
BARON and ANDRIS GUZMAN,

          Defendants.

**MEMORANDUM & ORDER**
21-CV-07163 (HG) (RLM)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Leticia Francine Stidhum ("Plaintiff") brings this action against Defendants 161-10 Hillside Auto Ave, LLC (d/b/a Hillside Auto Outlet), Hillside Auto Mall Inc. (d/b/a Hillside Auto Mall), Ishaque Thanwalla, Jory Baron, Ronald M. Baron and Andris Guzman (collectively, "Defendants") for alleged violations of: (i) Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq*; (ii) New York State Human Rights Law, N.Y. Exec. § 290 *et seq*.; and (iii) New York City's Pregnant Workers Fairness Act of New York City Human Rights Law, NYC Admin. § 8-107(22) *et seq*. Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint, Plaintiff's opposition, and Defendants' reply. ECF Nos. 19, 21, 23. For the reasons set forth below, Defendants' motion to dismiss is denied.

## BACKGROUND

    The two corporate defendants in this case, Hillside Auto Outlet and Hillside Auto Mall, are car dealerships located "four blocks away from each other" and allegedly share common owners, managers, and inventory. ECF No. 1 ¶¶ 14–19. Plaintiff alleges that they formed a

single enterprise or, alternatively, jointly employed her. *Id.* ¶ 20. Defendants Thanwalla, Jory Baron, and Ronald Baron are each allegedly part owners of the corporate defendants, and Thanwalla was allegedly one of Plaintiff's supervisors. *Id.* ¶¶ 21–23. Guzman was initially an employee in the Finance Department of Hillside Auto Outlet but, as explained in greater detail below, was later promoted within the department to become one of Plaintiff's supervisors. *Id.* ¶ 24.

Plaintiff alleges that Thanwalla hired her in May 2018 to work at Hillside Auto Outlet and that she was initially supervised by a general manager who is not a party to this case. ECF No. 1 ¶¶ 25–26; ECF No. 19 at 2. In August 2018, Plaintiff's former supervisor was replaced by Guzman, who supervised Plaintiff through the end of her employment. *Id.* ¶¶ 30, 32. Guzman's position was further elevated in December 2018 when Thanwalla went on vacation and Guzman was put in charge of the Finance Department in his absence. *Id.* ¶¶ 45–46. This period coincided almost exactly with when Plaintiff informed her coworkers that she was pregnant. Plaintiff had learned that she was pregnant on November 23, 2018, and she informed her coworkers, including Thanwalla and Guzman, on December 1, 2018. *Id.* ¶¶ 42–44.

Plaintiff alleges that she received her salary, bonus, and commission before Guzman took control of the Finance Department in Thanwalla's absence. *Id.* ¶ 33. However, she alleges that once Guzman took control, her bonus decreased, and she was denied her commission. *Id.* ¶¶ 34, 52. Prior to December 2018, Plaintiff describes her work performance as "exemplary," alleging that she sold between 25 and 31 cars per month. *Id.* ¶ 35. During this period, on the basis of her exemplary performance and unlike all the other car salespeople, Thanwalla gave Plaintiff special access to a program called "Dealertrack," which allowed her to run the credit histories of customers and pre-fill their automobile purchase financing applications. *Id.* ¶¶ 36–37. This

2

special access helped expedite the purchase process for customers, who would otherwise have to wait long periods of time for Guzman and the Finance Department to run their credit histories. *Id.* ¶¶ 38–39.  As a result, before Guzman took over the Finance Department, the wait time for Plaintiff's customers to speak with the Finance Department had been a little less than twenty minutes.  *Id.* ¶ 47.

