1            UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    LETICIA FRANCINE STIDHUM,
                                        Case No. 1:21-cv-07163-HG-LB
4              Plaintiff,

5    v.                                 Brooklyn, New York
                                        February 1, 2023
6    HILLSIDE AUTO AVE, LLC et al,      3:34 p.m.

7              Defendants.

8

9                    TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE LOIS BLOOM
10             UNITED STATES MAGISTRATE JUDGE

     APPEARANCES:
11   For the Plaintiff:          Tiffany Troy, Esq.
                                 Troy Legal, PLLC
12                               41-25 Kissena Blvd, #1A
                                 Flushing, NY 11355
13
     For the Defendants:         Emanuel Kataev, Esq.
14                               Milman Labuda Law Group PLLC
                                 3000 Marcus Avenue
15                               Suite 3W8
                                 Lake Success, NY 11042
16
     Clerk:                      E.W.
17
     Court Recorder:             Electronic Sound Recording
18
     Transcription Service:      Chris Hwang
19                               Abba Reporting
                                 PO Box 223282
20                               Chantilly, Virginia  20153
                                 (518) 302-6772
21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25

1          (Call to order at 3:34 p.m.)

2               THE CLERK:  Civil cause for a status conference,

3     Stidhum against 161-10 Hillside Auto Avenue, LLC, et al., case

4     number 21-CV-7163.  Will the parties please state their names

5     for the record?

6               MS. TROY:  Good afternoon, Your Honor, this is

7     Tiffany --

8               THE COURT:  Stand please when you address the Court?

9               MS. TROY:  Sure.  Good afternoon, Your Honor.  This

10    is Tiffany Troy, Troy Law, PLLC, representing Plaintiff Leticia

11    Stidhum.

12              MR. KATAEV:  Good afternoon, Your Honor, Emanuel

13    Kataev of Milman Labuda Law Group, PLLC for the Defendants.

14              THE CLERK:  The Honorable Lois Bloom presiding.

15              THE COURT:  Good afternoon, Ms. Troy and Mr. Kataev.

16    And when you stand to address the Court, you don't need to bend

17    over.  The mics are very sensitive.  They'll pick you up.

18              This is a status conference in Plaintiff's pregnancy

19    discrimination case that's been brought pursuant to Title 7.  I

20    inherited this jewel of a matter from Judge Mann.

21              And I've been told that from the very beginning, the

22    parties have not been able to get along.  And that was proven

23    with no effort on my part because while I was conferencing the

24    prior matter, counsel on this case stepped to the vestibule of

25    my courtroom and proceeded to start fighting in voices raised

1   that disrupted my court proceeding.  I've already had them

2   apologize, but again, that is not appropriate behavior.  And I

3   will not accept that kind of behavior.

4         So I've gone through what's at issue here.  I see

5   it's a third motion to compel.  I get it that nobody could

6   agree to dates.

7         Ms. Troy tried to get her client's things scheduled.

8   You tried to get your things scheduled, Mr. Kataev.  I'm here

9   to schedule it.  Get your books out, I'm not going to fool

10  around.  I don't want to hear anything about this again.  This

11  is baby stuff.

12        And again, both sides have a part in it.  I doubt

13  that there's going to be a late appeal under 1292 certified.

14  So you're going forward here.

15        And I would suggest one thing to both sides.  This

16  woman was hired on May 18th.  She worked until she told her

17  boss she was pregnant on November 23rd, 2018.  And she resigned

18  her position on January 14th, 2019.

19        We're talking about a short tenure here.  And as much

20  as you both think that you're in the right with everything

21  that's going on, you could solve this if you put your heads

22  together and tried to come up with some consent resolution.

23        This is a car auto dealership.  Even if you're right,

24  Ms. Troy, the case likely will go on for at least another year,

25  maybe longer.

1          So longer than the person was employed, longer than

2    she was pregnant.  Hopefully she had a healthy baby.  And she

3    wants to get something out of this.

4          Defendant on their side think that this is a big

5    winning argument that there's no adverse action.  And maybe

6    they're right and maybe they're wrong.  And they're not going

7    to get an immediate appeal.  I think the likelihood of that is

8    slim to none.

9          But even if they were able to, that's their issue on

10   appeal?  I mean, really.  Your client's going to be paying for

11   your services to take an appeal to the 2nd Circuit on an

12   interlocutory issue that's not very well developed?

13         This is craziness.  And that both sides are not

14   getting along is adding to the craziness because here I am

15   inheriting this.

16         And we're at number 40 -- well, no, that's the old

17   docket sheet.  I think we're beyond 44 items on the agenda now.

18   No, we're at 44.

19         MR. KATAEV:  46, Your Honor.

20         THE COURT:  46, sorry, yes, I was looking at the last

21   docket sheet.  So we're at 46 and we haven't even said go yet.

22   I mean, yes, there's a complaint, there's an answer, but there

23   was a motion and the motion was denied.

24         So how about being reasonable here and putting out a

25   demand that they could consider, Ms. Troy?

1          MS. TROY:  Yes, Your Honor.  I understand your

2     position.  We sent out the damage calculations per Mr. Kataev's

3     request.

4          THE COURT:  So tell me what that damage calculation

5     was?

6          MS. TROY:  I'm going to pull it up.

7          MR. KATAEV:  I could tell you, Your Honor.

8          THE COURT:  It's okay.  Let her.  Thank you.

9          MR. KATAEV:  Sure.

10         MS. TROY:  And I do apologize, Your Honor.  I was

11    really upset because Mr. Kataev said Judge Bloom does not like

12    your firm.

13         THE COURT:  Look, Ms. Troy, I've seen you once

14    before.  And you had just graduated.  And you were very proud

15    of your dad.  And you said that he's such a genius and that's

16    why he has so many clients.  That's what I remember about

17    meeting you before.  You probably don't remember that.  You

18    were a grand new graduate of Fordham Law School and brimming

19    with pride.

20         MS. TROY:  Yes, Your Honor, so that's why the ad

21    hominem attacks against my father's firm is not entirely called

22    for.  I apologize, Your Honor.  And that's why I was upset.

23         THE COURT:  Okay, Ms. Troy, there are tissues on the

24    table.  Get yourself together.  And I understand that it's your

25    father's firm, but I will also tell you I didn't say anything

1    to you.

2              And if he's saying things to you, you should know

3    that you've got to be, you know, steel yourself.  You're

4    representing a client.  It's not about your father.  It's about

5    the client, okay?

6              MS. TROY:  We requested for $2.1 million, Your Honor.

7              THE COURT:  And how did you get there?

8              MS. TROY:  We cited to the case --

9              THE COURT:  No, I'm not talking cases.  Let's look at

10   what her compensation scheme was.  What was her best month?

