**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
LETICIA FRANCINE STIDHUM,

                                              Case No.: 1:21-cv-7163 (OEM) (LB)

               Plaintiff,

       -against-

161-10 HILLSIDE AUTO AVE, LLC d/b/a
HILLSIDE AUTO OUTLET, HILLSIDE AUTO
MALL INC d/b/a HILLSIDE AUTO MALL,
ISHAQUE THANWALLA, JORY BARON,
RONALD M BARON, and ANDRIS GUZMAN,

               Defendants.
-----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MILMAN LABUDA LAW GROUP PLLC**
Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................. 1

II. STATEMENT OF UNDISPUTED FACTS ............................................................. 2

III. LEGAL STANDARD .............................................................................................. 6

IV. ARGUMENT ............................................................................................................ 7

    A.    Legal Standard for Disparate Treatment Claims Under Title VII, NYSHRL, and
        NYCHRL ........................................................................................................... 7

    B.    Plaintiff's Title VII Claim for Sex Discrimination and PDA Claim for Pregnancy
        Discrimination Must be Dismissed ................................................................... 9

    C.    Plaintiff's NYSHRL Claim for Disability Discrimination Must be Dismissed ........ 16

    D.    Plaintiff's NYSHRL Claim for Sex Discrimination Must be Dismissed ................... 17

    E.    Plaintiff's NYCHRL Claim for Pregnancy Discrimination Must be Dismissed ....... 17

    F.    The Claims Against Hillside Auto Mall Must be Dismissed ................................. 19

    G.    The Claims Against Baron, Guzman, and Thanwalla Must be Dismissed ............... 20

CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

Abdul-Hakeem v. Parkinson,
    523 Fed. Appx. 19 (2d Cir. 2013) ...................................................................... 13

Albunio v. City of New York,
    16 N.Y.3d 472 (2011) ...................................................................................... 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ........................................................................................ 6

Balk v. N.Y. Inst. of Tech.,
    11-CIV.-509 (SAS), 2015 WL 5518709 (E.D.N.Y. Sept. 16, 2015) ................................ 19

Batchelor v. City of New York,
    No. 11-CIV.-2058, 2014 U.S. Dist. LEXIS 46921 (E.D.N.Y. Feb. 16, 2014) ................ 11

Beharry v. City of New York,
    No. 18-CIV.-2042 (AJN), 2020 WL 6135147 (S.D.N.Y. Oct. 19, 2020) ........................ 12

Brown v. City of Syracuse,
    673 F.3d 141 (2d Cir. 2012) ......................................................................... 10 n. 1

Burlington N. & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006) .................................................................................... 11, 12

Cadet v. Deutsche Bank Sec. Inc.,
    No. 11-CIV.-7964 (CM), 2013 WL 3090690 (S.D.N.Y. June 18, 2013) ........................ 10

Castro v. Cnty. of Nassau,
    739 F. Supp. 2d 153 (E.D.N.Y. 2010) ............................................................... 7

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..................................................................................... 6, 7

Cenzon–Decarlo v. Mount Sinai Hosp.,
    101 A.D.3d 924 (2d Dept. 2012) ...................................................................... 9

Chauca v. Abraham,
    841 F.3d 86 (2d Cir. 2016) ............................................................................. 8

Davis v. Koffee Kup Bakery, Inc.,
    No. 2:15-CIV.-152 (CR), 2016 WL 4411399 (D. Vt. Aug. 18, 2016) ............................ 10

Doe v. Bloomberg L.P.,
    167 N.E.3d 454 (2021) ................................................................................ 21

EEOC v. Bloomberg L.P.,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) .......................................................... 8

Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.,
    81 N.Y.2d 211 (1993) .................................................................................. 8

Ellison v. Chartis Claims, Inc.,
    178 A.D.3d 665 (2d Dept. 2019) ............................................................. 8, 9

Evans v. City of New York,
    No. 00-CIV.-4197, 2003 WL 22339468 (S.D.N.Y. Oct. 9, 2003) ................... 11

Everett v. New York City Dept. of Educ.,
    No. 21-CIV.-7043 (JPC), 2023 WL 5629295 (S.D.N.Y. Aug. 31, 2023) ........ 22

Farmer v. Shake Shack Enters.,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020) ............................................................ 8

Feingold v. New York,
    366 F.3d 138 (2d Cir. 2004) ........................................................................ 20

Forsythe v. N.Y.C. Dep't of Citywide Admin. Servs.,
    733 F.Supp.2d 392 (S.D.N.Y. 2010) ........................................................... 19

Forsythe v. N.Y.C. Dep't of Citywide Admin. Servs.,
    428 Fed. Appx. 40 (2d Cir. 2011) ............................................................... 19

Frost v. N.Y.C. Police Dep't,
    980 F.3d 231 (2d Cir. 2020) .......................................................................... 6

Goenaga v. March of Dimes Birth Defects Foundation,
    51 F.3d 14 (2d Cir. 1995) .............................................................................. 6

Golston–Green v. City of New York,
    184 A.D.3d 24 (2d Dept. 2020) ..................................................................... 9

Griffin v. Sirva, Inc.,
    29 N.Y.3d 174 (2017) ................................................................................. 21

Hai Ming Lu v. Jing Fong Rest., Inc.,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007) .......................................................... 12

Harge v. City of New York,
    2021 WL 3855305 (S.D.N.Y. Aug. 26, 2021) ........................................................ 10 n. 1

Henry v. NYC Health Hosp. Corp.,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................................... 10 n. 1

Holcomb v. Iona Coll.,
    521 F.3d 130 (2d Cir. 2008) ........................................................................................ 6

Hyek v. Field Support Servs., Inc.,
    461 Fed. Appx. 59 (2d Cir. 2012) ............................................................................. 17

Jaramillo v. Weyerhaeuser Co.,
    536 F.3d 140 (2d Cir. 2008) ........................................................................................ 7

Kennebrew v. N.Y. City Hous. Auth.,
    No. 01-CIV.-1654, 2002 WL 265120 (S.D.N.Y. Feb. 26, 2002) .................................. 16

Kinneary v. City of N.Y.,
    601 F.3d 151 (2d Cir. 2010) ................................................................................ 16 n. 8

Kirkland-Hudson v. Mount Vernon City Sch. Dist.,
    No. 21-CIV.-695, 2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) .................................. 8

Krause v. Lancer & Loader Grp.,
    40 Misc. 3d 385 (N.Y. Sup. Ct. 2013) ........................................................................ 8

Kulak v. City of New York,
    88 F.3d 63 (2d Cir. 1996) ......................................................................................... 14