However, Plaintiff alleges that after she announced her pregnancy and Guzman took over the Finance Department, the following things happened:  (i) her access to Dealertrack was restricted; (ii) Guzman started making her customers wait anywhere between forty and sixty minutes; and (iii) her customers walked out of Hillside Auto Outlet as a result of the longer wait times.  *Id.* ¶¶ 36, 49–50.  Plaintiff further alleges that due to Guzman's actions she sold only eight to ten cars between the day that she informed her co-workers that she was pregnant and her last day of employment.  *Id.* ¶ 51.  Plaintiff claims that she called Guzman "constantly" to inquire about the customer wait times during this period.  *Id.* ¶ 53.  He reportedly told her all salespeople had to wait this long, but Plaintiff alleges that the wait time for other salespeople remained at approximately twenty minutes (compared to her forty to sixty minutes).  *Id.* ¶¶ 54–55, 59.

As a result of Plaintiff's drop in sales, her bonus was reduced, and she was denied her commission.  *Id.* ¶ 52.  When Thanwalla returned from vacation on January 10, 2019, Plaintiff informed him of Guzman's alleged "sabotage."  *Id.* ¶ 56.  Thanwalla allegedly told Plaintiff he would give her a bonus of two hundred dollars.  *Id.* ¶ 57.  However, he failed to provide Plaintiff with any bonus, discipline Guzman, or restore Plaintiff's usual wait times.  *Id.* ¶¶ 58, 61.  On January 14, 2019, Plaintiff resigned.  *Id.* ¶ 60.

On January 24, 2019, Plaintiff texted Defendant Jory Baron, a part owner of Hillside Auto Outlet and Hillside Auto Mall, to inform him that she had not been paid her full bonus.  *Id.*

¶ 62.  Baron called Plaintiff and she explained to him why she had quit and how Thanwalla owed her money.  *Id.* ¶ 63.  Baron told Plaintiff he would call her back the following Monday but did not do so.  *Id.* ¶ 64.

Plaintiff previously filed an employment discrimination lawsuit against Defendants in this District in September 2019.  *See Stidhum v. 161-10 Hillside Auto Ave, LLC et al*, 19-cv-05458, ECF No. 30 at 5.  Defendants moved to dismiss that lawsuit arguing that it was premature because the EEOC had not yet issued Plaintiff a "right-to-sue letter."  *Id.*  Judge Kovner granted Defendants' motion and dismissed the case without prejudice with leave to refile the Complaint "once the EEOC either (i) dismisses her charge and issues her a proper notice of right to sue, or (ii) processes her charge for an additional eighty-nine days and issues her a proper notice of right to sue."  *Id.* at 9–10.

The EEOC issued Plaintiff a notice of right to sue on September 30, 2021, and Plaintiff subsequently filed her Complaint.  ECF No. 1 ¶ 10.  Defendants then filed this motion to dismiss principally contending that Plaintiff's Complaint fails to plausibly allege that Defendants:  (i) took adverse action against her, and (ii) that her sex, pregnancy or "disability" was a motivating factor in any employment decision.  ECF No. 19 at 7.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in

4

plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Court must draw all reasonable inferences in favor of the non-moving party, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.     Title VII and NYSHRL Claims

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended Title VII to define discrimination "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Farmer v. Shake Shack Enters, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting 42 U.S.C. § 2000e(k)). The Pregnancy Discrimination Act therefore "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Id.*

Plaintiff also alleges that she was discriminated against on the basis of her pregnancy in violation of the New York State Human Rights Law ("NYSHRL"). ECF No. 1 ¶ 1. "Claims under both Title VII and the NYSHRL, including sex and pregnancy discrimination, are generally treated as analytically identical and addressed together. Both are governed by the familiar three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

5

411 U.S. 792 (1973)." *Farmer*, 473 F. Supp. 3d at 323–24 (internal citations and quotation marks omitted). That framework applies at the summary judgment stage and requires a plaintiff to "establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

However, at the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*." *Vega*, 801 F.3d at 84. In order to defeat a motion to dismiss, a plaintiff must "plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 87. In assessing whether a plaintiff's allegations are plausible, "the court must be mindful of the elusive nature of intentional discrimination" and that plaintiffs will "rarely" be able to present "direct, smoking gun, evidence of discrimination" "[b]ecause discrimination claims implicate an employer's usually unstated intent and state of mind." *Id.* at 86 (internal quotation marks omitted). A plaintiff may therefore meet her pleading burden "by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Id.* at 87 (internal quotation marks omitted).