11             Because you're saying that until she informed her

12   boss that she was pregnant, she was killing it at this place.

13   She was just selling, selling, selling.  So what was her best

14   month from May until she told them she was pregnant in

15   November?

16             MS. TROY:  $1,900.

17             THE COURT:  So she made $1,900 on her best month as a

18   car salesman there?

19             MS. TROY:  Yes, Your Honor.

20             THE COURT:  So how do we get to 2.1, Ms. Troy?

21   That's quite a leap there.

22             MS. TROY:  We have the economic damages, but what we

23   find that most of the $2.1 million has to do with the punitive

24   damages.  And that's because prior to Ms. Stidhum, there was

25   another pregnant worker, who was also fired.

1        THE COURT:  Do you represent that person?

2        MR. KATAEV:  No, we do not.

3        THE COURT:  Okay.

4        MS. TROY:  Who was also fired from Hillside Auto.

5        THE COURT:  So there's going to be a mini trial

6    within this trial about whether or not this other pregnant

7    person that you don't represent was fired?

8        MS. TROY:  It's a fact that she was fired and it was

9    a fact that she was pregnant that we need to prove it with the

10   documents obviously as --

11       THE COURT:  Again, I'm not sure about any of that

12   being proof of anything for a punitive damage award under Title

13   VII.

14       I'm trying to be real with you, okay?  This woman

15   worked for a short period of time.  It might be a very, very

16   welcome gesture for you to have a conversation with your client

17   about, okay, your best month there was 1,900.  I understand

18   this was terrible.  They forced you out.  That's what you're

19   alleging because she was resigned, right?

20       MS. TROY:  Right.

21       THE COURT:  So you can say to her I really want to

22   help.  Help me come up with a number, and then, you could pad

23   that number to start negotiations.

24       But starting with 2.1 million is -- I'm being real

25   with you.  That's out of the ballpark.  That's what a pro se

1    litigant says they want.  That's not in -- the basis has to be

2    in the facts of the case.

3            It can't be what you hope for.  It can't be a

4    speculative amount.  You have to have some idea.  So when

5    you're calculating it, and you look at other cases, that's not

6    the facts of your case.

7            This woman was hired in May.  She worked until

8    January.  I understand nobody should be fired because they tell

9    their boss they're pregnant.  Believe me, I believe in the law.

10   I do.

11           But you have a client here.  And the client resigned

12   their job in their January.  So there's constructive discharge

13   you have to prove.  We got a lot of hoops to jump through here,

14   Ms. Troy.

15           MS. TROY:  Yes, Your Honor.

16           THE COURT:  I'm not trying to disparage your client.

17   I'm trying to get you to go to your client so that you make a

18   demand that they could respond to because I'll push them.

19   They're not going to respond to 2.1 million, Ms. Troy.  That's

20   what's happened.

21           And believe me, I'm not going to just let them go.

22   We're going to schedule all the depositions, all of that today.

23           I'm just trying to say that there are certain things

24   that are just nonstarters.  A $2.1 million award when her best

25   month on the job was $1,900.  It's not just not going to work.

1    If she had that best month every month, right?

2              MS. TROY:  Yes.

3              THE COURT:  She would have made $25,000 in a year.

4    So even if you said four times that, we're still at $100,000.

5    We're not at $2.1 million.

6              Now I understand she must have been very emotionally

7    upset at all these circumstances or she wouldn't have ended up

8    at your firm, but your job is to represent her interests.

9              And again, not getting along with Mr. Kataev, not you

10   know, not being able to schedule simple discovery in this case,

11   it doesn't bode well for either of you.

12             MS. TROY:  Yes, Your Honor, I would just note that

13   the January 10 deposition was scheduled.

14             THE COURT:  He said he got sick.

15             MS. TROY:  Right.

16             THE COURT:  And so, again, he got sick.  He can't do

17   a deposition when he's sick.

18             MS. TROY:  I understand that.

19             THE COURT:  So both of you need to take a step back

20   and reel it back in here, because you have taken the front and

21   center in the case instead of your clients being front and

22   center.

23             And, again, you want to be the best attorney for your

24   clients that you can be.  And you want to get the best result

25   you can.

1          And I can tell you having battles over B.S. with the
2     other side is not going to make that happen.  And even though
3     you had Judge Mann rule in your favor on a number of occasions,
4     here we are again.  This is not the way to go.  This doesn't
5     advance your client's interests, okay?
6          MS. TROY:  Yes, Your Honor.  I would also just --
7          THE COURT:  I'm not trying to beat you down.  I'm
8     trying to tell you because again, I deal a lot with Mr.
9     Schweitzer.  And I've seen him grow up over the years.
10          I want you to grow up, too, right?  It's not about
11     your dad.  It's not about you.  You're taking on a client's
12     case.  It's about your client and getting --
13          MS. TROY:  I --
14          THE COURT:  -- her the best possible result that you
15     can get her.
16          MS. TROY:  I understand, Your Honor, but Mr. Kataev
17     has not even complied with the Court's order for him to provide
18     the --
19          THE COURT:  We'll deal with that, okay?  But I am
20     saying that the two of you can't even get simple things done
21     now.  It's not going to be my problem.
22          MS. TROY:  I understand.
23          THE COURT:  I'm telling you inherited all these cases
24     from Judge Mann.  And this had a long memo attached to it about
25     how the two of you can not agree on, you know, what the date

1    is.  You can't get anything done that way.  It's impossible.

2    You got to knock it off.

3           And if you raised your voice or said anything about

4    her father, you owe her, not right now, but you owe her an

5    apology.  That's very unprofessional.

6           You've got to treat her with respect in order for her

7    to treat you with respect.  And it doesn't start out of the

8    blue.  So if you did something wrong, both of you have to just

9    get past it because this is not going to be my job.

10           You saw that I'm pretty patient with people who don't

11    have attorneys.  I am not patient with lawyers.  I'm doing this

12    today.  That's it.

13           I'm letting you know I'm not going to do this in the

14    future, okay.  So we have we have a bunch of things we have to

15    cover about deposition dates.

16           MR. KATAEV:  Your Honor?

17           THE COURT:  Yes?

18           MR. KATAEV:  Before we start the depositions, may I

19    just address the settlement aspect of things?

20           THE COURT:  Yes.

21           MR. KATAEV:  This case was originally filed in I

22    believe 2019 in July I believe if I'm not mistaken.  At the

23    time, Mr. Schweitzer was working on the case.  I had asked him

24    for a settlement demand.  I never received one.

25           I made a motion to dismiss for failure to exhaust

1      administrative remedies for the sole purpose of bringing this

2      case back to the EEOC for a mandatory mediation.

3              Despite the fact that I was successful in obtaining

4      that order of dismissal and brought it back it before the EEOC,

5      the EEOC for whatever reason refused to have a mediation.  So

6      all my work was for nothing because the other side wouldn't

7      even give me a demand despite repeated requests for a demand.