La Grande v. DeCrescente Distrib. Co., Inc.,
    370 Fed. Appx. 206 (2d Cir. 2010) .......................................................................... 11

LaBarbera v. NYU Winthrop Hosp.,
    527 F. Supp. 3d 275 (E.D.N.Y. 2021) ...................................................................... 16

Legg v. Ulster Cnty.,
    820 F.3d 67 (2d Cir. 2016) .................................................................................... 9, 10

Lenzi v. Systemax, Inc.,
    944 F.3d 97 (2d Cir. 2019) ......................................................................................... 7

Lima v. Addeco,
    634 F. Supp. 2d 394 (S.D.N.Y. 2009) ...................................................................... 19

Loeffler v. Staten Island Univ. Hosp.,
    582 F.3d 268 (2d Cir. 2009)..............................................................................8

Malena v. Victoria's Secret Direct, LLC,
    886 F. Supp. 2d 349 (S.D.N.Y. 2012)..............................................................20

Mandell v. Cnty. of Suffolk,
    316 F.3d 368 (2d Cir. 2003)............................................................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..........................................................................................6

McDonnell Douglas v. Green,
    411 U.S. 792 (1973)..............................................................................8, 9, 15

McHenry v. Fox News Network, LLC,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020)................................................................21

McMyler v. Bank of Utica,
    No. 6:19-CIV.-812 (MAD) (ATB), 2021 WL 2778830 (N.D.N.Y. July 2, 2021) ........... 17

Mihalik v. Credit Agricole Cheuvreux N. Am.,
    715 F.3d 102 (2d Cir. 2013)..............................................................................8

Moise v. Uptown Communications & Elec., Inc.,
    134 A.D.3d 782, 783 (2d Dept. 2015) ...............................................................9

Morse v. JetBlue Airways Corp.,
    941 F. Supp. 2d 274 (E.D.N.Y. 2013) ..............................................................16

Parker v. Equinox Holdings, Inc.,
    No. 20-CIV.-3306 (JPO), 2023 WL 6143546 (S.D.N.Y. Sept. 20, 2023)......................15

Patrowich v. Chemical Bank,
    473 N.E.2d 11 (1984)......................................................................................21

Penberg v. HealthBridge Mgmt.,
    823 F. Supp. 2d 166 (E.D.N.Y. 2011) ......................................................16 n. 8

Quintero v. Rite Aid of N.Y., Inc.,
    No. 09-CIV.-6084, 2011 WL 5529818 (S.D.N.Y. Nov. 10, 2011) ...........................16 n. 8

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000)..........................................................................................7

Regan v. Benchmark Company LLC,
      2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) ....................................................... 12

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
      743 F.3d 11 (2d Cir. 2014)................................................................................. 12

Romero v. St. Vincent's Services, Inc.,
      No. 19-CV-7282(KAM)(ST), 2022 WL 2079648 (E.D.N.Y. June 10, 2022)................ 17

Romero v. St. Vincent's Services, Inc.,
      No. 22-1476-CV, 2023 WL 3477161 (2d Cir May 16, 2023) ........................................ 17

Salen v. Blackburn Bldg. Servs., LLC,
      No. 3:14-CIV.-1361 (VAB), 2017 WL 71708 (D. Conn. Jan. 6, 2017) .......................... 10

Sam-Sekur v. Whitmore Grp., Ltd.,
      No. 11-CIV.-4938 (JFB) (GRB), 2012 WL 2244325 (E.D.N.Y. June 15, 2012)............. 16

Santiago v. Axis Spexialty U.S. Servs., Inc.,
      2021 WL 639527 (S.D.N.Y. Feb. 16, 2021)................................................................ 18

Saraf v. West Publishing Corp.,
      2018 WL 7107266 (S.D.N.Y. Dec. 20, 2018) ................................................................ 10

Sealy v. State Univ. of New York At Stony Brook,
      408 F. Supp. 3d 218 (E.D.N.Y. 2019) ........................................................................... 11

Singh v. Covenant Aviation Sec., LLC,
      131 A.D.3d 1158 (2d Dept. 2015) ................................................................................... 9

Smith v. New Venture Gear, Inc.,
      320 Fed. Appx. 33 (2d Cir. 2009)................................................................................. 15

Sokolovsky v. Silver Lake Specialized Care Ctr.,
      No. 21-CV-01598 (MKB), 2023 WL 5977298 (E.D.N.Y. Sept. 14, 2023).................... 22

Stanley v. Guardian Security Services, Inc.,
      800 F. Supp. 2d 550 (S.D.N.Y. 2011)............................................................................ 21

Stratton v. Ernst & Young, LLP,
      No. 15-CIV.-1047 (VEC), 2016 WL 6310772 (S.D.N.Y. Oct. 27, 2016) ...................... 15

Teachout v. New York City Dept. of Educ.,
      No. 04-CIV.-945 (GEL), 2006 WL 452022 (S.D.N.Y. Feb. 22, 2006)........................... 12

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) ............................................................... 12

Tex. Dep't of Cmty. Aff.s v. Burdine,
    450 U.S. 248 (1981) ................................................................... 9, 15

Thomson v. Odyssey House,
    No. 14-CV-3857, 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015) ..................................... 16

Tsepenyuk v. Fred Alger & Co., Inc.,
    No. 18-CIV.-7092 (GBD), 2022 WL 912882 (S.D.N.Y. Mar. 29, 2022) ................. 17, 18

Tsepenyuk v. Fred Alger & Co., Inc.,
    2023 WL 6173455 (2d Cir. Sept. 22, 2023) ................................................... 17

Vengalattore v. Cornell Univ.,
    36 F.4th 87 (2d Cir. 2022) ................................................................... 7

Viruet v. City of N.Y.,
    No. 16-CIV.-8327, 2019 WL 1979325 (S.D.N.Y. May 3, 2019) ............................. 16 n. 8

Wade v. New York City Dept. of Ed.,
    36 F.4th 87 (2d Cir. 2022) ................................................................... 7

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000) ................................................................... 7

Whyte v. New York State Police,
    No. 22-CIV.-5633 (NGG) (CLP), 2023 WL 7413087 (E.D.N.Y. Nov. 9, 2023) ............ 20

Williams v. New York City Hous. Auth.,
    No. 03-CIV.-7764, 2008 WL 2695139 (S.D.N.Y. June 29, 2008) .................................. 11

Williams v. New York City Hous. Auth.,
    361 Fed. Appx. 220 (2d Cir. 2010) ............................................................ 11