1. Adverse Action

Defendants argue that because Plaintiff admits she voluntarily resigned, she does not meet the required elements of an adverse employment action, which requires "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to

6

the plaintiff's current or future employment." ECF No. 19 at 6–7 (citing *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019)). Plaintiff agrees that "[a]n adverse employment action is one which is more disruptive than a mere inconvenience or alteration in job responsibilities," but argues that she has pleaded significantly diminished material responsibilities and a decrease in take-home pay (including a reduction in bonuses), which satisfy the standard. ECF No. 21 at 8 (citing *Vega*, 801 F.3d at 85).

Plaintiff's allegations that she was deprived access to the Dealertrack program and "could no longer run customer credit scores or pre-fill financing applications" are not enough to constitute adverse action because as Plaintiff herself described, she was given unique access and received a benefit that none of her colleagues received. ECF No. 21 at 8; ECF No. 1 ¶¶ 36–37, 39. However, the Court finds that a decrease in Plaintiff's take-home pay can constitute an adverse action. *See Davis v. N.Y. City Dep't of Educ.*, 804 F.3d 231, 236 (2d Cir. 2015) (finding that "[t]he district court erred in ruling that denial or reduction of a bonus could not constitute an adverse employment action"); *McKenna v. Santander Inv. Secs., Inc.*, No. 21-cv-941, 2022 WL 2986588, at *9 (S.D.N.Y. July 28, 2022) (finding that a plaintiff presented sufficient evidence to raise a question of fact as to whether defendants discriminated against her as a result of her pregnancy by reducing her bonuses). Here, Plaintiff has plausibly alleged that Defendants decreased her bonus by increasing the average wait time for her customers after she announced her pregnancy, without doing the same to the customers of her non-pregnant coworkers, thereby decreasing the number of sales she was able to make. *See* ECF No. 1 ¶¶ 47, 49–52.

    2. Motivating Factor

Defendants further argue that Plaintiff's claim of discriminatory intent amounts to "speculation and conjecture, and must . . . be treated as a conclusory assertion rather than a well-

7

pled fact." ECF No. 19 at 6.  The Second Circuit held that at the pleadings stage of an employment discrimination case, "a plaintiff has a *minimal* burden of alleging facts suggesting an inference of discriminatory motivation . . . .  [T]he facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Vega*, 801 F.3d at 85 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)) (internal quotation marks omitted).  Plaintiff alleges that, as compared to her non-pregnant coworkers, her customers' wait times increased (thus impacting her bonus and commission) after she told her colleagues and supervisors about her pregnancy.  ECF No. 1 ¶¶ 43, 47–55.  The Court finds that Plaintiff has met her "minimal" burden by alleging that the adverse employment action began once she announced her pregnancy.  *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) ("As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination.") (citation and internal quotation marks omitted).  "On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination."  *Vega*, 801 F.3d at 87.  Accordingly, Plaintiff sufficiently alleges facts suggesting an inference of discriminatory motivation.

    **II.**    **NYCHRL Claim**

Plaintiff further alleges that Defendants discriminated against her on the basis of her pregnancy in violation of the New York City Human Rights Law ("NYCHRL").  ECF No. 1 ¶ 87 (citing N.Y.C. Admin. Code § 8-107(22)).  "The New York City Human Rights Law was intended to be more protective than [its] state and federal counterpart.  To state a claim for gender discrimination under the NYCHRL, a plaintiff need only show differential treatment—

8

that she is treated less well—because of a discriminatory intent." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 84 (E.D.N.Y. 2020) (internal citation and internal quotation marks omitted). Because Plaintiff has adequately pled a claim for employment discrimination under Title VII and NYSHRL, she has also done so under the NYCHRL. *Id.* at 84–85.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 15, 2022