8              Enter the 2nd Circuit case over that decision, which

9      was denied as moot, which my client has to oppose, we now have

10     this case, which was filed on the 90th final day after the

11     subsequent EEOC right to sue notice.

12             I made a motion to dismiss.  We respectfully

13     submitted and had a colorable basis.  Unfortunately, it was

14     denied.

15             We made a motion to Judge Mann under Rule 1 and Rule

16     16 requiring the Plaintiff's lawyer with the Plaintiff to

17     appear here in Court for a settlement conference because we

18     believe that the tail is wagging the dog here and that the

19     Plaintiff had no idea what was going on with her case.

20             We held a conference.  There was a mediator's

21     proposal of $45,000.  I can't say who accepted and who didn't

22     based on the way mediators' proposals work.

23             But what I can say is the case did not settle.  And

24     the same issues that you've raised about this ridiculous $2

25     million demand for a 9-month employee who started working at a

1  dealership immediately after she left this dealership.  She's

2  working somewhere now.

3         THE COURT:  Keep your voice down.

4         MR. KATAEV:  Sorry, I'm just very frustrated.

5         THE COURT:  Keep yourself under control.  I

6  understand, but that is not serving your client's interests.

7         MR. KATAEV:  The bottom line is this case is not

8  worth 2 million.  It's not worth 1 million.  It's worth

9  somewhere between 0 to potentially $100,000 jut based on the

10 fact of the litigation costs involved.

11         And we need to get the case there in order to try and

12 resolve it.  We haven't been successful with --

13         THE COURT:  So why would you think if it didn't

14 resolve in front of Judge Mann when she made a mediator's

15 proposal, that it's going to revolve by you give me this whole

16 background if I call the parties in?

17         MR. KATAEV:  I'm raising these issues because --

18         THE COURT:  Did Ms. Stidhum come to the conference

19 before Judge Mann?

20         MR. KATAEV:  She did.

21         THE COURT:  So when you had the theory that it was

22 the tail wagging the dog, she was there.  So she heard that she

23 was offered some money.

24         MR. KATAEV:  That's correct.  I'm raising it before

25 this Court because I want the Court to know the Defendants have

1    not made attempts but strides and leaps and try get this case

2    resolved.

3            And it's been met with this -- with everything that

4    we discussed with this firm with blinders on.  No, and we're

5    not giving you a reason why.  We will tell the Court we're not

6    going to tell you, defeating the whole purpose of a meet and

7    confer.

8            Outside, we're talking about a different case

9    irrelevant for purposes here, but the same scenario.  You say,

10   hey, this is what we want, this is the reason why.

11           I actually started off the conversation very nicely.

12   I said how are you?  I'd like to have a better relationship

13   with you and your firm.  Let's try to make this work.  Denial,

14   resistance, side stepping, pivoting, anything to avoid.

15           THE COURT:  Okay, okay, I get what the issue is.  And

16   you know, what I was going to say is you both have your

17   different crosses to bear here.  I knew Mr. Labuda before he

18   started his law firm when he worked for other people.

19           MR. KATAEV:  And he says hello, by the way.  He asked

20   me to say that.

21           THE COURT:  And, again, I am saying they find the

22   firm does a reasonable job for Defendants who are expecting you

23   to solve their problem.

24           This is a problem for your client.  This is not a

25   huge business.  And they're probably okay today because

1    everybody wanted a car during the pandemic, but this is a

2    problem.

3            And if Ms. Stidhum already got another job soon after

4    she left this job, I don't understand what your theory of

5    damages of is going to be here?

6            MR. KATAEV:  May I address that briefly?

7            THE COURT:  No, I'm asking Ms. Troy.

8            MS. TROY:  Yes, Your Honor, we --

9            THE COURT:  You'll stand when you speak.

10           MS. TROY:  We did look at comparable cases and the

11   basis of the 2 million was based on case law based on --

12           THE COURT:  I'm telling you you're way, way out.  And

13   again, you're so far out, that I can't even give credence to

14   you looking at comparable cases to say this is a 2.1 million.

15           She worked there from May.  She resigned her job in

16   January.  Even if they did everything that you say that they

17   did, to say it's a $2 million case, it just is not based in

18   reality.

19           It's like state court where people always ask for $2

20   million for no particular reason.  And you're not in state

21   court.  You're in federal court.  And credibility is

22   everything.

23           So, in this case, you asked for 2 million.  And then,

24   the next case, you have to ask for the same amount because you

25   asked for 2 million in this case?

1          I mean, it has no basis in fact.  Judge Mann is

2     somebody I hold in very high esteem.  Were you there for that

3     settlement conference?

4          MS. TROY:  I was there for that settlement

5     conference, yes, Your Honor.

6          THE COURT:  So why was your client not interested in

7     settling the case at that time?

8          MS. TROY:  We believe that the -- we rejected the

9     proposal at that time.  We believed we could get more.

10          THE COURT:  And that's what you told your client?

11          MS. TROY:  That's what we believed in.

12          THE COURT:  That's what you told your client?  Your

13     client doesn't know.  She was coming to you for legal advice.

14     She works at a car dealership.  You told your client she could

15     do better, so she should roll the dice and keep the case going.

16          MS. TROY:  That's not what we said, but she

17     ultimately rejected.

18          THE COURT:  But you told her 2.1 million is

19     reasonable?

20          MS. TROY:  We told her the initial demand is 2.1.

21     We're willing to come down, if they're willing to come up.  I

22     don't think it came --

23          THE COURT:  But it's not a million dollar case, Ms.

24     Troy.  I'm sorry to break it to you, this is not a million

25     dollar case.

1        MS. TROY:  I understand Your Honor's position.  And

2   we do handle other employment discrimination cases in the past.

3   And for instance in the Southern District where the judge

4   recommended 7,500, we were able to settle for 1,000 times that

5   amount, $750,000.

6        So what I'm trying to say is that the mediator's

7   proposal doesn't necessarily isn't necessarily the end game in

8   terms of how much we are entitled to.

9        THE COURT:  Oh, you're like the commercials on TV,

10  where they say the insurance companies said they could get me X

11  and I got 12 times X because I went to whatever the firm is.

12  That's you're telling me?  That -- the judge is wrong.  It's

13  not a $45,000 case.  It's a whatever?

14       MS. TROY:  That's what we believe in.

15       THE COURT:  Okay, well, then let's sit down and get

16  dates for the depositions.

17       MR. KATAEV:  Just two final points?

18       THE COURT:  Yes.

19       MR. KATAEV:  I just want to point out that the

20  damages are tripartite.  $2 million punitive without any

21  calculation or explanation, 100,000 in compensatory without any

22  calculation or explanation what that means.