Xiang v. Eagle Enterprises, LLC,
    No. 19-CV-1752 (LJL), 2022 WL 785055 (S.D.N.Y. Mar. 15, 2022) ........................... 18

Young v. United Parcel Serv., Inc.,
    575 U.S. 206 (2015) ......................................................................... 7

**Statutes**

42 U.S.C. § 2000e-2 ................................................................................................................ 7

New York City Administrative Code § 8-107 .................................................................. 8, 20, 22

New York Executive Law § 292 ............................................................................................... 16

New York Executive Law § 296 ....................................................................................... 8, 20, 21, 22

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 6

Local Civil Rule 56.1 ................................................................................................................ 2

## I.     **PRELIMINARY STATEMENT**

Plaintiff Leticia Francine Stidhum ("Stidhum" or "Plaintiff") cannot meet her burden for establishing a *prima facie* case of discrimination, let alone sustain her ultimate burden of proof, because she suffered no adverse employment action and there are no circumstances giving rise to an inference of discrimination.  Similarly, there exists no evidence that Plaintiff was disabled, due to her pregnancy or otherwise, such that her disability discrimination claim could survive.

Plaintiff worked exclusively for 161-10 Hillside Ave Auto, LLC d/b/a Hillside Auto Outlet ("Hillside Auto Outlet"), a used car dealership, for a mere eight (8) months as an automobile salesperson.  She voluntarily quit her employment in January 2019 purportedly because she perceived Defendant Andris Guzman ("Guzman") started making her wait longer to process customer's vehicle financing applications after she announced her pregnancy to employees at Hillside Auto Outlet in November 2018.

Notwithstanding, and among other things, Plaintiff concedes Guzman made customers wait long before her pregnancy, she does not know nor can she make sense as to why Guzman would make her wait longer, Guzman never made any comments to her about her pregnancy, and that long wait times occurred due to various reasons outside of the dealership's control.  Moreover, Plaintiff's average weekly compensation before her pregnancy and thereafter differed by a mere $19.37, while her average bonus was seven times higher after her pregnancy.

Additionally, Guzman's pay structure was based on the salespersons, including Plaintiff, selling vehicles, so it defies logic that Guzman would implement barriers preventing Plaintiff from consummating sales.

Summary judgment is therefore warranted.

## II.    STATEMENT OF UNDISPUTED FACTS

Defendants highlight and summarize the most salient facts below, and respectfully refer this Court to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("SUF") for a complete recitation of the undisputed facts in the record.  See ECF Docket Entry 78-3.

Defendant Ishaque Thanwalla ("Thanwalla"), one of four equal members of Hillside Auto Outlet, ran the day-to-day operations at the used car dealership, and served as its general manager.  See SUF ¶¶ 1-4.  Of the four members, only Thanwalla had the power to hire and fire employees, set their wages and schedules, and to discipline employees.  See SUF ¶¶ 5-12, 29.

Guzman was a sales manager and a general sales manager at Hillside Auto Outlet from 2018 through August 2019; he did not have the power to hire, fire, or discipline employees in either role.  See SUF ¶¶ 13-14.  His pay was commission-based, and tied to sales of vehicles sold by all salespersons.  See SUF ¶ 95.

Hillside Auto Mall, Inc. d/b/a Hillside Auto Mall ("Hillside Auto Mall") is a separate neighboring used car dealership located a few blocks away from Hillside Auto Outlet, and has some common owners between each other.  See SUF ¶¶ 18-20, 141-160.  One of its owners, Raymond Phelan ("Phelan"), serves as the general manager at Hillside Auto Mall.  See SUF ¶ 21.

Plaintiff worked only at Hillside Auto Outlet from May 22, 2018 through January 2019, when she voluntarily quit.  See SUF ¶¶ 22-25, 116.  She was supervised by Thanwalla, Jeanique ("Jeanique"), and Guzman throughout her short tenure.  See SUF ¶¶ 28, 31.

She received notice of Hillside Auto Outlet's policies against discrimination which prohibited discrimination based on all protected classes, including pregnancy, and required her to lodge any complaints of discrimination to management.  See SUF ¶¶ 77-78.

Plaintiff earned a $300.00 weekly salary, a $150.00 flat commission for each car sold, and – from time to time – a bonus of five percent (5%) of the profit from the sale of any vehicle that made in excess of $3,000.00 in profit, as well as other bonuses that continuously varied.  See SUF ¶¶ 33-35, 38.  Plaintiff recorded her vehicle sales on a form provided to her, and she discarded the forms once she was satisfied that she was properly paid.  See SUF ¶ 36.  Every vehicle purchase is unique and one can never measure how long it will take for each customer to purchase a vehicle. See SUF ¶¶ 43-44.  If a vehicle is to be financed by a bank, which is typically the case, the customer has to complete a credit application and provide all requisite information.  See SUF ¶¶ 45.

Salespeople, such as Plaintiff, submitted completed credit applications to managers, and had the option of going to numerous managers – i.e., Thanwalla, Jeanique, Guzman, or Serge Zanaan ("Zanaan") – to ascertain whether the customer qualified for financing and to perform the financing application process.  See SUF ¶¶ 46-47, 51.  Plaintiff chose which manager to go to based on who was least busy at each time that a customer needed to apply for financing.  See SUF ¶¶ 47-48.

There are invariably delays in obtaining financing approval from banks for innumerable reasons, and even without such delays, there is no guarantee a sale will be made even if a customer qualifies for financing due to various other factors.  See SUF ¶¶ 49-50, 62-64.  Delays arise due to verification processes such as identity verification, employment verification, credit fraud alerts, and the like.  See SUF ¶¶ 52-58, 65.  Dealerships do not control the process when it comes to obtaining financing, and the banks are in control of those decisions, who often seek additional documents even after a customer initially qualifies for financing.  See SUF ¶¶ 59-61.  In addition, insurance and registration issues often arise that prevent sales from being completed quickly.  See SUF ¶¶ 65-67.  All of the foregoing issues are outside of the dealership's control.  See SUF ¶ 68.

When these issues arise, the sales managers are required to resolve them in order to work towards a potential sale, and the process takes time.  <u>See</u> <u>SUF</u> ¶¶ 54, 62, 70-71.  It could take the dealership three (3) to six (6) hours to sell a vehicle, or it could sometimes take days to do so.  <u>See</u> <u>SUF</u> ¶ 68.  Plaintiff was frequently unable to sell vehicles for reasons unrelated to wait times, for example, a customer purchased a vehicle from another dealership or simply chose to not purchase a vehicle from Plaintiff because of price or otherwise was not ready to buy.  <u>See</u> <u>SUF</u> ¶¶ 72-76.