23       And then, there's a differential.  This is what she

24  made at the dealership when she worked there.  This is what

25  she's now making.  It's a difference of about I think four

1    weeks or six weeks.  You multiply there, you get some nominal

2    number that's below $10,000.  That's the damages in this case.

3    I can't make heads or tails of it.

4              THE COURT:  Okay, Mr. Kataev, you've made your point,

5    but you know what?  They're not settling the case on that.  You

6    need to blow them away by doing discovery and getting proof.

7              MR. KATAEV:  Okay, final thing is unrelated to

8    settlement of damages, I want to extend an olive branch in open

9    court to the Plaintiff by offering to withdraw the

10   interlocutory appeal in exchange for Plaintiff withdrawing the

11   motion for sanctions in the 2nd Circuit.

12             And if the Plaintiff could consider that after court,

13   she can let me know her decision.  I'm putting that on the

14   table to try and make peace between the firms.

15             THE COURT:  You'll get back to Mr. Kataev about that,

16   okay?

17             MS. TROY:  Yes, Your Honor.  I would just like to

18   note that before we filed the motion, we did inform Mr. Kataev

19   of our intention to file the motion to dismiss based on lack of

20   appellate jurisdiction.  He asked us, you know, on what basis

21   of the motion to sanction and their motion to dismiss.

22             THE COURT:  You hear that old saying about throwing

23   stones at glass houses?  I think that Judge Mann used that in

24   an opinion.

25             I would just say that's all that I would want to

1    quote to you.  And you should consider what Mr. Kataev is

2    saying as an olive branch.

3          It may not be what you really think is an olive

4    branch, but again, it's your client case.  And sanction motions

5    and motions for appeals that shouldn't be made, all of that is

6    just gumming up the works in the Court.  And you can figure out

7    whether or not that's really necessary, okay?

8          So now let's go back.  Ms. Troy wrote to the Court,

9    it's the January 16th, Document 43, saying that they -- that

10   you were supposed to supplement responses and that you didn't

11   do that.  So that's the first thing.  Where are the responses?

12         MR. KATAEV:  Your Honor, I spoke to the clients in

13   advance of the deadline.  I obtained the answers to everything.

14   The only thing left on my part besides giving everything to the

15   Plaintiff is I have to get all of them signed for the

16   verifications.  I just got jammed up with work and being sick

17   and I couldn't get to it on time.  I asked for a reasonable

18   extension up until the 14th to get it to the other side.

19         THE COURT:  Up until the 14th of February?

20         MR. KATAEV:  Yes.

21         THE COURT:  We're at the 1st today?

22         MR. KATAEV:  Yes.

23         THE COURT:  All you need to do is get signatures?

24         MR. KATAEV:  I have a deposition tomorrow all day and

25   Friday.

1            THE COURT:  Okay.

2            MR. KATAEV:  I have other deadlines.  I'm going

3    to --

4            THE COURT:  Okay.  But again, this would be a

5    priority since you're already behind the 8-ball and you're with

6    a new judge who you want to impress with how you're trying to

7    take care of business.

8            So I get what you're saying.  You're busy tomorrow

9    and you're busy Friday, but if I give you to the 10th, that

10   should be sufficient.

11           MR. KATAEV:  That's acceptable, Your Honor.

12           THE COURT:  It's generous, it's not just acceptable.

13           MR. KATAEV:  Thank you, Your Honor.

14           THE COURT:  So, again, I won't hear that you couldn't

15   or that that something else came up.  This has to be priority.

16   So, by 2/10, you'll get everything that has been discussed

17   today, which are the supplemental responses that were due on

18   January 12th.  And I will not give another extension on that.

19   So be aware.

20           MR. KATAEV:  Understood.

21           THE COURT:  Okay.  And then, the depositions, are we

22   doing the depositions remotely or in person?

23           MS. TROY:  We're doing it remotely.  Plaintiff

24   intends to depose all Defendants remotely.

25           THE COURT:  And what about Defendant?

1          MR. KATAEV:  We --

2          THE COURT:  Don't worry about the mics, people.  You

3   can stand up.  You don't need to hurt yourself.

4          MR. KATAEV:  Thank you.  We would like to depose the

5   Plaintiff in person, Your Honor.

6          THE COURT:  Is there any reason why they can't depose

7   your client in person?

8          MS. TROY:  No.

9          THE COURT:  Okay.  So I want your client to agree to

10  a date.  Give me a date for your client to be deposed.  And

11  let's get that worked out now and it'll be in stone.  And then,

12  we'll know where we are.  So give him a couple of dates because

13  he has more than one case.  What dates can you make your client

14  available?

15         MS. TROY:  I'm looking at the dates.  Okay, we're

16  available February 6, February 8, 16, 17.

17         THE COURT:  Just stop for a second.  February 6th or

18  February 8th.  Any of those work for you, Mr. Kataev?

19         MR. KATAEV:  No, Your Honor.

20         THE COURT:  Okay.  Keep going.  So 6th and 8th don't

21  work.

22         MS. TROY:  16 or 17.

23         MR. KATAEV:  I can do 17, but we have to start at

24  9:00 a.m.

25         THE COURT:  Is that possible for you and Ms. Stidhum

1    to get there by 9:00 a.m.?

2             MS. TROY:  I will confirm with my client.  I believe

3    she's traveling from Queens, but I'll confirm.

4             THE COURT:  What does that mean you'll confirm?

5    Isn't his office in Queens somewhere?

6             MS. TROY:  I think it's in Long Island somewhere, but

7    I might be wrong.

8             MR. KATAEV:  We're in Lake Success.  We're in Lake

9    Success, Your Honor.

10            THE COURT:  It's not far from Queens.

11            MR. KATAEV:  It's not far from --

12            MS. TROY:  Yeah, so we'll have it confirmed.

13            THE COURT:  I'm writing that she's ordered to appear

14    on the 17th at 9:00.  You'll get a notice to her.

15            MS. TROY:  Yes.

16            THE COURT:  Mr. Kataev, that's not going to change,

17    right?

18            MR. KATAEV:  No, I'm holding that date.

19            THE COURT:  Okay, so Plaintiff's deposition is

20    2/17/23 in Defendant's office.  You'll put out the notice of

21    deposition by tomorrow, send it to Ms. Troy?

22            MR. KATAEV:  Yes, Your Honor.

23            THE COURT:  But I am ordering for your client to

24    appear on that day.  Now how many people do you have to

25    schedule, Ms. Troy?

1          MS. TROY:  We have three individual Defendants and

2     two corporations, Your Honor.