Plaintiff was one of many female salespersons at Hillside Auto Outlet.  <u>See</u> <u>SUF</u> ¶ 79.  She announced her pregnancy on November 23, 2018 to most of the employees at the dealership.  <u>See</u> <u>SUF</u> ¶ 80.

Plaintiff received access to Dealertrack, even though salespersons are not supposed to receive such access, to assist her in processing customer applications for financing.  <u>See</u> <u>SUF</u> ¶ 114.  Dealertrack is a dealership management system used by Hillside Auto Outlet; it stores customer information that is sensitive, which is why access to it is limited, and serves as a liaison with banks that provide financing for vehicles.  <u>See</u> <u>SUF</u> ¶ 40.  No salesperson other than Plaintiff ever had access to Dealertrack.  <u>See</u> <u>SUF</u> ¶¶ 114-115.

While Thanwalla was on vacation in December 2018, Plaintiff complained to him that Guzman did not provide her with a Dealertrack password, although Guzman had no ability to change the password.  <u>See</u> <u>SUF</u> ¶¶ 83-84.  She also complained to Thanwalla in or about January 2019 that Guzman suddenly started making her wait longer to process her customers applications, but did not know why he did so.  <u>See</u> <u>SUF</u> ¶ 85, 87.  She did not tell Thanwalla that she thought Guzman did this due to her pregnancy, and she does not know whether it was something personal or due to her pregnancy.  <u>See</u> <u>SUF</u> ¶¶ 85, 87-88.  Critically, Guzman frequently kept customers waiting longer than necessary before Plaintiff announced her pregnancy.  <u>See</u> <u>SUF</u> ¶ 86.

Moreover, prior to her resignation, Plaintiff previously complained to Thanwalla in a text message that Guzman took so long to process applications because he "sucks" and that the dealership was a "shit show" since Thanwalla went on vacation. See SUF ¶ 88. Plaintiff also confronted Guzman at some point between late November 2018 and January 2019 and stated she believed he was making her wait longer due to her pregnancy, but Guzman told her it had nothing to do with her pregnancy and that she has to wait because there are other customers ahead of her customers who were seeking financing. See SUF ¶ 90. Plaintiff previously had two (2) interpersonal conflicts with Guzman prior to her pregnancy, although she could not recall the circumstances. See SUF ¶ 93. Guzman never made any comments to Plaintiff concerning her pregnancy. See SUF ¶ 94.

Guzman would not stall Plaintiff's financing applications because he received a commission for every sale Plaintiff consummated. See SUF ¶ 95. Thus, Guzman would lose commissions if he were intentionally stalling Guzman's applications. Plaintiff was only able to identify two (2) customers who left without purchasing a vehicle because it took too long to qualify for financing such that she lost $300.00 in commissions. See SUF ¶ 96.

Plaintiff's job responsibilities and position always remained the same, as did her compensation, while bonuses fluctuated in the normal course of business. See SUF ¶¶ 102-104. Plaintiff's average weekly pay pre-pregnancy was $710.00, while her average weekly pay post-pregnancy was $690.63, a mere difference of $19.37, attributable to the slow winter season. See SUF ¶¶ 105-110.

When Plaintiff contacted Defendant Jory Baron – one of the owners of Hillside Auto Outlet – after she quit, Plaintiff complained about her pay, not pregnancy discrimination. See SUF ¶¶ 125-129. Plaintiff quickly obtained employment after quitting. See SUF ¶¶ 135-137.

### III.   **LEGAL STANDARD**

Summary judgment shall be granted pursuant to Rule 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact; this burden is satisfied if the moving party can point to the absence of evidence necessary to support an essential element of the non-moving party's claim. See Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A fact is material "if it might affect the outcome of the suit under the governing law." See Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.   A moving party may indicate the absence of a factual dispute by "showing ... that an adverse party cannot produce admissible evidence to support the fact." See Fed. R. Civ. P. 56(c)(1)(B). Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party has met its burden, "the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." See Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).

The nonmoving party is required to "go beyond the pleadings," id., and "may not rest upon mere conclusory allegations or denials[.]" See Castro v. Cnty. of Nassau, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citation omitted).

Rather, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." See Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex Corp., 477 U.S. at 322-23).

The Second Circuit has noted that it "went out of [its] way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact'").

Accordingly, this Court should grant summary judgment in Defendants' favor.

## IV.   ARGUMENT

### A.   Legal Standard for Disparate Treatment Claims Under Title VII, NYSHRL, and NYCHRL

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual on the basis of the individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1); see also Vengalattore v. Cornell Univ., 36 F.4th 87, 103 (2d Cir. 2022).

"The Pregnancy Discrimination Act ["PDA"] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." See Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019) (quoting Young v. United Parcel Serv., Inc., 575 U.S. 206, 210 (2015)).

The NYSHRL and NYCHRL likewise prohibit discrimination against an employee based on that employee's race, disability, creed, color, sexual orientation, gender identity or expression, sex, or marital status. See N.Y. Exec. Law § 296(1); see also N.Y.C. Admin. Code § 8-107; Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21-CIV.-695, 2023 WL 2691622, at *14 (S.D.N.Y. Mar. 29, 2023); EEOC v. Bloomberg L.P., 967 F. Supp. 2d 816, 837 (S.D.N.Y. 2013).

Although neither the NYSHRL nor the NYCHRL explicitly names pregnancy as a type of discrimination, courts have routinely held that pregnancy discrimination falls within the laws' prohibitions. See, e.g., Elaine W. v. Joint Diseases N. Gen. Hosp., Inc., 81 N.Y.2d 211, 216 (1993); see also Krause v. Lancer & Loader Grp., 40 Misc. 3d 385, 392 (N.Y. Sup. Ct. 2013); Chauca v. Abraham, 841 F.3d 86, 89 (2d Cir. 2016).

Although the NYCHRL follows the same general framework as Title VII and the NYSHRL, Farmer v. Shake Shack Enters., 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020), courts are instructed to analyze NYCHRL claims "separately and independently from any federal and state law claims." See Mihalik v. Credit Agricole Cheuvreux N. Am., 715 F.3d 102, 109 (2d Cir. 2013).

The NYCHRL's provisions, however, are to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." See Albunio v. City of New York, 16 N.Y.3d 472, 477–78 (2011); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).

When analyzing disparate treatment claims under the NYCHRL, the court must use the burden shifting analysis under McDonnell Douglas v. Green, 411 U.S. 792 (1973), as well as a mixed motive analysis which imposes a lesser burden on a plaintiff opposing such a motion. See Ellison v. Chartis Claims, Inc., 178 A.D.3d 665, 668 (2d Dept. 2019).