3          THE COURT:  The two corporations --

4          MS. TROY:  Sorry, it's four.

5          THE COURT:  -- they say is going to be one 30(b)(6)?

6          MR. KATAEV:  Yes, Your Honor.

7          MS. TROY:  Give me one second, Your Honor.

8          MR. KATAEV:  While she's looking for the schedule, I

9     just want to represent to the Court the individual that we are

10    appointing was an employee of both of those entities at

11    separate times, but each during the time that with respect to

12    one of the Defendants that the Plaintiff was an employee there.

13    And so, she is knowledgeable of both dealerships' practices and

14    any any questions in there.

15         There is an issue with the 30(b)(6) notice, but I'll

16    try to work it out with the Plaintiff first.

17         THE COURT:  No, we're going to work it out right now

18    on the record.

19         MR. KATAEV:  Okay.

20         MS. TROY:  Okay, we have four individual Defendants

21    and two corporate Defendants to depose.

22         THE COURT:  Who are the four individuals?

23         MS. TROY:  The four individuals are Ishaque

24    Thanwalla, Jory Baron, Ronald M. Baron, and Andris Guzman.

25         THE COURT:  Okay, so Thanwalla is going to be a full

1    day or no?

2           MS. TROY:  Thanwalla's going to be a full day and so

3    is Andris Guzman.  Jory Baron and Ron Baron are half days.

4    They can be put in one day.

5           THE COURT:  Okay.  And then, there's one 30(b)(6) we

6    hear?

7           MS. TROY:  Yes, and we can be one day.

8           THE COURT:  Okay, so we're talking about one, two,

9    three, four full days that we need to agree on?

10          MS. TROY:  Yes, Your Honor.

11          THE COURT:  And these all going to be remote

12   depositions.  So your clients can be wherever they want to be.

13   They could be at your office or they could be at their own

14   office, as long as you could get them on to -- it's a Zoom

15   deposition, I take it?

16          MS. TROY:  Yes, Your Honor.

17          THE COURT:  Okay, go ahead.  So Thanwalla, Guzman,

18   Baron, and 30(b)(6).  I want four or five dates.  And then,

19   you'll plug them in to those four or five dates, but you and

20   Ms. Troy will agree today to four or five dates.  I think five

21   is safer.

22          I've told her that her client must appear on 2/17.

23   I'm not going to hear a lot of back and forth that you spoke to

24   the Barons, they're not available.  You're going to fit them in

25   on the four or five dates we agreed to with Ms. Troy now.

1          MR. KATAEV:  Let's do Thursday, March 9th.

2          THE COURT:  You can't do something before March?  We

3    were doing yours February 17th.  There's a whole another week,

4    two weeks in February before March.

5          MR. KATAEV:  Let's keep March 9th.  I'll do also

6    Tuesday, February 21st.

7          THE COURT:  Wait, first, February 21st, is that going

8    to work for you, Ms. Troy?

9          MS. TROY:  Yes, Your Honor.

10         THE COURT:  Okay, 2/21 is one date.  3/9, will that

11   work for you, Ms. Troy?

12         MS. TROY:  Yes, Your Honor.

13         THE COURT:  And two more at least?

14         MR. KATAEV:  Let's do Friday, February 24th.

15         THE COURT:  Will that work for you, Ms. Troy?

16         MR. KATAEV:  One moment.  Yes, Your Honor.

17         THE COURT:  And one more date or two more dates so

18   that she could check with her clients -- so you could check

19   with your clients?  And all these dates should be blocked on

20   your calendar now, Ms. Troy.

21         MS. TROY:  Yes, Your Honor.

22         MR. KATAEV:  Let's do Friday, March 3rd.

23         THE COURT:  March 3rd work for you, Ms. Troy?

24         MS. TROY:  We can put March 3rd.

25         MR. KATAEV:  I guess the final backup date we'll do

1   March 7th.

2           THE COURT:  Ms. Troy, will March 7th be an okay date?

3           MS. TROY:  No.

4           THE COURT:  No.  So come up with a different backup.

5           MR. KATAEV:  We could do Friday, March 10th.

6           THE COURT:  March 10th going to work?

7           MS. TROY:  Yes, Your Honor.

8           THE COURT:  Okay, so I'm going back and I'm re-

9   reading.  So there will be four individuals that are deposed,

10  Thanwalla, Guzman, Baron, and Baron.  And there will be a

11  30(b)(6), which would be one person.

12          The Barons' depositions will be held on the same day.

13  So you have to clear that they will both be available on the

14  same day.

15          The date selected that Ms. Troy has approved and Mr.

16  Kataev has proffered are 2/21, 2/24, 3/3, 3/9, and 3/10.  Those

17  dates have to be kept open.  I will give you until Monday to

18  write a confirming letter, Mr. Kataev, stating -- so Monday is

19  the 6th.  Confirm who will be on which dates.  And the letter

20  will be sent to Ms. Troy, but you will file it with the Court,

21  confirming the dates.

22          MR. KATAEV:  There's one other issue on depositions,

23  Your Honor.

24          THE COURT:  Yeah.

25          MR. KATAEV:  Ronald M. Baron, we provided declaration

1      from him.  I'd like to pull it up on my phone and advise the

2      Court of its contents.  We provided this declaration to the

3      Plaintiff.

4              THE COURT:  What's the point of you telling me about

5      the declaration before you pull it up?

6              MR. KATAEV:  That they should withdraw the notice of

7      deposition for him.

8              THE COURT:  And you got this letter, Ms. Troy?

9              MS. TROY:  Yes, Your Honor.

10             THE COURT:  And you want to tell me why you don't

11     want to withdraw the deposition?

12             MS. TROY:  We went over the contents of the affidavit

13     with the Plaintiff.  And we disagree with its contents.

14             THE COURT:  So --

15             MS. TROY:  And we believe we're entitled to depose

16     Ron Baron because even though the paycheck is from one company,

17     she did go to the other car dealership to sell the cars over

18     there as well.

19             MR. KATAEV:  I'm just going to -- it's a very brief.

20             THE COURT:  I'm not going to decide in your favor.

21     She gets to depose him.

22             MR. KATAEV:  Is it okay, Your Honor, if I make a

23     motion on this issue?

24             THE COURT:  No.

25             MR. KATAEV:  It's an important issue.  He had a

1    health condition.  He can't appear for this deposition.

2              THE COURT:  He's not appearing.  He's going to be on

3    video.  He's not working because of his health condition?

4              MR. KATAEV:  I don't believe he works.  I'm not sure

5    that he works, but I know for --

6              THE COURT:  Well, don't make a representation to the

7    Court.  This is credibility again.

8              MR. KATAEV:  I know for a fact that this individual

9    is not involved with hiring, firing, setting wages.

10             THE COURT:  It'll be a short deposition.  Set him up

11   with a laptop.  Tell him how to get online.  It'll be a short

12   deposition.