Under the NYCHRL, a plaintiff must establish that she was "subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" <u>See</u> <u>Golston–Green v. City of New York</u>, 184 A.D.3d 24, 38 (2d Dept. 2020). Unlawful discrimination must play "no role" in an employment decision.  <u>See</u> <u>Ellison</u>, 178 A.D.3d at 668 (internal quotation marks omitted); <u>see also</u> <u>Singh v. Covenant Aviation Sec., LLC</u>, 131 A.D.3d 1158, 1161 (2d Dept. 2015).  A defendant moving for summary judgment must make a *prima facie* showing "that there is no evidentiary route that could allow a jury to believe that discrimination played a role in [the] challenged actions" <u>See</u> <u>Ellison</u>, 178 A.D.3d at 668 (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Moise v. Uptown Communications & Elec., Inc.</u>, 134 A.D.3d 782, 783 (2d Dept. 2015); <u>Cenzon–Decarlo v. Mount Sinai Hosp.</u>, 101 A.D.3d 924, 927 (2d Dept. 2012).

"A plaintiff may defeat summary judgment by coming forward either with evidence that the defendant's stated reasons were a pretext for discrimination or with evidence that discrimination was one of the motivating factors for the defendant's conduct." <u>See</u> <u>Ellison</u>, 178 A.D.3d at 668.

As set forth below, each of Plaintiff's claims fail and summary judgment must be granted.

## B.  Plaintiff's Title VII Claim for Sex Discrimination and PDA Claim for Pregnancy Discrimination Must be Dismissed

In analyzing Plaintiff's Title VII discrimination claim, courts apply the three-step burden shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 798 (1973).

First, the plaintiff must establish the elements of a *prima facie* discrimination case. <u>See</u> <u>Tex. Dep't of Cmty. Aff.s v. Burdine</u>, 450 U.S. 248, 252 (1981). If the plaintiff establishes a *prima facie* case, "a presumption of discriminatory intent arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action." <u>See</u> <u>Legg v. Ulster Cnty.</u>, 820 F.3d 67, 73 (2d Cir. 2016).

If the employer proffers such a reason, "the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." Id. at 74. "To set forth a *prima facie* case of discrimination, a plaintiff must show (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." See Saraf v. West Publishing Corp., 2018 WL 7107266, at *3 (S.D.N.Y. Dec. 20, 2018). Here, while there is no dispute that Plaintiff is a member of a protected class and was qualified for the position she held, there was no adverse employment nor any circumstances giving rise to an inference of unlawful discrimination. Specifically, Plaintiff herself quit and does not claim that she was constructively discharged. See SUF ¶¶ 116-117. This is fatal to her claim as she does not assert any adverse employment action, as discussed below. See Salen v. Blackburn Bldg. Servs., LLC, No. 3:14-CIV.-1361 (VAB), 2017 WL 71708, at *16 (D. Conn. Jan. 6, 2017) ("While a defendant's termination of an employee would constitute an 'adverse employment action,' a defendant's termination of an employee who has resigned does not") (quoting Davis v. Koffee Kup Bakery, Inc., No. 2:15-CIV.-152 (CR), 2016 WL 4411399, at *6 (D. Vt. Aug. 18, 2016)); Davis, 2016 WL 4411399, at *6 ("Where an employee voluntarily quits, there is no adverse employment action") (citation omitted); see also Cadet v. Deutsche Bank Sec. Inc., No. 11-CIV.-7964 (CM), 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) ("A voluntary resignation does not constitute an adverse employment action").

Plaintiff's anticipated argument that the alleged "increased" wait times constitute an adverse employment allegation[1] provide no shelter against dismissal.

---

[1] "A plaintiff suffers an adverse employment action when [s]he 'endures a materially adverse change in the terms and conditions of employment.'" See Harge v. City of New York, 2021 WL 3855305, at *8 (S.D.N.Y. Aug. 26, 2021) (quoting Brown v. City of Syracuse, 673 F.3d 141, 150

"Wait times" at work are not considered an "adverse employment action" within the meaning of the law. See La Grande v. DeCrescente Distrib. Co., Inc., 370 Fed. Appx. 206, 211 (2d Cir. 2010) (summary order) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."); see also Sealy v. State Univ. of New York At Stony Brook, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019) (dismissing Title VII discrimination claim based on allegations that, *inter alia*, defendant transferred plaintiff to a more remote work location; denied plaintiff a key to supply room; required Plaintiff to wait 45 minutes to access the supply room; assigned plaintiff a vehicle that was frequently in the shop; and denied plaintiff new tools to be insufficient to allege adverse employment action); Batchelor v. City of New York, No. 11-CIV.-2058, 2014 U.S. Dist. LEXIS 46921, at *96-98 (E.D.N.Y. Feb. 16, 2014) (finding four-week wait  for a locker did not constitute an adverse action but a mere inconvenience); Williams v. New York City Hous. Auth., No. 03-CIV.-7764, 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008), aff'd, 361 Fed. Appx. 220 (2d Cir. 2010) ("A delay  in processing paperwork that does not materially change the terms and conditions of a plaintiff's employment is not an adverse employment action"); Evans v. City of New York, No. 00-CIV.-4197, 2003 WL 22339468, at *10–11 (S.D.N.Y. Oct. 9, 2003) (eleven-month delay  in processing salary increase is not an adverse employment action); cf. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace") (internal quotations omitted).

---

(2d Cir. 2012)). Adverse employment actions include demotions, loss of wages, and *material* losses of benefits. See Id. at *8–10 (collecting cases); see also Henry v. NYC Health Hosp. Corp., 18 F. Supp. 3d 396, 405 (S.D.N.Y. 2014) (explaining that plaintiff who was "removed from the roll call and sent home" but was not "docked pay on that particular day" did not suffer an adverse employment action).

Indeed, claims of adverse employment action based on these kinds of trivial complaints concerning wait times and similar issues (which, in the cases cited herein, are arguably more egregious) are routinely dismissed because courts have found that they do not constitute adverse employment actions. See Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 713 (S.D.N.Y. 2007) (holding that a waiter's assignment to most difficult section of restaurant for two consecutive nights after initiating an employment discrimination action "too trivial" to qualify as an adverse employment action); see also Teachout v. New York City Dept. of Educ., No. 04-CIV.-945 (GEL), 2006 WL 452022, at *10 (S.D.N.Y. Feb. 22, 2006) ("It is doubtful that supplying a mentor for only one month or waiting until after several poor evaluations to provide assistance would qualify as adverse employment actions"); Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 26 (2d Cir. 2014) (allegations that an employee received two disciplinary citations for insubordination over two-year period, was assigned to drive dirty buses, received one late overtime payment, and endured employer's onetime refusal to give him a half-day off for doctor's appointment did not constitute materially adverse employment action); Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) ("Actions that are trivial harms—i.e., those petty slights or minor annoyances that often take place at work and that all employees experience—are not materially adverse") (internal quotation marks omitted) (quoting Burlington, 548 U.S. at 68).