13             MR. KATAEV:  I'm just going to put what the issues

14   are, you know, on the table.  He's declared under penalty of

15   perjury that he's a Defendant in this case.

16             He writes to -- submits it to his address as lack of

17   involvement in this case in an effort to avoid having to submit

18   to a deposition.  He has no membership interest in 161-10

19   Hillside Ave., LLC which is the only entity that employed

20   Plaintiff.

21             He's not an officer of it.  He doesn't perform work

22   for it.  The entity that he does have a membership

23   interest -- a shareholder's interest in is Hillside Auto Mall,

24   Inc.  It's a separate dealership located three blocks away.

25             He's a shareholder of it.  Plaintiff was never

1    employed by that dealership.  He never hired her.  He never

2    fired her.

3            He doesn't have any control concerning her

4    compensation, her working hours, her terms and conditions of

5    employment.  He's never even met the Plaintiff once nor in any

6    way interacted with her.

7            THE COURT:  What is the proffer of the Plaintiff of

8    why you need this witness?

9            MS. TROY:  For two reasons.  Number one, even though

10   the Defendant -- the corporation from which the paychecks are

11   issued is 161-40 Hillside Auto Avenue, LLC, Mr. Ron Baron even

12   according to Mr. Kataev's representation, is an owner of the

13   other corporation for which services were performed by Ms.

14   Stidhum.

15           Because cars were sold at other car dealerships.  You

16   would go to the other car dealership and sell the cars and

17   therefore -- and I believe it's pled in the complaint.  We sued

18   the corporation as joint employers and also and --

19           THE COURT:  Assuming that's all correct, what

20   information does he have that he could impart during a

21   deposition that you need to prove her claim of discrimination

22   that he's a part owner of the other -- I get that she may have

23   worked at both, but if he's saying he never met her, and again,

24   you're going to have a 30(b)(6) where you're going to be able

25   to question somebody about the joint ownership or the joint

1    employer theory, why do you need this guy?

2              MS. TROY:  Our client disputes that Ron Baron never

3    met her.  We did meet with the client over the affidavit and he

4    was the one who promised her an additional bonus, even though

5    she did not meet the 30-car requirement for an additional

6    bonus.  And that is related to the pay in and around December

7    of 2018.

8              And that is one month -- roughly one month after the

9    announcement of the pregnancy.  So to the effect -- to the

10   extent that that bonus was reflected in the pay, I believe his

11   deposition is important because he was the one like who

12   directly talked with the Plaintiff and offered her that bonus.

13   So that's why we believe that taking his deposition is

14   important.  And also --

15             THE COURT:  Stop, stop.  I'm not granting your motion

16   for a protective order.

17             MR. KATAEV:  Your Honor --

18             THE COURT:  I am not.

19             MR. KATAEV:  You're accepting her presentation that's

20   false.  That was Jory Baron that had the conversation with her.

21   My client, Ron Baron, is a 70 year man.

22             November 8th, 2022, he had surgery because he's

23   suffering from a rare bone disease called heterotopic

24   ossification.  He's unable to sit for extended periods of time

25   and has an overall lack of mobility.  He's 70 years old in

1    March next year.

2                THE COURT:  I'm so sorry.  I'm 63.  That doesn't

3    persuade me he can't sit for a deposition.  He could stand up

4    the whole time.

5                And listen, it may be a complete waste of his time,

6    but I don't know who Jory is and I don't know who Ronald is.

7    And I don't know who promised her what.  And if she's wrong

8    and --

9                MR. KATAEV:  We will seek the maximum relief

10   possible.

11               THE COURT:  That's fine.

12               MR. KATAEV:  And this a big problem for us.

13               THE COURT:  That's fine.

14               MR. KATAEV:  Okay.

15               THE COURT:  But I can't on your two say-sos relieve

16   you.  I could say I would ask you to reconsider and perhaps do

17   the other Baron first.

18               And if that's the person that she remembers, perhaps

19   you can cancel the afternoon because you're scheduling them

20   both on the same day.

21               That doesn't obviate the need for you to prepare your

22   client because if she thinks that this is not the guy who

23   promised me the bonus, it's some other guy, then he's going to

24   have to be produced.

25               And don't come back with he's too sick, he's 70 years

1  old.  70 years old in this courthouse when I have 98-year old

2  colleagues still sitting in on trials is a spring chicken.  I

3  don't want to hear it from you about him being too old.

4           MR. KATAEV:  Not too old.  He can't sit.

5           THE COURT:  He doesn't have to sit.  How is he

6  living?

7           MR. KATAEV:  I don't know.

8           THE COURT:  Well, maybe you get a laptop and put it

9  on his bed, so he can lay down while he does his deposition.

10          But whatever it is, don't be bringing this kind of

11  stuff over and over.  If you say this is the situation and I

12  say to you I'm sorry, he's going to have to sit because he's a

13  Defendant, try to work with them to get the Jory guy first.

14          If she identifies the Jory guy as the guy she thought

15  she had the conversation with, then I will ask you, Ms. Troy,

16  to relieve this other Baron man of having to sit for his

17  deposition.  Do you understand?

18          MS. TROY:  I understand, Your Honor.

19          THE COURT:  I'm not going to give you more credit for

20  taking more depositions.  And as you well know in most of these

21  cases, even if you prevail, the attorneys' fee issue is going

22  to go to the magistrate judge.

23          MS. TROY:  I understand, Your Honor.

24          THE COURT:  So I don't want you to expand what needs

25  to happen just because I'm telling you that there are five

1    dates that you have to fit everybody into.

2             If the Barons are both put on the same day, put the

3    younger of the two Barons first.  If she says that's the guy I

4    spoke to and therefore you no longer need the older Baron, I

5    want you to cancel that deposition.

6             MS. TROY:  Yes, Your Honor.  We did speak with her

7    recently and my representation is correct.

8             THE COURT:  I understand you spoke to her recently,

9    but she might see a face and it may trigger a memory.

10            MS. TROY:  Okay.

11            THE COURT:  Anything else that we need to deal with?

12   The 30(b)(6) notices, what are the topics?  And what can we do

13   to narrow it down so that we know what we're doing?

14            MR. KATAEV:  There's one other issue while I pull up

15   30(b)(6), Your Honor.  We have outstanding discovery demands

16   that have not been responded to by the Plaintiff.

17            THE COURT:  And what are those demands?

18            MR. KATAEV:  Document requests and interrogatories.

19            THE COURT:  And when were those made?

20            MR. KATAEV:  December, late December.  They were due

21   I believe on January 24th, the responses.

22            THE COURT:  And what's going on with that, Ms. Troy?

23            MS. TROY:  Your Honor, we will provide by the

24   February -- I believe February 10, the same date that, you

25   know, Mr. Kataev has to provide his supplemental responses.