Accordingly, Plaintiff's Title VII claim must be dismissed because there was no materially adverse employment action taken against her.  See Beharry v. City of New York, No. 18-CIV.-2042 (AJN), 2020 WL 6135147, at *8 (S.D.N.Y. Oct. 19, 2020) (requiring materially adverse employment action to survive summary judgment). Even if Plaintiff somehow jumps this hurdle (which she cannot do), there is no evidence supporting an inference of discrimination.

An inference of discrimination may be raised by "showing that an employer treated [an employee] less favorably than a similarly situated employee outside his protected group." <u>See</u> <u>Abdul-Hakeem v. Parkinson</u>, 523 Fed. Appx. 19, 20 (2d Cir. 2013).

Plaintiff's claim that Guzman discriminated against her by making her wait longer to process customer applications after he learned of her pregnancy is utterly belied by the record and establishes that there can be no inference of discrimination, which instead establishes that:

(i) Guzman took too long to process credit applications *before her pregnancy*;[2]

(ii) Guzman took the same time to process credit applications for all salespeople so Plaintiff was treated no differently;[3]

(iii) any delays in processing credit applications was not attributable to Defendants but, rather, the response times from financial institutions or other third parties involved in the verification process;[4]

(iv) Plaintiff was able to continue making sales with other customers while credit applications were being processed;

(v) there were multiple other reasons unrelated to Guzman taking too long to process credit applications why a customer could walk out before and after being qualified for financing;

(vi) Plaintiff's best week in commissions and bonuses immediately followed the alleged announcement of her pregnancy;[5]

---

[2] <u>See</u> <u>SUF</u> ¶ 86.

[3] <u>See</u> <u>SUF</u> ¶ 91-92.

[4] <u>See</u> <u>SUF</u> ¶¶ 49-50, 52-61, 65-69.

[5] <u>See</u> <u>SUF</u> ¶ 110.

(vii) Plaintiff does not know why Guzman made her wait longer to process her applications, and was unsure as to whether he did so due to "something personal" or her pregnancy;[6] and

(viii) shortly before she quit, Plaintiff sent the general manager at the dealership text messages while he was out on vacation complaining that his team "sucks" and that dealership has been a "shit show" ever since the general manager left for vacation without referencing unequal treatment due to her pregnancy.[7]

In addition, the undisputed evidence also establishes the process of purchasing a vehicle could take hours, including the qualification process, because of the number of verifications that are required to be done before any paperwork is submitted to a bank to obtain approval for a loan. There are also portions of the process that are completely out of the dealership's control which affect the time it takes to process applications.

Moreover, Plaintiff testified that she had two (2) interpersonal conflicts with Guzman before her pregnancy.

Thus, Plaintiff's evidence of discrimination consists of nothing more than petty slights, and, at most, *de minimis* interferences with her work based on nothing more than speculation that such was pregnancy-based, which is insufficient to overcome a motion for summary judgment. See Wade v. New York City Dept. of Ed., No. 11-CIV.-05278 (LGS), 2014 WL 941754, at *5 (S.D.N.Y. Mar. 10, 2014) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment") (citing Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)).

---

[6] See SUF ¶ 85.

[7] See SUF ¶ 88.

In addition, Plaintiff cannot escape that she was treated more favorably than all other salespersons because she received access to Dealertrack when all other salespersons did not. Burdine, 450 U.S. 248, 258–59 (1981) ("McDonnell Douglas teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally"); Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated *in all material respects* to the individuals with whom she seeks to compare herself." (internal quotation marks omitted) (emphasis added)); Stratton v. Ernst & Young, LLP, No. 15-CIV.-1047 (VEC), 2016 WL 6310772, at *5 (S.D.N.Y. Oct. 27, 2016) ("Stratton has not put forth any evidence of any similarly situated applicant who fared better in the EY Referral Program. By failing to show any comparator who was treated better, Stratton cannot rely on this theory to prove an inference of discrimination") (citing Smith v. New Venture Gear, Inc., 320 Fed. Appx. 33, 35-36 (2d Cir. 2009) (district court was correct to grant summary judgment to defendants on a disparate treatment claim where plaintiff did not show that similarly situated white employees received better treatment)); Parker v. Equinox Holdings, Inc., No. 20-CIV.-3306 (JPO), 2023 WL 6143546, at *4 (S.D.N.Y. Sept. 20, 2023) (analyzing plaintiff's failure to adduce evidence as to alleged comparator).

Lastly, Plaintiff's average commission for the 26 weeks before she announced her pregnancy was $710.00 per week, while her average commission for the eight (8) weeks after she announced her pregnancy was $690.63 per week.  This meager $19.37 weekly differential between her average commissions before and after her pregnancy is solely attributed to the fact that September through March is the slow season for car dealerships.  Similarly, Plaintiff's average bonus before her pregnancy was $23.46, while her average bonus after her pregnancy was $165.63, as she was availed of more bonuses by management, indicating a lack of discrimination.

Critically, Plaintiff's best week in commissions and bonuses immediately followed the alleged announcement of her pregnancy.  As such, there is no evidence of any discriminatory conduct. Accordingly, Plaintiff's Title VII and PDA claims must be dismissed.

### C.  Plaintiff's NYSHRL Claim for Disability Discrimination Must be Dismissed

Under the NYSHRL, the term disability "means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques ..." See N.Y. Exec. Law § 292(21).

The facts adduced in discovery have not provided any evidence that Plaintiff was disabled in any way, and courts in the Second Circuit[8] generally find that pregnancy itself is not necessarily a disability requiring accommodation. See, e.g., LaBarbera v. NYU Winthrop Hosp., 527 F. Supp. 3d 275, 303 (E.D.N.Y. 2021), appeal dismissed (2d Cir. July 7, 2021) ("[P]regnancy itself is not a statutory 'pregnancy-related condition.'"); Sam-Sekur v. Whitmore Grp., Ltd., No. 11-CIV.-4938 (JFB) (GRB), 2012 WL 2244325, at *7 (E.D.N.Y. June 15, 2012) (collecting cases).