1          THE COURT:  That's what I like to hear, right?  So

2    both sides are going to produce the outstanding requests by

3    2/10.  And I'm not going to get a request to extend it.  And

4    they're going to be signed by the individuals that they need to

5    be signed by.  And I'm not going to keep hearing the same thing

6    over and over, okay?

7          Now the 30(b)(6) notice.

8          MS. TROY:  Yes, Your Honor, we usually attach with a

9    notice and I believe we actually did attach with the notice,

10   the EBT notice, a list of things that the corporate rep needs

11   to be knowledgeable about.

12         And because this is a pregnancy discrimination claim,

13   the stuff that the person will need to be knowledgeable about

14   is about the base pay, about the commission because the

15   allegation is relating to the change in pay as a result of the

16   pregnancy announcement, as well as the employment policy in

17   place at the two corporate Defendants essentially to sum it up.

18         But we did provide I believe written and I'm checking

19   now in the EBT notice itself a list of things that the corp

20   rep. needs be to knowledgeable about.

21         MR. KATAEV:  I mean, that's not the issue, Your

22   Honor.  I need to point out the specific items raised in there,

23   which I think are going to give the Court pause.  I think I

24   found it.

25         THE COURT:  You have that big binder of paper, Mr.

1    Kataev.  Paper never fails you?

2              MR. KATAEV:  Everything in the court docket, which

3    the deposition notices.  Forgive me.  Okay, I think this

4    is -- still won't load for some reason.  Okay, yeah.  It's part

5    of a huge chain and I can't get to the beginning of it.  I

6    don't know what's going on.

7              THE COURT:  Why don't you tell me in a nutshell what

8    it is you're trying to --

9              MR. KATAEV:  It had items in there such as the

10   dealerships assets, how much cash it has in its bank accounts,

11   all these things that are completely irrelevant.

12             There's been no liability established.  I'd just like

13   to have an opportunity to submit a letter after meeting and

14   conferring with the Plaintiff if we can come to a reasonable --

15             THE COURT:  Well, this is what I will say.  We've

16   made some progress today.  We have to extend the time to

17   complete discovery because that was something that was left to

18   do by Judge Mann.

19             She had extended discovery till January 27th.  And

20   any request for a pre-motion conference was due by February

21   10th.

22             So we need to extend discovery so you could get

23   through these depositions.  But after the exchanges of the

24   outstanding paper discovery that will be on 2/10/23, there

25   won't be any further paper discovery.

1          I'm not going Round 3 and 4 with you guys.  You get

2    to do the depositions.  And those will run through March 10th,

3    but I'm not letting you re-serve more requests.

4          As far as the financials of the auto houses that

5    you're bringing this case against, what's the relevance of

6    somebody having to speak to what's currently in the bank?  What

7    does that have to do with Ms. Stidhum's claim that she was

8    discriminated against based on her pregnancy?

9          MS. TROY:  I'm looking at the schedule of the things

10   that the corporate witness needs to be knowledgeable about.

11          THE COURT:  Yes, that's what Mr. --

12          MS. TROY:  And I don't --

13          THE COURT:  -- Mr. Kataev was trying to find on his

14   phone.  So it would have been good --

15          MS. TROY:  I don't see any bank records.

16          THE COURT:  Could you do me very big favor, and I

17   know that this is a lot, but can you let him look on screen so

18   if he's trying to point something out to me, I'm not having him

19   just scroll through this phone?

20          If you put it sort of to the corner of the table,

21   then that would be very much appreciated.  Thank you.

22          MR. KATAEV:  Number two, information regarding the

23   income, expenses, and revenue of the dealership.

24          THE COURT:  Why is that relevant to this dispute?

25          MS. TROY:  The document that was produced does not

1    reflect the true income of revenue of Hillside Auto.  And it's

2    relevant because they're pointing to the paperwork and saying

3    that's how many cars that were sold, not only by the -- Ms.

4    Stidhum, but by the dealership, but that's not true.  And --

5         THE COURT:  I don't know why their balance sheet is

6    relevant to whether they discriminated against her.  I

7    understand that we need somebody to testify as to how they paid

8    and how they determined who was paid these bonuses.

9         But you understand that they don't want to be

10   testifying about things that are as of today what's in your

11   bank account?  I don't see why that's relevant to this claim.

12        MS. TROY:  I don't think that -- I don't know what's

13   just read is how much money that was --

14        THE COURT:  She resigned in January of 2019.  That is

15   the relevant time period.  Unless there's some reason why they

16   need to testify as to their finances now, which you haven't

17   told me what that would be, I'm not going to require them to be

18   prepared on that subject.

19        MR. KATAEV:  Including accounting and bookkeeping?

20        THE COURT:  Well, again, I think what is relevant as

21   set forth in Judge Gonzalez's order is that there was a formula

22   for how Ms. Stidhum got paid and how they awarded bonuses and

23   how things were calculated.

24        But again, since she resigned in January of 2019,

25   whatever they have in the bank in 2023 is not relevant to this

1   dispute.

2            MS. TROY:  Yes, Your Honor.

3            THE COURT:  Go ahead.  What else do we have?

4            MR. KATAEV:  Locations of electronically stored

5   information, I think that the discovery in this case is unduly

6   burdensome given the low value of this case.

7            THE COURT:  No, I would not say that, but again, if

8   they didn't request e-discovery already since I've said that

9   all paper discovery is over, I don't know what the point would

10  be unless you failed to produce something that they've

11  previously requested.  Is that it?

12           MR. KATAEV:  That's all I have, Your Honor.

13           MS. TROY:  Our position is that in fact they did fail

14  to produce a lot of the documents, including the text messages

15  and emails and communications, correspondences relating to Ms.

16  Stidhum as well as to the pregnancy discrimination claim.

17           THE COURT:  And how are you going to establish that

18  by this witness' testimony?

19           MS. TROY:  What I'm trying to say, to backtrack just

20  one moment, Your Honor is that the document, the supplemental

21  responses that were originally due January 12th, that is now

22  due February 10, we anticipate that there should be documents

23  that are relating to the text message and correspondences to

24  the extent that Defendants failed to provide, you know, those

25  documents, you know, I think it -- we should be able.

1          THE COURT:  Were there initial interrogatories asking

2     about how these documents are kept and was there an electronic

3     discovery stipulation between the parties about how you were

4     going to gather those documents?

5          Because again, talking about emails is separate and

6     apart from the text messages.  Text messages generally are on

7     phones and don't get backed up to servers.

8          So I don't know what it is you're precisely saying

9     that you know exists, or who had those things or should have

10    had those things, according to other discovery you've done, but

11    don't be throwing out these, you know, smoke bombs of like they

12    should have electronic communications.

13         If you specifically requested from a witness and you

14    believe that you have the other side of that electronic

15    communication to prove that there was an electronic

16    communication, that's a different story.