While the NYSHRL generally has a broader definition of the term "disability" than the ADA, cases interpreting the NYSHRL have found that pregnancy alone is insufficient to establish a disability. See Kennebrew v. N.Y. City Hous. Auth., No. 01-CIV.-1654, 2002 WL 265120, *19 n.33 (S.D.N.Y. Feb. 26, 2002) (collecting cases); Thomson v. Odyssey House, No. 14-CIV.-3857, 2015 WL 5561209, *18 (E.D.N.Y. Sept. 21, 2015).

---

[8] "The same legal standards apply to claims of disability-discrimination under the ADA and the NYSHRL." See Morse v. JetBlue Airways Corp., 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013); Viruet v. City of N.Y., No. 16-CIV.-8327, 2019 WL 1979325, *13 (S.D.N.Y. May 3, 2019) (citing Penberg v. HealthBridge Mgmt., 823 F. Supp. 2d 166, 181 (E.D.N.Y. 2011)); Quintero v. Rite Aid of N.Y., Inc., No. 09-CIV.-6084, 2011 WL 5529818, *6 (S.D.N.Y. Nov. 10, 2011) (citing Kinneary v. City of N.Y., 601 F.3d 151, 158 (2d Cir. 2010)).

As a result, Plaintiff's disability discrimination claim under the NYSHRL must be dismissed. See McMyler v. Bank of Utica, No. 6:19-CIV.-812 (MAD) (ATB), 2021 WL 2778830, at *3 (N.D.N.Y. July 2, 2021) ("it is well established that pregnancy alone does not constitute a disability").

**D.  Plaintiff's NYSHRL Claim for Sex Discrimination Must be Dismissed**

"Claims brought under the NYSHRL are analyzed identically and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under ... Title VII." See Hyek v. Field Support Servs., Inc., 461 Fed. Appx. 59, 60 (2d Cir. 2012).

As such, Plaintiff's sex discrimination claims under the NYSHRL must be dismissed for the same reasons argued concerning her Title VII claim.

**E.  Plaintiff's NYCHRL Claim for Pregnancy Discrimination Must be Dismissed**

The NYCHRL is not a general civility code, and petty slights or trivial inconveniences ... are not actionable. The burden remains on the plaintiff to show that the conduct is caused by a discriminatory motive." See Tsepenyuk v. Fred Alger & Co., Inc., No. 18-CIV.-7092 (GBD), 2022 WL 912882, at *5 (S.D.N.Y. Mar. 29, 2022), aff'd, 2023 WL 6173455 (2d Cir. Sept. 22, 2023).

The evidence on this record shows that discrimination played no role in Plaintiff's wait times, especially in light of Plaintiff's pre-pregnancy interpersonal conflicts with Guzman and the plethora of evidence for why there are longer wait times for customers outside of the dealership's control which wait times apply to all employees, including non-pregnant and male employees.

Courts routinely dismiss NYCHRL claims under these circumstances.  See Romero v. St. Vincent's Services, Inc., No. 19-CIV.-7282(KAM)(ST), 2022 WL 2079648, at *9 (E.D.N.Y. June 10, 2022), aff'd, No. 22-1476-CV, 2023 WL 3477161 (2d Cir. May 16, 2023) ("Even under the broader construction required by the NYCHRL, Plaintiff cannot make out a *prima facie* case of

17

discrimination because she has not presented evidence from which a reasonable jury could conclude that her pregnancy played a role in her termination. As discussed above, Plaintiff has failed to adduce any evidence, direct or indirect, indicating that HSVS had knowledge of Plaintiff's protected status prior to terminating her. Because no reasonable jury could conclude that HSVS discriminated against Plaintiff based on her protected pregnancy status that was unknown to HSVS, summary judgment on Plaintiff's NYCHRL pregnancy discrimination claim is granted"); see also Tsepenyuk, 2022 WL 912882, at *6 ("there is no evidence that any pregnant employees were treated less well than non-pregnant women. Moreover, her claims lack specificity—it is unclear how often and when, in relation to her pregnancy announcement, that Morrello yelled at Plaintiff, failed to hold the door for her, or criticized her work. Even in the aggregate, without more detail, Morrello's actions lean towards "petty slights or trivial inconveniences." Finally, the only evidence of discriminatory intent is that Morrello's attitude towards Plaintiff changed after he found out she was pregnant and that allegation lacks specificity because, again, it is unclear how soon after Plaintiff's pregnancy announcement that Morrello's attitude changed. Without that temporal proximity, Morrello's attitude and actions have no correlation to pregnancy contempt. Plaintiff fails to establish a claim under NYCHRL").

Moreover, Plaintiff concedes Guzman never made any comments about her pregnancy. "Even under the more liberal standards of the NYCHRL, the plaintiff must still present some evidence of discriminatory animus." See Xiang v. Eagle Enterprises, LLC, No. 19-CIV.-1752 (LJL), 2022 WL 785055, at *19 (S.D.N.Y. Mar. 15, 2022) ("Plaintiff has not put forth 'a single comment or incident suggesting that discriminatory motives caused' Defendants to delay … processing [her] maternity leave …") (citing Santiago v. Axis Spexialty U.S. Servs., Inc., 2021 WL 639527, at *6 (S.D.N.Y. Feb. 16, 2021)).

Accordingly, Plaintiff's NYCHRL claims for pregnancy discrimination must also be dismissed.

**F.  The Claims Against Hillside Auto Mall Must be Dismissed**

Where more than one potential employer exists, "liability may be found when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." See Forsythe v. N.Y.C. Dep't of Citywide Admin. Servs., 733 F.Supp.2d 392, 397 (S.D.N.Y. 2010), aff'd, 428 Fed. Appx. 40 (2d Cir. 2011). "In evaluating whether entities constitute joint employers, courts look at commonality of hiring, firing, discipline, pay, insurance, records, and supervision." See Balk v. N.Y. Inst. of Tech., 11-CIV.-509 (SAS), 2015 WL 5518709, at *5 (E.D.N.Y. Sept. 16, 2015) (internal quotation marks omitted).

"Even where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." See Lima v. Addeco, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). "[C]ourts have found that even when a plaintiff establishes an entity's status as a joint employer, the plaintiff must still show that the joint employer knew or should have known of the discriminatory conduct and failed to take corrective measures within its control." Id. (internal quotation marks and alteration omitted).