17         But saying that they should have provided texts, I

18    don't know what requests were made.  I don't know whether or

19    not these are individual phones you're asking them to look on.

20    I don't know if you're asking did they preserve email regarding

21    Ms. Stidhum.  I don't know what's been requested.

22         So I'm telling you both now there's no constitutional

23    right to do discovery.  I am putting an end to it, but if

24    you're stonewalling, that's going to re-open this matter.

25         So don't stonewall each other.  Respond, give the

1    information.  Don't be telling me just because of the low value

2    of the case you don't have to turn over information.  That's

3    not going to work.  That's not what the Rules say.

4         The Rules are not saying how much discovery is done.

5    It says it has to be proportional.  So, again, don't try to

6    throw a smoke bomb here.  Both sides have to live up to their

7    obligations.

8         I've come up with dates for the depositions.  The

9    supplemental responses are due to each other signed by the

10   parties, who they need to be signed by February 10th.

11        Don't make me do this again.  I will not be patient

12   again, okay?  The Plaintiff's deposition shall be at starting

13   at 9:00 in -- on February 17th in Defendant's office in Lake

14   Success.  Tell her no ifs, ands or buts.  This is where she has

15   to be at that day.  Prepare her.

16        The four individuals, Thanwalla, Guzman, Baron, and

17   Baron will be deposed.  We have five dates 2/21, 2/24, 3/9, and

18   3/3 and 3/10.  And four of those dates will be taken.

19        The younger Baron will go first.  If the older Baron

20   isn't necessary, Plaintiff should indicate that and relieve

21   him.

22        He should be accommodated, all of their depositions

23   are being taken remotely.  So if he can't do it from home, let

24   him come to your office, let him stand up and do it.  I don't

25   know what his health condition is, but I'm not relieving him of

1    his responsibility.  He's a named Defendant.

2              MR. KATAEV:  Understood.

3              THE COURT:  Was there anything else today, Ms. Troy,

4    before we adjourn?

5              MS. TROY:  Yes, Your Honor.  So if during the

6    deposition we request for documents, that's not allowed, right?

7              THE COURT:  No.

8              MS. TROY:  Right.

9              THE COURT:  The only thing is if they refer that

10   there was a document during their deposition that they were

11   relying on, but it hasn't been produced, then you could ask

12   them to produce something that they say they were relying on in

13   their testimony.

14             But no, there are no follow-up requests after the

15   depositions.  I'm closing out discovery.  The last deposition

16   is 3/10.

17             I understand you're going to have to get the

18   transcripts.  So I'll say discovery will close by 3/24.  And

19   any pre-motion conference request will be made by April 10th,

20   4/10/23 in accordance with Judge Gonzalez's rules.

21             Please take back to your firm that there has been

22   olive branch or what they say was an olive branch extended that

23   if you withdraw your motion, they'll withdraw their motion from

24   the circuit.  This has nothing to do with what's in the

25   District Court.

1          Of course if you withdraw the motion, you should

2     quickly do it because you also have a pending motion here for

3     reconsideration on an interlocutory appeal, which I do not

4     think is going to be successful.

5          MR. KATAEV:  Understood.  We'll wait for their

6     response.

7          THE COURT:  So get back to him, Ms. Troy.  Try to get

8     back to -- by today is the 1st, by Friday.  Is that something

9     you can do?

10         MS. TROY:  We're willing to withdraw the motion to

11    dismiss.

12         THE COURT:  No, the motion for sanctions in the

13    circuit?

14         MS. TROY:  It's the motion to dismiss and motion to

15    sanctions is one document.  We're willing to withdraw that

16    motion if they withdraw that appeal.

17         MR. KATAEV:  I'll have the withdrawals done by -- I

18    have a deposition tomorrow.  I'll try to do it tonight.

19         THE COURT:  Do it tonight.  I think that would

20    be -- go a long way in the circuit.  And then if they're

21    withdrawing their sanctions motion, which she's just put on the

22    record and she knows what that means, that you could also

23    withdraw your request from Judge Gonzalez, okay?

24         MR. KATAEV:  I think just two more things on my end?

25         THE COURT:  Yes.

1          MR. KATAEV:  I'm apologizing to Ms. Troy for raising

2    my voice.  I deny that I said anything about her father

3    specifically, just the firm unless it was --.

4          THE COURT:  The firm is close for her.  It bears her

5    and her father's name.  But Ms. Troy, I take him at his word

6    that he understands he was out of bounds.  Okay, and accepting

7    people's apologies are important, too, okay?

8          MS. TROY:  I understand, Your Honor.

9          MR. KATAEV:  And I only want to remark that I think

10   at least myself has a lot to learn about patient from this

11   Court.

12         THE COURT:  Well, again, I want you to get yourselves

13   out of the center of the frame here and reframe this case about

14   your clients.

15         And as frustrating as it may be sometimes to be a

16   lawyer, you are putting yourselves in the wrong part of this

17   case.  This case about your clients.

18         And when you have so much going on with the other

19   side, you can't even see straight.  And that's not good for

20   your client.

21         So take yourself out of that equation and try to

22   focus on the best interests of your client.  I would again say

23   that you should approach your client about putting this to bed.

24   He didn't say that the number that Judge Mann had said would be

25   the last number that they would give.  He actually said today

1   that they would go a number that maybe your client would want

2   to know about.  I don't know what her situation is.

3        Hopefully, she has a healthy child.  But again,

4   waiting till the end of the case does not always make sense.

5   Sometimes getting a case resolved on consent and putting a, you

6   know, a bad incident behind somebody goes a long way towards

7   helping them in their life.

8        So reconsider what he said here today.  I appreciate

9   that you'll withdraw both of your motions that are pending

10  before the Circuit.  I think that is a showing of good faith

11  and starting over again.  I wish you good luck.  Please keep

12  all these dates.  They're going to be in my order.  They're

13  court-ordered depositions.

14       Send out your deposition notice so that judge,

15  judge -- so that Ms. Troy has the address that Ms. Stidhum must

16  be at 9:00 on that date.  And everybody's banking on these

17  dates once they're confirmed.  And you're telling me by Monday

18  what dates your clients are confirmed, okay?

19            MR. KATAEV:  Understood.

20            THE COURT:  With that, we adjourned.  Thank you very

21  much.

22            MR. KATAEV:  Thank you, Your Honor.

23            MS. TROY:  Thank you, Your Honor.

24       (Proceedings concluded at 4:35 p.m.)

25

1                            **CERTIFICATE**

2

3

4            I, Chris Hwang, court approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10

11

12

13    _____        <u>March 7, 2023</u>

14    Chris Hwang                  Date

15    Court Reporter

16

17

18

19

20

21

22

23

24

25