Here, the evidence adduced in discovery demonstrates that all claims against Hillside Auto Mall must be dismissed due to its complete lack of involvement in Plaintiff's employment at Hillside Auto Outlet.  Plaintiff concedes that she only worked for Hillside Auto Outlet and never worked at Hillside Auto Mall.  See SUF ¶ 22.

Further, while the two (2) dealerships have some common owners, they are managed by two different people.  See SUF ¶¶ 145-146, 148-149.  Crucially, Hillside Auto Mall had no control over Plaintiff's daily employment activities.  See SUF ¶ 147.

19

Accordingly, Hillside Auto Mall cannot be found to be a joint employer of Plaintiff and all claims against Hillside Auto Mall must be dismissed.

### G. The Claims Against Baron, Guzman, and Thanwalla Must be Dismissed

Plaintiff also pursues claims against Baron, Guzman, and Thanwalla individually under the NYSHRL and the NYCHRL.  The NYSHRL provides for individual liability for discriminatory practices under two theories: (i) if the individual qualifies as the plaintiff's "employer," see N.Y. Exec. Law § 296(1); or (ii) if the individual aided and abetted the unlawful discriminatory acts of others covered by the NYSHRL, id. § 296(6).  See Whyte v. New York State Police, No. 22-CIV.-5633 (NGG) (CLP), 2023 WL 7413087, at *12 (E.D.N.Y. Nov. 9, 2023).  The language of both statutes concerning individual liability is identical: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." See N.Y.C. Admin. Code § 8-107(6); Exec. Law § 296(6). Individuals may be held liable under the NYSHRL, but they "must have 'actually participated in the conduct giving rise to the claim'" to face liability. See Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quoting Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)).

"The NYCHRL's § 8–107(6) also supports claims for aiding and abetting, which are 'susceptible to the same standard as under the NYSHRL, as language of the two laws is virtually identical.'" Id. (citation omitted). "An individual may be held liable for aiding and abetting violations of NYCHRL ... if he participates directly in discriminatory acts alleged by the Plaintiff. A finding of participation in the alleged discriminatory conduct 'requires a showing of direct, purposeful participation.'" See Regan v. Benchmark Company LLC, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012) (citations omitted).

20

"The aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff" under either statute." See McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020); see also Griffin v. Sirva, Inc., 29 N.Y.3d 174, 187 (2017) (citation omitted) ("Section 296(6) extends liability to persons and entities beyond joint employers, and this provision should be construed broadly. Section 296(6) applies to any 'person.' ... [N]othing in the statutory language or legislative history limits the reach of this provision to employers."); Stanley v. Guardian Security Services, Inc., 800 F. Supp. 2d 550, 557 (S.D.N.Y. 2011).

The New York Court of Appeals addressed the scope of individual liability under the NYSHRL and NYCHRL. See Doe v. Bloomberg L.P., 167 N.E.3d 454 (2021). In Doe, the court clarified a previous case, Patrowich v. Chemical Bank, 473 N.E.2d 11 (1984) (per curiam), holding that Patrowich stands for the proposition that NYSHRL "does not render employees liable as individual employers." Doe, 167 N.E.3d at 459.

Critically, the Doe court ultimately held that the NYCHRL should be interpreted like the NYSHRL: "[W]here a plaintiff's employer is a business entity, the ... employees of that entity are not employers within the meaning of the [NYCHRL]. Rather, those individuals may incur liability only *for their own discriminatory conduct, for aiding and abetting such conduct by others*, or for retaliation against protected conduct." See 167 N.E.3d at 460. Additionally, the court observed that the NYCHRL "specifically imposes primary liability on employees for some discriminatory acts," such as discriminating based on gender, "but conspicuously does not impose vicarious liability on these individuals." Id.

Here, evidence of discriminatory conduct is scant as against each of the individually named Defendants such that the claims against them must also be dismissed.

21

Baron is a mere owner of Hillside Auto Outlet who handled financial affairs at the dealership but did not run its day-to-day affairs and had no power to hire or fire employees, nor did he set any employees' schedules or compensation.  See SUF ¶¶ 3-5, 9-11.

Guzman was a sales manager and a general sales manager whose primary responsibility was to ensure all deals were processed, and who similarly had no power to hire or fire employees, nor did he set any employees' schedules or compensation.  See SUF ¶¶ 13-15.

As such both Baron and Guzman cannot qualify as "employers" under the NYSHRL or NYCHRL.  See Everett v. New York City Dept. of Educ., No. 21-CIV.-7043 (JPC), 2023 WL 5629295, at *12 (S.D.N.Y. Aug. 31, 2023) (holding that "a corporate employee, even if she holds the title of manager or supervisor, is not subject to suit for discrimination under the NYSHRL" and that, as a result, "Liso, Yesnick, and Diaz-Lens are therefore not subject to direct individual liability").  With respect to Thanwalla, although he did manage Plaintiff's employment, there is no evidence that he participated in nor aided and abetted any discriminatory conduct.  In fact, the record shows Thanwalla treated Plaintiff better than any other salesperson.  As such, all claims against Thanwalla must similarly be dismissed.  See Everett, 2023 WL 5629295, at *13 (dismissing aider-and-abetter claims where there is no evidence that any action taken against Plaintiff by the individual defendant were motivated by Plaintiff's protected class).

Finally, because Plaintiff's claims against Hillside Auto Outlet, the primary employer here, fail for the reasons set forth above, she cannot establish any claims against Thanwalla individually. Sokolovsky v. Silver Lake Specialized Care Ctr., No. 21-CIV.-01598 (MKB), 2023 WL 5977298, at *22 (E.D.N.Y. Sept. 14, 2023) ("In order for a defendant to be held liable as an aider and abettor under N.Y. Exec. Law § 296(6) and N.Y.C. Admin Code § 8-107(6), a plaintiff must first establish the existence of a primary violation of the NYSHRL or NYCHRL by an employer or principal").

Accordingly, all claims against the individually named Defendants must be dismissed.

## V.    <u>CONCLUSION</u>

Based on the foregoing, Defendants are entitled to summary judgment dismissing the

complaint in its entirety.

Dated: Lake Success, New York
      December 1, 2023                  **MILMAN LABUDA LAW GROUP PLLC**

                                           *__/s/ Emanuel Kataev, Esq.__*
                                           Joseph M. Labuda, Esq.
                                           Emanuel Kataev, Esq.
                                           3000 Marcus Avenue, Suite 3W8
                                           Lake Success, NY 11042-1073
                                           (516) 328-8899 (office)
                                           (516) 328-0082 (facsimile)
                                           joe@mllaborlaw.com
                                           emanuel@mllaborlaw.com

                                           *Attorneys for Defendants*