# In the Matter of

Case No.: 1:21-cv-7163 (HG)(LB)

STIDHUM

v.

161-10 HILLSIDE AUTO AVE, LLC, et al.

---

## Examination of Leticia Francine Stidhum

*Friday, February 17, 2023*

---

The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
Case No.: 1:21-cv-7163 (HG)(LB)
----------------------------------------X

LETICIA FRANCINE STIDHUM,

                          Plaintiff,

        -against-

161-10 HILLSIDE AUTO AVE, LLC d/b/a
Hillside Auto Outlet, HILLSIDE AUTO
MALL INC. d/b/a Hillside Auto Mall,
ISHAQUE THANWALLA, JORY BARON,
RONALD M. BARON, and ANDRIS GUZMAN,

                          Defendants.

----------------------------------------X

                    February 17, 2023
                    9:23 a.m.



        Examination before Trial of PLAINTIFF,

     LETICIA FRANCINE STIDHUM, held pursuant to

     Notice, held via Zoom conference, before

     Ruthayn Shalom, a Notary Public of the State of

     New York.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

2

2       A P P E A R A N C E S :

3                   TROY LAW, PLLC
                    Attorneys for Plaintiff
4                   4125 Kissena Boulevard, Suite 103
                    Flushing, New York 11355
5                   BY: TIFFANY TROY, ESQ.
                    troylaw2troypllc.com

6

7

8                   MILMAN LABUDA LAW GROUP, PLLC
                    Attorneys for Defendants
9                   3000 Marcus Avenue, Suite 3W8
                    Lake Success, New York 11042
10                  BY: EMANUEL KATAEV, ESQ.
                    emanuel@mllaborlaw.com

11

12

       ALSO PRESENT:
13     Ishaque Thanwalla

14

15

16

17

18

19

20

21

22

23

24

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

3

2          IT IS HEREBY STIPULATED AND AGREED, by

3      and between the attorneys for the respective

4      parties hereto, that this examination may be

5      sworn to before any Notary Public.

6

7          IT IS FURTHER STIPULATED AND AGREED that

8      the sealing and filing of the said examination

9      shall be waived.

10

11          IT IS FURTHER STIPULATED AND AGREED that

12      all objections to questions except as to form

13      shall be reserved for trial.

14

15

16

17

18

19

20

21

22

23

24

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

4

1                          L. Stidhum

2      L E T I C I A   F R A N C I N E   S T I D H U M,

3    a Plaintiff, having been first duly sworn by

4    Ruthayn Shalom, a Notary Public of the State of

5    New York, and stating her address as 2815 Murray

6    Street, Flushing, New York, 11354, was examined

7    and testified as follows:

8           MR. KATAEV:  Before we begin, Counsel, we

9        are going to agree to the usual federal stips;

10       is that right?

11          MS. TROY:  Agreed.

12          MR. KATAEV:  For the record that is

13       filing, seal and certification is waived.

14       Objections except as to form are reserved for

15       trial.  The examination may be sworn to before

16       any notary public.  A copy of the transcript

17       will be sent to the attorney representing the

18       witness, correct?

19          MS. TROY:  Correct.  So we are clear,

20       pursuant to Federal Rules of Civil Procedure

21       30E, I'm going to ask that you provide a copy

22       of the transcript to review it and list any

23       changes to be made.

24          MR. KATAEV:  No problem.

25    EXAMINATION BY

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

5

1                          L. Stidhum

2        MR. KATAEV:

3             Q    Good morning.  My name is Emanuel Kataev.

4        I'm the attorney for the Defendants in this case

5        which are 161-10 Hillside Auto Ave., LLC, Hillside

6        Auto Mall, Inc., Ishaque Thanwalla, Andris Guzman,

7        Jory Baron, and Ronald M. Baron.  From here on in I

8        will refer to 161-10 Hillside Auto Ave. as Hillside

9        Auto Outlet, okay?  I need a yes or no, please.

10            A    Yes.

11            Q    I will refer to Hillside Auto Mall, Inc.

12       as Hillside Auto Mall, okay?

13            A    Yes.

14            MS. TROY:  If you're referring to the

15            corporation as the corporate entity, if you

16            could say the entire name so there is no

17            confusion.

18            MR. KATAEV:  No, that's exactly what I'm

19            not doing.  I will be referring to it according

20            to the short name that I provided.

21            MS. TROY:  To the extent that the witness

22            has any confusion, I suggest that, you know,

23            you read out the whole name.

24            MR. KATAEV:  You will have that with Rule

25            30E so you will be good to go.  Hillside Auto

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

6

```
 1                    L. Stidhum

 2          Outlet is 161-10, Hillside Auto Mall is

 3          Hillside Auto Mall.  I will decide how I ask

 4          the questions.

 5     BY MR. KATAEV:

 6          Q    Jory Baron, I will refer to him as Jory,

 7     okay?

 8          A    Yes.

 9          Q    Ishaque Thanwalla I will refer to as

10     Isaac, okay?

11          A    Yes.

12          Q    Andris Guzman I will refer to as Andris,

13     okay?

14          A    Yes.

15          Q    Ronald M. Baron I will refer to as

16     Mr. Baron or Ronald, okay?

17          A    Yes.

18               MS. TROY:  Excuse me, if both Jory and

19          Ronald are Mr. Barons, I would suggest that you

20          use the full name and not Mr. Baron.

21               MR. KATAEV:  I will primarily use Ronald.

22          I will decide how I ask the question.

23     BY MR. KATAEV:

24          Q    I will be asking you and you will be

25     answering questions today about yourself, the
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

7

1                        L. Stidhum

2      Defendants, your complaint and other related

3      subjects; do you understand?

4              A    Yes.

5              Q    Your testimony today is subject to the

6      same oath and the same penalty of perjury as if you

7      were testifying in court; do you understand that?

8              A    Yes.

9              Q    We are here today concerning your

10     discrimination case, today?

11             A    Correct.

12             Q    You filed a separate wage and hour action

13     as well, correct?

14             A    Yes.

15             MR. KATAEV:  To the extent that any

16             questions are asked or overlap into the other

17             case, Defendants are nonetheless -- reserve the

18             right to conduct a separate deposition in that

19             actions.

20     BY MR. KATAEV:

21             Q    Have you ever been deposed before,

22     Ms. Stidhum?

23             A    No.

24             Q    This is your first time?

25             A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

8

                              L. Stidhum

1

2       Q    I'm going to go over some of the basic

3   ground rules for a deposition so we can have a

4   smooth and easygoing deposition, okay?

5       A    Okay.

6       Q    First, keep your voice loud and clear for

7   the court reporter.  Second, please answer in words.

8   The court reporter cannot take down body gestures or

9   mumbling.  Third, allow me to complete my question

10  before you answer and I will give you the same

11  courtesy so as to help the court reporter to not

12  have to write down what two people are saying at the

13  same time.  Do you understand these ground rules so

14  far?

15      A    Yes.

16      Q    Fourth, if you don't understand a question

17  tell me and I will rephrase it.  However, if you

18  answer I will assume that you understood the

19  question, okay?

20      A    Okay, yes.

21      Q    I'm looking for your best recollection of

22  events today.  I realize we are going to be speaking

23  about events that occurred in May of 2018 through

24  January of '19 and sometimes beyond.  I don't want

25  you to guess at answers, however, I'm still entitled

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

9

```
 1                    L. Stidhum
 2    to your best recollection of events, okay?
 3         A    Okay.
 4         Q    You can take a break any time for any
 5    reason except if there is a question pending.  You
 6    need to answer that question before we take the
 7    break, okay?
 8         A    Okay.
 9         Q    Do you understand these ground rules?
10         A    Yes.
11         Q    Have you consumed any drugs, alcohol or
12    medication within the last 24 hours that would
13    affect your ability to provide truthful testimony
14    today?
15         A    No.
16         Q    Is there any reason you can think of as to
17    why you cannot provide truthful answers to my
18    questions today?
19         A    No.
20         Q    Did you prepare for today's deposition?
21         A    Yes.
22         Q    How did you prepare?
23         MS. TROY:  Objection to the extent that it
24         calls for any attorney/client communication.
25         Q    Don't tell me anything that you said to
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

10

                              L. Stidhum

1

2        your attorney or anything that your attorney said to

3        you, but the fact of the conversation is

4        permissible.  You can tell me you did speak without

5        telling me what you said.

6                      How did you prepare for the

7        deposition with that qualification?

8             A    Last week we met for two to three hours.

9             Q    In person?

10            A    Yes.

11            Q    Other than meeting in person for two to

12       three hours, did you prepare in any way for your

13       deposition?

14            A    No.

15            Q    During your meeting last week, did you

16       review my documents?

17            A    Yes.

18            Q    Which documents did you review, and again

19       same qualification, don't tell me anything that you

20       said or anything that your attorney said to you.

21            A    The documents you provided pretty much and

22       like a spread of what was -- what I was -- the

23       decrease in pay, I should say.

24            Q    The damage calculation, correct?

25            A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

11

1                    L. Stidhum

2          Q    And also the almost 2,000 pages of

3     documents mostly consisting of leads information,

4     right?

5          A    Yes.

6          Q    Other than those two sets of documents,

7     did you review anything else?

8          A    No.

9          Q    Did you review the complaint?

10         A    I'm sorry?

11         Q    Did you review the complaint in

12    preparation for the deposition?

13         A    No.

14         Q    Did you ever sign any affidavit,

15    statement, declaration or any other document under

16    oath or affirmation concerning your employment with

17    the dealership Hillside Auto Outlet?

18              MS. TROY:  Which case are you talking

19         about?

20              MR. KATAEV:  This case.

21         A    Yes.

22         Q    Do you recall what that was?

23         A    The interrogatories.

24         Q    Okay.  Other than that, do you remember

25    signing anything else?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

12

                          L. Stidhum

1

2       A    No.

3       Q    Did you speak with or obtain statements

4    from any other employees at Hillside Auto Outlet?

5            MS. TROY:  Which case are you talking

6        about?

7            MR. KATAEV:  Any case.

8       A    No.

9       Q    Same question for Hillside Auto Mall?

10           MS. TROY:  Again, now you're trying to

11       split up the two companies.  Both companies are

12       sued.

13           MR. KATAEV:  I'm not trying to split up

14       anything.  I'm asking a question.

15    BY MR. KATAEV:

16       Q    The question is and I will repeat it:  Did

17    you speak to or obtain any statements from any

18    employees at Hillside Auto Mall?

19           MS. TROY:  Does that include coworkers

20       meaning the coplaintiff in the State court

21       case?

22           MR. KATAEV:  I don't know.  She has to

23       tell me.

24           MS. TROY:  You need to be clear in your

25       question.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

13

1                        L. Stidhum

2            MR. KATAEV:  I think you need to look at

3        Rule 30 and read it carefully.  It says all you

4        do is say, Objection, and the grounds therefor.

5        If you continue with the speaking objections --

6            MS. TROY:  Objection.  Ambiguous.

7            MR. KATAEV:  -- I'm going to call the

8        court and I don't want to do that.  I'm going

9        to repeat the question.

10   BY MR. KATAEV:

11        Q    Did you speak to or obtain statements from

12   any other employees at Hillside Auto Mall?

13        A    Yes.

14        Q    Who did you obtain statements from?

15        A    David, I mean -- but are we talking about

16   Hillside Auto Outlet and Auto Mall as one?  It's

17   kind of confusing.

18            MS. TROY:  I'm going to ask that you use

19        the full name of the company, sir.  I think

20        it's getting confusing.

21            MR. KATAEV:  It's not confusing.

22            161-10 is Hillside Auto Outlet.

23   Hillside Auto Mall is Hillside Auto Mall.  Please

24   stop violating Rule 30.

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

14

1                         L. Stidhum

2    BY MR. KATAEV:

3         Q    The question is:  Who is David?

4         A    David Manrique.

5         Q    Are you saying that David Manrique is an

6    employee of Hillside Auto Mall?

7         A    No.

8         Q    You can clarify.  Go ahead.

9         A    So if we are talking about Hillside Auto

10   Mall specifically, then no.

11        Q    When I asked you earlier, did you obtain

12   any statements from other employees at Hillside Auto

13   Outlet, do you want to clarify your answer?

14        A    David Manrique.

15        Q    Other than David Manrique, did anyone else

16   provide any statements?

17        A    No.

18        Q    What statement did David Manrique provide

19   you?

20        A    It's not a statement.  It was more a

21   conversation we had.

22        Q    Was it written down in any way?

23        A    No.

24        Q    Was it a text message or email?

25        A    No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

15

                              L. Stidhum

1

2      Q     He didn't sign something swearing under

3      penalty of perjury, XYZ?

4      A     No.

5      Q     What did you and David discuss?

6      A     Just, like, the status of the case.

7      Q     That's because David Manrique is a

8      coplaintiff with you in a State court wage and hour

9      action, correct?

10     A     Correct.

11     Q     Against the same defendants here, correct?

12     A     Right.

13     Q     Other than your attorney, did you speak

14     with anyone else about your deposition today?

15     A     No.

16     Q     Did you tell anyone you would be doing a

17     deposition today?

18     A     No.

19     Q     You said you didn't review the complaint

20     in preparation for the deposition.  Did you review

21     the complaint in general ever?

22     A     Yes.  When it was first submitted.  It was

23     quite some time ago.

24     Q     You verified its contents before it was

25     filed, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

16

1                      L. Stidhum

2         A    Yes.

3         Q    Have you had any conversations with anyone

4    other than your attorneys in preparation for during

5    your deposition?

6         A    No.

7         Q    Have you had any conversation with anybody

8    else other than your attorneys and David Manrique

9    about your case against the dealership?

10        A    No.

11        Q    What is every name that you ever used or

12   gone by, other than Leticia Francine Stidhum?

13        A    Letty.

14        Q    L-e-t-t-y?

15        A    Yes.

16        Q    Any other names?

17        A    No.

18        Q    The current address that you provided at

19   the beginning of the deposition, do you rent or own?

20        A    Rent.

21        Q    Who do you live with?

22        A    My mother and stepfather and my two

23   children.

24        Q    How old are your children?

25        A    One and three.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

17

1                     L. Stidhum

2        Q    What is your birthdate?

3        A    My birthdate?

4        Q    Correct.

5        A    XX-XX-1998.

6        MS. TROY:  I'm going to ask that

7    everything except the birth year be marked as

8    confidential.

9        MR. KATAEV:  We have a confidentiality

10   agreement in this case?

11       MS. TROY:  I don't believe so, but I'm

12   going ask that any filings to court have her --

13   again, everything other than her birth year

14   redacted consistent with the local rules of the

15   Eastern District of New York and on the

16   transcript itself, everything other than the

17   birth year be marked as confidential.

18       MR. KATAEV:  I don't believe that's the

19   way it works.  The rule provides if you file

20   something publicly, you redact that

21   information.  It doesn't entitle you to mark it

22   confidential, it just gets redacted.  We will

23   follow the rule.

24   BY MR. KATAEV:

25       Q    Were you born in the United States,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

18

1                        L. Stidhum

2       Ms. Stidhum?

3            A    Yes.

4            Q    When is the last time you left the

5       country?

6            A    September of 2020.

7            Q    Prior to that time and focusing on the

8       timeframe of March 2018 until January of '19, did

9       you leave the United States of America?

10           A    No.

11           Q    Same question, did you leave the State of

12      New York?

13           A    Could you clarify the timeframe again?

14           Q    Sure, no problem.  The timeframe again,

15      May 2018 through January of '19.

16           A    I don't believe so.  Again, it was a long

17      time ago so I don't want to answer dishonestly.

18           Q    Are you currently married?

19           A    No.

20           Q    Were you ever married?

21           A    No.

22           Q    Your children currently live with you?

23           A    Yes.

24           Q    You've lived in New York all your life?

25           A    No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

19

1                     L. Stidhum

2          Q    Where did you live prior to living in

3     New York?

4               MS. TROY:  Objection as to timeframe.

5          Could you clarify what timeframe you're talking

6          about.

7               MR. KATAEV:  Her whole life, her whole

8          life.

9          A    Florida.

10         Q    Were you born in Florida?

11         A    Yes.

12         Q    When did you move to New York?

13         A    I have been back and forth pretty much my

14    whole life.  I did some school there, some school

15    here.  So it's kind of a hard question.

16         Q    Understood.  When is the last time you

17    went to Florida and came back to New York,

18    timeframe?

19         A    Like to live?

20         Q    Yes.

21         A    I want to say June of 2018 or -- no, June

22    of 2017.

23         Q    Is when you left to Florida?

24         A    When I came back to New York.

25         Q    After returning from Florida in June of

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

20

1                         L. Stidhum

2       '17, when is the next time you went back to Florida,

3       if ever?

4              A     For vacation only pretty much.

5              Q     When was that?

6              A     I don't remember exactly.

7              Q     Month and year?

8              A     I have gone back quite a couple of times.

9       Honestly, I don't remember.

10             MR. KATAEV:  We will follow up in writing

11             with an interrogatory about -- to the extent

12             you were in Florida at any point in time for

13             the period of May 2018 until January of '19, we

14             would want to know what dates you were in

15             Florida, but we will follow up in writing.  You

16             don't have to answer now.

17                    (Counsel Request.)

18             A     These times I didn't go to Florida.

19             Q     You know that for a fact?

20             A     Yes, almost positive.

21             Q     Have you ever been arrested before?

22             A     Yes.

23             Q     Have you ever been convicted of a crime?

24             A     Yes.

25             Q     When did that happen?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

21

1                          L. Stidhum

2        A     Some time in 2017.

3        Q     Without going into too much detail, do you

4   remember the charges against you?

5        A     Not specifically.  It was for marijuana.

6   I don't know exactly the actual charge name, but it

7   was for marijuana.

8        Q     Were you charged with anything to do with

9   truthfulness?

10       A     No.

11       Q     Other than that, are there any other

12  charges or convictions for you?

13       A     No.

14             MR. KATAEV:  I'm going to present you with

15       a document we will mark as Defendant's

16       Exhibit A.

17  (Defendant's Exhibit A, Marked for Identification.)

18  BY MR. KATAEV:

19       Q     I will represent to you this is a matter

20  of public record.  It's a document from the

21  Kissimmee Police Department.

22             MS. TROY:  I'm going to object to this

23       document.  I have never been presented this

24       document prior to this deposition.

25             MR. KATAEV:  You never asked for this.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

22

1                        L. Stidhum

2          It's a public document.

3          Q    At the top of the exhibit --

4               MS. TROY:  Sir, I have never been -- I

5          have never seen this document.  Could you email

6          this document to me?

7               MR. KATAEV:  Sure, no problem.  I will

8          email it to you, not that I have to do so

9          during the deposition, but as a matter of

10         courtesy.

11              Let the record reflect that I sent

12    the record.

13    BY MR. KATAEV:

14         Q    Putting the exhibit back up, I have some

15    questions about it.

16              MS. TROY:  We are going to ask for a quick

17         break.  I have not seen the document before.  I

18         ask that I review the document before you ask

19         questions.

20              MR. KATAEV:  You have no right to the

21         document before, you didn't ask for it in

22         discovery.  We are going to ask some questions

23         and then you can take your break.

24    BY MR. KATAEV:

25         Q    At the top it says, Description uttering

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

23

1                       L. Stidhum

2       forged instruments.  What does it mean to your mind

3       uttering forged instruments?

4                   MS. TROY:  Objections.  Calls for a legal

5               conclusion.  The witness can answer to the

6               extent she knows the answer to the question.

7               Q    You can answer the question, go ahead.

8               A    I'm sorry, repeat your question again.

9               Q    You told me that you were arrested for a

10      marijuana-related offense, correct?

11              A    Right.

12              Q    In 2017, correct?

13              A    Right.

14              Q    This document, which is a public record,

15      says on December 8th of 2017, you were arrested for

16      uttering forged instruments; do you see that?

17              A    Yes.

18              Q    My question to you is:  What is this

19      about?

20                  MS. TROY:  Objection.  Calls for

21              self-incrimination.  I'm going to direct her

22              not to answer to the extent you're asking about

23              the questions underlying the facts of the case.

24                  MR. KATAEV:  Are you pleading the Fifth?

25                  MS. TROY:  Correct.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

24

1                    L. Stidhum

2          MR. KATAEV:  Let the record reflect the

3          Plaintiff has pled the Fifth.

4    BY MR. KATAEV:

5          Q    To clarify, though, is this one in the

6    same arrest and conviction or is this a separate

7    arrest and conviction from the marijuana?

8          A    So honestly, this was a long time ago.  I

9    was really not sure.  I was kind of pushed into that

10   charge so I don't know how to answer that.

11         Q    We will take you're pleading the Fifth.

12         MR. KATAEV:  Do you still want to take

13         your break now, Counselor?

14         MS. TROY:  Yes.

15         MR. KATAEV:  Go ahead.  Take your break.

16         Let's meet at 10:05.

17         Let the record reflect that Plaintiff's

18         counsel and Plaintiff left without confirming

19         when we are returning.  We are meeting back at

20         10:05.

21       (Whereupon, a short recess was taken.)

22         MR. KATAEV:  We are back on at 10:05.

23         MS. TROY:  Emanuel, I'm going to caution

24         you that the document production request calls

25         for all documents you intend to use.  To the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

25

1                        L. Stidhum

2           extent that you did not produce a document that

3           is part of the document production request, I

4           don't think you're entitled to use it.

5                MR. KATAEV:  You're wrong.  I objected and

6           you didn't follow up in a motion to compel and

7           you were denied your motion to compel in that

8           regard.

9                Can we proceed?

10               MS. TROY:  I understand that you're trying

11          to --

12               MR. KATAEV:  We are not here to discuss

13          your objections.  This is my deposition.  I

14          want to move on.  Can we move on?

15               MS. TROY:  I understand.  I'm going to

16          make a quick record.  I'm going to make it

17          clear to the record that I requested this as

18          part of the document request.  Mr. Kataev did

19          not produce the document as part of the

20          document production request.

21               MR. KATAEV:  That's correct.  I objected

22          and you failed to follow up in a motion to

23          compel and you already lost your motion to

24          compel in that regard.  We are moving on.

25               MS. TROY:  That is incorrect.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

26

1                    L. Stidhum

2            MR. KATAEV:  You can take it up with the

3       court.  I'm going to proceed with my

4       deposition.

5   BY MR. KATAEV:

6       Q    Ms. Stidhum, other than this lawsuit and a

7   State court wage and hour lawsuit with Mr. Manrique,

8   have you ever been a party to any other lawsuit as a

9   plaintiff or defendant?

10      A    No.

11      Q    These are the only two lawsuits you have

12  ever been a part of?

13      A    Yes.

14      Q    Have you ever filed a complaint against

15  any of your employers with any administrative agency

16  ever?

17      A    Yes.

18      Q    Which agency did you file a complaint

19  with?

20            MS. TROY:  If she knows.

21            MR. KATAEV:  Don't coach the witness.  You

22       either say, Objection, and the grounds they are

23       for or nothing.  Do not say, If she knows.

24       You're coaching her to say, I don't know, I

25       don't abide by that.  I'm going to call the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

27

1                     L. Stidhum

2          court.  It's not proper conduct.

3     BY MR. KATAEV:

4          Q     Please answer the question.

5          A     If I'm not mistaken, the EEOC.

6          Q     Other than the EEOC, did you ever file a

7     complaint with any other administrative agency?

8          A     No.

9          Q     Thank you.  Just for the record, the

10    complaint you filed with the EEOC relates to the

11    same defendants here, correct?

12         A     Yes.

13              MS. TROY:  Objection.  It's not a

14         complaint.

15              MR. KATAEV:  It's just, Objection to form.

16         You don't say, It's not a complaint.  Stop with

17         the speaking objections, okay?

18    BY MR. KATAEV:

19         Q     Have you ever filed for unemployment?

20         A     Yes.

21         Q     Against which employer did you file an

22    unemployment claim for?

23         A     Luxury Motor Club.

24         Q     That's after your left your employment

25    with the defendants, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

28

1                      L. Stidhum

2          A    Right.

3          Q    Have you ever filed a claim for workers'

4     compensation?

5          A    No.

6          Q    Have you ever applied for food stamps?

7          A    Yes.

8          Q    When was the most recent time?

9          A    Currently I have them.

10         Q    For the record, to apply for food stamps,

11    you have to provide information about your income,

12    correct?

13         A    Correct.

14         Q    You provided that information about your

15    income, correct?

16         A    Right.

17         Q    Did you ever apply for Medicare or

18    Medicaid?

19         A    Yes.

20         Q    You currently have that as well, right?

21         A    Right.

22         Q    In order to obtain Medicare/Medicaid, you

23    also have to provide information about your income,

24    correct?

25         A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

29

1                        L. Stidhum

2          Q    You did provide that information, correct?

3          A    Yes.

4          Q    Have you ever applied for childcare

5     assistance?

6          A    I'm not sure.

7          MR. KATAEV:  We will follow up in writing.

8                    (Counsel Request.)

9     BY MR. KATAEV:

10         Q    What about housing assistance?

11         A    Yes.

12         Q    You currently have that as well?

13         A    Yes.

14         Q    Again, you have to provide information

15    about your income for that, right?

16         A    Yes.

17         Q    You did provide that information, correct?

18         A    Correct.

19         Q    To the extent that food assistance is

20    different from food stamps, did you ever apply for

21    that benefit?

22         A    I don't think so.

23         Q    What about educational assistance?

24         A    No, I don't think so.

25         Q    Did you attend high school?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

30

1                          L. Stidhum

2          A    Yes.

3          Q    Where?

4          A    Florida.

5          Q    Name?

6          A    Gateway High School, but that's not where

7    I graduated from.

8          Q    Where did you graduate?

9          A    Alco.  I got my GED.

10         Q    Which schools, if any, did you attend here

11   in New York for high school?

12         A    Flushing High School and Benjamin Cardozo.

13         Q    You didn't get a high school diploma, you

14   got a GED, correct?

15         A    Correct.

16         Q    Did you ever attend any college?

17         A    No.

18         Q    Did you have gap in your education during

19   high school?

20         A    No.

21         Q    There is no graduate or professional

22   school, correct?

23         A    No.

24         Q    What about vocational school?

25         A    No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

31

1                    L. Stidhum

2         Q    Are you familiar with dealership

3    certification programs?

4         A    Not really.

5         Q    Are you aware, for example, that if you

6    sell Ford vehicles that Ford offers certification

7    programs for salespeople?

8         A    Yes.

9         Q    Have you ever taken any of those kind of

10   courses?

11        A    No.

12        Q    Were those offered to you at any of the

13   dealerships you worked for?

14        A    No, I mostly worked for used car lots.

15        Q    Used car lots generally don't offer those?

16        A    No.

17        Q    After you got your GED in Florida, is that

18   the first time you started working?

19        A    I'm not sure.

20        Q    Do you recall whether you ever worked

21   during high school?

22        A    I don't believe so.  No, I didn't.

23        Q    After you got your GED, where was the

24   first place you remember working?

25        A    McDonald's.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

32

1                        L. Stidhum

2          Q     Do you remember the month and year you

3     started there?

4          A     No idea.

5          Q     After you worked at McDonald's, where did

6     you work?

7          A     I can't remember that far back.  I want to

8     say it might have been Dollar Tree.

9          Q     The McDonald's that you worked at, was it

10    in Florida or New York?

11         A     Florida.

12         Q     What about Dollar Tree?

13         A     New York.

14         Q     Do you remember the month and year you

15    started at Dollar Tree?

16         A     I don't.

17         Q     Did you get fired from McDonald's?

18         A     No, I quit.

19         Q     Why?

20         A     I was being young and stupid kind of.

21         Q     Understood.  What about Dollar Tree?

22         A     I quit there too actually.

23         Q     Where did you work after Dollar Tree?

24         A     That's when I got the interview with Isaac

25    after that.  No, I'm sorry, that's not true.  I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

33

1                          L. Stidhum

2      actually worked at Marco LaGuardia Hotel.

3            Q     Hotel?

4            A     Yes.

5            Q     What position did you work?

6            A     Housekeeping.

7            Q     That was at the airport?

8            A     No.  That's right here off of Main Street,

9      Northern Boulevard.

10           Q     Is that close to where you lived at the

11     time?

12           A     Yes.

13           Q     Is that close to where you live now?

14           A     Pretty much.  Ten-minute drive.

15           Q     Do you remember the month and year you

16     started working at the hotel?

17           A     I don't.  I didn't stay there very long.

18           Q     After the hotel is when you first started

19     working for Hillside Auto Outlet, correct?

20           A     Correct.

21           Q     You started working at Hillside Auto

22     Outlet in May of '18, correct?

23           A     Yes.

24           Q     Hillside Auto Outlet was the first -- was

25     the first automobile business that you ever worked

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

34

1                      L. Stidhum

2       in, correct?

3           A     Yes.

4           Q     Therefore, you had no experience in the

5       automobile industry prior to that time, correct?

6           A     Correct.

7           Q     You worked at Hillside Auto Outlet from

8       May of '18 until January of '19, correct?

9           A     Right.

10          Q     Although you are also suing Hillside Auto

11      Mall, you never directly worked at Hillside Auto

12      Mall as an employee, correct?

13          A     I kind of need that question clarified

14      because I have sold cars at Hillside Auto Mall.

15          Q     Let me try.  I'm going to give you a very

16      long question of what I understand to be the case

17      and you will confirm what's accurate and what's not,

18      okay?

19          A     Okay.

20          Q     You came to work as a salesperson for

21      Hillside Auto Outlet and worked at Hillside Auto

22      Outlet and was paid by Hillside Auto Outlet from May

23      of '18 until January of '19.  However, during the

24      time that you worked at Hillside Auto Outlet, you

25      sometimes sold vehicles that were kept or maintained

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

35

1                      L. Stidhum

2    by Hillside Auto Mall; is that correct?

3         A    Yes.

4         Q    During the time you worked at Hillside

5    Auto Outlet, you sometimes sold vehicles located at

6    other dealerships unrelated to Hillside Auto Outlet

7    or Hillside Auto Mall, correct?

8         A    Yes.

9         Q    You're not alleging that those other

10   dealerships that you sold vehicles for are also an

11   employer here, correct?

12        A    Right, because from my understanding

13   Hillside Auto Outlet and Mall were kind of run by

14   the same people.

15        Q    That's the reason you included Hillside

16   Auto Mall in this case, correct?

17        A    Right.

18        Q    Because, as your understanding, they are

19   what we call in legal parlance, joint employers,

20   correct?

21        A    I'm sorry, one more time.

22             MR. KATAEV:  Read it back.

23   (Whereupon, the referred to question was read back

24                  by the reporter.)

25             MS. TROY:  Objection to the extent it

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

36

1                    L. Stidhum

2         calls for a legal conclusion.

3    BY MR. KATAEV:

4         Q    You can answer.  Go ahead.

5         A    I'm not sure.

6         Q    Okay, that's fine.  Your employment with

7    Hillside Auto Outlet ended in January of '19,

8    correct?

9         A    Correct.

10        Q    That's because you quit, correct?

11        A    Yes.

12        Q    During the time you worked at Hillside

13   Auto Outlet, your sole position or job title was

14   salesperson, correct?

15        A    Right.

16        Q    Your primary responsibility was selling

17   cars, correct?

18        A    Right.

19        Q    Any other responsibilities that you had?

20        A    Um, not necessarily responsibilities, no.

21        Q    Who were your supervisors while you worked

22   at Hillside Auto Outlet?

23        A    Isaac was one, Jay or Jenneque, she was

24   another for a short period of time, a couple of

25   months.  Andris Guzman and that was about it as far

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

37

1                         L. Stidhum

2    as supervisors, yes.

3         Q    Can you describe basically what your

4    compensation structure was there?

5         A    So in the beginning when I was first hired

6    after interviewing with Isaac and speaking with

7    Jenneque, I was told I would be paid $300 weekly,

8    $150 flat, and after anything over $3,000 I would

9    receive 5 percent, and it is reflected on my

10   paystubs for the first couple of months up until Jay

11   was fired or quit.  I don't know what happened in

12   that situation.  Then, I started just receiving the

13   $150 flat.

14        Q    Let's say the schedule that you worked was

15   generally Monday to Friday, correct?

16        A    No.

17        Q    What was your schedule like?

18        A    So I had Wednesdays off and we would work

19   alternating Sundays.

20        Q    You either worked five days a week or six

21   days?

22        A    Correct.

23        Q    And so do you know what the actual work

24   week was?  Did they do it Monday through Sunday or

25   did they do it Saturday through Friday?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

38

1                    L. Stidhum

2         A    I have no idea.  I know that I received my

3    check Thursdays.

4         Q    The check that you received on Thursdays

5    was for the entire prior week, correct, whatever the

6    week was?

7         A    Yes.

8         Q    How did you go about verifying that you

9    got paid properly on any given week?

10        A    So weekly we would get a form that has

11   like three pieces together, so -- for copies, and we

12   would have to turn it into the sales manager and

13   they would give it to the girl who does the payroll.

14        Q    Who was that?

15        A    There was a couple.  From the beginning,

16   it was -- I can't remember who it was in the

17   beginning.  I know it ended with Denise doing my

18   payroll, Denise and Iris.  There was a couple of

19   people in between.

20        Q    Does Dianna Jennings ring a bell?

21        A    No.

22        Q    Dina Jennings?

23        A    Dina, I didn't really meet because she was

24   hardly ever there.  I've probably seen her three or

25   four times.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

39

1                    L. Stidhum

2        Q    Let's break down the compensation.  $300 a

3    week is the flat $300 a week, right?

4        A    Salary.

5        Q    The $150 per car is for every car you

6    sold, correct?

7        A    Yes.

8        Q    In order for the car to be considered

9    sold, it had to be delivered, right?

10       A    Right.

11       Q    Which means the customer took possession

12   of the vehicle and all the funds had been received

13   from the bank and all of that, right?

14       A    I mean yes and no because there would be

15   times that I would still get paid on all the cars

16   even if it was not funded.  It's a yes-and-no

17   answer.

18       Q    In terms of getting paid for vehicles that

19   were not funded, did it sometimes happen that you

20   did not get paid on a vehicle that hasn't been

21   funded yet?

22       A    One more time.

23       Q    Was it sometimes the case that a vehicle

24   was not funded and you didn't get paid on it?

25       A    Yes.  That happened a couple of times but

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

40

1                          L. Stidhum

2       relatively quickly with the funding, they would do a

3       pretty good job of that.

4              Q    They would like to take care of you while

5       you worked there, correct?

6                   MS. TROY:  Objection to form.

7              Q    You can answer.

8              A    I guess.

9              Q    When they paid you for a vehicle that

10      hasn't been funded yet, they did so in their

11      discretion, correct?

12             A    It would be something that I wasn't aware

13      of.  It might have happened, it might have happened.

14      I'm not sure.  I'm not looking at the back end of

15      the dealership.

16             Q    You don't care whether it's funded or not,

17      you want to get your commission, right?

18             A    Of course.

19             Q    How would you keep track of the vehicles

20      that you sold in any given week?

21             A    With that same form.  I would do that

22      monthly.

23             Q    Did you ever take pictures of that form on

24      your cellphone?

25             A    No, because I would have the copies so it

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

41

1                         L. Stidhum

2     wasn't something that I really needed to take

3     pictures of.

4          Q    Have you produced those copies in this

5     case?

6          A    No, because I don't think anybody plans to

7     be mistreated or anything like that to hold on to

8     stuff like that.

9          Q    What you're saying is you never held on to

10    those documents?

11         A    No.  After I would get paid, I would

12    discard them.

13         Q    The reason you discarded them was because

14    you were satisfied that you were properly paid,

15    correct?

16         A    I don't know how to answer that question.

17         Q    Answer to the best of your ability.

18         A    I mean, if I'm getting paid on the deal

19    there is no reason for me to hold on to it.

20         Q    You threw it out because you were

21    satisfied that you were properly paid, right?

22              MS. TROY:  Objection.  Argumentative.

23         Q    You can answer.

24              MS. TROY:  Objection.  Asked and answered.

25         Q    I would like to hear the answer.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

42

1            L. Stidhum

2            MS. TROY:  Because you don't like the

3       answer doesn't mean you can ask it again.  The

4       witness can answer again.

5   BY MR. KATAEV:

6       Q    Go ahead.

7       A    I'm sorry.

8       Q    The reason why you threw out the document

9   was because you were satisfied that you were paid

10  properly, correct?

11      A    Yes, up until I was owed money.  Up until

12  I was shorted on my commissions.

13      Q    How did you come to be aware that you were

14  owed money or that you were short on the

15  commissions?

16      A    Because I know what I'm owed to start.  I

17  would know how many cars I would sell weekly and

18  what I'm owed weekly.  Again, I was getting paid

19  that $150 flat so it wasn't something that -- it

20  wasn't a mystery to solve.  Of course I know what

21  I'm looking forward to expecting especially upon

22  leaving somewhere.

23      Q    Going through the 5 percent bonus, can you

24  explain that in your own words?

25      A    It wasn't a 5 percent bonus.  It was

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

43

1                        L. Stidhum

2       anything paid over -- any deal that made over $3,000

3       because at 5 percent, $3,000 would be $150.

4       Anything that made over that, I was receiving that

5       extra compensation up until Jay was fired and it

6       does reflect it on my paystubs.

7            Q    Jay is the person that you referred to as

8       Jenneque, correct?

9            A    Yes.

10           Q    So when you say $3,000, you're saying

11      that's what the vehicle sold for?

12           A    No.  That's what the deal made.

13           Q    The gross profit?

14           A    Right.

15           Q    When is it that Jay was no longer at the

16      company?

17           A    I'm not quite sure.  It had to be at the

18      end of July or sometime in August.  It was sometime

19      in the summer I remember.

20           Q    At some point after July or August of

21      2018, you no longer got that 5 percent, correct?

22           A    Correct.

23           Q    You continued your employment with the

24      dealership, correct?

25           A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

44

1                       L. Stidhum

2          Q    Did anyone inform you they are no longer

3     offering the 5 percent in July or August?

4          A    No.

5          Q    Did you come to anyone and say, What

6     happened to the 5 percent?

7          A    I did mention it and it was kind of

8     brushed off.

9          Q    Who did you mention it to?

10         A    Isaac.

11         Q    What did Isaac say to you?

12         A    I don't recall.

13              MR. KATAEV:  Off the record.

14     (Whereupon, an off-the-record discussion was held.)

15     BY MR. KATAEV:

16         Q    You testified that you quit in January of

17     '19, right?

18         A    Correct.

19         Q    What was the reason that you quit?

20         A    It was a combination of things between the

21     pregnancy discrimination, being owed money and not

22     paid it.  It was a couple of things.  Also, I was

23     promised a position that I guess I wasn't receiving

24     due to my pregnancy, so like I said, it was a

25     combination of things.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

45

L. Stidhum

1

2      Q     We are going to get into the pregnancy

3   discrimination position you talked about a little

4   later.  I want to focus on the compensation aspect

5   and I have some more granular questions about your

6   decision to quit related to those financial aspects

7   so I'm going to focus in on that for now.

8      A     Okay.

9      Q     Did you quit because you stopped receiving

10  the 5 percent?

11     A     No.

12     Q     Did you quit because of waiting times?

13     A     Yes.  That's what one of the factors.

14     Q     Tell me about the waiting times?

15     A     So like I mentioned a couple of times, I

16  did have my own access to Dealertrack and once Isaac

17  did go on vacation, the password was changed and

18  Guzman was the supervising manager at the time and

19  he refused to give it to me.  So that did increase

20  my waiting times because I was not able to qualify

21  my customers on my own and they would leave.

22     Q     Assuming you were able to qualify your

23  customers, that doesn't necessarily mean you would

24  make the sale, correct?

25     A     Right.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

46

1                         L. Stidhum

2          Q    It only increased the chances of making

3     the sale, correct?

4          A    Not necessarily increases it, but it gives

5     me the opportunity to see who I'm wasting time on

6     and who I'm not wasting time on.  We were in Jamaica

7     so we would get a lot of customers that did not

8     qualify.

9               Me having my own access to Isaac's

10    Dealertrack would give me the ability to qualify my

11    customers on my own rather than waste time on

12    somebody and wait on Andris or Isaac or whoever to

13    check the credit.

14              MR. KATAEV:  Can I have the last question

15         and answer read back?

16    (Whereupon, the referred to testimony was read back

17                    by the reporter.)

18    BY MR. KATAEV:

19         Q    You acknowledge, however, that you were

20    the only salesperson that had access to Dealertrack

21    to qualify individuals, correct?

22         A    Yes.

23         Q    All the other salespeople did not have

24    that ability that you did for some time, correct?

25         A    That I know of at least.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

47

1                         L. Stidhum

2           Q     Generally, it was the responsibility of an

3     F&I manager or someone else in the dealership, other

4     than a salesperson, to qualify individuals, correct?

5           A     Not just an F&I.  The general manager or

6     sales manager, I don't know their titles exactly,

7     but they have access as well.

8           Q     Those individuals are not salespeople,

9     correct?

10          A     Right.

11          Q     You say that you obtained access to

12    Dealertrack, right?

13          A     I was given it, yes.

14          Q     Who gave it to you?

15          A     Isaac.

16          Q     How did he give it to you?

17          A     Honestly, I don't remember because, like I

18    said, the password would be changed after a certain

19    period of time because it's sensitive information.

20    They would change the password, but he would put it

21    on a sticky note or he would come to my desk and

22    type in the password himself.  He was the only one

23    giving me the password.

24          Q     The username for the Dealertrack account,

25    whose was it?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

48

1                    L. Stidhum

2         A    It was Isaac's.  I never had anybody

3    else's.

4         Q    You didn't have your own, correct?

5         A    I did not.

6         Q    After you quit working at Hillside Auto

7    Outlet, where did you work next?

8         A    NYC Motor Cars.

9         Q    Where is that?

10        A    Queens Boulevard.

11        Q    Did you start working there in January of

12   '19 or some other point?

13        A    I'm not sure if I waited until the start

14   of February or not, so I'm not 100 percent sure.  It

15   was definitely early that year.

16        Q    In January or February of '19, correct?

17        A    Probably more towards the end of January

18   or beginning of February.

19        Q    In order to begin a job there, you had to

20   fill out an employment application?

21        A    I actually did not.

22        Q    1,000 percent sure you didn't?

23        A    An application?

24             MS. TROY:  Objection as to form.

25        Q    You can answer.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

49

1                    L. Stidhum

2              MS. TROY:  What do you mean by

3         1,000 percent sure?  Objection to form.

4              MR. KATAEV:  I'm not going to qualify that

5         with a response.  You can answer the question.

6              MS. TROY:  Rephrase your question, sir.

7    BY MR. KATAEV:

8         Q     Please answer the question as asked.

9         A     Repeat it.

10        Q     Are you 1,000 percent sure you did not

11   fill out any employment application at NYC Motor

12   Cars?

13        A     I don't remember filling one out.  I was

14   brought there by a sales manager that Isaac had

15   working with him.

16        Q     Who was that?

17        A     Ali.

18        Q     When you say you can't remember, you can't

19   remember one way or the other, correct?

20        A     What do you mean?

21        Q     You can't remember whether you did fill

22   out an employment application or not?

23        A     Right.  I was brought there by someone

24   else.  He was kind of like, You don't have to be

25   interviewed, you don't have to do this, just come.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

50

1                    L. Stidhum

2          Q    Do you know Ali's full name?

3          A    I'm not sure how to spell it.  Ali

4     Raskesnia, something like that.

5          Q    When you started working at NYC Motor

6     Cars, it was a new dealership?

7          A    Not that I know of.

8          Q    Was your compensation structure there the

9     same as it was at Hillside Auto Outlet?

10         A    No.

11         Q    What was the compensation structure there?

12         A    The commission was doubled.

13         Q    In other words, it was $300 per car?

14         A    Yes.

15         Q    It was the same $300 weekly draw?

16         A    Yes.  Not draw, it was salary.

17         Q    Thank you for clarifying.  There was no

18    5 percent bonus?

19         A    No, but I did have a monthly bonus

20    structure.

21         Q    Based on volume, correct?

22         A    Correct.

23         Q    When did you stop working at NYC Motor

24    Cars?

25         A    When I gave birth.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

51

1                      L. Stidhum

2          Q     When was that?

3          A     In July.  I stayed, like, a week up until

4     I gave birth so maybe July of 20-something.

5          Q     2020?

6          A     2019.

7          Q     I see what you're saying.  20-something

8     meaning the day?

9          A     Yes.

10         Q     Congratulations by the way.

11         A     Thanks.

12         Q     You were there at NYC Motor Cars for

13    approximately six months, correct?

14         A     Right, and I did go back.

15         Q     When did you return?

16         A     I want to say like October, September,

17    October around there.

18         Q     Are you still employed there?

19         A     No, I'm not.

20         Q     When did you cease working there?

21         A     About a month or two after I actually left

22    because the store was completely different,

23    employees were different, it was not doing the

24    volume it was and I became a BDC manager at Luxury

25    Motor Club.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

52

1                       L. Stidhum

2          Q     Business development center?

3          A     Yes.

4          Q     You ceased working at NYC Motor Cars in or

5     about November or December of 2019, correct?

6          A     Yes.

7          Q     You quit?

8          A     I'm sorry?

9          Q     You quit?

10         A     Yes, I did.

11         Q     You went to Luxury?

12         A     Motor Club.

13         Q     Where is that?

14         A     In Franklin Square.

15         Q     How did you obtain the position there?

16         A     Probably on Indeed or something.  Some

17    type of employment ad.

18         Q     When did you start there?

19         A     Mid November of 2019.

20         Q     Are you still working there?

21         A     No, I'm not.

22         Q     When did you stop working there?

23         A     When Covid hit.  March, early March.  I

24    got Covid really bad.  I decided to leave and not

25    get my kids sick.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

53

L. Stidhum

1

2      Q      Did you return to the workforce after

3      March 2020?

4      A      I did.

5      Q      When was that?

6      A      Actually, the owner of NYC Motor Cars

7      called me that he was opening a new store so I don't

8      remember the exact time, but he told me he was

9      opening a new store and he wanted me to run the

10     store that I worked at on Queens Boulevard.  I don't

11     remember the exact month and date.

12     Q      If I understand correctly, the owner of

13     NYC Motor Cars was opening a new store and needed

14     your help with his existing store at NYC Motor Cars?

15     A      Correct.

16     Q      Did you go back to NYC Motor Cars?

17     A      I did as a sales manager.

18     Q      Do you remember what month in 2020 it was?

19     A      I don't.  It was probably maybe late

20     April, early May, around there.

21     Q      That's fine.  Are you still there?

22     A      No, I'm not.

23     Q      When did you stop work there?

24     A      I don't remember the exact timeframe.  I'm

25     not sure.  I was trying to think.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

54

1                          L. Stidhum

2          Q    Where are you working now?

3          A    I'm not working.

4          Q    When did you stop working?

5          A    I gave birth last year.  I took off pretty

6     much since January of last year.

7          Q    January of 2022?

8          A    Right.  I did work at a dealership for a

9     couple of weeks.  It didn't work out.  It was super

10    slow.

11         Q    Which dealership was that?

12         A    Great Neck Motor Sports.

13         Q    Is that on Great Neck Road?

14         A    Yes.

15              MR. KATAEV:  Off the record.

16    (Whereupon, an off-the-record discussion was held.)

17    BY MR. KATAEV:

18         Q    Other than the last job at NYC Motor Cars

19    as a sales manager and the job at Great Neck Motor

20    Sports, did you work anywhere else after April of

21    2020?

22         A    Yes, I did.  NY Luxury Motors, but again

23    it was a bad situation there.  It was in a bad spot

24    and the dealership wasn't getting any traffic at

25    all, so I decided to leave and look for other

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

55

1                    L. Stidhum

2    employment elsewhere.

3         Q    Were you fired from any of these jobs we

4    talked about today?

5         A    No, I was not.

6         Q    At any of these jobs, did you ever fill

7    out any employment application?

8         A    For Luxury Motor Club, I definitely did.

9    Great Neck, I definitely did.  The only one I can't

10   recall is NYC Motor Cars because Ali was the one who

11   brought me there, I don't remember.  Everywhere else

12   I did fill out an employment application.

13        Q    Whenever you filled out an employment

14   application, you did list Hillside Auto Outlet as a

15   past experience, correct?

16        A    Of course.

17        Q    The only reason there are gaps in your

18   work experience is because of the birth of your two

19   children, correct?

20        A    Right, and Covid.

21        Q    When you applied for a position at

22   Hillside Auto Outlet it was for a salesperson,

23   correct?

24        A    Right.

25        Q    How was it you learned about the position?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

56

1                      L. Stidhum

2          A    I believe it was Craigslist and I got a

3     call the next day.

4          Q    You called based on the Craigslist ad?

5          A    No.  I sent in my application and got a

6     phonecall the next day.  Not my application, my

7     resume.

8          Q    When you got the call the next day, do you

9     remember who it was?

10         A    Isaac.

11         Q    To the best of your recollection, how did

12    the conversation go?

13         A    I don't remember.  He told me to come in,

14    if I can come in the same day and I was kind of

15    bummed about losing my job -- not losing my job,

16    leaving my job at the hotel and I wanted to get a

17    job so bad, so I went the same day that he called

18    and got the job.

19         Q    You met with Isaac in person that day?

20         A    Yes.

21         Q    What do you recall about your conversation

22    with Isaac in person that day?

23         A    Honestly, I don't remember.  I remember

24    him saying that he was willing to give me a shot and

25    to wait for his partner and then I spoke with Jay.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

57

1                    L. Stidhum

2          Q    When you refer to his partner, that was

3     Jenneque?

4          A    Yes.

5          Q    You also spoke with Jenneque that day?

6          A    Yes, I did.

7          Q    You got the job the same day?

8          A    Right.

9          Q    An interview took place at the dealership,

10    correct?

11         A    Yes.

12         Q    At Hillside Auto Outlet, correct?

13         A    Yes.

14         Q    What is your understanding as to the basis

15    for which you got hired?

16         A    What do you mean by that?

17         Q    Why do you believe you were hired?

18         A    I'm not sure.

19         Q    As far as you understood it, Isaac and/or

20    Jenneque together made a decision to hire you,

21    correct?

22         A    I mean, Isaac already told me he was

23    willing to give me a shot and it was more like a

24    meeting Jay type of thing.

25         Q    At the time you were hired, Andris Guzman

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

58

1                      L. Stidhum

2     was not an employee of the dealership yet, correct?

3          A    He was.

4          Q    He did not participate in the decision to

5     hire you, as far as you know, correct?

6          A    No, he did not.

7          Q    You know that for a fact or it's as far as

8     you know?

9          A    It's as far as I know.

10         Q    He did not interview you, correct?

11         A    No.

12         Q    At the time that you were hired, Jory did

13    not participate in the decision to hire you,

14    correct?

15         A    No.

16         Q    Jory was not present daily at the

17    dealership, correct?

18         A    Yes.

19         Q    Was Jory ever present at the dealership?

20         A    He was.  He would pop in a couple of times

21    a month.

22         Q    Same question for Ron:  As far as you

23    know, he did not participate in the decision to hire

24    you, correct?

25         A    No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

59

1                        L. Stidhum

2          Q     Was Ronald ever present at the dealership?

3          A     Again, same thing.  Yes, here and there.

4          Q     During the times that Jory and/or Ron

5     would visit the dealership, did you interact with

6     either of them?

7          A     Yes.

8          Q     What was the nature of your interaction

9     with them?

10         A     It was more of how we were doing, how

11    things were going.

12         Q     Pleasantries?

13         A     Pretty much.

14         Q     Do you recall receiving a written offer of

15    employment when you were hired?

16         A     No, I did not.

17         Q     Did you start work the same day you were

18    hired?

19         A     I'm not 100 percent sure.  I want to say

20    yes, but I'm not sure.

21         Q     To whom did you report as soon as you

22    started working?

23         A     What do you mean to who did I report?

24         Q     As a salesperson, you reported to someone

25    higher, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

60

1                        L. Stidhum

2          A    Right.  Mostly I would go to Isaac or Jay,

3     when I first started there at least.

4          Q    You did not report to Andris Guzman at the

5     time, correct?

6          A    Not that I can really recall.  Up until

7     Jay leaving, he didn't do too much.

8          Q    Jay left in July or August of?

9          A    2018.

10         Q    After July or August of 2018 is when you

11    started reporting to Andris Guzman; is that right?

12         A    Correct.

13         Q    You never reported to Jory, correct?

14         A    Not on that aspect.  Only when there was

15    an issue.

16         Q    Give me an example.

17         A    Like, when I was missing some of my car

18    pay, I did reach out to him, I called him and sent

19    him a text message as well.

20         Q    That was in January of '19 before you

21    quit, correct?

22         A    Correct.

23         Q    Other than that --

24         A    No, I'm sorry.  It was probably after I

25    quit, once I didn't receive the compensation after

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

61

1                      L. Stidhum

2      telling Isaac.

3             Q     In January of '19, correct?

4             A     Right.

5             Q     Other than that, you never interacted with

6      him other than pleasantries, correct?

7             A     For Jory, yes, that's pretty much it.

8             Q     What about Ronald, you never reported to

9      him, correct?

10            A     Right.

11            Q     You had no interactions with him other

12     than pleasantries, correct?

13            A     And about the bonus situation.

14            Q     When did you reach out to Ron about the

15     bonus situation?

16            A     I didn't reach out to him.  He was in the

17     store.  He came in, asked how everyone was doing, he

18     looked really happy.  I mentioned -- I don't know

19     how I worded it, but I mentioned I was pissed

20     because I didn't get the bonus and I was only a

21     couple of cars away, and that I was really hoping to

22     get it because I was pregnant and stuff.  That's

23     when whatever conversation happened between him and

24     Isaac happened.  I don't know what happened after

25     that.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

62

1                    L. Stidhum

2        Q    Do you remember when that was, month and

3    year?

4        A    Early December or the last two days of

5    November, something like that.  It had to be the end

6    of November or early December.

7        Q    After Jenneque left, you started reporting

8    to Andris Guzman.  What was the nature of the

9    working relationship?  What did you report to him

10   on?

11       A    So up until I got my own access --

12   actually, I feel like it was right about the same

13   time because Jay was pretty quick with what she

14   would do.  For the first couple of days, I had to go

15   to him, give him the application, have him run the

16   credit and let me know if the customer qualified or

17   whatever the case may be.  That was pretty much it

18   up until I got my own access, then we really didn't

19   have to do too much communicating.

20       Q    From the first time you started working at

21   the dealership initially in order to get financing,

22   you would have to go to Jay in order to run credit

23   and apply for financing, correct?

24       A    Right.  I mean, I was new to the business

25   so I don't know much about those things up until I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

63

1                        L. Stidhum

2    was taught it.

3          Q    Fair enough.  When Jay left, you continued

4    doing that with Andris, correct?

5          A    Right.

6          Q    Let's set aside for now the Dealertrack.

7    I have some questions about this process before you

8    got the Dealertrack access.

9                    When you worked with Jay to get these

10   financing applications in, was Jay the exclusive,

11   only person that did this?

12         A    No.

13         Q    Sometimes you worked with others, correct?

14         A    Yes.  Isaac would do it as well.

15         Q    Other than Isaac and Jay, was there anyone

16   else that did it?

17         A    Later on there was a finance manager hired

18   after Jay left.

19         Q    Who was that?

20         A    Serge.

21         Q    Serge came on after?

22         A    Yes.

23         Q    After Jay left?

24         A    Yes.

25         Q    In the beginning, it was Isaac or Jay and

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

64

1                    L. Stidhum

2    that's it, correct?

3         A    Correct.

4         Q    How did you go about deciding who to go

5    to?

6         A    Whoever was less busy.  I was always

7    trying to grab whoever I could.  Whoever was less

8    busy is who I would go it.

9         Q    After Jay left, you had the option of

10   Andris or Isaac, correct?

11        A    Right, and I would choose Isaac more of

12   the time because he was quicker.  Andris was getting

13   trained to do that part.  Once Jay left, he was kind

14   of taking over her position.

15        Q    Jay left in August or July of '18.  Do you

16   remember in relation to that when Serge started?

17        A    It had to be like end of August because I

18   remember there was a couple of people that came to

19   interview and stuff so it had to be after but I'm

20   not sure exact dates.

21        Q    Whenever you went to Isaac or Jay in the

22   beginning to run financing applications for

23   customers of the dealership, prospective customers

24   of the dealership, there would sometimes be delays

25   caused because the banks wanted more information,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

65

1                     L. Stidhum

2     correct?

3          A     Yes and no.

4          Q     Explain.

5          A     I mean, when it comes to any delays in

6     banks, it would be because of a document that they

7     needed, but for the most part, you would have all

8     the documents.  It was in our sales procedure to get

9     ID, the most recent two paystubs and that proof of

10    address if needed.  It's kind of hard to answer that

11    question because, for the most part, they would have

12    everything needed.

13         Q     To the extent a customer did not have

14    something that was needed, that would delay the

15    process, correct?

16         A     Yes.

17         Q     Is it not true that sometimes individuals

18    are self-employed and don't necessarily have things

19    like paystubs?

20         A     Of course.

21               MS. TROY:  Objection.  Argumentive.

22         Q     You can answer.

23         A     I mean, yeah.

24         Q     In those situations when you submit the

25    applications there would be a delay, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

66

1                    L. Stidhum

2        A    Yes.

3        Q    The only way to prevent the delay from

4   being further delayed is to obtain whatever the

5   document is and submit it to the bank, correct?

6             MS. TROY:  Objection to form.

7        Q    You can answer.

8        A    One more time, your question.

9             MR. KATAEV:  Read it back.

10  (Whereupon, the referred to question was read back

11                  by the reporter.)

12       A    Yes.

13       Q    Sometimes the customer would not have that

14  information handy the same day, correct?

15       A    Yes.

16       Q    Sometimes the customer would never return

17  with the information at all, correct?

18       A    Correct.

19       Q    This rings true from the beginning when

20  you worked with Jay and Isaac, to the end when you

21  were working with Andris, Isaac and Serge, correct?

22       A    Right.

23       Q    Towards the end of your employment

24  relationship with Hillside Auto Outlet, you had the

25  ability to go to either Isaac, Andris or Serge to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

67

                        L. Stidhum

1

2      run financing applications, correct?

3          A    Correct.

4          Q    You're telling me that Andris was the

5      individual who caused you purposefully to wait

6      longer than everyone else, correct?

7          A    I'm sorry.  I got to run back a little

8      bit.  Serge would not run credit.  He would if he

9      was not busy, but for the most part, it was the

10     sales manager or the general manager's job to run

11     the credit and follow up with the customer prior to

12     giving it to the finance manager to not waste his

13     time.

14              So, yeah, Serge did not run the

15     credit.  It was mostly up to Isaac and Guzman to run

16     the credit because Serge would really just submit

17     the deal to the banks.

18         Q    Understood.  What you're saying generally

19     is that, in terms of who you could go to after Jay

20     left, it was really just Isaac and/or Andris,

21     correct?

22         A    Yes.

23         Q    It was very rare that Serge would run the

24     credit?

25         A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

68

1                       L. Stidhum

2      Q     Okay.

3            MR. KATAEV:  Can we have the original

4      question read back?

5            MS. TROY:  For the record, Mr. Kataev has

6      been coughing throughout this morning.

7            MR. KATAEV:  It's a moot point.  You don't

8      need to make these stupid things on the record.

9            MS. TROY:  I don't appreciate you calling

10     my stuff stupid.

11           MR. KATAEV:  You achieved what you wanted.

12     We are in a remote deposition.  What is the

13     point?  Don't interrupt the deposition.

14           MS. TROY:  I was concerned for my client

15     and my health, and it was perfectly valid

16     because you told me you'd be asymptomatic by

17     Friday.

18           MR. KATAEV:  I said other than a minor

19     cough, but it's a moot point.  Please don't

20     interrupt my deposition.

21     (Whereupon, the referred to question was read back

22                    by the reporter.)

23     A     Yes.  Isaac left probably the first week

24     of December, something like that so yes, that's

25     partially the reason why I had extended wait times

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

69

1                        L. Stidhum

2       because he did not want to give me the access I had

3       before.

4           Q     Isaac never caused you to wait longer like

5       Andris did, correct?

6           A     Correct.

7           Q     Neither did Serge in the rare circumstance

8       when you would go to him, correct?

9           A     Correct.

10          Q     Your complaint says that the only

11      reason -- withdrawn.

12                    Your complaint says that Andris only

13      caused you to wait longer to run the financing

14      applications after you had disclosed to him and

15      others that you were pregnant, correct?

16          A     That's how it seemed, yes.

17          Q     When you disclosed to individuals that you

18      were pregnant, you did so at the dealership,

19      correct?

20          A     Yes.

21          Q     Who was present when you told everyone the

22      great news?

23          A     I mean, all the salespeople were present.

24      I was a few minutes late, I remember that because I

25      came in and everyone was there and I was waving my

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

70

1                          L. Stidhum

2      sonogram picture around.  I don't remember if Isaac

3      was there when I got there and said it or not, but I

4      know definitely Guzman was there and I did tell

5      Isaac later that day when he came in for sure.

6           Q    I want to understand.  When you first said

7      it, who was immediately in your circle or presence?

8           A    Guzman was there because he would sit at

9      the podium so he was front and center.  David was

10     there, I remember Sean being there, he was another

11     salesperson, the other David, I don't remember his

12     last name, I believe it starts with a P.  I don't

13     believe Serge was there just yet.  He usually came a

14     little later.  I'm not sure if Isaac was there yet

15     but I know that same day I did show him the

16     sonogram.

17          Q    When you made that announcement, did

18     Andris say anything to you?

19          A    I don't recall.

20          Q    Do you recall him saying congratulations?

21          A    I don't.

22          Q    Do you recall anyone else saying

23     congratulations?

24          A    Yes.  The other salespeople were looking

25     at it together.  Everybody was, like, excited for

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

71

1                          L. Stidhum

2      me, I guess I could say.

3           Q    Did Andris make any statements at all

4      during that conversation?

5           A    I honestly don't think so.  He didn't have

6      much personality, I want to say.  I don't feel like

7      he said anything to me.

8           Q    Prior to the time that you announced your

9      pregnancy to him and to the others, did you and

10     Andris have any interpersonal conflicts with each

11     other?

12          A    Honestly, yes, we did, but it was -- we

13     kept it professional.  We worked in a professional

14     environment.  We kept it professional.

15          Q    What was the nature of the interpersonal

16     conflict that you had?

17          A    Honestly, I don't remember.

18          Q    It was all work-related, of course?

19          A    Yes.

20          Q    Maybe you had some disagreement or

21     argument about something relating to a sale,

22     correct?

23          A    Yes, definitely work-related.  Nothing

24     personal, I don't think.

25          Q    Did any of your interpersonal conflicts

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

72

1                    L. Stidhum

2       with each other rise to a level at any point before

3       you announced your pregnancy where someone else had

4       to get involved and mediate you two?

5            A    Not that I recall, no.

6            Q    Whatever happened between you two, you

7       sort of water-under-the-bridge type of thing?

8            A    Pretty much.

9            Q    How many times did that happen prior to

10      the time that you announced your pregnancy?

11               MS. TROY:  Objection to form.  Ambiguous.

12           Q    You can answer the question.

13           A    Honestly, I don't remember.  It's probably

14      once or twice.  Nothing like crazy where we hated

15      each other and couldn't speak.  It was nothing like

16      that.

17           Q    You had two little squibbles here and

18      there?

19           A    Yes.

20           Q    Do you recall whether those two incidents

21      were close in time to the time that you learned were

22      pregnant?

23           A    I don't remember, no.

24           Q    It could have been at the beginning, it

25      could have been at the middle, or it could have been

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

73

                        L. Stidhum

1

2    towards the end when you learned you were pregnant?

3         A    As far as after my pregnancy announcement,

4    I definitely remember what transpired.  In those

5    little hiccups we had, I don't remember when, no.

6         Q    Andris was one who never directly made any

7    comments to you about your pregnancy, correct?

8         A    Not that I remember, no.

9         Q    In terms of the two incidents you had

10   prior to the time you learned you were pregnant, did

11   you have similar incidents after the fact?

12             MS. TROY:  Objection.  Ambiguous.

13        Q    You can answer.

14        A    I don't recall.

15        Q    One way or the other, correct?

16             MS. TROY:  Objection.  Ambiguous.

17        Q    You can answer.

18        A    I don't know what you mean by, One way or

19   the other.

20        Q    It could have happened that you two had a

21   little argument or it could not have happened, you

22   don't remember either way?

23        A    Honestly after announcing my pregnancy,

24   there wasn't much arguing.  It was more like I was

25   doing a lot of crying and upset, so I can't really

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

74

1                          L. Stidhum

2       say that yes one way or the other.

3            Q     When you say you cried, did you cry

4       physically in front of Guzman?

5            A     Absolutely.  Multiple times, and in front

6       of Isaac as well.

7            Q     When you cried in front of Guzman, what

8       happened?

9            A     Nothing, absolutely nothing.  He would

10      have no emotion.

11           Q     Did he ask why you were crying?

12           A     No.

13           Q     Your job responsibilities at the

14      dealership never changed, correct?

15           A     No.

16           Q     Are you currently living with the father

17      of your children?

18           A     No.

19           Q     The father of your children is not in any

20      way related to Hillside Auto Outlet, correct?

21           A     No.

22                 MS. TROY:  We are going to strike any

23                 irrelevant questions and answers after the

24                 deposition.

25                 MR. KATAEV:  Feel free to make that motion

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

75

1                         L. Stidhum

2         whenever you're ready, but don't do it during

3         the deposition.

4    BY MR. KATAEV:

5         Q    You never had any relationship with Andris

6    Guzman outside of work, correct?

7         A    Absolutely not.

8         Q    The compensation rate that you had, other

9    than the 5 percent bonus after Jay left, remained

10   the same, correct?

11        A    I'm sorry, what was that?

12        Q    The compensation structure that you

13   outlined to me, other than the 5 percent bonus going

14   away after Jay left, remained the same, correct?

15        A    Yes.

16        Q    You sold a car, you got an extra $150,

17   correct?

18        A    Yes.

19        Q    That bonus was not discretionary, correct?

20        A    No.  It took me months to get it.

21        MS. TROY:  I don't think she understood

22        your question honestly.

23        Q    When you say it took you months to get it,

24   what did you mean?

25        A    It took me months to get a bonus in

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

76

1                      L. Stidhum

2      general.

3           Q     Right.  The 5 percent type of bonus,

4      right?

5           A     No.  That wasn't a bonus.  That was

6      something promised upon being hired.  The bonus was

7      something that came of the blue because I was, like,

8      at 20 cars in the middle of the month and he was

9      like, If you hit 30, I will give you an extra

10     thousand.

11          Q     When you say it took you months to get it,

12     you mean it was only offered to you after working

13     months at the dealership?

14          A     Correct.

15          Q     Your duties remained the same from May of

16     '18 until January of '19, correct?

17          A     Yes.

18          Q     Your pay remained the same except for the

19     5 percent issue from May of '18 to January of '19,

20     correct?

21                MS. TROY:  Objection.  Asked and answered.

22          She may answer again.

23          A     Yes.

24          Q     The 5 percent change occurred prior to

25     your pregnancy, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

77

1                        L. Stidhum

2        A    Yes.

3        Q    Your position remained the same from May

4    of '18 until January of '19, correct?

5             MS. TROY:  Objection to form.  Asked and

6             answered twice, but she may answer again.

7        A    Yes.

8        Q    Were you ever disciplined at Hillside Auto

9    Outlet for any work-related issue?

10        A    No, not that I recall.

11        Q    Were you ever suspended from work?

12        A    No, I was not.

13        Q    Did you ever receive a performance

14    evaluation?

15        A    No.

16        Q    What was the most number of cars that you

17    sold in a given week?

18        A    I want to say like seven to -- honestly, I

19    don't recall but the records will show exactly, but

20    I know it was definitely more than seven.

21        Q    In your understanding, were you in any way

22    the top salesperson at the dealership?

23        A    I was.

24        Q    At all times?

25        A    Yes, up until December of 2018.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

78

1              L. Stidhum

2        Q    When Andris started making you wait longer

3    in December of '18, did you confront him about it?

4        A    Yes, I did.  I did ask him why is he

5    making my customers wait longer.  I would constantly

6    press the issue of, What's going on with this

7    customer, or he would constantly tell me, You have

8    to wait, you have to wait, there's other people

9    here, and I'm like, it wasn't like this.  These

10   people are getting antsy and it happened on multiple

11   occasions that I would have these conversations with

12   him.

13       Q    He never said anything to you about your

14   pregnancy during those conversations, correct?

15       A    I mean, not that I can recall.  What is

16   there to say?

17       Q    To your knowledge, is Andris Guzman

18   married?

19       A    I have no idea.

20       Q    To your knowledge, does Andris Guzman have

21   children?

22       A    No clue.

23       Q    What basis do you have to believe that

24   Andris Guzman made you wait longer solely because of

25   your pregnancy?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

79

                          L. Stidhum

1

2        A    It happened only right after I announced

3    my pregnancy, that would be the first reason why,

4    and not to mention, like I said before, he was my

5    point of contact once Jay was fired so I can tell

6    the difference in, you know, from that time and

7    after I announced my pregnancy.

8              It wasn't -- I had customers waiting

9    so long after Jay quit.  From that time after my

10   pregnancy, I know it's clear as day that that's what

11   was going on.  I was a top saleswoman at a point and

12   I went from being the top salesperson to being the

13   one with the least cars out.  It doesn't add up.

14       Q    Isn't it true that December is a slow time

15   of the month for selling cars because it's cold out?

16       A    I wouldn't say because it's cold out.  I

17   honestly believe we sold a lot of cars, anywhere

18   between 45 to 60 cars a month.  Sometimes even

19   exceeded 65 cars, so it's kind of hard to say

20   because if I'm not mistaken, yes, November we sold

21   the most cars but the month prior to that we

22   probably sold the same amount of cars in that store

23   as December.

24       Q    How would you know or keep track of the

25   number of cars sold in total through the dealership?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

80

1                       L. Stidhum

2          A    We had a board in Serge's office that we

3    would keep track of how many sales everybody had.

4    So each salesperson's name would be up there and we

5    would put like a tally mark and keep track of all

6    the sales.  I always wanted to make sure I was

7    number one so I would always be the one keeping

8    track of that board.

9          Q    It's true, isn't it, that prior to your

10   pregnancy, Andris Guzman would frequently keep

11   customers waiting longer than necessary, correct?

12         A    I don't believe that to be correct.  Isaac

13   was every involved and it felt like it was something

14   he did once he saw that Isaac wasn't looking over.

15   He would always be very active in our daily routine.

16   He would ask us, What's going on with this customer,

17   greet the customers and do things like that.  I

18   can't say that that's entirely true, no.

19         Q    I will place up on the screen what will be

20   marked as Defendant's Exhibit 2.  I will represent

21   to you, Ms. Stidhum, that this is the complaint that

22   was filed in this case.  I'm going to scroll up to

23   show the header of page six for your esteemed

24   counsel's edification.

25   (Defendant's Exhibit B, Marked for Identification.)

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

81

1                       L. Stidhum

2      BY MR. KATAEV:

3           Q    I want to focus your attention on the

4      following paragraphs.

5           A    Can I review the entirety of the document

6      before answering anything?

7           Q    You know what, we can take a break for you

8      to do it.  Your esteemed lawyer has a copy of the

9      complaint, I'm sure.  So we are going to take a

10     quick break.  It's 11:14.  We will get back on at

11     11:30.

12          A    Okay.

13          Q    That way you will be ready to answer any

14     questions.  I will tell you that my questions, for

15     the record, are solely at this point related to

16     paragraphs 35 through 38, okay?

17          A    All right.

18          Q    I will leave it up on the screen for you.

19          MR. KATAEV:  We are going to take a break.

20     Off the record.  Back at 11:30.

21     (Whereupon, an off-the-record discussion was held.)

22     BY MR. KATAEV:

23          Q    Back on the record.  Ms. Stidhum, welcome

24     back.  I want to ask you before we get back into the

25     questions, during the break, did you have an

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

82

1                   L. Stidhum

2     opportunity to review the complaint in full?

3          A     Not in full.  I skimmed through it.

4          Q     During this break and the break before

5     that, without divulging any of the actual

6     conversations you had, did you discuss your

7     testimony with your counsel?

8          A     No.

9          Q     Okay.  My question was:  Isn't it true

10    that even prior to the time that you disclosed your

11    pregnancy, Andris Guzman would take a long time with

12    prefilling financing applications for customers?

13         A     So yes, that is partially true, that's why

14    I said that before.  He was just getting into Jay's

15    role at the dealership so he was still kind learning

16    the ropes so that's why Isaac saw I was pretty fast

17    with the computer.  He sat down with me in his

18    office and showed me how to run credit.

19                You're transferring information from

20    paper to the computer, so he did give me my access

21    at that point, but of course over time, we are

22    talking four months later that we went back to this.

23    Of course over time, Guzman learned how to navigate

24    through it a little quicker but at the time I

25    announced my pregnancy, it doesn't make sense why he

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

83

1                          L. Stidhum

2      would backtrack, if you get what I'm saying.

3           Q    I understand that.  That's a fair

4      explanation.  It's true, is it not, that throughout

5      the time once Guzman learned how to do everything

6      properly, he generally would take 20 minutes to

7      handle these applications?

8           A    More or less.

9           Q    Your complaint is that after you disclosed

10     your pregnancy, it would take anywhere from 40 to 60

11     minutes, correct?

12          A    Right or longer.

13          Q    You allege in your complaint that as a

14     result of the longer wait times that we just

15     discussed, most of your customers would walk out and

16     not complete their purchase, correct?

17          A    Yes.

18          Q    How do you know that it's because of the

19     wait times that they decided to walk out?

20          A    Generally, we are the ones who would go

21     back to them and tell them, You don't qualify, or

22     You need X amount of dollars down or you can't get

23     this car, you would need that car.  It would be a

24     conversation between the sales manager and the

25     salesperson.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

84

1                      L. Stidhum

2                  They wouldn't really want to jump

3      into the deal unless they had to, so it's like, I

4      wouldn't get to speak to my sales manager or if I'm

5      like, Hey, hold on, my sales manager got something,

6      at this point, they are frustrated, they are walking

7      out the door.

8          Q    Did any customers actually tell you, We

9      don't want to purchase anything from you because it

10     took you to long to get back to us?

11         A    Yes, it happened a couple of times.

12         Q    Do you remember the names of any of those

13     individuals?

14         A    I don't.  I have gone through hundreds,

15     maybe thousands of customers, I don't.

16         Q    Are you familiar with the lead management

17     system at the dealership?

18         A    Lead management system?  The CRM that was

19     used?

20         Q    CRM meaning customer relationship

21     management, right?

22         A    Yes.

23         Q    You're familiar with that program?

24         A    Yes.

25         Q    That program is used to track every single

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

85

1                        L. Stidhum

2       potential customer that comes in and whether or not

3       it results in a sale, correct?

4            A    Not necessarily correct.  The business

5       development center would focus on their appointments

6       because that's what they're paid on.  They are not

7       paid on walk-in customers, so any walk-in customers

8       are not all accounted for.  I can't say that's

9       completely true.

10           Q    How many walk-in customers in a month do

11      you think come in that are not accounted for?

12           A    Honestly, Saturdays or the weekend were

13      our busiest time because we on a main strip,

14      Hillside has a bunch of dealerships.  I would say

15      it's like a 40/60 or 50/50 because that weekend

16      volume is equivalent to the whole week's worth of

17      volume.  I can't really say how many customers.

18                     It was almost equal because of where

19      we were.  Location is everything in this business.

20      We had dealerships in front of us, beside us, down

21      the street from us.  We would have customers leaving

22      one spot to come to us that didn't have an

23      appointment.  I can't put a number on it.

24           Q    Your testimony today is that walk-ins were

25      not accounted for in the CRM system?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

86

1                       L. Stidhum

2         A     Not every single one.  Sometimes they

3    would log them in, sometimes I would not see them

4    logged in.

5         Q     What be the reason for not logging someone

6    in versus logging them in?

7         A     I can't say.  I didn't work in that

8    department.  I would say it's laziness.

9         Q     Are you speaking from your subsequent

10   experience as a BDC manager?

11        A     Yes.

12        Q     Paragraph 53 of the complaint, you said in

13   December and January of '18 and '19, you would

14   constantly call Guzman to ask how long customers

15   would wait; do you see that?

16        A     Yes.

17        Q     When you say call, do you mean physically

18   with the cellphone?

19        A     No.  I mean call over to him.  He was at a

20   podium.  Our desks were diagonal from each other.

21        Q     What would happen when you would ask

22   Guzman how long?

23        A     He would tell me I would have to wait,

24   that there are other customers here.

25        Q     Did you observe at the same time that this

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

87

1                    L. Stidhum

2    was happening that Andris Guzman would help a

3    different salespeople out and provide information?

4         A    Yes.  There was multiple occasions where I

5    would see that a customer came in after my customer

6    and he still hasn't touched the application or the

7    folder was still sitting up top.

8         Q    With which salespeople did that occur with

9    that you can recall?

10        A    It happened with Sean because me and Sean

11   were kind of, I wouldn't say on the same level.  He

12   was a little bit of my competition at a point.  And

13   David Parsons, and David Manrique also witnessed it

14   because he was selling more cars than me, and he was

15   kind of not the best salesperson, I would say.  He

16   was always second-to-last or last.  It was something

17   that everybody kind of witnessed.

18        Q    During this time, Isaac was out on a

19   month-long vacation?

20        A    Correct.

21        Q    That's the reason why you couldn't go to

22   Isaac to assist you with certain applications,

23   correct?

24        A    Yes.

25        Q    Did you attempt to go to Serge to run

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

88

1                        L. Stidhum

2    applications instead of with Andris Guzman?

3         A    Yes, I did.  It's -- kind of plays each

4    other hand in hand because Guzman's job was to run

5    the credit and if Serge was overwhelmed, he would

6    submit the application.  So whatever credit that

7    Guzman did run was already at Serge, and he's like,

8    I'm busy, I can't do this right now, you have to

9    give it to Guzman, you have to wait on Guzman, so

10   that's what I had to do.

11        Q    Whenever a sale was made, you would

12   receive a commission, correct?

13        A    Yes.

14        Q    To your knowledge, similarly, Serge would

15   also receive a commission, right?

16        A    Yes.

17        Q    To your knowledge, what about Guzman, was

18   he not also entitled to a commission?

19        A    He was.

20        Q    Is it your testimony that Andris Guzman

21   purposely made you wait such that he suffered and

22   didn't get commissions on sales?

23             MS. TROY:  Objection.  Argumentative.

24        Q    You can answer.

25        A    Honestly, it's hard to answer that because

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

89

1                          L. Stidhum

2      it's, like, I can't really understand why he would

3      put himself in that position either because one

4      person wins, we all win.  He didn't really care.  He

5      took on whoever he felt he wanted to take on first.

6          Q    Do you believe that he prioritized other

7      salespeople over yours because he felt that those

8      customers that those salespeople had were more

9      qualified?

10         A    It's hard to answer that question.  There

11     is no way to qualify a customer by looking at them.

12     If he's not running my credit, how is he going to

13     make that argument?

14         Q    Isn't it true that sometimes people who

15     work at dealerships stereotype customers and make

16     assumptions about their creditworthiness by looking

17     at them?

18         A    As being in a sales manager position, I

19     learned that that's not the way to properly manage.

20     I have seen people come in raggedy with 800 credit

21     scores and $10,000 to put down on a car, and some

22     people that dressed flashy and don't have anything

23     or don't even have a piece of credit.  I can't make

24     that argument because, as a sales manager in

25     previous dealerships, I would never do that.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

90

                          L. Stidhum

1

2      Q    You have seen other people make those

3  stereotypes, correct?

4      A    Again, I can't really say yes or no.

5      Q    Fair enough.  You spoke with Isaac when he

6  returned from vacation in January of '19?

7      A    Yes.

8      Q    What was your conversation with him?  What

9  did you say to him and what did he say to you?

10      A    I told him what was going on.  I showed

11  him the amounts of cars I have out and he didn't

12  really understand what was going on either.  And I

13  was promised that when he would return that I was

14  going to be promoted to sales manager, so I was

15  trying to hang in there.

16          So when he came, I did ask him, I was

17  like, Look, if you have no desire promoting me as

18  sales manager, then I don't really feel that I want

19  to work here anymore unless you're going to give me

20  more of my commission and not put me as a sales

21  manager, and he kind of didn't have any answer for

22  it, he said we would talk about it later.

23          At that point, I was tired of being

24  given the runaround and not making money.  As a

25  pregnant woman and being 19 years old, it's hard to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

91

                          L. Stidhum

1
2      be put in that position and not be scared.  Like, I
3      was 19 years old having my first kid and I'm getting
4      played at this place I thought I was going to grow
5      with.  I can't really -- it didn't make sense for me
6      to stay there any longer at that point.
7              Q    To your knowledge, is Andris Guzman still
8      employed at this dealership?
9              A    I have no idea.  I don't speak to them.
10             Q    To clarify, your testimony as to the basis
11     for your belief that Andris Guzman made you wait
12     longer solely because of your pregnancy was just
13     because it happened that you waited longer after you
14     disclosed your pregnancy than before, correct?
15             A    I'm sorry, one more time.
16             MR. KATAEV:  Read it back, please.
17     (Whereupon, the referred to question was read back
18                       by the reporter.)
19             MS. TROY:  Objection to form.
20     BY MR. KATAEV:
21             Q    You can answer.
22             A    That's not correct.  There is more to it.
23     It wasn't just the longer wait period.  He obviously
24     had Isaac's access to Dealertrack as well and he
25     refused to give me the password.  Like, he didn't

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

92

                          L. Stidhum

1                         L. Stidhum

2     feel the need to, and not to mention the decrease in

3     my sales played a part in Isaac not wanting to

4     promote me to sales manager as well.  It goes hand

5     in hand as to why I believe it was pregnancy

6     discrimination.

7          Q    You're alleging, as far as I understand,

8     that Andris Guzman was the only person who

9     discriminated against you based on your pregnancy,

10    correct?

11          MS. TROY:  Objection.  Calls for a legal

12        conclusion.

13          A    Not really.  I do believe Isaac kind of

14    discriminated against me as well by not promoting

15    me.  It is what it is at that point, but he did not

16    do anything to fix the issue.  He did not -- the

17    promotion can be taken away from anyone so I can't

18    hold it to that, but I do believe it had something

19    to do with my pregnancy as well because it was

20    something I was promised and was working towards

21    getting.

22               I texted him while he was on

23    vacation.  He responded but told me he would handle

24    it at a later time which I get it, you're on

25    vacation with your family.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

93

1                         L. Stidhum

2          Q    With respect to the promotion, when was

3     the first time that was a discussion?

4          A    It was sometime in November.  We were

5     talking about it because he was preparing for us for

6     his vacation for a month.  He was kind of the dad of

7     the dealership so he was watching over everything,

8     he made sure everything stayed afloat.

9                    It was definitely sometime in

10    November and he told me when he got back, we would

11    discuss it and go over what exactly was going to

12    happen at that point, but this is way before the

13    pregnancy discrimination and everything.

14         Q    This is before the pregnancy announcement?

15         A    Right.

16         Q    Who was the sales manager at that time?

17         A    It was -- at that time, it was kind of

18    weird because Guzman was the sales manager slash

19    finance or whatever, he was kind of doing both.

20    It's a hard question to answer because then he

21    brought in Ali while he was gone.  It was just a

22    mess.  I can't really answer that question

23    truthfully.  It was Guzman and Ali for a short

24    period of time.

25         Q    And so the discussion was that when Isaac

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

94

                         L. Stidhum

1

2    returned in January of '19, there would be

3    discussion about who is going to fill the role of

4    sales manager, correct?

5         A    Pretty much.

6         Q    Was the discussion that you would

7    definitely become sales manager?

8         A    Yes.  It wasn't a discussion of who would

9    fill the role.  It was him telling me he was going

10   to make me the sales manager and that was pretty

11   much his purpose of showing me how to run credit and

12   read credit because he was the one that told me how

13   to do both.  It's a whole bunch of numbers and

14   lines.  It's not something that you can understand.

15        Q    When Isaac returned in January of '19,

16   what was the next discussion had about the sales

17   manager position?

18        A    I told him if he had no desire to promote

19   me, then I wanted a raise or I would leave because I

20   was offered that position by Ali making double the

21   commission.

22        Q    What did he say in response?

23        A    I don't recall.  I remember him saying we

24   will talk about more at a later time.  I was fed up

25   at that point because how much more time do you want

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

95

1                    L. Stidhum

2      me to waste not making money.

3          Q     The truth is you didn't wait for a

4      decision, correct?

5          A     It felt like his answer was kind of clear

6      as day.  If he wanted to give me that position, he

7      would have given it to me at that point.

8          Q     He didn't expressly tell you, I'm not

9      giving you the position, correct?

10         A     I don't recall.

11               MR. KATAEV:  Off the record.

12     (Whereupon, an off-the-record discussion was held.)

13     BY MR. KATAEV:

14         Q     We are going to continue.

15               Andris Guzman did not have any

16     authority to discipline you in any way, correct?

17         A     Not that I know of.

18         Q     Andris Guzman did not have the power to

19     fire you, correct?

20         A     Not that I know of.

21         Q     Andris Guzman did not have the power to

22     change your pay, correct?

23         A     No.

24         Q     Andris Guzman did not have the power to

25     change the terms and conditions of your employment,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

96

1                        L. Stidhum

2       correct?

3            A    No.

4            Q    Okay.  Did you ever tell Andris Guzman, I

5       think you're doing this because I'm pregnant?

6            A    I want to say yes, if I'm remembering

7       correctly.  I do believe I made that statement, yes.

8            Q    What was his response?

9            A    Honestly, he was a very unemotional

10      person.  Like, he would look at you with blank eyes.

11      I don't believe I got any response out of him.

12           Q    That's the way he was towards everybody,

13      correct?

14           A    Yes, for the most part.

15           Q    Was anyone else present when you

16      confronted him?

17           A    I don't recall.

18           Q    Did you confront him at the podium?

19           A    Most likely.

20           Q    Did you complain to Isaac that you felt

21      that the actions being taken against you were

22      because of your pregnancy?

23           A    I'm not sure if I used the words to my

24      pregnancy, but I told him that ever since I

25      announced it, that this -- XY and Z has been

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

97

1                      L. Stidhum

2     happening.

3          Q     What was his response?

4          A     Honestly, I don't remember.  I feel like

5     it was more of, We will talk when I get back, and no

6     talk happened.

7          Q     What about the fact that you had to wait

8     longer for applications to be done makes you believe

9     it was discriminatory?

10         A     I'm sorry, one more time.

11         Q     What about the fact that you had to wait

12    longer for certain customer applications made you

13    believe it was discriminatory?

14         A     Like I said before, I worked with him for

15    months now and I have seen, you know, his growth in

16    the business, I have seen when he was not very good

17    and very, very slow.  Like, I watched him grow in

18    the business so for him to backtrack after my

19    announcement it doesn't really make any sense.

20         Q     Did anyone at Hillside Auto Outlet make

21    any statements to you that you believe suggest

22    discrimination?

23         A     Yes.  Ali and David and actually, I did

24    have somebody working there at the time who was a

25    friend of mine who would always try to calm me down

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

98

1                         L. Stidhum

2      when I would get upset or cry about the situation.

3      And she was like, Yeah, ever since this happened and

4      ever since you announced your pregnancy, this has

5      been going on.

6           Q    What is that person's name?

7           A    Brianna.

8           Q    What did Ali say to you that made you

9      believe it was a suggestion of discrimination?

10          A    He was kind of telling me about this

11     position he was offering so I didn't have to deal

12     with this.

13          Q    Other than that, anything else?

14          A    Not that I can recall.  It was more him

15     telling me that I wouldn't have to deal with these

16     types of things.

17          Q    What about David Manrique?

18          A    He told me that it's clear, because I

19     mean, his numbers were where my numbers usually were

20     so it's clear what was going on.  He actually

21     thought that it may be a strategy to get me out

22     sooner because they knew I would not be able to work

23     at a certain point.

24          Q    Why do you believe the dealership cared

25     that you wouldn't be able to work at a certain

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

99

1                      L. Stidhum

2      point?

3          A     I was bringing in the most numbers.  We

4      hit milestones that they never hit before me working

5      there.  They sold more cars than they sold prior to

6      me working there.

7          Q     As a business, wouldn't the dealership

8      want to maximize the amount of sales before you

9      left?

10              MS. TROY:  Objection.  Argumentative.

11         Q     You can answer.

12              MS. TROY:  Rephrase your question.

13         Q     I'm not rephrasing.  You can answer.

14         A     One more time.

15              MR. KATAEV:  Read it back.

16     (Whereupon, the referred to question was read back

17                    by the reporter.)

18         A     Of course.  I would believe that too but

19     again, it's not something that was done by the whole

20     dealership.  It was something done by an individual,

21     so I mean, it was more of a personal thing against

22     me while being pregnant.

23         Q     And personal on whose part, Andris

24     Guzman's, right?

25         A     Right, and also not to mention there was

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

100

L. Stidhum

1
2       somebody who was working there that was pregnant in
3       the DMV department and she was pregnant and she was
4       probably there not even a week after -- let me
5       rephrase that.
6                        She left maybe a week or even sooner
7       than a week of me working there, after me working
8       there, and I remember her storming out upset, so I
9       have reason to believe this might be a strategy used
10      to get out pregnant women.
11           Q    What was that employee's name?
12           A    Lily.  I don't remember her last name.
13           Q    What about Brianna, did she make any
14      statements that you believe suggested
15      discrimination?
16           A    Brianna was more a comforting friend,
17      like, I think this is going on because you're
18      pregnant.  Maybe they want to get somebody else in
19      to fill your place and stuff like that.
20           Q    You realize that one you gave birth and
21      went out on leave, the dealership would hire a
22      salesperson to take your place during that time?
23           A    Of course.  That's why it doesn't make
24      sense to me why things would go this way.
25           Q    You're saying that Andris Guzman was

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

101

                        L. Stidhum

1
2       behind all of this?

3           A    Yes, and partially Isaac as well.

4           Q    Are there any documents that you believe

5       suggest discrimination?

6           A    I mean, it's more verbal so I can't say

7       documents besides my paystub that show the decrease

8       in pay of four to $500 a week.

9           Q    Any other documents?

10          A    Not that I can think of.

11          Q    Why do you believe the paystubs suggest

12      discrimination?

13          A    It shows a drastic decrease in my pay.

14          Q    You're saying that your paystubs show

15      consistent amounts and they don't fluctuate up and

16      down?

17          A    Not necessarily consistent, that's not

18      what I said.  It's within those timeframes I did --

19      my pay did drop.  Of course the first couple of

20      months I was still getting the hang of things and

21      learning the ropes.  In between that time, I was

22      capitalizing at being a salesperson.  It was most

23      money I ever made at that time.

24          Q    We are going to get into the paystubs.

25                  Was there any other event or

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

102

1                    L. Stidhum

2     circumstance that you believe was discriminatory?

3          A    There was more than one instance where I

4     had to say something to Guzman about my customers'

5     waiting and stuff like that.  This is years ago, so

6     I can't say word for word.

7          Q    I understand.  Other than what you

8     testified about so far, can you identify all the

9     other times that you claim you were discriminated

10    against?

11              MS. TROY:  Excuse me, sorry.

12              MR. KATAEV:  Read it back, please.

13    (Whereupon, the referred to question was read back

14                 by the reporter.)

15         A    Again, it wasn't something -- it was more

16    work-related than anything.  The longer wait times

17    is not something that I can pinpoint.

18         Q    Is it fair to say that the complaint lists

19    all instances of discrimination against you?

20         A    No.

21         Q    Same question with respect to your

22    interrogatory responses?

23         A    I'm sorry.

24         Q    Fair to say that your interrogatory

25    responses list all instances of discrimination

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

103

1                    L. Stidhum

2    against you?

3         A    No, because I mean, it's a general period

4    so I can't say that everything is written there.

5         Q    Do you believe that you were treated less

6    favorably than other employees?

7         A    At that point, yes.

8         Q    That's even though you were given special

9    access to Dealertrack that no other salesperson was?

10             MS. TROY:  Objection.  Argumentative.

11        Q    You can answer.

12        A    Repeat the question.

13   (Whereupon, the referred to question was read back

14                  by the reporter.)

15        A    So I mean, of course up until my

16   announcement, yes.  It's not just that Dealertrack

17   was taken away.  It was the decrease in my pay.

18             MR. KATAEV:  Let the record reflect that

19        every time Plaintiff's counsel has objected, I

20        observe a lot of glances towards the screen and

21        other indications that there is something going

22        on.

23             MS. TROY:  Objection to that whole line.

24             MR. KATAEV:  If it's found that

25        Plaintiff's counsel is coaching the witness by

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

104

1                  L. Stidhum

2        typing instructions or answers on the screen

3        during the deposition, an appropriate motion

4        will be made to sanction Plaintiff and her

5        counsel.  I'm warning you if that's what you're

6        doing, please stop.  I will obtain the forensic

7        evidence to prove it.

8           MS. TROY:  I'm going to object to that

9        whole line of instruction.  Completely

10        inappropriate.

11           MR. KATAEV:  I will be making an

12        appropriate application for forensic evidence.

13        The judge will not be pleased by what is found

14        on that computer because nothing you delete

15        from there is actually deleted.  I'm just

16        letting you know.

17           MS. TROY:  Again, I object to that whole

18        line.

19           MR. KATAEV:  Okay.

20              My client has observed this multiple

21     times and has noted it in notes to me, and I have

22     observed it myself just now.  I'm warning you,

23     Counsel, if you're typing notes to her on the

24     screen, stop doing that.  It's not allowed.

25           MS. TROY:  I'm not doing that.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

105

1                    L. Stidhum

2              MR. KATAEV:  Good.

3              Read back the last question.

4      (Whereupon, the referred to question was read back

5                    by the reporter.)

6      BY MR. KATAEV:

7          Q    You admit, however, that when you were

8      provided access to Dealertrack you were the only

9      salesperson that was provided that, correct?

10         A    Yes.

11         Q    In that regard, you were treated more

12     favorably, correct?

13         A    Right.

14         Q    Can you identify any other ways in which

15     you were treated more favorably at the dealership

16     while you worked there?

17         A    I mean, I guess the fact of me getting the

18     $1,000 bonus and no one received any bonus.

19         Q    Can you identify all the employees that

20     you believe were treated more favorably than you?

21         A    I mean, are we speaking after my

22     announcement or prior to my announcement?

23         Q    After the announcement.

24         A    After the announcement, I can't really say

25     anybody was treated more favorably.  I can say that

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

106

1                           L. Stidhum

2      they were taken -- their customers were taken or

3      tended to a little more promptly.  I can't say

4      favorably because still nobody did get Dealertrack

5      access or bonuses or anything like that.

6           Q    With respect to that answer, that's solely

7      in relation to Andris Guzman processing the

8      financing application, correct?

9           A    Right.

10          Q    It's not the case with Serge, after

11     disclosing your pregnancy, Serge processed all the

12     applications whether it came from you or someone

13     else the same way, correct?

14          A    Pretty much.  He took them as they went.

15          Q    Was there anyone else that took longer to

16     process the financing applications with you than

17     with anyone else?

18          A    No.

19          Q    That's the only way any employee was

20     treated more favorably than you, correct?

21          A    Yes.

22          Q    What is your understanding as to why all

23     the other employees were being treated more

24     favorably than you?

25          A    Again, I didn't say I was being treated

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

107

1                          L. Stidhum

2     favorably.  I said that he would take them or tend

3     to them more promptly.

4          Q     Why do you believe he did that?

5          A     Again, because I don't know if it had

6     something to do personal or if it was with my

7     pregnancy.  It's not something that I can really

8     answer.  I don't know why he would do that.  If one

9     of us makes a sale, we all get a commission.  It's

10    not something I can really understand either.  I

11    don't know if he wanted me out of the store because

12    I pregnant.  I don't know.

13         Q     Fair enough.  Do you know the educational

14    background of Andris Guzman?

15         A     No.  I don't know anything personal.

16         Q     Do you know Andris Guzman's work

17    experience with dealerships?

18         A     No, I do not.

19         Q     Do you know if he had any work experience

20    working for any other dealership?

21         A     I remember being told he worked at Major

22    World or something.  That's about it.

23         Q     Do you have any knowledge about Hillside

24    Auto Outlet's policy against discrimination?

25         A     No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

108

1                    L. Stidhum

2         Q    Did you ever sign any document

3    acknowledging receipt of a policy against

4    discrimination?

5         A    I believe so.  We had an employee packet.

6    I'm pretty sure it was in there somewhere that I

7    didn't really see.

8         Q    Do you still have a copy of it?

9         A    No, we weren't given a copy of it.

10        Q    Fair to say that when you had a

11   conversation with Isaac about the fact that you felt

12   your pregnancy was playing a role in what was going

13   on, you never really followed up and you decided to

14   quit, correct?

15             MS. TROY:  Objection to form.

16        Q    You can answer.

17        A    The question one more time.

18   (Whereupon, the referred to question was read back

19                  by the reporter.)

20        A    I mean, at that point I wouldn't think I

21   had to follow up with something when somebody tells

22   me, We are going to speak about this later or, Come

23   Monday, we are going to have a conversation.  It

24   wasn't something I felt the need to follow up on.

25   No, I did not follow up with it.  I only asked later

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

109

1                    L. Stidhum

2     on about my commission I was owed on cars that I did

3     not get paid on.

4          Q    Understood.  Your complaint alleges that

5     you were discriminated against on the basis of your

6     sex or gender, correct?

7               MS. TROY:  Objection.  She can answer if

8          she understand.

9          A    Yes, I don't get it.

10         Q    In your complaint, you say you were

11    discriminated against, right?

12         A    Yes.

13         Q    What is the basis upon which you're saying

14    you were discriminated against, on what grounds?

15         A    My pregnancy.

16         Q    Are you also saying you were discriminated

17    against because of your sex or gender?

18         A    I mean, doesn't that play hand in hand

19    that only women can get pregnant?

20         Q    I'm asking you:  Is that reason why you're

21    saying you were discriminated against?

22              MS. TROY:  Objection.  She can answer.

23         A    I guess.

24         Q    Are you also alleging that you were

25    discriminated against based on disability?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

110

1                    L. Stidhum

2        A    I don't think being pregnant is a

3    disability, is it?

4             MS. TROY:  Objection.  Also calls for

5        legal conclusion.

6        Q    I can't answer your question, Ms. Stidhum,

7    but I will take the answer from what you provided,

8    okay?

9        A    Okay.

10       Q    Do you claim that you were discriminated

11   against on any other basis?

12       A    No.

13       Q    At the time you left, with respect to your

14   pregnancy, were you showing?

15       A    No.  I was not even three months, I

16   believe.

17       Q    You acknowledge that Andris Guzman was not

18   a decision-maker at the dealership, correct?

19       A    Yes and no.  I mean, he played a part in

20   making decisions at some points.

21       Q    The question is how?

22       A    I mean, it was kind of -- it's kind of

23   hard to say.  It was a team effort.  It would be

24   something that was a conversation between whoever it

25   was between, whether it was just management, he

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

111

1                           L. Stidhum

2      would definitely be involved in those decisions.

3      For the most part, yes, Isaac was the one who made

4      decisions.

5           Q    In your complaint, you seek damages of an

6      amount over two million dollars, right?

7           A    Yes.

8                MS. TROY:  Objection.

9           Q    You're generally seeking over two million

10     dollars for this case, correct?

11          A    Yes.

12          Q    What is the basis for you seeking those

13     damages?

14          A    I'm not sure.  That's something to discuss

15     with my attorney.

16          Q    Can you describe any injuries that you

17     sustained as a result of any unlawful

18     discrimination?

19          A    I mean, besides being depressed, upset,

20     stressed, scared even because I mean -- this is

21     something that Isaac told me that stuck with me when

22     I told him I was leaving.  He told me the grass

23     wasn't always greener on the other side.  For the

24     first couple of months it wasn't and I was

25     definitely scared.  Those are some of the feelings I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

112

1                   L. Stidhum

2     felt.

3          Q    Other than being depressed, upset,

4     stressed and scared, did you suffer any other

5     emotional injuries as a result of any

6     discrimination?

7          A    No, not that I can think of.

8          Q    Would you say you suffered any

9     psychological injuries as a result of the alleged

10    discrimination?

11         A    I'm not sure, but I did experience a lot

12    of anxiety.  I don't want to say one hundred percent

13    it was from this.  It could have been a combination

14    of being pregnant and worried, but I did suffer from

15    a lot of anxiety.

16         Q    Did you suffer any physical injuries as a

17    result of the alleged discrimination?

18         A    No.

19         Q    For the emotional injuries that we had

20    just discussed, what were your symptoms, if any?

21         A    I'm sorry?

22         Q    What were your symptoms, if any, for the

23    emotional injuries we just discussed?

24         A    The same ones; stress, depressed, scared.

25         Q    Did you seek any medical treatment or

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

113

1                          L. Stidhum

2      other healthcare for any of these injuries?

3           A    No.

4           Q    Were you ever hospitalized for these

5      injuries?

6           A    No.

7           Q    Did you ever take any medication for any

8      of these injuries?

9           A    Being pregnant I can't so, no.

10          Q    How are you now?

11          MS. TROY:  Objection.  How is this

12          relevant?  She can answer the question.  It's

13          not relevant and it's going against your seven

14          hours.

15          MR. KATAEV:  Just say, Objection,

16          relevance.

17     BY MR. KATAEV:

18          Q    Please answer the question.

19          A    How am I now?

20          Q    Correct.

21          A    What does that mean?

22          Q    How are you now in terms of your emotional

23     state and the injuries you just talked about?

24          A    Based on that it's been years now, of

25     course I have recovered.  It's been years, I got to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

114

1                     L. Stidhum

2    experience a lot of great positions.  Everything

3    happens for good reasons.

4         Q    Okay.  Is fair to say that whatever the

5    symptoms or injuries we talked about have now been

6    resolved?

7         A    Yes.

8         Q    None of these symptoms or injuries that we

9    discussed prevented you from working or seeking

10   work?

11        A    Partially.  Even though I was able to get

12   a job immediately after, it wasn't all peaches and

13   cream in the beginning.  I was very stressed out, I

14   was very worried about what's going to happen and

15   like I said, the grass wasn't greener in the

16   beginning but of course they got better.

17        Q    They got better after a few months?

18        A    Maybe a few months, we will say.

19        Q    What made it better after a couple of

20   months?

21             MS. TROY:  Objection as to form.

22        A    Volume, of course, that was my main thing.

23   This whole thing started from my decrease in pay.  I

24   was stressed out about money, I had bills to pay.

25   The volume of the dealership increased definitely

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

115

1                    L. Stidhum

2     helped me deal with everything that was going on.

3          Q    When you refer to volume you mean money,

4     correct?

5          A    The volume of customers and cars sold,

6     yes.

7          Q    The fact that you made more money

8     alleviated the emotional injuries, correct?

9               MS. TROY:  Objection.  Argumentative.  You

10          can answer.

11         A    Yes.  I wouldn't say that making money, it

12    was a weight off my back not having to worry about

13    how I was going to provide for this child I was

14    bringing into this world, yes, but I wouldn't say

15    alleviated everything, no.

16         Q    Do you receive child support?

17         A    No.

18         Q    Have you taken any steps to obtain child

19    support?

20         A    No.

21              MS. TROY:  Objection.  How is that

22          relevant?

23              MR. KATAEV:  It's relevant.

24              MS. TROY:  It's not relevant.

25              MR. KATAEV:  Are you instructing her not

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

116

1                          L. Stidhum

2          to answer?

3                  MS. TROY:  She may answer.

4                  MR. KATAEV:  Your objection is noted.

5          BY MR. KATAEV:

6          Q    What was the answer to have you taken any

7          steps to obtain child support?

8                  MS. TROY:  She said, No.

9          A    No.

10         Q    Why is that?

11         A    Because I --

12                 MS. TROY:  Objection as to relevance.  She

13         may answer.

14         A    I haven't felt the need to.  My child's

15         father helps.

16         Q    How does your child's father help?

17         A    He does what he has to do for our child.

18         Q    He provides financially for the child,

19         correct?

20         A    Yes.

21         Q    Okay.  I understand now.

22                 Prior to you working at Hillside Auto

23         Outlet, have you ever sought any treatment from any

24         mental healthcare professionals?

25         A    No.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

117

1                          L. Stidhum

2          Q    Prior to your working at Hillside Auto

3    Outlet, have you ever experienced any depression,

4    being upset, stressed or being scared or having

5    anxiety?

6          A    No.

7          Q    Do you use any social media websites?

8          A    Yes.

9          Q    Do you use Facebook?

10         A    Not anymore.

11         Q    What about Instagram?

12         A    Yes.

13         Q    What about LinkedIn?

14         A    I have an account but I don't really use

15   it.

16         Q    Twitter?

17         A    No.

18         Q    Snapchat?

19         A    Yes.

20         Q    With respect to these websites, have you

21   ever posted anything about this lawsuit on any of

22   those four websites that you use; Facebook,

23   Instagram, LinkedIn or Snapchat?

24         A    I don't want to say no because I might

25   have early on.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

118

1                          L. Stidhum

2          Q     What is an example of something you may

3     have posted on any of those websites?

4          A     Or maybe I haven't.  Honestly, I'm not

5     sure.

6          Q     Did you ever post anything on Facebook

7     about the fact that you are available to sell

8     someone a car at Hillside Auto Outlet?

9                MS. TROY:  Again, sorry.

10               MR. KATAEV:  Read it back.

11    (Whereupon, the referred to question was read back

12                    by the reporter.)

13         A     Are we talking after or prior to me

14    leaving?

15         Q     During the time you worked there.

16         A     Probably.  I would always try to advertise

17    as best I could.

18         Q     After you left, did you ever post anything

19    about your working experience at Hillside Auto on

20    any of those sites?

21         A     I don't believe so.

22         Q     Isn't it true you made a Facebook post

23    about the fact that you're seeking two million

24    dollars against Hillside Auto on Facebook?

25               MS. TROY:  Objection.  Argumentative.  She

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

119

                         L. Stidhum

1

2          may answer.

3          A     I don't recall.

4          Q     Isn't it true that you posted something

5     like that and later deleted it?

6          A     Can you give me a timeframe?

7          Q     Some time after you left and filed the

8     original lawsuit?

9          A     Are we talking closer to the time we left

10    or recent?

11         Q     I'm not sure.  Any time after you left?

12         A     I don't recall.

13         Q     One way or the other, correct?

14         MS. TROY:  Sorry?

15         Q     You don't recall one way or the other,

16    correct?

17         A     No.

18         Q     Are you claiming that you're entitled to

19    backpay in this case?

20         MS. TROY:  Objection.  Calls for a legal

21         conclusion.  She can answer if she understands.

22         MR. KATAEV:  Please don't coach the

23         witness with, If she understands.  This is the

24         second time you have done that.

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

120

1                    L. Stidhum

2    BY MR. KATAEV:

3        Q    You can answer the question.

4        A    Honestly, I'm not sure.  I don't know if

5    it was recorded, the customers that I knew that I

6    didn't get paid on, I don't remember.  This is going

7    years back now.

8        Q    I'm going to explain what backpay is in

9    order to help you understand the question so you can

10   answer it, okay?

11       A    Uh-huh.

12       Q    Backpay is an amount of money that you

13   would be entitled to if you continued working at

14   Hillside Auto and didn't have to leave.  It is

15   something that you get to claim, but it's subject to

16   mitigation if your new job that you worked at right

17   after you started paid less than what you received

18   at Hillside.

19                    With that basic explanation --

20            MS. TROY:  The explanation is incorrect.

21       Q    With that basic explanation and subject to

22   any objection that she puts, are you claiming

23   backpay in this case; yes or no?

24            MS. TROY:  Objection.  The instruction as

25       to backpay is incorrect.  She can answer based

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

121

1                    L. Stidhum

2            on your incorrect definition.

3       BY MR. KATAEV:

4            Q    Subject to that objection, you can answer.

5            A    Honestly, I'm not entirely sure because

6       you did say if I was making less at my next job?

7            Q    Correct.

8            A    I don't understand.

9            Q    After you left Hillside Auto Outlet, you

10      went to work at NYC Motor Cars; yes or no?

11           A    Yes.

12           Q    The money that you made at NYC Motor Cars,

13      at least for the first few months, was less than

14      what you were making at Hillside Auto Outlet,

15      correct?

16           A    Yes.

17           Q    Are you claiming the difference for

18      backpay in this case?

19           A    I'm not sure.

20           Q    Is it true that you made less money at NYC

21      Motor Cars initially than when you worked at

22      Hillside Auto Outlet?

23           A    The first couple of weeks, yes.

24           Q    After the first couple of weeks you made

25      more than you ever made at Hillside Auto Outlet,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

122

1                    L. Stidhum

2      correct?

3           A    Yes.

4           Q    Did there come a time when you didn't make

5      as much as you made at Hillside Auto Outlet after

6      that?

7           A    I mean, up until Covid.

8           Q    When Covid hit, you weren't making

9      anything for some time, right?

10          A    Right.

11          Q    That was because of Covid?

12          A    Right.

13          Q    After you went back in the workforce after

14     Covid, did you ever make less money than you made at

15     Hillside Auto Outlet again?

16          A    No.  Roughly the same or more.

17          Q    Were there any benefits that you had at

18     Hillside Auto Outlet that you didn't have at any of

19     the subsequent dealerships you worked at?

20          A    No.

21          Q    Had everything worked out with Hillside

22     Auto Outlet and you would have continued working

23     there, how long did you assume you would stay at

24     that job?

25                    MS. TROY:  Objection.  Purely

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

123

1                      L. Stidhum

2           hypothetical.

3           Q     You can answer.

4           A     Realistically, prior to Isaac leaving, I

5     was pretty happy so who knows.  I probably would

6     have been there until this day.  I probably would

7     have been a finance manager, who knows.

8           Q     What was the longest time period you ever

9     held any prior job?

10          MS. TROY:  Do you have a timeframe,

11          Counselor?

12          Q     Ever in your whole life?

13          A     I want to say two-and-a-half years.

14          Q     That was with?

15          A     NYC Motor Cars.

16          Q     You're saying two-and-a-half years based

17    on your experience initially at Motor Cars and when

18    you returned?

19          A     Yes.

20          Q     You're combining those, right?

21          A     Yes, right.

22          Q     Sometime when you left your prior

23    employment that we discussed earlier in your

24    testimony, you would explain that you sort of saw

25    the writing on the wall with respect to something

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

124

1                          L. Stidhum

2      and you would leave as a result of that, correct?

3              MS. TROY:  Objection.  Ambiguous.  I have

4          no idea what you're talking about.

5              MR. KATAEV:  Just, Objection and

6          ambiguous.  The rest is superfluous.

7      BY MR. KATAEV:

8          Q    You can answer the question.

9          A    Can you repeat it?

10         Q    You testified before about sometimes you

11     would be leaving a job because you saw the writing

12     on the wall with respect to something.  For example,

13     at Luxury Motor Cars, you saw there was really no

14     business and you left; do you remember that

15     testimony?

16         A    Yes.

17         Q    With respect to Hillside Auto Outlet in

18     January of 2019, did you see any such circumstances?

19             MS. TROY:  Objection to the term, Writing

20         on the wall.

21             MR. KATAEV:  That term is not in this

22         question.

23     BY MR. KATAEV:

24         Q    You can answer the question.

25         A    Again.  It's not -- the question is not

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

125

                         L. Stidhum
1
2    clear.  Can you rephrase it?  I'm sorry.
3         Q    I'll start with an example.  In January of
4    2019, prior to making your decision to quit, did you
5    notice, for example, there was less business like
6    you noticed at Luxury Motor Cars?
7         A    No, because there wasn't less business.
8         Q    Using that as an example, were there any
9    other circumstances at that time that led to your
10   decision to quit other than what we already
11   discussed?
12        A    No.
13        Q    It's fair to say that all the jobs you had
14   after you left Hillside Auto Outlet, at those jobs
15   you obtained income, correct?
16        A    Yes.
17        Q    What other income from any other source
18   did you obtain other than from those jobs that we
19   discussed?
20             MS. TROY:  Objection.  Ambiguous.
21        Q    You can answer.
22        A    Besides that employment, working -- I did
23   start doing -- being a broker but that was very
24   short-lived.
25        Q    Real estate broker?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

126

                          L. Stidhum

1

2        A     No, automobile broker.

3        Q     Did you earn any income as an automobile

4    broker?

5        A     Nothing but a couple of thousand.

6        Q     Why was it short-lived?

7        A     It was during Covid.  It was trial and

8    error, definitely error.

9        Q     You decided to stop working in that area?

10       A     Yes.  It wasn't paying my bills.

11       Q     Any other source of income?

12             MS. TROY:  Can we have one second?  I will

13        bring her water.

14             MR. KATAEV:  Yes, of course.  Off the

15        record.

16    (Whereupon, an off-the-record discussion was held.)

17    BY MR. KATAEV:

18       Q     You testified that you're no longer

19    employed as of right now, correct?

20       A     Yes.

21       Q     That's because of the birth of your second

22    child, correct?

23       A     More or less.

24       Q     Have you made any effort since the birth

25    of your second child to enter back into the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

127

1                    L. Stidhum

2      workforce?

3           A     I have.

4           Q     What efforts did you make?

5           MS. TROY:  Irrelevant.  She can answer.

6           A     That was one of the places that I had

7      mentioned.  I went to NYC Motor Cars -- I'm sorry,

8      NY Luxury Motors.  It didn't work out.  They had no

9      business at all, like not a single soul would walk

10     in for weeks at a time.

11          Q     Other than working there and giving that a

12     go, did you work anywhere else?

13          A     Another place I mentioned, Great Neck

14     Motors Sports.

15          Q     No other employers other than those two,

16     right?

17          A     No.

18          Q     Those are places where you worked.  What

19     about places were you applied for a job?

20          A     I mean, there is quite a few.  Whether or

21     not I would go on the interview is a different story

22     after doing my research about the places.  Really

23     the only job offer that I turned down was Audi of

24     Queens, Queens Auto Mall, and I was also offered a

25     position at Baron Auto Emporium.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

128

1                          L. Stidhum

2          Q     With respect to each of these positions

3     that you were offered, why is it that you were --

4     withdrawn.

5                     Why is it that you rejected the offer

6     of employment?  Let's start with Audi of Queens.

7          A     It was going to be definitely a different

8     change of environment.  New car stores is a lot

9     tougher.  I sat there for a couple of hours and I

10    didn't see anybody come in.  Coming from places that

11    have walk in traffic, that's alarming to me.

12                    You spoke about those certifications.

13    There was going to be a whole lot of certifications

14    so I wouldn't have got to sell a car for a month or

15    two months until I completed those certifications.

16    In those luxury high-end stores, you have to

17    complete everything before you grab your first

18    customer.  That's the reason I didn't take that job.

19                    Queens Auto Mall didn't offer enough

20    money.  I went in there for a BDC manager position

21    and the pay was super low, so I wasn't going to do

22    that.  Baron Auto Emporium, I was in fear that I was

23    going to lose my job because it had the name Baron

24    in it.  I don't know who the owners are.  I was

25    offered the position multiple times and declined

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

129

1                    L. Stidhum

2    because I didn't want to get fired later on.

3         Q    Who offered you the position at Baron?

4         A    I want to say Freddie, the GM.  David was

5    the one who told me about Freddie, they were

6    friends.  Prior to him telling me about it, I had

7    already went on the interview and he offered me the

8    position two or three times.  I just didn't want to

9    deal with having to get fired for any reason because

10   that did happen to David in the past.

11        Q    Where did that happen to David?

12        A    When he was working at North Shore Motors.

13   They ending up firing him after finding out about

14   this case.

15        Q    How do you know that?

16        A    That's what he told me.

17        Q    Do you know how he knows that?

18        A    Honestly, I didn't bother to ask.

19        Q    When was the last time you spoke to David?

20        A    Probably a couple of weeks ago.

21        Q    What is the nature of your relationship

22   with him?

23        A    We are -- I wouldn't say we are close, but

24   we are friends.

25        Q    Other than Audi of Queens, Queens Auto

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

130

L. Stidhum

1
2      Mall and Baron Auto Emporium did you submit your
3      resume or job applications for any other positions
4      elsewhere?
5             A    Yes.  A ton of places.
6             Q    Is there a centralized location from which
7      you did that on the internet or elsewhere?
8             A    Indeed.
9             Q    Is it only Indeed?
10            A    For the most part.  I might have submitted
11     a resume or two off the Craigslist, but pretty much
12     Indeed is the only place.
13            Q    Whenever you submitted something on Indeed
14     or Craigslist, you did that with the same email
15     address, correct?
16            A    More or less.
17            Q    What is the email address that you used
18     for Indeed?
19            A    Lsticia3@Gmail.
20            Q    That's the same email address you used for
21     Craigslist?
22            A    Yes.  I would say so, yes.
23            Q    You never looked into recruiters or
24     anything like that, right?
25            A    I don't think so, no.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

131

1                    L. Stidhum

2        Q    How much time have you spent on your job

3   search each day since you were ready to return to

4   work following the birth of your second child?

5             MS. TROY:  Objection as to relevance.  She

6        can answer.

7        A    When I get a few minutes, I will look and

8   see if there is anything intriguing.  I'm a numbers

9   person.  If it doesn't make sense, I would rather be

10  home with my children.  I can't put a timeframe on

11  it.

12       Q    How are you supporting yourself while

13  you're unemployed?

14       A    Right now, my mom is currently pretty much

15  supporting me and my kids.

16       Q    What does she do?

17       A    My mom, she sells Auto Trader.

18       Q    Was she involved in the automobile

19  business before you got involved with Hillside Auto

20  Outlet?

21       A    No.

22       Q    What did she do before Auto Trader?

23       A    She worked for Spectrum Communications.

24  She was a territory manager.

25       Q    She no longer works there?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

132

L. Stidhum

1

2    A    No.

3    Q    You testified about taking some time off

4  for a vacation in September of 2020.  Do you recall

5  that?

6    A    Of 2020?

7    Q    I believe so.

8         MS. TROY:  Mischaracterizes witness

9         testimony but she can answer.

10   A    Are we talking when I said I went out of

11  the country?

12   Q    Yes.

13   A    That was actually of 2022, not of 2020.  I

14  went out of the country.  I went on a boat, on a

15  cruise to Bermuda.

16   Q    Since September of 2020 until now, have

17  you taken any vacations?

18   A    No.

19   Q    Prior to September of 2022, when did you

20  take your vacation prior to that time?

21        MS. TROY:  Objection as to relevance.  She

22        can answer.

23   A    I went to Florida in August.

24   Q    How long?

25   A    About two weeks.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

133

                        L. Stidhum

1

2        Q    Prior to that?

3        A    I think before that it would have been

4   like 2021.

5        Q    Do you remember what month?

6        A    I went to Puerto Rico in May for Mother's

7   Day.

8        Q    Prior to that?

9        A    Actually, in June of 2021 -- was it 2021?

10  Yes, in June of 2021, I went to California and also

11  in May of 2021, I went to Florida again.

12       Q    In May and June of 2021, you visited

13  Puerto Rico?

14       A    Yes.

15       Q    Florida and California, correct?

16       A    Yes.

17       Q    What part of California was it?

18            MS. TROY:  Objection as to relevance.

19       Where are we going with this?  She can answer.

20  BY MR. KATAEV:

21       Q    Go on.

22       A    We stayed in Los Angeles.

23       Q    Prior to those vacations in May and June

24  of 2021, when was your last vacation?

25            MS. TROY:  Objection as to relevance.  She

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

134

```
 1                    L. Stidhum
 2        can answer.
 3        A    Honestly, I don't remember.  I know I went
 4   on another cruise but I don't remember the
 5   timeframe.
 6        Q    Did you travel during Covid between March
 7   and December of 2020?
 8        A    No.
 9        Q    There was one other cruise prior to that
10   May or June of 2021 set of vacations.  During any of
11   those vacations, all of them, did you ever do job
12   search activity while on vacations?
13        MS. TROY:  Objection as to relevance.
14        Q    You can answer.
15        A    I don't remember honestly.
16        Q    Were you unavailable to work since the
17   termination of your employment, other than for the
18   birth of your second child?
19        A    One more time.
20        Q    Were you unavailable to work since you
21   left Hillside Auto Outlet, other than due to the
22   birth of your second child?
23        A    No.
24        Q    And first child.
25             Are you currently attending any
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

135

1                        L. Stidhum

2      school or taking any classes?

3           A    No.

4           Q    Have you taken on any training courses or

5      anything like that?

6           A    No.

7           Q    Have you ever been self-employed?

8           A    Yes.

9           Q    Can you explain?

10          A    That's when I was doing the broker thing.

11          Q    Have you ever received any long-term or

12     short-term disability insurance benefits?

13          A    No.

14          Q    Did you apply after you gave birth for

15     short-term disability?

16          A    Is that the same thing as the paid family

17     leave or is that different?

18          Q    It's different, but tell me about that.

19          A    I received a paid family leave after my

20     first child was born.

21          Q    Did you apply for that after your second

22     child was born?

23          A    I did not.

24          Q    When you applied for it the first time,

25     when your first child was born, did you have to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

136

                          L. Stidhum

1
2    provide information about your income?

3         A    That was all done by the dealership, by

4    Luxury Motor Cars.  I'm not sure exactly.  They

5    filled out everything and sent it in.

6         Q    Other than paid family leave, do you

7    recall whether short-term disability benefits were

8    applied for?

9         A    I don't believe so.

10        Q    You received paid family leave for

11   approximately 12 weeks, right?

12        A    I think so.

13        Q    It was a percentage of your actual income

14   at the dealership, correct?

15        A    I believe it was capped at $700.

16        Q    You received the full cap, right?

17        A    Yes.

18        Q    Have you received any Social Security

19   benefits including Social Security disability

20   insurance benefits since your termination?

21        A    No.

22        Q    Have you received any workers' comp.

23   benefits?

24        A    No.

25             MS. TROY:  Asked and answered.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

137

1                    L. Stidhum

2            MR. KATAEV:  No, I didn't ask her if she

3        received benefits.  I asked her if she applied

4        for benefits, not if she received benefits.

5    BY MR. KATAEV:

6        Q    You testified that you received

7    unemployment insurance benefits, correct?

8        A    Yes.

9        Q    You only applied for unemployment

10   insurance benefits once, correct?

11           MS. TROY:  Timeframe?

12       Q    In your whole life.

13       A    No.

14       Q    With respect to the testimony that you

15   previously provided about applying for unemployment

16   insurance benefits, what employer did you apply for

17   that from after being let go?

18       A    Luxury Motor Club was the first one.

19       Q    Okay.

20       A    Great Neck Motor Sports.  I was there

21   while I was pregnant.

22       Q    Were those the only two?

23       A    If I'm not mistaken, yes.  Wait, actually,

24   I believe NYC Motor Cars was in there too because

25   that was during the period of Covid.  I'm not

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

138

1                          L. Stidhum

2       100 percent sure but it might have been.

3            Q    Understood.  Had you received an offer of

4       reinstatement from Hillside Auto Outlet, would you

5       have returned?

6            A    Possibly.

7            Q    Why would you return?

8            MS. TROY:  Timeframe, but she can answer

9       the question.

10           A    Read it back.

11      (Whereupon, the referred to question was read back

12                    by the reporter.)

13           A    If would all depend on the circumstances,

14      of course.  If the offer was presented and it was a

15      decent one, possibly.

16           Q    You are aware that an offer of

17      reinstatement was made, correct?

18           A    When we were at the conference?

19           Q    That's correct.

20           A    Okay.  I didn't completely understand the

21      question.  I thought you meant at the time being.

22      At this point, yes, I would not accept it, but if it

23      was at the time of everything going on, possibly,

24      yes.

25           Q    You rejected the offer of reinstatement at

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

139

1                      L. Stidhum

2       the conference, correct?

3            A    Yes.

4            Q    The conference that you attended with your

5       counsel, is that the first time you entered a

6       federal courtroom?

7            A    Yes.

8            Q    You testified previously that Ali, David

9       and Brianna made statements to you concerning the

10      alleged discrimination; do you recall that

11      testimony?

12           A    Yes.

13           Q    Other than those three individuals, did

14      you discuss the alleged discrimination with anyone

15      else?

16           A    Um, yes.

17           Q    Who?

18           A    Iris, which is Jay's sister.  Are we

19      talking about the dealership or in general?

20           Q    In general anyone.

21           A    Family.

22           Q    Such as who?

23           A    My mother, my grandmother, my children's

24      father.

25           Q    Anyone else?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

140

                          L. Stidhum

1
2       A     Not that I can recall.

3       Q     No one else at the dealership other than

4  Iris and the three people we discussed, right?

5       A     Yes, pretty much.

6       Q     What did you discuss with Iris?

7       A     I would kind of complain about what's

8  going on.

9       Q     Would it be fair to say you were venting

10  to her?

11      A     Yes.

12            MS. TROY:  Objection to that

13            characterization.

14      Q     When did that discussion happen; month and

15  year?

16      A     I don't recall.  It must have been around

17  December of 2018.

18      Q     Was that discussion held in person, by

19  phone or otherwise?

20      A     At the dealership.

21      Q     At the dealership in person, correct?

22      A     At the dealership in person.

23      Q     What did she say after you complained to

24  her about what happened?

25      A     I don't recall.  I wouldn't put any words

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

141

                        L. Stidhum

1
2       in anyone's mouth and I don't remember.

3           Q    That's fine.  Do you have any notes or

4       written records about any of the discussions that we

5       just talked about or in general about the alleged

6       discrimination?

7           A    No.

8           Q    Do you keep a journal or diary?

9           A    No.

10          Q    Did you write anything about the alleged

11      discrimination at all?

12          A    No.

13          Q    Did you email or text anyone about the

14      alleged discrimination?

15          A    Not that I kept records of.

16          Q    So you recall sending texts or emails but

17      you didn't keep them?

18          A    Right.

19          Q    When did you dispose of the emails or the

20      texts?

21          A    It wasn't so much as disposing them.  I do

22      get new phones pretty often, I like to have the

23      newest phone.  It probably just got deleted from

24      changing phones or whatever the case may be.  I

25      don't know.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

142

1                          L. Stidhum

2          Q     When was the last time you replaced your

3     phone?

4          A     Actually this past December.  I got

5     upgraded for Christmas.

6          Q     Someone gave it to you as a gift or you

7     bought it?

8          A     My mother got it for me as a gift.

9          Q     Who do you recall sending text messages or

10    emails to about the alleged discrimination?

11         A     Again, the same three people.  Those were

12    pretty much the only people that I spoke to about

13    the situation in general.

14         Q     Do you have any other notes or writings in

15    any format documenting the alleged discrimination?

16         A     No.

17               MR. KATAEV:  This is a good time for us to

18          stop and take lunch.  We will come back at 1:30

19          and we will start by doing exhibits, and I

20          think -- I'm hoping we will be done by 3:00,

21          but I can't promise.  That's my guesstimate,

22          okay.  I have -- I will have the exhibits

23          mostly up on the screen.

24               MS. TROY:  Whatever that has multiple

25          pages just send it to us, it may be easier so

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

143

1                    L. Stidhum

2          we don't have to waste time.

3               MR. KATAEV:  I will try to work on that.

4          I will put them in the same Dropbox as the

5          settlement production and can you work off that

6          and I send you the link again.

7               MS. TROY:  Fine.

8               MR. KATAEV:  We are off the record.

9

10              (Luncheon recess:  12:58 p.m)

11                         ***

12              (Afternoon session: 1:51 p.m.)

13

14      L E T I C I A   F R A N C I N E   S T I D H U M,

15      resumed, having been previously duly sworn, was

16      examined and testified further as follows:

17      EXAMINATION BY

18      MR. KATAEV: (Continued)

19      (Defendant's Exhibit C, Marked for Identification.)

20          Q    Defendant's Exhibit C.  This is

21      Plaintiff's Initial Disclosures.  I will represent

22      to you, Ms. Stidhum, that these were sent to us on

23      June 21st, 2022.  Do you recognize this document?

24          A    Yes.

25          Q    To your knowledge, what is this document?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

144

1                    L. Stidhum

2        A     There is a couple.  So honestly, when you

3    scroll down a little bit, I will be able to...

4        Q     I will represent to you in this document,

5    among other things, you identify witnesses; do you

6    see that?

7        A     Yes.

8        Q     You identify yourself, all employees,

9    David Manrique and the four individual Defendants,

10   right?

11       A     Yes.

12       Q     Why did you not list as witnesses the

13   other three people we discussed; Brianna, Iris and

14   Ali?

15       A     Honestly, those were conversations that

16   were brief and, you know, about the situation at the

17   time so I didn't really think that it would be very

18   useful just because there was no evidence behind it,

19   I guess you can say.

20           MS. TROY:  We will amend initial

21       disclosures and sned it to you.

22           MR. KATAEV:  Okay.

23   BY MR. KATAEV:

24       Q     In here, you identify no documents that

25   are relevant to the case, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

145

1                        L. Stidhum

2        A    Right, I didn't have anything.

3        Q    In terms of producing documents, you

4   reproduced the paystubs we produced to you and some

5   information about your sonogram, correct?

6        A    Right.

7        Q    At the end of this, you state that a

8   damage calculation will be provided, correct?

9        A    I'm sorry.

10        Q    At the end of this, you state a

11   computation of the damages will be provided,

12   correct?

13        A    Right.

14        Q    During the lunch break, without divulging

15   the actual conversation you had, did you discuss

16   your testimony with your attorney?

17        A    No.

18        Q    We were talking before about your

19   cellphone and how you like to have the latest model

20   and you most recently got one?

21        A    Right.

22             MS. TROY:  Um, objection.

23        Mischaracterizes witness testimony but fine.

24   BY MR. KATAEV:

25        Q    Whenever you obtained a new phone, you use

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

146

1                    L. Stidhum

2    iCloud to restore the backup from your prior phone,

3    right?

4        A     Sometimes.  Once you lose certain access

5    or if you have a two-factor identification, you

6    can't get into the same iCloud account so that's

7    pretty much what happened to me.  I actually just

8    made a new one again.

9        Q     You still have the old phone in your

10   possession, correct?

11       A     No, I do not.

12       Q     What did you do with the old phone?

13       A     Honestly, I can't tell you what I did with

14   if.  I don't know if that's the one I gave to my

15   great-grandmother.  I'm not sure.

16       Q     We talked earlier about a Facebook post

17   and I asked you questions about whether you posted

18   anything about securing or obtaining millions of

19   dollars in a lawsuit, correct?

20       A     Right.

21       Q     That post was not about your lawsuit

22   against Hillside Auto Outlet, that post was about

23   your mother's lawsuit, correct?

24       A     No, my stepfather.  If this -- I'm not

25   sure.  I don't know what post we are talking about

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

147

                            L. Stidhum

1

2     specifically.  Yes, my stepfather did obtain a

3     couple of million dollars working for the Department

4     of Sanitation.

5          Q    Were the attorneys representing your

6     father in that lawsuit the same attorneys

7     representing you here?

8          A    No.

9          Q    Was your mother ever involved in any

10    lawsuit?

11         A    No.

12         Q    Your mother didn't have any lawsuit

13    against Spectrum or Charter?

14         A    No.

15              MS. TROY:  Objection as to relevance.

16         Q    To your knowledge, did your mother ever

17    make any claim without filing a lawsuit against

18    Charter or Spectrum?

19         A    I don't believe so.

20         Q    Did the attorneys that -- did she hire

21    attorneys to pursue that claim?

22         A    She ended up not pursuing it.

23         Q    Did the attorneys that she consult with

24    include the current attorneys that you are utilizing

25    for this lawsuit?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

148

1                      L. Stidhum

2           MS. TROY:  Objection as to relevance.  You

3      may answer.

4           A    I believe she had a conference with them

5      just to see if there was anything, but I'm not sure.

6           MS. TROY:  Objection to the extent you're

7      prying into attorney/client privilege.

8           Q    Did you learn about this law firm through

9      your mother?

10          A    No.

11          Q    How did you learn about Troy Law?

12          A    Google.

13          Q    What did you search for?

14          A    I don't know.

15          MS. TROY:  Objection to form as to

16          relevance.  She may answer.

17          A    I don't remember honestly.  Attorneys near

18     me maybe.  There were a mile and a half away.

19          Q    You chose them because they were close by?

20          A    They were the first people I spoke to and

21     they made me feel comfortable.

22          Q    I'm going to place up on the screen what

23     has been marked as Defendant's Exhibit D.

24     (Defendant's Exhibit D, Marked for Identification.)

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

149

1                    L. Stidhum

2    BY MR. KATAEV:

3         Q    I will represent to you these are damage

4    calculations that were produced on January 30, 2023.

5    Do you recognize this document?

6         A    Yes.

7         Q    At the top left, your law firm's name and

8    address is listed, correct?

9         A    Yes.

10        Q    It's titled, Damages Calculations,

11   correct?

12        A    Yes.

13        Q    After that, there is a box where the case

14   name, case number and the forum that it's in is

15   listed, correct?

16             MS. TROY:  Objection.  The document speaks

17        for itself.  You don't need to waste time over

18        this.

19   BY MR. KATAEV:

20        Q    You can answer.

21             MS. TROY:  She can answer the question.

22        You're just wasting time.  Go ahead, answer the

23        question.

24        A    What is the question?  If I see it?  Yes,

25   I see it.

150

1                    L. Stidhum

2         Q     It lists the case name and case number,

3    correct?

4         A     Yes.

5         Q     After that, it shows the time period of

6    December 1st of '18 through January 14th of '19,

7    correct?

8         A     Yes.

9         Q     The calculated total number of weeks for

10   that time period is listed as 6.43, right?

11        A     Yes.

12        Q     What you're saying is your total weekly

13   pay prior to any discrimination averaged $1,238.64,

14   correct?

15        A     Yes.

16        Q     That's based the on actual paystubs which

17   are listed below, which show all of your paystubs

18   from May of '18 until January of '19, correct?

19        A     Yes.

20        Q     Right here is the calculation of that

21   average and before you announced your pregnancy,

22   correct?

23        A     Yes.

24        Q     After that is the calculation of your

25   average after you announced your pregnancy, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

151

L. Stidhum

1

2     A     Yes.

3     Q     So taking the difference between those two

4     numbers, you came up --

5          MS. TROY:  Emanuel, this is not an

6          arithmetic test.

7          MR. KATAEV:   Tiffany, stop interrupting.

8          MS. TROY:  You're like, A minus B, is that

9          equal to C?

10          MR. KATAEV:  Stop interrupting my

11          deposition.  Stop.  All you have to say is

12          objection and grounds, that's it.

13          MS. TROY:  Objection.

14          MR. KATAEV:  Your objection is noted for

15          the record.  I'm going to proceed with my

16          deposition.

17     BY MR. KATAEV:

18     Q     The difference of $428.64 is what you

19     obtained when you subtract this $1,238.64 number

20     from the 810 number, correct?

21          MS. TROY:  Objection.  My client is not

22          going to be subject to an arithmetic test.  If

23          she knows how to do it by her brain --

24          MR. KATAEV:  I'm calling the court.  I'm

25          not dealing with this.  We are going to put

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

152

```
1                    L. Stidhum
2         everything you said on the record and we are
3         calling the court.  You will not interrupt my
4         deposition.
5              MS. TROY:  You can tell the court that you
6         asked her --
7              MR. KATAEV:  You can tell the court
8         whatever you want.  This is ridiculous.
9              MS. TROY:  I will make the objections that
10        I need to make but I'm not going to interrupt
11        your deposition.  That's it.
12             MR. KATAEV:  Good.  Please don't do it
13        again.  Say, Objection, and the basis and move
14        on unless you're instructing her not to answer.
15   BY MR. KATAEV:
16        Q    Ms. Stidhum, the difference between
17   $1,238.64 and $810 is calculated as $428.64,
18   correct?
19        A    Yes.
20        Q    What happened is you take the $428.64, you
21   multiple that by the 6.43 weeks and you get a
22   shortfall of $2,755.54, correct?
23        A    Yes.
24        Q    You went over this chart with your
25   attorneys, correct?
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

153

1                        L. Stidhum

2          A    Yes.

3          Q    You listed this as your economic damages

4     in this place, this place and this place, correct?

5               MS. TROY:  Objection.  She did not herself

6          list it.

7          Q    By and through you, correct?

8          A    Yes.

9          Q    Now you have here $100,000 under the

10    compensatory damages; do you see that?

11         A    Yes.

12         Q    Unlike the damages that we just went over,

13    there is not calculation for the $100,000, correct?

14         A    Yes.

15         Q    Where is the calculation for the $100,000;

16    where is that number coming from?

17         A    Honestly, that's something that has to be

18    discussed with my attorney.

19         Q    The answer is you don't know?

20         A    I don't.

21         Q    Same question for the punitive damages,

22    two million dollars in these three places; do you

23    see that?

24         A    Yes.

25         Q    Where is that number coming from?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

154

1                    L. Stidhum

2        A     That's something to discuss with my

3    attorney.

4        Q     You don't know the answer, correct?

5        A     No.

6        Q     I'm placing up on the screen what will be

7    marked as Defendant's Exhibit E.  It's the Responses

8    to Defendants' Interrogatories.  Are you familiar

9    with this document?

10   (Defendant's Exhibit E, Marked for Identification.)

11           MS. TROY:  Scroll through the doc.

12       A     Yes.

13           MS. TROY:  Make it slightly bigger.  We

14       are having a hard time seeing it.  Too big.

15           MR. KATAEV:  I don't need commentary.

16       Thank you.

17   BY MR. KATAEV:

18       Q     In the first interrogatory that was asked

19   of you, we asked, Set forth with detail and with

20   specific numerical calculation all categories of

21   damages asserted by Plaintiff, correct?

22       A     Yes.

23       Q     In response, you directed us to the

24   damages calculations that we just reviewed, correct?

25       A     Right.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

155

1                    L. Stidhum

2        Q    But as we just went over, there are no

3    calculations for the compensatory damages or the

4    punitive damages, right?

5        A    Right.

6             MS. TROY:  Emanuel, that's factually

7             incorrect.

8             MR. KATAEV:  We can take it up after the

9             deposition.  Please don't interrupt unless you

10            have an objection.  Thank you.

11   BY MR. KATAEV:

12       Q    You identify over here, Ali in response to

13   Interrogatory Number 2 which requests the identity

14   of witnesses Ali Raskesnia.  R-a-s-k-e-s-n-i-a.

15                    Do you see that?

16       A    Yes.

17       Q    This is the Ali with whom you went to NYC

18   Motor Cars, correct?

19       A    Correct.

20       Q    Iris Serrano is the Iris we discussed

21   earlier today, correct?

22       A    Yes.

23       Q    You say here that her address and phone

24   number are unknown.  Do you not maintain telephone

25   contact with this individual?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

156

1                      L. Stidhum

2         A    No.

3         Q    The last time you spoke to Iris was at the

4    dealership, correct?

5         A    Not at the dealership.  I do have her on

6    Snapchat so we spoke here and there but not much.

7         Q    On Snapchat you discussed this case?

8         A    No.  The only thing I did ask regarding

9    this case was if she knew the last name of Lily.

10        Q    Understood.  Did she give you the answer?

11        A    No, she wasn't sure what her last name

12   was.

13        Q    In response to Interrogatory Number 7,

14   which asks whether you ever complained to Hillside

15   Auto Outlet about discriminatory conduct and to

16   provide information about each such complaint.  Your

17   answer only provides information about your

18   conversation with Isaac and Jory, correct?

19        A    I'm sorry, one more time.

20   (Whereupon, the referred to question was read back

21                  by the reporter.)

22        A    Right.

23        Q    You did not provide any information about

24   your alleged discussion with Ronald, correct?

25        A    Well, that wasn't a discussion about the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

157

1                          L. Stidhum

2      discrimination -- the pregnancy discrimination.

3      That was more about me telling him about the bonus.

4           Q    Is it fair to say that the bonus has

5      nothing to do with your pregnancy?

6           A    No, because the bonus kind of played a

7      part in it.  My pregnancy was the reason for me kind

8      of pushing to get this bonus to begin with.

9           Q    Why did you not list your conversation

10     with Ronald in this response?

11          A    Honestly, it must have slipped my mind.

12     Like I said, it was more of a conversation about the

13     bonus and receiving that money for doing x amount of

14     cars rather than the initial complaint of what was

15     going on about the pregnancy discrimination.

16          MR. KATAEV:  I'm going to call for the

17          Plaintiff to supplement her response to

18          Interrogatory Number 7, and we will follow up

19          in writing.

20                    (Counsel Request.)

21     BY MR. KATAEV:

22          Q    For clarification, some of the dealerships

23     that you worked at after Hillside Auto both had the

24     name Luxury in them but they were two separate

25     dealerships, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

158

1                        L. Stidhum

2          A    Correct.

3          Q    They are two different locations?

4          A    Yes.  Two different locations, different

5     owners.

6          Q    In response to Interrogatory 19, you only

7     identify Queens Auto Mall incorrectly typed here as

8     hall.  You failed to include the other two that you

9     denied positions for, correct?

10         A    Right, because honestly, it wasn't fresh

11    in my mind.

12             MR. KATAEV:  We are going to call for

13             Plaintiff to supplement her response to this

14             interrogatory and we will follow up in writing.

15                  (Counsel Request.)

16    BY MR. KATAEV:

17         Q    With respect to every position identified

18    in response to Interrogatory Number 14, is it

19    accurate to state that the pay you received at each

20    of these dealerships was better than what you

21    received at Hillside Auto Outlet?

22         A    Yes.

23         Q    If you have to give your best estimate as

24    to the annual amount of money you would earn at

25    Hillside Auto Outlet, how much would you say that

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

159

                          L. Stidhum

1
2    was?
3         A    Maybe like 60 or 70,000.  I'm not sure.  I
4    didn't work there a full year.
5         Q    When you applied for unemployment both
6    times, did you receive the unemployment for the full
7    six-month period both times?
8         A    I believe so.
9         Q    Do you recall whether it was the capped
10   amount?
11        A    I'm sorry.
12        Q    Do you recall whether it was the capped
13   amount?
14        A    The first time I received it, yes.  The
15   other two times, it was not.
16        Q    Has any injury or disability prevented you
17   from working during any period of time?
18        A    No.
19        Q    Have you ever filed for bankruptcy?
20        A    No.
21        Q    As far as you know, you were never
22   terminated from any job?
23        A    Correct.
24        Q    During the time that you worked at
25   Hillside Auto Outlet, there came a point in time

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

160

1                       L. Stidhum

2      when you purchased a vehicle from the dealership,

3      correct?

4           A    One more time.

5           Q    When you worked at Hillside Auto Outlet,

6      you purchased a vehicle from the dealership,

7      correct?

8           A    Correct.

9           Q    What car did you purchase?

10          A    Infiniti Q50.

11          Q    Do you still have that car?

12          A    No, I do not.

13          Q    What did you do with the car?

14               MS. TROY:  Objection as to relevance.  She

15          can answer.

16          A    It got totaled.  I was rear-ended.

17          Q    I'm sorry.

18               Did you obtain the vehicle from

19     Hillside Auto Outlet on favorable terms?

20          A    On favorable terms, as in -- what do you

21     mean by that?

22               MS. TROY:  Objection to form.

23          Q    By whatever favorable terms means to you?

24          A    No.  After receiving the discovery, I was

25     charged like every other customer.  They made a

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

161

1                        L. Stidhum

2      couple of grand off of me.

3            Q     How much did you purchase the vehicle for?

4            A     I don't remember.

5            Q     Did you do financing?

6            A     Yes, I did.

7            Q     It was a used vehicle, correct?

8            A     Yes.

9            MS. TROY:  Objection as to relevance.

10           Q     Isn't it true that you complained to Isaac

11     that the reason why Andris took so long to process

12     employment applications -- I'm sorry, financing

13     applications for customers is because he sucks?

14           A     I don't remember.  This is --

15           MS. TROY:  Objection.  Argumentative.  She

16           can answer.

17           MR. KATAEV:  Please don't interrupt her

18           while she's answering.

19     BY MR. KATAEV:

20           Q     Repeat your answer.

21           A     I don't remember.

22           MR. KATAEV:  Let the record reflect that

23           the witness laughed at the question.

24           I have placed up on the screen what will

25           be marked as Defendants' Exhibit F.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

162

L. Stidhum

1

2     (Defendant's Exhibit F, Marked for Identification.)

3     BY MR. KATAEV:

4          Q    For the record, these are monthly sheets

5     as to cars sold at the dealership using the CRM

6     system.  It's Bates-stamped D2 through D9.  This

7     particular set is for May of 2018.

8               Ms. Stidhum, do you recognize this

9     document?

10          MS. TROY:  Scroll through whatever pages

11          you're talking about.

12          MR. KATAEV:  Sure.  Let the record reflect

13          that these activities are designed to waste

14          time, to run the clock, as the Plaintiff has

15          repeatedly make reference to the time of the

16          deposition.

17          MS. TROY:  If you want to play it that

18          way, let the record reflect you said you wanted

19          to start at 9:00, you started at 9:30.  You

20          said you wanted a 30-minute lunch break, you

21          took a 45-minute lunch break.  You're asking

22          questions that are irrelevant to this case.

23          MR. KATAEV:  Anything else?

24          MS. TROY:  That's it for now.

25          MR. KATAEV:  Let the record reflect that,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

163

1                          L. Stidhum

2          at Plaintiff's request and insistence, we

3          scrolled through D2 through D9.

4     BY MR. KATAEV:

5          Q    Are you ready to answer some questions

6     about this exhibit?

7               MS. TROY:  Go back to the second page.

8          Okay.

9     BY MR. KATAEV:

10         Q    Ms. Stidhum, other than due to this

11    lawsuit and in the course of discovery, have you

12    ever seen this document while working at the

13    dealership?

14         A    No.

15         Q    Did you have access to the sold log

16    through the CRM system while you worked at the

17    dealership?

18         A    I'm not sure.  I didn't really use the

19    CRM.

20         Q    In this sheet, it says that you sold a car

21    to an individual named Robert Gantt on May 27, 2018;

22    do you see that?

23         A    Yes.

24         Q    It says it was sold for $12,600 and at the

25    front, it says negative 586 and at the back is 2011;

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

164

1                    L. Stidhum

2     do you see that?

3          A    Yes.

4          Q    By the front, that refers to the gross

5     commissionable profit on the front end of the sale

6     for the actual vehicle, correct?

7          A    Yes.

8          Q    On the back, that refers to any

9     aftermarket items sold, whether it's something for

10    the car or something like insurance or protection or

11    warranty and stuff like that, correct?

12         A    Yes.

13         Q    On this particular deal, it was sold at a

14    loss, correct?

15         A    Yes.

16         Q    You received $150 for selling this car,

17    correct?

18         A    Yes.

19         Q    But you didn't receive any bonus for this

20    particular car, correct?

21         A    When you say bonus, I'm not sure what you

22    mean by bonus.

23         Q    If I understand correctly for you to

24    receive that 5 percent bonus, this number on the

25    front end has to be $3,000 or $3,500 or more,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

165

                              L. Stidhum

1

2    correct?

3              MS. TROY:  Objection.  Mischaracterizes

4         witness testimony.

5         A    The total between the front and back would

6    have to equal that, yes.

7         Q    You have to add the two, correct?

8         A    Yes.

9         Q    The next car that's listed as sold by you

10   in May of 2018 is a vehicle sold to one Darell

11   Thomas on May 25th of 2018; do you see that?

12        A    Yes.

13        Q    But there is no information here about the

14   front or back or the sold amount, correct?

15        A    Right.

16        Q    The third vehicle listed that's sold by

17   you is to one John Collado, correct?

18        A    Yes.

19        Q    There was May 24th of 2018, correct?

20        A    Yes.

21        Q    On this particular sale the front and the

22   back had a profit of $1,628 and $1,857 respectively,

23   correct?

24        A    Yes.

25        Q    With the calculator I have on the screen

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

166

1                        L. Stidhum

2        calculating the total between the two, that comes

3        out to $3,485, correct?

4              A    Right.

5              Q    What you're saying is your bonus would be

6        5 percent of that amount for a total of $174.25; is

7        that right?

8              A    Right.  It wouldn't be a bonus to the

9        $150.  It was just that $174.25 total.

10             Q    It would be $150 for making the sale plus

11       $174.25?

12             A    No.  That's what I'm trying to clarify.

13       It would be the $174.25.

14             Q    Whenever you made more, you get 5 percent

15       in lieu of the actual $150 commission?

16             A    Right.  If you do $3,000, that's

17       5 percent, it would be $150.

18             Q    For this particular deal, you do receive

19       $174.25 instead of $150, correct?

20             A    Yes.

21             Q    You know that because you referred to a

22       sheet that was given to you in triplicate and you

23       threw that sheet out after you confirmed that you

24       were paid the right amount, correct?

25             A    That's false actually.  I wouldn't receive

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

167

                          L. Stidhum

1

2    anything that showed the actual pay for the

3    5 percent.  It was just -- it would reflect on my

4    paystub.

5         Q    I see.  On that sheet, would it list the

6    front and back end gross commissionable profit?

7         A    No.  It would reflect on my paystub.

8         Q    How would you know whether you would be

9    entitled to a 5 percent bonus on top of -- in lieu

10   of $150 -- higher than $150?

11        A    I just started in the business so I kind

12   of took their word for it.  Jay was very honest with

13   us.  She would make sure that we were paid correctly

14   all the time.  After that, it's obvious -- you can

15   tell the difference between being paid $174.25 and

16   the flat $150.

17        Q    I see.  Could it be possible you didn't

18   sell any vehicles at a profit?

19        A    No, that's impossible because I remember

20   on multiple occasions where Serge would be excited

21   that I did a ten-pounder, which is a $10,000 deal

22   and I would still receive $150 flat.  That's

23   impossible.

24        Q    We just scrolled through all of the May of

25   2018 and they were only three or four cars sold.  Is

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

168

1                     L. Stidhum

2      it accurate that you only sold four cars in May of

3      '18?

4           A    I don't believe that's accurate, but then

5      again, I did just start that month so it's a

6      possibility.  I know that this document I've looked

7      over it, I went and checked how many cars it showed

8      that I sold and it's not accurate at all.

9           Q    What makes you say it's not accurate?

10          A    Because even the amounts of cars sold is

11     not the right number.  None of it is the right

12     numbers.  If you look back at when I first received

13     the 1,000 pages, I went -- I calculated based on my

14     paystubs without the 5 percent how many cars did I

15     sell for each month and how many cars it shows on

16     that document you just showed me, which is only

17     input by BDC and it definitely is not accurate.

18          Q    At the top of page D2 next to the word,

19     Sold log, it has in parenthesis the number 46; do

20     you see that?

21          A    Yes.

22          Q    My understanding is this is listing the

23     total amount of cars sold in May of 2018, correct?

24          A    Correct.

25          Q    You're saying that this number is not

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

169

1                    L. Stidhum

2       accurate?

3            A    I can't say for May of 2018 because I just

4       started that month and it was towards the middle of

5       the month and I was not there for the full month,

6       but I can confirm that months moving on, those

7       numbers do not add up to the numbers I have based on

8       my paystubs.  Even in the mediation that we had, you

9       said that this might not be everything, so I know

10      for sure it is not.

11           Q    To your knowledge, how did the dealership

12      keep track of the total vehicles sold every month?

13           A    Like I stated before, we had a board in

14      the finance room where we would have the list of all

15      the salespeople and they would tally every time they

16      sold a car, and that's how we kept track of how many

17      cars we had for the month.  There was never a set

18      log that was written down by anyone or nothing like

19      that.

20           Q    At the end of the month before starting a

21      new month chart before erasing all the data for the

22      month, did anyone ever take a picture of the board?

23           A    Not to my knowledge.

24           Q    I'm going to mark what will be Defendant's

25      Exhibit G.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

170

1           L. Stidhum

2       (Defendant's Exhibit G, Marked for Identification.)

3       BY MR. KATAEV:

4           Q    It is the same type of report for December

5       of 2018 from D62 through D67.  On this first page it

6       says the total sold in December '18 is 36 cars,

7       correct?

8           A    Yes.

9           Q    Is that accurate, to your knowledge?

10          A    Honestly, I'm not sure because, again,

11      like I said, I compared the documents and it doesn't

12      look like these -- this log shows everything whether

13      it was a walk-in customer or a appointment.  It

14      doesn't look like it shows everything.

15          Q    Looking at page D65.  There are two cars

16      that you sold to two different people on the same

17      day, December 10th of 2018, correct?

18          A    Yes.

19          Q    How was it that you were able to sell two

20      cars in a single day?

21          A    I don't understand the question.  I have

22      sold six cars in a day.

23          Q    In this particular instance with respect

24      to Monica Hampton, for example, was Andris Guzman

25      the individual who helped you with the financing?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

171

L. Stidhum

1

2      A    I don't recall.  It does say, Pending

3   delivery.  This doesn't mean that I sold them both

4   on the say same.

5      Q    What about Prince Henston, do you recall

6   whether Andris Guzman was the individual that helped

7   you with the financing aspect?

8      A    This is four years ago.  I don't know who

9   did what.

10     Q    The following page, D66, there are two

11  additional cars that were sold on or about

12  December 6 and 8, correct?

13     A    Right.

14     Q    Finally on the last page, D67, there is a

15  fifth car that was sold on December 1st of 2018,

16  correct?

17     A    Correct.

18     Q    It's fair to say you sold at least five

19  cars in December of 2018?

20     A    I guess so, based on this.

21     Q    Do you recall whether you sold more than

22  five cars in December of '18?

23     A    Again, I'm not sure because it was such a

24  long time ago.  I don't want to sit here and lie,

25  but I don't remember selling -- I remember that I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

172

1               L. Stidhum

2     was very upset because I was probably selling one or

3     two cars a week so this may be accurate.

4          Q    Didn't you testify previously that you

5     typically sold seven cars a month?

6          A    No.  Seven cars a week.

7          Q    What was the least amount of cars you sold

8     prior to December of '18 prior to your recollection?

9          A    Again, it's a long time ago.  I'm not

10    going to give you fake numbers.  I know for sure it

11    was seven cars a week because if we do seven times

12    $150 plus that $300, I would receive a check for

13    $1,050 and that was usually my goal for the week so

14    that way I can bring home at least $800 to $900

15    bucks.

16         Q    I have placed up on the screen what will

17    be marked as Defendant's Exhibit H.

18    (Defendant's Exhibit H, Marked for Identification.)

19    BY MR. KATAEV:

20         Q    My question to you is:  Have you ever

21    seen --

22              MS. TROY:  Did you skip some numbers from

23         the exhibit?

24              MR. KATAEV:  No.

25              MS. TROY:  Okay, this is Exhibit H.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

173

1                    L. Stidhum

2              MR. KATAEV:  Yes.

3    BY MR. KATAEV:

4         Q    Have you ever seen a document like this

5    before?  It's called cap sheet?

6         A    No.

7              MR. KATAEV:  Let's mark this as

8         Defendant's Exhibit I, I believe.

9    (Defendant's Exhibit I, Marked for Identification.)

10   BY MR. KATAEV:

11        Q    I will represent to you that this is a

12   declaration prepared by Serge and signed by him.

13   Have you ever seen this document before?

14        A    Yes, I did.

15        Q    Serge says here in Paragraph one that he

16   has served as an F&I representative since November

17   of 2018; do you see that?

18        A    Yes.

19        Q    Does that comport with your recollection

20   as to when he started working there?

21        A    I thought it was a little sooner after Jay

22   left.

23        Q    He says here in Paragraph six that

24   whenever the Plaintiff or any other salesperson

25   makes a sale, the customer's information is provided

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

174

L. Stidhum

1

2      to the sales manager or him, whoever is available

3      and has authorization to pull the prospective

4      customer's credit profile; do you see that?

5            A     Yes.

6            Q     That comports with your earlier testimony

7      that typically Andris would handle it but sometimes

8      he would, right?

9            A     Right.

10           Q     Paragraph seven says that once the credit

11     profile is pulled, the customer's application to

12     purchase a vehicle is submitted to chosen lenders;

13     do you see that?

14           A     Yes.

15           Q     Do you know what is meant by, Chosen

16     lenders?

17           A     Yes.  Qualifying, they have to qualify the

18     customer based on their credit history.

19           Q     There are different banks that accept

20     different types of customers with different types of

21     credit histories, correct?

22           A     Correct.

23           MS. TROY:  Can you speak slower?

24           MR. KATAEV:  Sure.

25           MS. TROY:  I'm having difficulty

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

175

1                    L. Stidhum

2          following.

3      BY MR. KATAEV:

4          Q    In Paragraph eight, Serge declares that

5      the timeframe to receive any word back from a chosen

6      lender, which is also based on a customer's credit

7      worthiness, ranges from ten minutes to one hour; do

8      you see that?

9          A    Yes, I do.

10         Q    You have no reason to dispute that,

11     correct?

12         A    I mean --

13              MS. TROY:  Objection.  Argumentative.  She

14         can answer.

15         A    I mean, honestly, most approvals are

16     almost instant.  I can't agree as long as one hour.

17         Q    Has it ever been one hour since submitting

18     something to a chosen lender?

19         A    Honestly from my experiences, an hour, no.

20         Q    Your experience is limited to the time

21     when you had access to Dealertrack, correct?

22         A    Yes.

23         Q    You had access to Dealertrack since what

24     month in 2018?

25         A    I want to say towards the end -- after Jay

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

176

1                          L. Stidhum

2    left but I don't know how soon after.

3         Q    That was somewhere in July or August of

4    '18, correct?

5         A    Yes.

6         Q    That was taken away from you in December

7    of '18, correct?

8         A    Yes.

9         Q    That's approximately two months, right?

10             MS. TROY:  Objection.  You need to do your

11        math properly.

12        A    It's four or five months.

13        Q    How many submissions did you make to

14   lenders in the four or five months that you had

15   Dealertrack access?

16        A    I didn't make submissions to lenders.  I

17   would run the credit and qualify them myself and

18   prefill the application, so that way when it got to

19   finance, whether it was Isaac or Serge, all they had

20   to do was read over it, make sure I didn't make a

21   mistake, check out their credit, submit the deal.

22   Everything would be done.

23        Q    When you submit the deal, that's when you

24   have to wait for the lender to get back, right?

25        A    Like I said, approvals are almost instant.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

177

                    L. Stidhum

1

2    Everything is done electronically.

3        Q    You're saying that every time you submit a

4    deal, a bank gets back instantly every single time?

5            MS. TROY:  Objection.  Mischaracterizes

6            witness testimony.  She can answer.

7        A    Again, I didn't submit it to the lender.

8    I only ran the credit, prefilled the application,

9    would give the folder to the finance.  Most of the

10   time, I would stand right over him and wait and see

11   who is going to pick it up, yes.  The approvals were

12   almost instant.

13       Q    Since you didn't submit it, you had no

14   independent knowledge as to how long it took,

15   correct?

16       A    That's incorrect.  I had access to

17   Dealertrack so I was able to see when the deal got

18   approved or did not get approved.

19       Q    Is there any data as far as you know

20   that's kept in Dealertrack as to how long each deal

21   takes from submission to response?

22       A    No.

23       Q    Paragraph nine, Serge declares that this

24   timeframe of submission is completely outside the

25   control of himself or any sales manager who pulls a

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

178

1                        L. Stidhum

2        credit profile and is further dependent on the

3        amount of verification requested by each chosen

4        lender, which is also completely outside the control

5        of himself or any sales manager; do you see that?

6             A    Yes.

7             Q    Do you agree that it's outside the control

8        of the sales manager, you know, the contents of this

9        paragraph?

10            A    Partially, because my argument was not

11       whether or not the lender is taking x amount of

12       time.  It was about my customer's credit being ran

13       and qualifying the customers within a certain amount

14       of time so that's not properly worded.

15            Q    What you're saying is what took longer is

16       the part before this part?

17            A    Right.

18            Q    Okay.  In order to complete the part

19       before this part, you have to obtain information

20       from the customer, correct?

21            A    Right.

22            Q    Sometimes the customer does not have all

23       of the information, correct?

24            A    Right.

25                 MS. TROY:  Objection.  Asked and answered.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

179

1                    L. Stidhum

2        Q     It says in Paragraphs 12 through 14 the

3   following, During the time Plaintiff worked here, I

4   worked closely with her as well as all the other

5   salespersons.  Everybody liked each other and

6   treated each other well.  There was no animosity

7   amongst the salespeople, myself or nor sales

8   managers; is that true?

9        A     Right up until the announcement of my

10  pregnancy, of course.

11       Q     Of course.  What about the fact that you

12  and Andris Guzman had two prior incidents where you

13  got into an argument before you announced your

14  pregnancy?

15       A     Again, we still we kept it very

16  professional.  It's not somewhere where you're going

17  to be bickering back and forth in front of potential

18  customers.

19       Q     Number 19 says, if a customer was forced

20  to wait, the only reason for that would be based on

21  circumstances outside of the dealership's control

22  such as the failure of the customer to provide

23  necessary information to the lender or because the

24  lender requested additional documentation or simply

25  because the dealership had to wait for the lender's

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

180

```
1                          L. Stidhum
2       response.
3                          Do you have any reason to dispute
4       that statement?
5              A    No.
6              Q    Finally at the end it says, In the course
7       of the last four years working at the dealership,
8       customers have waited to obtain information
9       concerning approvals from 20 minutes until three
10      hours on average.
11                         Do you have any reason to dispute
12      that statement?
13             A    I have never seen it go as long as three
14      hours, but...
15             Q    What is the longest you have seen a
16      customer wait to get a deal done?
17             A    Probably, like -- I'm talking about wait
18      times between him actually doing anything with my
19      customer.  That's what I'm talking about.  I'm not
20      talking about in general the total amount of buying
21      a car.  It's two different things we are talking
22      about here.  He's speaking about overall car
23      purchase.
24             Q    That's a fair distinction, but does the
25      customer know?
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

181

1              L. Stidhum

2              MS. TROY:  Objection.  Argumentative.

3         A    I'm sorry.

4         Q    Does the customer know?

5         A    Does the customer know what?

6         Q    That there is a distinction between

7    waiting for their credit to be pulled versus

8    submitting it to the bank?

9         A    Absolutely.  When your credit is pulled

10   and you're qualified for a customer, you're told to

11   start working on insurance, which can take up to --

12   anywhere from ten minutes to an hour.  Yes, the

13   customer would know because immediately they are

14   like, are we approved, are we wasting our time.

15   Once I get the folder, I expect to respond to my

16   customers and say, we are going to get this done,

17   let's work on insurance.

18        Q    In general, the whole car-buying process

19   sometimes takes hours, right?

20        A    It can.

21             MS. TROY:  Objection.  Argumentative.  I'm

22             going to direct my client to please wait if I

23             have an objection or not because she's

24             immediately answering your question.

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

182

                        L. Stidhum

1

2    BY MR. KATAEV:

3         Q    You can answer now.

4         A    It can take up to -- it can take longer,

5    but for the most part, we work relatively quick.  So

6    I'm speaking based on my experience, we would move

7    pretty quickly because we were a store that would

8    get a lot of walk-in traffic.  I would want to grab

9    two or three customers at a time.

10        Q    What is the fastest that you ever

11   processed the deal for a transaction?

12             MS. TROY:  Objection.  Specify timeframe.

13        Q    Whenever you worked at Hillside Auto

14   Outlet.

15        A    I mean, getting them in and out the door,

16   probably within an hour or less.  I have had

17   instances where I have gotten people out and in

18   their car, registered and everything, in less than

19   an hour.

20        Q    How often does that happen?

21        A    I work relatively quick.  I would want to

22   say maybe 40 to 50 percent.  It's very rare I have

23   customers waiting for hours.

24        Q    Very impressive.  I don't think that's the

25   world's perception of how long it takes a car deal

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

183

```
 1                      L. Stidhum
 2      to go through, but very impressive.
 3              MS. TROY:  No need to do your commentary.
 4          Ask your question.
 5              MR. KATAEV:  Do you have an objection,
 6          Counselor?
 7              MS. TROY:  You were not asking a question.
 8          You're making a commentary and talking to my
 9          client.
10              MR. KATAEV:  Do you have an objection?
11              MS. TROY:  Again, you can tell the judge.
12          You're talking directly to my client and not
13          asking a question.
14              MR. KATAEV:  I'm making sanctions against
15          you for interrupting my deposition.
16              MS. TROY:  For telling you not to speak
17          directly to my client?
18              MR. KATAEV:  Anything other than object
19          and state the grounds.  Please stop
20          interrupting my deposition.
21              MS. TROY:  I'm objecting.  It's not a
22          question.  You're talking to my client.
23              MR. KATAEV:  Say, Objection, you're
24          talking to my client and shut up.
25              MS. TROY:  Let the record reflect you told
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

184

1                          L. Stidhum

2          me to shut up.

3               MR. KATAEV:  You are interrupting my

4          deposition and I want you to stop.  I'm tired

5          of this problem with you.  Please conduct

6          yourself the way you're supposed to conduct

7          yourself at a deposition.

8               MS. TROY:  Telling another counselor to

9          shut up is not professional.

10               MR. KATAEV:  Okay.

11     BY MR. KATAEV:

12          Q    I'm placing up on the screen what has been

13     marked as Defendants's J.  I will represent to you

14     that this a document bearing Bates-stamp numbers

15     D151 through D157.

16     (Defendant's Exhibit J, Marked for Identification.)

17     BY MR. KATAEV:

18          Q    It concerns the lead for an individual

19     named Charles Clark.  Do you recognize that

20     individual?

21          A    No.

22          Q    On D151 it says here, Working with

23     Leticia; do you see that?

24          A    Yes.

25          Q    In status, there is multiple statuses

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

185

                              L. Stidhum

1
2    listed but two of them are lost, correct?

3          A    Right.

4          Q    What does that mean to you that the status

5    of a lead is lost?

6          A    That they either didn't want to come in or

7    they purchased it elsewhere.  The lead was lost.

8          Q    Typically in this program, there is a log

9    of everything that happened with this lead, correct?

10         A    I guess, yes.

11         Q    Let's look at the log.  Starting from the

12   bottom of page D157, there is a inbound phonecall by

13   Aditia on March 17, 2021, correct?

14         A    Okay.

15         Q    You see that?

16         A    Yes.

17         MS. TROY:  Objection as to timeframe.

18   Objection to relevance.

19         Q    We will skip this one.

20         MR. KATAEV:  Let the record reflect that

21         for this particular lead, it's a customer that

22         returned after December 2018.  A lead was lost.

23         The information from December 2018 is not

24         listed.

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

                                                              186

1                        L. Stidhum

2    BY MR. KATAEV:

3        Q    The next exhibit is Defendant's Exhibit J,

4    I believe and it's Bates-stamped D201 through D206.

5    For this particular lead, on D201, the manager is

6    listed as Andris Guzman, correct?

7        A    Yes.

8        Q    Going all the way to the bottom on

9    January 11th of 2019, Tiffany listed that this

10   customer is interested and will be here tomorrow any

11   time from 10:00 to 2:00?

12           MS. TROY:  Objection.  The document speaks

13       for itself.

14       A    Yes.

15       Q    On January 12th of 2019, there is a

16   listing that says the showroom visit started on

17   January 12th at 10:45 a.m. lasting six hours; do you

18   see that?

19       A    Yes.

20           MS. TROY:  Objection.  Document speaks for

21       itself.

22       Q    Is that common that a showroom visit can

23   last up to six hours without a sale being made?

24       A    BDC is in the back so they do not see what

25   is going on in the front so they have to come out,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

187

1                         L. Stidhum

2      grab the book where customers were logged and then

3      they can log them.

4                         So realistically was that customer

5      there for six hours, absolutely not.  She ended up

6      logging it in after she saw what happened after she

7      was able to communicate with whatever salesperson

8      was working with them so that way she can log them

9      in.  That is not realistic.

10         Q    Do you have any recollection as to why

11     this particular lead was lost?

12         A    No, I do not.

13         Q    Let's go to Defendant's Exhibit K.  This

14     is Bates-stamped D249 and it ends with D254.

15     (Defendant's Exhibit K, Marked for Identification.)

16     BY MR. KATAEV:

17         Q    At the top of this on January 1, 2019, it

18     says that the customer is here now with Leticia,

19     correct?

20         A    Yes.

21         Q    Then it says the showroom visit started on

22     January 1st of '19 at 4:15 p.m. and lasted for

23     22 hours.

24         A    That goes to show it depends on when the

25     BDC rep decides to come and check on their customer

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

188

1                    L. Stidhum

2      and log it in.

3           Q    It says here at 5:15, an hour after the

4      showroom visit started that, Going out under dad

5      Antonio Yanes; do you see that?

6           A    Okay.

7           Q    What does that mean to you?

8           A    He needed a cosigner and he did it under

9      his father.

10          Q    The customer left, as far as you could

11     tell from reading this document, without buying the

12     vehicle, correct?

13          A    It's hard to say because if it went out

14     under Antonio, there would be a new lead set up

15     under Antonio.

16          Q    Over here on January 8 of '19, it says

17     that you made an outbound phonecall to him, correct?

18          A    Yes.

19          Q    How is that tracked?  How did they know

20     you made an outbound phonecall?

21          A    I have no idea.  You can log a call and

22     then put what representative or who made that

23     contact so I don't remember this.

24          Q    It says here on January 26th that this

25     lead was lost, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

189

1                      L. Stidhum

2        A    Yes.

3        Q    There were emails sent just to try to

4   bring the customer back in and none of that worked,

5   correct?

6             MS. TROY:  Objection.  Goes beyond what

7             the witness would know.  She can answer.

8        A    Then again, there is a note there that

9   said that it went out under the dad.  If it says it

10  went out under the dad, that means the car was

11  delivered under the father's name.

12       Q    Are you saying that they marked the lead

13  as lost and that's incorrect?

14       A    Possibly, because it says it went out

15  under the dad.  If we are going to write that it

16  went out under the dad, that means he did not

17  qualify so his father purchased the vehicle for him.

18       Q    It's possible that he did, correct?

19       A    I'm sorry.

20       Q    It's possible that he did, correct?

21       A    I mean, it wouldn't be there in a note if

22  it wasn't true.

23       Q    Let's look at Defendant's Exhibit L.  This

24  is Bates-stamped D288 through D293.

25  (Defendant's Exhibit L, Marked for Identification.)

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

190

1              L. Stidhum

2    BY MR. KATAEV:

3        Q    Starting from the bottom, there is a note

4    here that on December 10th of '18, an appointment

5    was set for December 10, right?

6        A    Yes.

7        Q    There is another text message here from

8    one of the BDC people to come with proof of address

9    and two recent paystubs if available, right?

10       A    Yes.

11           MS. TROY:  Objection.  Document speaks for

12           itself.

13       Q    On the same day later that day, it says

14   the customer was here with you, correct?

15       A    Yes.

16       Q    The next item in the log is outbound

17   phonecalls by you and two days later another by the

18   BDC rep, right?

19       A    Right.

20       Q    As far as you can tell from this document

21   so far, this customer did not purchase any vehicle,

22   correct?

23       A    Right.

24       Q    On December 15th based on a phonecall by

25   the BDC rep, the customer said he needed money down

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

191

1                      L. Stidhum

2      and wouldn't be ready until February, correct?

3           A    Yes.

4           Q    At least this customer didn't leave

5      because of your waiting to check creditworthiness,

6      correct?

7           A    From what we can tell at least.

8           Q    The reason he knows he needs money down is

9      because his credit was checked, correct?

10          A    Yes.

11          Q    This happened on December of 2018,

12     correct?

13          A    As it states.

14          Q    Was this a one-off to all the situations

15     that you experienced?

16               MS. TROY:  Objection.  Argumentative.

17          Q    You can answer.

18          A    One more time.

19          Q    Is this a one-off to all the

20     discrimination you allege you suffered from the

21     waiting times?

22          A    I'm not understanding.

23          Q    You claimed the customers walked out

24     because they couldn't their credit checked, right?

25          A    Partially.  That's not exactly what I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

192

1                    L. Stidhum

2    said.

3         Q    You testified it took too long for their

4    credit to be checked such they would get frustrated

5    and leave, right?

6         A    Right.  I didn't state that for every

7    single customer I sat with.

8         Q    How many customers did it happen with?

9         A    I don't remember.  It's four years later.

10         Q    This is very important because it's part

11    of your federal lawsuit in federal court with a

12    federal judge, and I would like to understand how

13    many customers on a ratio basis did this happen with

14    and how many did it not happen with?

15         A    Realistically, I would say I would sit

16    with about two, two to three people daily.  Out of

17    those two to three people, at least two of them were

18    walking out at this time because of the longer wait

19    periods.

20         Q    Every day two out of three people?

21         A    More or less.

22         Q    This is one of the three that didn't walk

23    out?

24         A    Possibly, but then again you did state

25    that I made a phonecall to him.  Can we go back to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

193

1                    L. Stidhum

2     that?

3          Q     Sure.

4          A     It's possible that he did walk out because

5     that phonecall was regarding the results of the

6     credit being run finally.

7          Q     Here with Leticia, outbound phonecall two

8     days later, unable to leave message by the BDC rep.

9     Outbound text message, phonecall by BDC rep said he

10    needs money down and won't be ready until February

11    on December 15th.  December 31st, holding off until

12    February.  Lead lost January 16, 2018.

13         A     It's really hard to remember by customer

14    for something that happened four years ago

15    especially since I have been in the business a

16    couple of years and dealt with a bunch of customers.

17         Q     That's why we have records of these

18    things, correct?

19               MS. TROY:  Objection.  Argumentative.

20         Q     You can answer.

21         A     I mean if the stuff was accurate, I would

22    agree.

23         Q     You're saying this isn't accurate, that he

24    called and said --

25         A     I'm not saying that that isn't accurate.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

194

L. Stidhum

1     I'm talking about the documents overall.

3          Q    Let's look at Defendant's Exhibit M.

4     Bates-stamped D397 through D402.  This is a bunch of

5     messages here between the customer and someone named

6     Tiffany, a BDC person about doing an application; do

7     you see that?

8     (Defendant's Exhibit M, Marked for Identification.)

9          A    Yes.

10         Q    What is that application referring to?

11         A    It's a prequalification application.

12         Q    Which is something that is designed to

13    assist customers with getting financing if they need

14    it, correct?

15         A    More or less.

16         Q    It's a process that's done in advance to

17    avoid having to do what have you complained about in

18    this case, correct?

19         A    Right.

20         Q    On January 5th of 2019, Brianna, one of

21    your witnesses, listed that the customer wants to

22    know how much she would put down as a down payment,

23    correct?

24         A    Right.

25         Q    The following day, Brianna set up an

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

195

1                    L. Stidhum

2       appointment for the next Saturday, no money down and

3       has a trade-in, right?

4            A    Right.

5            Q    On January 12th, he was working with you

6       and he was greeted by Louis and Manuel, correct?

7                 MS. TROY:  Objection.  Documents speak for

8            itself.

9            A    I don't remember who this was, but I

10      guess.

11           Q    After that, the lead is marked lost the

12      following month, correct?

13           A    That was marked lost by the system so what

14      that means is that after a certain amount of time

15      that the customer is not contacted for whatever the

16      case may be, that lead goes into a loss folder.  So

17      like it says there, it's by the system, not by a rep

18      or anybody's name.  There is no telling if that car

19      was sold or not.  I don't recall the name.

20           Q    We will ascertain whether it was sold and

21      we will provide evidence of that.

22                    Going back to the January 6, 2019

23      phonecall with Brianna to the customer, when it

24      says, No money down and has a trade-in, what does

25      that mean to you?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

196

1                          L. Stidhum

2          A     They want to trade in their car.

3          Q     In that situation, is it the normal

4    process that there is no money down required?

5          A     One more time.

6          Q     In a situation where there is a trade-in,

7    is it normal that there is no money down required on

8    the financing?

9          A     In certain situations.  It all depends on

10   a person's credit.

11         Q     On January 5th of '19, before this

12   customer came in, he did the application necessary

13   to check for financing in advance, correct?

14               MS. TROY:  Objection.

15         A     Yes.

16         Q     So you didn't have to wait for anybody for

17   this customer, correct?

18         A     That's not true because this is the

19   prequalification application.  This is not an

20   application that does a hard inquiry on the credit

21   and shows exactly what the banks are looking for.

22   We still have to run the credit ourselves, we still

23   have to handwrite the application in order to do so,

24   so that's not accurate.

25         Q     The prequalification made it easier,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

197

                        L. Stidhum

1
2    didn't it?

3              MS. TROY:  Objection.  Argumentative.

4         A    No.  The prequalification doesn't make it

5    easier unless we have access to those applications

6    prior to them coming in.

7         Q    We are going to look at Defendant's

8    Exhibit N, I believe, which is Bates-stamped D522

9    through D527.  With this lead, Brianna set up an

10   appointment for the following day after January 4th

11   of '19, correct?

12   (Defendant's Exhibit N, Marked for Identification.)

13             MS. TROY:  Objection.  The document speaks

14        for itself.

15        A    Yes.

16        Q    On January 10th, this customer came in for

17   a showroom visit, correct?

18        A    Right.

19             MS. TROY:  Objection.  The document speaks

20        for itself.

21        Q    In this particular instance, the customer

22   left information on a car she was looking for and

23   asked the dealership to let her know if you find

24   that car, correct?

25             MS. TROY:  Objection.  The document speaks

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

198

1                      L. Stidhum

2        for itself.

3        A    Yes.

4        Q    Did you take any steps to find the car she

5    wanted?

6        A    Can we go back down to the dates?

7        Q    Sure.

8        A    That was towards the end of me leaving.

9    So again, I don't recall.  I don't remember this

10   customer specifically, but I'm sure I did everything

11   I could to look and see, especially at that point

12   where I was at being at that time and that

13   dealership.

14       Q    This customer you didn't lose because of

15   waiting for financing, right?

16       A    No.

17       Q    You lost this customer because you

18   couldn't find the car she wanted, correct?

19       A    I wouldn't say I lost the customer.  If

20   I'm not mistaken, I was out of that dealership a day

21   or two later.

22       Q    On January 14th, three days later,

23   correct?

24       A    I guess so.

25       Q    It takes you an hour to sell a car,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

199

1                        L. Stidhum

2      correct?

3           A    More or less.

4           Q    You had 36 hours to sell a car to this

5      individual customer, correct?

6           A    Yes.  If you see there, it says she wants

7      a E43 convertible or a 6 Series convertible.  We

8      never had those cars on our lot.  Not a convertible,

9      maybe an E class, maybe a 6 Series, yes, but

10     convertible, to my knowledge, we did not have

11     convertibles, either E43 or a 6 Series, on our lot.

12          Q    You could procure one, couldn't you?

13          A    I'm sorry?

14          MS. TROY:  Objection.  Argumentative.

15          Repeat your question since she didn't hear.

16          Q    You could procure one, couldn't you?

17          MS. TROY:  Objection.  Argumentative.  She

18          can answer.

19          A    I'm sure I did look and I'm sure if I

20     would have found it, she would been right back in

21     the store.

22          Q    Let's look at Defendant's O.  It's

23     Bates-stamped D536 through D543.  Towards the bottom

24     of this exhibit on November 24th of '18, it says

25     that this customer has a 2010 Pathfinder for trade

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

200

1              L. Stidhum

2       and mentioned trouble with credit and set an

3       appointment for November 25th; do you see that?

4              A    Yes.

5              Q    On November 26th, it says that this

6       customer worked with you recently, filed for

7       bankruptcy, needs to bring back a letter from the

8       trustee as to the budget she's allowed monthly

9       towards vehicle.  Will follow up, correct?

10             A    Yes.

11             Q    Do you remember working with this

12      customer?

13             A    No.

14             Q    Do you recall whether the knowledge of the

15      bankruptcy in this note indicates whether the credit

16      check was done yet?

17             A    Of course it was.  How else would we have

18      known about the bankruptcy being active?

19             Q    With respect to this customer, performing

20      the credit check was not an issue, correct?

21             A    It looks like this was in November, so no.

22             Q    Isn't it true you announced your pregnancy

23      on November 23rd of '18?

24             A    I believe so.

25             Q    This happened after you announced your

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

201

                              L. Stidhum

1

2    pregnancy, correct?

3        A    Yes.

4        Q    Your argument that your pregnancy was the

5    reason why it took longer to check credit history is

6    inaccurate with respect to this customer, correct?

7        A    No, that's incorrect.  If you recall, I

8    did say that Isaac was the dad of the dealership and

9    when the dad left, everybody did as they pleased, so

10   there is that.

11       Q    As far as you know, Isaac was the one who

12   pulled the credit for this one?

13       A    I'm not sure.  What I'm saying is that,

14   yes, I announced my pregnancy on November 23rd.  I

15   only remember that because it's my mother's

16   birthday.  I remember announcing my pregnancy then,

17   but the discrimination did not happen until after

18   Isaac left because the dad of the dealership was no

19   longer watching.  There was no jumping in or trying

20   to stop things from happening.  That's what my point

21   is.

22       Q    It says here on December 27th, The

23   customer came for a second time and left very upset.

24   She's in the middle of a bankruptcy and we can't

25   help her; do you see that?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

202

1                         L. Stidhum

2          A     Yes.

3          Q     Isn't it true that sometimes you can't

4    help a customer even if you do the credit check?

5                MS. TROY:  Objection.  Argumentative.

6          A     Of course that's true, but again, I

7    mentioned that I might have sat with two or three or

8    maybe more customers a day.  That could have been

9    one of the very few that that happened with.

10         Q     Let's go to Defendant's Exhibit O,

11   Bates-stamped D633 through D636.

12   (Defendant's Exhibit O, Marked for Identification.)

13   BY MR. KATAEV:

14         Q     On this particular one it says, On

15   December 29 of 2018, Brianna found out that this

16   customer was interested in a RAV4 and will be in

17   today and if not with follow up; do you see that?

18         A     Yes.

19         Q     On January 4th, she reiterated the

20   interest in the RAV4 and set an appointment for the

21   following day, correct?

22         A     Yes.

23         Q     It says that on January 5th, the text

24   message by Brianna asked the customer to ask for you

25   when the customer arrives, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

203

1              L. Stidhum

2          MS. TROY:  Objection.  Document speaks for

3      itself.

4      A    Yes.

5      Q    On January 6th, there is a message by

6  Brianna saying the customer will call back if he's

7  still interested, correct?

8      A    Correct.

9          MS. TROY:  Objection.  The document speaks

10     for itself.

11         MR. KATAEV:  Your objection is noted.

12     Q    On March 28, this individual bought a

13 different car from somewhere else, correct?

14     A    I guess so.

15         MS. TROY:  Objection.  The document speaks

16     for itself.

17     Q    There is no indication there that there

18 were any issues with getting a credit check done,

19 correct?

20     A    It also doesn't indicate that the customer

21 ever came in.  Yes, he made the appointment, yes,

22 Brianna told him to ask for me.  It doesn't look

23 like he ever came in.

24 (Defendant's Exhibit P, Marked for Identification.)

25         MR. KATAEV:  Bates numbered to be D804 to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

204

1                    L. Stidhum

2         D806.  This will be P.

3    BY MR. KATAEV:

4         Q    This is a December 2018 lead, correct?

5              MS. TROY:  Same objection as before, which

6         is again, you're not having the client testify

7         on her personal knowledge.  You're having her

8         read off the document.

9              MR. KATAEV:  Your objection to noted.

10   BY MR. KATAEV:

11        Q    Leticia, is this correct that it's a

12   December 2018 lead?

13        A    Yes.

14        Q    It says here on December 20th of '18 that

15   the cosigner will do an application tomorrow,

16   correct?

17        A    Yes.

18             MS. TROY:  Objection.  The document speaks

19        for itself.  This is document is cut off.

20             MR. KATAEV:  It's right here.

21   BY MR. KATAEV:

22        Q    Based on this note, is it accurate to

23   state that the customer came in?

24             MS. TROY:  Objection.  You're not having

25        her testify on her personal knowledge.  You're

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

205

1                      L. Stidhum

2          having her read off the document.

3          Q    I'm asking her based on her personal

4    knowledge whether, based on this note, the customer

5    would have come in?

6          A    If the customer did come in?

7          Q    Yes.

8          A    Can you scroll down a little more?

9          Q    Did the customer come in?

10         A    Yes.

11         Q    It says here that the customer is coming

12   with his cosigner tomorrow.  Worked with Leticia

13   last night.  He was here, doesn't know specific

14   time; do you see that?

15         A    Yes.

16         Q    In order for all of this to have happened,

17   is it accurate to state that the financing was done

18   already?

19         A    Possible.

20         Q    You did not end up selling this car

21   because the lead was lost?

22              MS. TROY:  Objection.  The document speaks

23         for itself.

24         A    Again, that's a lost lead by the system

25   that was put in three months later which is the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

206

1                           L. Stidhum

2       general timeframe of a lost lead when not contacted,

3       so I can't say it was not sold because he did

4       mention bringing in a cosigner so I can't confirm or

5       deny that.

6              Q    You don't know if it was sold or not?

7              A    I do not.

8              Q    This is Defendant's Exhibit Q.

9       Bates-stamped D812 to D814.

10      (Defendant's Exhibit Q, Marked for Identification.)

11      BY MR. KATAEV:

12             Q    At the bottom over here it says that this

13      individual came in with approval from Capital One,

14      correct?

15             MS. TROY:  Same objection.  You're not

16             having her testify on her personal knowledge.

17             You're having her read off the document.

18             A    Yes.  It does state that, but it doesn't

19      necessarily mean they are approved.

20             Q    You have a note over here, Bonus all

21      capital S's; do you see that?

22             A    Yes.

23             Q    Why did you write this note?

24             A    I have no idea.  I don't remember.

25             Q    This note was written about almost four

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

207

1                          L. Stidhum

2       hours after the showroom visit started?

3            A    I don't recall.  It's four years ago.

4            Q    It says here on January 2 of '19 that

5       Brianna noted that she's happy with the purchase?

6            A    Okay.

7            Q    And that means that you were able to make

8       a sale on this vehicle, correct?

9            A    Right.

10           Q    Isaac was not here at this time, correct?

11           A    Right.

12           Q    Andris was the one who did the financing,

13      correct?

14           A    I can't answer that question because it

15      could have been Serge or Andris.

16           Q    Defendant's Exhibit R.  Bates-stamped D815

17      through D820.

18      (Defendant's Exhibit R, Marked for Identification.)

19           MS. TROY:  Same objection.  You're not

20           having her testify on her personal knowledge.

21           You're having her read off the document.

22           MR. KATAEV:  You're only repeating

23           yourself to waste time.  Make a blanket

24           objection.

25           MS. TROY:  I'm going to make a blanket

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

208

1                           L. Stidhum

2          objection which is the whole set of documents

3          from I think Exhibit C onwards.  You're

4          basically having her read off the document.  A

5          lot of the times you're not even asking her to

6          testify on her personal knowledge.  So that's

7          not an appropriate objection.  The document

8          speaks for itself.

9               MR. KATAEV:  It is an inappropriate

10          objection and is a violation of Rule 30 and you

11          have been warned multiple times not to do that.

12               MS. TROY:  You asked me to make a blanket

13          objection so I did.

14               MR. KATAEV:  That's it, stop.

15               MS. TROY:  I did.

16               MR. KATAEV:  Stop already.

17               MS. TROY:  I did what you asked me to.  I

18          don't know want you want to me to do.  You

19          asked me to do something and I do it and then

20          you're like, Stop.

21               MR. KATAEV:  Please stop.

22     BY MR. KATAEV:

23          Q    Look at D818 in this particular exhibit.

24     There is a note here from Brianna that the customer

25     is waiting to see if Uber is going to hire him; do

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

209

1                    L. Stidhum

2     you see that?

3          A    Yes.

4          Q    In this particular instance no credit

5     check was probably performed because he was waiting

6     to see if he was going to be hired, correct?

7          A    That's not entirely true.

8          Q    As far as you know, the credit was done on

9     this particular customer?

10         A    I'm not saying it was or was not done

11    because there is no telling on this document.  I

12    can't really tell.

13         Q    That's fine.  This is Defendant's

14    Exhibit S, bearing Bates-stamped numbers D842 to

15    D847.

16    (Defendant's Exhibit S, Marked for Identification.)

17              MS. TROY:  Same objections as the

18         uniformed one, blanket one.

19         Q    This customer visited the showroom on

20    December 12th of 2018, correct?

21         A    Yes.

22         Q    This lead was subsequently marked lost,

23    correct?

24         A    Again, it's by the system three months

25    later, which is uniform for that CRM to do.  It does

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

210

                          L. Stidhum

1

2     that.  If it has not been contacted within three

3     months as it shows on every one you mentioned that

4     shows lost by the system, it's uniform.

5          Q    Isn't it true that if a vehicle is sold

6     it's marked in the CRM system?

7               MS. TROY:  Objection.  Argumentative.  She

8          can answer.

9          A    Again, it's if they do it.  It's not a yes

10    or no.  If they do it.

11         Q    If they fail to do it, isn't it true they

12    won't get paid a commission?

13         A    I don't believe that is entirely true

14    because they do not get paid on shows that are

15    walk-ins, so I can't say that's entirely true.

16              MR. KATAEV:  Off the record for a minute.

17    (Whereupon, an off-the-record discussion was held.)

18    BY MR. KATAEV:

19         Q    During the course of your employment with

20    Hillside Auto Outlet, there came an occasion where

21    you brought another employee on to work with us,

22    correct?

23         A    Yes.

24         Q    That individual's name is Brianna,

25    correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

                                                          211

                              L. Stidhum

1
2        A    Yes.

3        Q    Brianna is a childhood friend of yours,

4   correct?

5        A    Yes.

6        Q    She continued working at the dealership

7   after you left, correct?

8        A    Right.

9        Q    To your knowledge, is she still working at

10  the dealership?

11       A    No.  Not that I know of.

12       Q    This is Defendant's Exhibit T.  1165

13  through 1167.

14  (Defendant's Exhibit T, Marked for Identification.)

15            MS. TROY:  Also just the blanket objection

16       applies to Exhibit T.

17  BY MR. KATAEV:

18       Q    For this particular lead, this customer

19  was noted by Tiffany from BDC as a cash buy,

20  correct?

21       A    Yes.

22       Q    For a cash buy, that means there will be

23  no financing, correct?

24       A    Correct.

25       Q    There is showroom visit on December 8th,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

212

1                          L. Stidhum

2      correct?

3           A     Right.

4           Q     You followed up with a phonecall two days

5      later, correct?

6           A     Right.

7           Q     You follow up again two days after that,

8      correct?

9           A     Right.

10          Q     You were not able to sell the vehicle,

11     correct?

12          A     Right.

13          Q     Andris Guzman did not play any role in

14     that because there was no financing, correct?

15          A     Just because it's not noted there doesn't

16     mean he did not because Serge was in the back office

17     so he probably prepared the buyer's order but the

18     first point of contact would have been Guzman.

19          Q     For what?

20          A     Because he's the sales manager so he's

21     going to want to know what's going on, what the

22     customer is asking for, how much he's looking to pay

23     and so on.

24          Q     Going to Defendant's Exhibit U.  It's a

25     document Bates-stamped 1186.  I will represent to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

213

1                         L. Stidhum

2       you that this is from the payroll company and it

3       lists your hire date and termination date; do you

4       see that?

5            A    Yes.

6       (Defendant's Exhibit U, Marked for Identification.)

7       BY MR. KATAEV:

8            Q    To your knowledge, is this accurate you

9       were hired on May 22nd of 2018?

10           A    Yes.

11           Q    And you were separated from employment on

12      January 14th of 2019, correct?

13           A    Yes.

14           Q    That means you were employed with the

15      dealership for approximately eight months, correct?

16           A    Right.

17           Q    I will represent to you that we are

18      looking at your first paystub, which will be part of

19      this exhibit D1187.

20                     I have D1186 through D1250 will be

21      marked as Defendant's Exhibit V.

22      (Defendant's Exhibit V, Marked for Identification.)

23      BY MR. KATAEV:

24           Q    This pay period starts on May 22nd until

25      May 28th of 2018, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

214

                         L. Stidhum

1

2      A    Right.

3      Q    This pay period you only received the $300

4   weekly salary, correct?

5      A    That's incorrect.  It shows the $780 in

6   commissions.  We were paid in two separate checks.

7   You get a salary check every week of $300 and

8   commission was separated to reduce the amount of

9   taxes taken out.

10     Q    On this particular case, your first week

11  you sold approximately five cars, correct?

12     A    I think it averages out to 5.2 cars

13  because that's when I was receiving the 5 percent.

14     Q    Right.  The following week, you only sold

15  approximately two cars, correct?

16          MS. TROY:  Can you break that down,

17     Emanuel?

18     A    That looks like it might have been

19  two-and-a-half cars because if another salesperson

20  had to help out, you would split the deal with the

21  other salespeople, so I mean, it could have been

22  carrying over from the 5 percent.

23     Q    Approximately two to three cars in this

24  one, right?

25     A    It might been two.  It could have been

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

215

1                    L. Stidhum

2    that 5 percent carrying over.

3          Q    For the third week it was just two cars,

4    correct?

5          A    Right.

6          Q    In the week of June 12 to June 18, it was

7    no cars, correct?

8               MS. TROY:  Emanuel, you're scrolling

9          really fast.  Could you show us the two

10         paystubs corresponding?

11   BY MR. KATAEV:

12         Q    I will represent to you that I see one

13   paystub and it's June 12th to June 18th and the one

14   before is for the week prior and the one after is

15   for the week after.  This is D1193.

16              MS. TROY:  You're saying there is only one

17         for that week?

18   BY MR. KATAEV:

19         Q    You know what, I want to do this on the

20   record.  If you go to the week prior, it shows

21   year-to-date of $1,505.  If you go to the week after

22   if shows $2,165.

23         A    That paystub must just not be in there.

24         Q    Maybe it's later on in the production but

25   we will see.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

216

1                        L. Stidhum

2                 Based on the difference in the gross

3      for commissions and the total being $660, you sold

4      approximately four cars, correct?

5           A    One more time.

6           MS. TROY:  How did you come up with your

7           numbers?

8      BY MR. KATAEV:

9           Q    You look at D1193, which is the week from

10     June 12th, it shows a gross year-to-date of $2,165,

11     if you go to the week prior, it's $1,505.  You get

12     $660.

13          MS. TROY:  What is your question?

14          Q    $660 and you divide that by $150, I get

15     4.4 cars.  You sold approximately four cars,

16     correct?

17          A    Yes.

18          Q    In the following week with the commission

19     being $615, you also sold approximately four cars,

20     correct?

21          A    Yes.

22          Q    In the week after that, $655, again

23     approximately four cars, correct?

24          A    It's hard to say because it's confusing

25     with that 5 percent.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

217

1                        L. Stidhum

2           Q     Four to five, right?

3           A     Yes.

4           Q     Going into the week of July 3rd through

5     July 9 from the prior week that we just went over,

6     your gross remains the same and you didn't receive

7     any commission check.  So you didn't sell any cars

8     that week?

9                 MS. TROY:  Slow down a little bit.  In the

10                July 3 to the July 9 for 1198 is your question?

11                MR. KATAEV:  That's correct.

12    BY MR. KATAEV:

13          Q     I'm showing the week before had the same

14    gross and I'm showing going back to the same paystub

15    it's the same gross and this is the following week.

16    So is it accurate to say that you sold no cars the

17    week of July 2018, the first week?

18                MS. TROY:  Could you show me the two pages

19                again with the two numbers?

20                MR. KATAEV:  Yes, of course.

21                MS. TROY:  What number are you talking

22                about?

23                MR. KATAEV:  D1198 is the benchmark.  The

24                gross is listed as $3,435 year to date.  If you

25                go back to $1,197 to the week prior, it remains

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

218

1                    L. Stidhum

2          the same, it's $3,435 year to date.  If you go

3          to D1199, which is the one after, it's the

4          following week.

5     BY MR. KATAEV:

6          Q    Based on those three paystubs from D1197

7     to D1199, is it fair to say that you did not sell

8     any vehicles that week?

9          A    I don't recall.  I'm trying to think back.

10    Maybe I was on vacation or something.

11              MR. KATAEV:  Off the record.

12    (Whereupon, an off-the-record discussion was held.)

13    BY MR. KATAEV:

14         Q    We have reviewed the pages bearing

15    Bates-stamped numbers D1197 through D1200, which is

16    a comparison of two weeks worth of regular pay of

17    $300 a week and commissions for those two weeks.

18    And my question is:  Based on our review of the

19    record of the paystub for July 3rd through July 9th

20    bearing Bates-stamped D1198, you did not sell any

21    cars during that week, correct?

22         A    I did not say that I did not sell any

23    cars.  I was not paid any commission.  Sometimes you

24    wouldn't get paid on all your cars if the deal was

25    not funded.  Sometimes the deals were funded and I

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

219

1                              L. Stidhum

2        would still receive pay on it.  I'm not sure what

3        happened there.

4              Q    In the following week, you received $900

5        in commissions and that means you sold at least --

6              A    Six cars.

7              Q    Correct?

8              A    I don't know if it was all for that week

9        or if there were was some carried over.  $900 would

10       be for six cars.

11             Q    The following week you made $1,400 which

12       means you sold at least nine cars, correct?

13             A    Right.  So there is definitely a

14       possibility they were carried over from previous

15       weeks or I had a really great week.

16             Q    This is your best week so far, two months

17       into your employment?

18             A    I don't remember.

19             Q    I will represent to you that this is the

20       first four-figure week you had.  The following week

21       after you made the $1,400, you made $450 and that

22       means you sold at least three cars, correct?

23             A    Right.

24             Q    The week after that $300 which means at

25       least two cars, correct?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

220

1                    L. Stidhum

2         A    Right.

3         Q    The week after that you top your prior

4    record and made $1,450 which is a least nine cars,

5    correct?

6         A    Right.

7              MS. TROY:  Could you do the division for

8         us?

9         A    It's a little over nine cars.

10        Q    $1,450 divided by $150 is 9.67.

11        A    It might have been a split deal in there.

12   That looks like it was after the time that I stopped

13   receiving the 5 percent.

14        Q    This is for the week ending August 20th

15   from August 14th with a pay date of August 24th.  I

16   will represent to you that your complaint states

17   that Jay stopped working on August 24.

18        A    Okay.  It might have been part of it.

19   Again, this is a long time ago.  I don't recall

20   exact dates of which she left or was fired.

21        Q    My question is basically:  Did you sell at

22   least nine cars this week?

23        A    Yes.

24        Q    We are moving now into the next week and

25   here you sold -- you have $1,200 in commissions

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

221

1                           L. Stidhum

2      which means you sold at least eight cars, correct?

3           A     Right.  It could have been cars carrying

4      over.

5           Q     I understand.  This following week the

6      commission was only $150, which means you sold only

7      one car?

8           A     Possibly.

9           Q     The following week, $450, which means only

10     three cars?

11          A     Again possibly.

12          Q     The following week, again just three cars

13     which is $450, correct?

14          A     Yes.

15          Q     And now the next week, which we are

16     looking at September 18 to September 24, it's $750

17     which is five cars, correct?

18          A     Yes.

19          Q     Again, $750 for the following week is five

20     cars, correct?

21          A     Yes.

22          Q     And this particular week $900 is seven

23     cars, correct?

24          A     Which one are you talking about?  What

25     number are you talking about?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

222

1            L. Stidhum

2            MS. TROY:  Could you do your calculation

3       on the screen.

4            Q    We are up to D1223 for the period starting

5       and ending December 2nd through 8th of 2018, and

6       $900 divided by $150 is six.  You sold at least six

7       cars that week, correct?

8            A    Correct.

9            Q    The following week is $700.  Divide that

10      by $150, you sold at least four cars, correct?

11           A    Right.

12           Q    The following week is $800, which means

13      you sold at least five cars, correct?

14           A    I'm sorry.

15           Q    Five cars.

16           MS. TROY:  Put your calculator on the

17           screen.  It's easier.  You're saying $800.  How

18           many cars?

19           A    Five and change.

20           Q    You sold at least five cars that week.

21           A    Again, it might be carried over.  It's

22      hard to say.

23           Q    Okay.  The next week we are approaching

24      the end of October of '18 is $1,050.  When you

25      divide that by $150, it equals exactly seven.  You

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

223

                        L. Stidhum

1

2      sold at least seven cars that week, correct?

3            A    Yes.

4            Q    The following week, again, I have $1,050

5      which means you sold at least seven cars the next

6      week?

7                 MS. TROY:  Emanuel, instead of at least,

8            do the -- at least seven cars.

9            A    Yes.

10           Q    The same for the following week, which is

11     Bates-stamped D1230, correct?

12           A    Right.

13           Q    I have the first week of November from the

14     6th to the 12th with Bates-stamp D1232 and $900,

15     which means you sold at least six cars, correct?

16           A    Right.

17           Q    And here we have $1,375 for the middle

18     week of November from the 13th to the 19th.  That

19     means you sold at least nine cars, correct?

20           A    Right.

21           Q    Then during the almost last week of

22     November, the 20th to 26th, I have $450 which means

23     three cars, correct?

24           A    Right.

25           Q    And then during the last week of November,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

224

1               L. Stidhum

2    I think following Thanksgiving, I have $1,600 which

3    is your best week ever so far and that means you

4    sold at least ten cars, correct?

5         A    Yes.

6         Q    Now we are entering into the first week of

7    December 2018.  By the way, your best week after the

8    $1,600 was for the pay period November 27th to

9    December 3rd after you announced your pregnancy,

10   correct?

11        A    Yes.

12        Q    The following week you made $825, which is

13   at least five cars, correct?

14        A    Right.

15        Q    The second week in December you made $625,

16   which means at least four cars, correct?

17        A    Right.

18        Q    And then $500 for the third week in

19   December, which is approximately three cars,

20   correct?

21        A    Right.

22        Q    The final week in December you didn't sell

23   any cars, correct?

24        A    It looks like I sold two.

25        Q    I apologize, I saw zero.  I didn't see the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

225

1                        L. Stidhum

2    $350.  Withdrawn.

3                        For the final week during the

4    Christmas holiday season from December 25th to

5    December 31st, you sold at least two cars, correct?

6            A    Right.

7            Q    Finally in January of '19, you sold at

8    least five cars based on your commission of $825,

9    correct?

10           A    Right.

11           Q    The second week of January, you have $350

12   in commissions which means you sold at least two

13   cars, correct?

14           A    Right.

15           Q    And then you no longer sold anymore

16   vehicles because you quit, correct?

17           A    Correct.

18           Q    Okay.

19           MS. TROY:  With the qualification that

20           it's for the Defendants.

21           MR. KATAEV:  What does that mean?

22           MS. TROY:  Like, she sold cars at other

23           places, just not at the Defendants'.  You said

24           she no longer sold any cars.

25           MR. KATAEV:  Right, only for defendants.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

226

1                    L. Stidhum

2          Skipping a bunch of exhibits, I want to

3      see if I want to do any of the others.  We can

4      take a quick break.  It's 3:59.  Let's

5      reconvene at 4:05.

6          (Whereupon, a short recess was taken.)

7   BY MR. KATAEV:

8      Q    I have placed up on the screen what will

9   be marked as Defendant's Exhibit W.

10     A    Before we move on to this, you caught me

11  in a little bit of confusion.  You said my best week

12  was $1,600 in the first week of December.  If you

13  recall, that was $1,000 of that was a bonus from

14  November.

15     Q    Okay.

16     A    It was really four cars for that first

17  week and that was definitely cars rolling over from

18  November because if we go back to the other document

19  where the sold log was, I didn't sell a car until

20  the 6th or something like that.

21     Q    Okay.  You want to supplement your answer

22  just to explain that?  That's okay, I understand

23  that.

24     A    Of course.  It looks like I sold

25  20-something cars for that month, when there is no

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

227

                    L. Stidhum

1

2    way I sold that many in three days.

3         Q    What is the most cars you ever sold in a

4    month?

5         A    30.  33, actually but not at this

6    dealership.  When I went to NYC Motor Cars.

7         Q    I'm saying at this dealership?

8         A    27, I believe or 28.

9         Q    Do you remember what month that was?

10        A    That was in the month of November.  That's

11   why I received that $1,000 bonus on December 3rd.

12        Q    The $1,600 that you received was a $1,000

13   bonus and the $600 was for at least four cars,

14   correct?

15        A    Correct.

16        Q    Thank you for clarifying your answer.

17                  Going back to Exhibit W, I will

18   represent to you this is an April 28, 2022 order

19   from Judge Pamela J. Chen.  She's the judge that I

20   will represent to you was the prior judge assigned

21   to this case, and the order says here on April 1st,

22   2022, this Court ordered Plaintiff to notify the

23   Court by filing a letter on the docket within seven

24   days of the Second Circuit issuing a decision in

25   Case Number 21-1653.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

228

1              L. Stidhum

2              It says Second Circuit issued its

3    decision on April 12, 2022.  As of today, April 28,

4    2022, Plaintiff has not filed a letter on the docket

5    to notify the Court.  Accordingly, on or before

6    May 4th, 2022, Plaintiff shall file a letter on her

7    docket with the proposed next step of how this case

8    should proceed.

9              Do you see that?

10       A    Yes.

11            MR. KATAEV:  Off the record.

12    (Whereupon, an off-the-record discussion was held.)

13            MR. KATAEV:  Back on the record.  I was

14         about to ask some questions about this, but

15         Plaintiff wanted to make some objections.  Go

16         ahead.

17            MS. TROY:  The same objection as before.

18         The same blanket objection applies to this

19         exhibit.

20    BY MR. KATAEV:

21       Q    Just a question I have about this,

22    Ms. Stidhum, are you aware that there was an appeal

23    of a prior case?

24       A    Yes.

25       Q    You're aware that the prior case that was

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

229

1                      L. Stidhum

2       filed was dismissed, correct?

3           A    Yes.

4           Q    You're aware it was dismissed because it

5       didn't remain with the EEOC for the statutory period

6       of time?

7           A    Yes.

8           Q    You're aware that your law firm decided to

9       appeal that decision?

10          A    Yes, I am.

11          Q    Are you aware --

12              MS. TROY:  I'm going to make sure to

13              direct my client to not divulge any

14              communication she may have had with her

15              attorney as part of any response.

16      BY MR. KATAEV:

17          Q    For this whole line of questioning, don't

18      tell me anything that you said to your attorneys or

19      your attorneys said to you.

20                      You're aware that because there was

21      an appeal filed with the Second Circuit, that there

22      was something scheduled that was called a Camp

23      conference?

24          A    I'm not sure.

25          Q    Just to explain what a Camp conference is,

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

230

1                          L. Stidhum

2        it's a conference designed for the purpose of

3        discussing settlement over the phone.

4                A     Okay, yes.

5                Q     Are you aware that that Camp conference

6        was held?

7                A     Yes.

8                Q     Did you participate in that conference?

9                A     I don't believe so.  This is not the one

10       we are talking about that was in person, correct?

11               Q     It's not, that's correct.

12               A     So no.

13               Q     You were not present, correct?

14               A     No.

15               Q     Are you aware of what transpired at this

16       conference without telling me what was said?

17               A     Yes.

18                     MR. KATAEV:  Go off the record.

19       (Whereupon, an off-the-record discussion was held.)

20       BY MR. KATAEV:

21               Q     Just some general questions.

22                          When you quit, you're not alleging

23       that you were constructively discharged, correct?

24               A     No.

25                     MS. TROY:  Objection.  Calls for legal

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

231

                         L. Stidhum

1

2      conclusion.  I don't know if she knows what

3      you're asking.

4  BY MR. KATAEV:

5      Q    I will give some more layman's terms

6  question.

7                    The reason why you quit was because

8  you were not willing to wait until Isaac dealt with

9  the issues that you were raising to his attention,

10  correct?

11      A    That's not true, because I indeed did wait

12  for Isaac and we did have an in-person conversation

13  prior to me making my final decision.

14      Q    The reason why you quit is because you did

15  not want to wait any further after having that

16  discussion, correct?

17      A    I mean, at that point it was very, you

18  know, obvious that I wasn't getting the promotion I

19  wanted or was promised, not wanted I should say, or

20  any type of raise or anything like that, so yes, I

21  did quit because of that.

22      Q    You're not saying it was intolerable to

23  work at Hillside Auto Outlet based on those

24  conditions, correct?

25      A    I mean, it was because who wants to sit in

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

232

1                        L. Stidhum

2       a place for ten hours a day pregnant, tired and not

3       make any money.

4              Q    And the reason why you found it

5       intolerable to work there is because you were not

6       making money?

7              A    And because of the way I was being

8       treated.  I would be blatantly ignored when I had a

9       customer.

10             Q    And the only person that was ignoring you

11      was Andris Guzman, correct?

12             A    Which was my point of contact at the time

13      of Isaac's vacation, yes.

14             Q    You testified earlier that with respect to

15      your workweek, you were off on Wednesdays and every

16      other Sunday, correct?

17             A    Yes.

18             Q    What time would you come in every morning

19      and what time would you leave every evening?

20             A    10:00 to 8:00, sometimes 9:00, 10:00 p.m.

21      Depends on the workday, how many customers we have.

22             Q    You had at least a one-hour lunch break,

23      correct?

24             A    Not necessarily.  We would eat as we went.

25      There was no set time or timeframe to eat.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

233

1                        L. Stidhum

2         Q    Would you eat together with other

3    salespeople or did you eat on your own?

4         A    Depends.  If we both didn't have a

5    customer at the time, we would go grab lunch

6    together.  We didn't have a designated area to eat

7    so we would eat right at our desk.

8         Q    Did you go to restaurants and sit there

9    and eat?

10        A    Never.

11        Q    Never?

12        A    Never.  Picked up food and come back.

13        Q    You had the option of staying at the

14   restaurant if you wanted, correct?

15        A    Not really.  It was kind of eat and go

16   type of place.  Eat and get back to work.

17        Q    When you went to get lunch, how did you

18   pay for lunch?

19        A    I mean, with my money earned there, cash,

20   credit, whatever.

21        Q    Sometimes you used cash, sometimes you

22   used credit?

23        A    Yes.

24        Q    Did you ever have a charge back?

25        A    A charge back?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

234

L. Stidhum

1

2          MS. TROY:  Explain that.

3          Q     Dealership parlance.

4          A     I know what a charge back is.  If a car

5     was returned, they would take my commission back.  I

6     never dealt with a charge back, not that I remember

7     at least.

8          Q     Are you aware of any vehicles you sold

9     being returned for any reason?

10          A     Not that I can remember.

11          MS. TROY:  Again, qualifying this is

12          during Hillside?

13          MR. KATAEV:  Yes.

14     BY MR. KATAEV:

15          Q     Would you be surprised to learn there were

16     vehicles that were charged back that were not taken

17     from you?

18          A     Yes.

19          MR. KATAEV:  Off the record.

20     (Whereupon, an off-the-record discussion was held.)

21     BY MR. KATAEV:

22          Q     Are you aware that Defendants filed a

23     motion to dismiss this case?

24          A     Yes.

25          Q     Are you in receipt of a copy of the

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

235

L. Stidhum

1

2     decision from Judge Gonzalez denying the motion to

3     dismiss?

4          A    Yes.

5          Q    You read it, correct?

6          A    Yes.

7          Q    I'm going to place up on the screen what

8     will be marked as Defendant's Exhibit X.

9     (Defendant's Exhibit X, Marked for Identification.)

10    BY MR. KATAEV:

11         Q    I will represent to you that this is the

12    decision by Judge Gonzalez and I want to point you

13    to a particular paragraph and ask you some questions

14    about it, okay?

15         A    Okay.

16         Q    Look at page seven.  It says, Plaintiff's

17    allegations that she was deprived access to the

18    Dealertrack program and "could no longer run

19    customer credit scores or prefill financing

20    applications," are not enough to constitute adverse

21    actions because as Plaintiff herself described, she

22    was given unique access and received a benefit that

23    none of her colleagues received.

24                    You see that?

25         A    Yes.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

236

1                    L. Stidhum

2        Q    It says in the next sentence, However, the

3   Court finds that a decrease in Plaintiff's take-home

4   pay can constitute an adverse action.

5                    Do you see that?

6        A    Yes.

7        Q    You're saying that your decrease in

8   take-home pay occurred because you had to wait

9   longer for Andris to check customer's credit

10  histories, correct?

11       A    Correct.

12       Q    But I have shown you multiple examples

13  where you lost sales for reasons other than that,

14  correct?

15       A    You have showed me examples that don't

16  really apply to this because you showed me a cash

17  deal, which obviously there is no need to run

18  anybody's credit and you showed me two examples of

19  customers needing cosigners and then there is no

20  more notes after, and then it will say that the lead

21  was lost three months later because nobody wrote

22  anything so I can't agree to that.  That is not

23  correct.

24       Q    It says here, Plaintiff has plausibly

25  alleged that Defendants decreased her bonus by

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

237

1                          L. Stidhum

2      increasing the average wait time for her customers

3      after she announced her pregnancy without doing the

4      same to the customer's of her nonpregnant coworkers

5      thereby decreasing the number of sales she was able

6      to make.

7                     Do you see that?

8           A    Yes.

9           Q    How is it that the Defendants increased

10     the average wait time for your customers?

11          A    Again, by making them wait to run their

12     credit, by prioritizing other customers even though

13     they came afterwards, after me having no Dealertrack

14     access.

15          Q    During your employment with Hillside Auto

16     Outlet, did you physically witness new customers

17     coming in, being checked before your customers that

18     were already waiting?

19          A    Yes.  That's how I knew that my customers

20     were being pushed to the side and taken -- I'm

21     sorry, not taken, other customers were being

22     prioritized.

23          Q    You acknowledge either way that even if

24     Andris Guzman quickly processed the applications,

25     you would still have to face the hurdle of closing

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

238

1                   L. Stidhum

2      the sale based on whatever the numbers were and so

3      on and so forth, correct?

4           A    That's not my original complaint.

5           Q    I'm asking you even if Andris complied

6      with your request to more quickly do it, there was a

7      greater potential that you would still not be able

8      to close the sale for a variety of different

9      reasons, correct?

10               MS. TROY:  Objection.  Argumentative.  She

11          may answer.

12          A    I'm sorry, one more time.

13               MR. KATAEV:  Read it read.

14     (Whereupon, the referred to question was read back

15                    by the reporter.)

16               MS. TROY:  Objection.  Calls for

17          conjecture.  She may answer.

18          A    I don't know how to answer that question

19     properly because if that was the case then it would

20     be the same as before pretty much, before I even had

21     Dealertrack access.  I'm not really sure how to

22     answer that question.

23          Q    Even after Andris would give you the

24     numbers, there was a potential the customer would

25     say, You know what, I don't want to buy this

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

239

1                       L. Stidhum

2        vehicle, correct?

3            A    Of course, but that would have been the

4        case the whole time regardless.  That's not what the

5        complaint is.

6            Q    Even after Andris provided you the

7        numbers, the numbers could be such that the monthly

8        payment that would be required by the bank could be

9        too high, correct?

10           A    Yes.

11           Q    The down payment amount required by the

12       bank could also be too high, correct?

13           A    Yes.

14           Q    Even if Andris timely provided you the

15       numbers, it didn't necessary mean you would close

16       the sale, correct?

17           A    It's partially correct.

18           Q    It only increased your chance at making

19       the sale, but it didn't in any way guarantee you

20       would make the sale, correct?

21           A    Correct.

22           Q    Okay.  I have a couple more exhibits.  Let

23       me see if I need them.

24                MS. TROY:  Emanuel, we are sitting at the

25                4:30 mark.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

240

1                        L. Stidhum

2          MR. KATAEV:  We are almost done.

3          MS. TROY:  This has never been produced to

4     us as any document production.

5          MR. KATAEV:  It has been produced to the

6     judge in this case.  Please stop interrupting

7     my deposition.

8          MS. TROY:  I'm 1,000 percent --

9          MR. KATAEV:  Stop interrupting my

10    deposition.

11         MS. TROY:  I'm going to note my objection.

12    This has never been produced before.

13         MR. KATAEV:  Your objection is noted.  It

14    has been produced to the court.  Stop.

15         MS. TROY:  I'm 1,000 percent sure it was

16    not produced.

17         MR. KATAEV:  Are you willing to bet

18    $10,000 on it?

19         MS. TROY:  The Dropbox is only the

20    documents.  This is no audio file.

21         MR. KATAEV:  Stop interrupting my

22    deposition.

23         MS. TROY:  Go ahead.  I'm noting my

24    objection.

25    (Defendant's Exhibit Y, Marked for Identification.)

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

241

1                    L. Stidhum

2     BY MR. KATAEV:

3         Q     Defendants are producing Exhibit Y and

4     it's an audio recording, which I'm going to play.

5     It's approximately three minutes long.  I would like

6     the witness to listen and I will ask some questions

7     afterwards.

8                    Are you ready?

9         A     Yes.

10        Q     Thank you.

11                    (Audio is played.)

12              MS. TROY:  Let the record reflect that

13              this was not produced as part of the document

14              production response.  Instead Mr. Kataev

15              recorded me without my consent and subsequently

16              other courts have found that he should not be

17              able to record such conversations.

18    BY MR. KATAEV:

19        Q     Okay.  I have some questions about this

20    recording, Ms. Stidhum.  Were you ever apprized of

21    the fact that your attorney and I had what's called

22    a telephonic meet and confer?

23        A     Yes.

24        Q     Were you aware that this was the tenor of

25    the communications that were had?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

242

```
1                    L. Stidhum

2         A    No.

3         Q    Do you believe the way the attorneys are

4    acting in this phonecall are acting professional?

5              MS. TROY:  I'm going to object.

6         A    Can I object?  Can I object?

7         Q    No, you can't object.  Your attorney can

8    object and you can answer the question.  Please go

9    ahead and make your objection.

10             MS. TROY:  Repeat your question.  What is

11        your question?

12   BY MR. KATAEV:

13        Q    From what you hear on this phonecall, do

14   you believe the way the attorneys are acting on this

15   phonecall are acting professional?

16             MS. TROY:  How is this relevant?

17             MR. KATAEV:  Are you objecting because of

18        relevance, Counselor?

19             MS. TROY:  I'm objecting.

20             MR. KATAEV:  Your objection is noted.

21        Please answer the question.

22             MS. TROY:  Great.  We will make a motion

23        to strike and potentially move for costs

24        afterward.

25
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

243

                          L. Stidhum

1

2    BY MR. KATAEV:

3         Q    Please answer the question.

4         A    I'm not sure.  I don't know the nature.  I

5    know that things can get heated.

6         Q    Are you aware that interrogatory number 9

7    is not something that Defendants were compelled to

8    provide?

9         A    Can I know what an interrogatory is?  I

10   don't know what it is.

11        Q    Withdrawn.

12                  I believe I have two or three more

13   exhibits.

14             MS. TROY:  You had a couple of exhibits

15        30 minutes ago.

16             MR. KATAEV:  Well, now I have a couple of

17        exhibits 30 minutes later.

18             MS. TROY:  For the record, it's now 4:40.

19        We were supposed to start at 9:00.  He wasn't

20        ready to start at 9:00.

21             MR. KATAEV:  Based on testimonial time.

22        Enough with this.

23             I'm placing up on the screen what will be

24        marked as Defendant's Exhibit Z.

25   (Defendant's Exhibit Z, Marked for Identification.)

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

244

1              L. Stidhum

2    BY MR. KATAEV:

3         Q    I will represent to you that this is a

4    December 6, 2022 order from Judge Mann, who

5    previously presided as the magistrate judge in this

6    case.  You can read the whole thing but my focus

7    will be on this aspect right here.  Let me know when

8    you're done reading it.

9                   (Witness perusing document.)

10                  MS. TROY:  I would like to note for the

11             record that this does not reflect our

12             correction to some of the misrepresentations

13             made by Defendants' counsel.

14        A    I'm finished.

15        Q    Do you see this part of this order that

16   Judge Mann notes that Plaintiff's counsel persisted

17   in engaging in gratuitous and ad hominem attacks on

18   me, Defense counsel?

19        A    Yes.

20        Q    Are you aware that your attorney spends

21   time on your case engaging in personal attacks

22   against unnecessarily?

23        A    No.

24        Q    You should be aware of that.

25                  MS. TROY:  We are going to motion to

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

245

1                       L. Stidhum

2          strike that after this deposition.

3               MR. KATAEV:  Make the motion after.

4          Please don't interrupt my deposition.

5     BY MR. KATAEV:

6          Q    I'm placing up on the screen what will be

7     marked as Defendant's Exhibit AA.  I will represent

8     to you this is a December 22, 2022 decision by

9     Magistrate Judge Mann who previously presided over

10    this case.  It's resolving a letter motion filed by

11    your law firm that's representing you.

12              MS. TROY:  Scroll through the entirety of

13         the document.  It's 10 pages.

14              MR. KATAEV:  You have the document.  I'm

15         going to focus on what I need to ask.

16              MS. TROY:  She's entitled to review the

17         entirety of the document.

18              MR. KATAEV:  That's fine.  I would like to

19         finish asking the question before I do that.

20              MS. TROY:  She can review the entirety of

21         the document.

22              MR. KATAEV:  Stop interrupting my

23         deposition.  I'm asking a question.  Please do

24         not interrupt me.  You've interrupted me three

25         times during this question.  Make your

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

246

1                          L. Stidhum

2          objection after I'm done speaking.  Wait until

3          I'm done.  Have some manners.

4                  MS. TROY:  I'm asking that she be --

5                  MR. KATAEV:  Stop.  Stop.  I want to ask

6          my question.  Stop interrupting my deposition.

7                  MS. TROY:  My request was noted.  To the

8          extent you ignore it, it's also noted for the

9          record.

10                 MR. KATAEV:  It's not being ignored.  I

11         would like to ask my question.  Please stop

12         interrupting my deposition.

13                 MS. TROY:  Again, my request was noted.

14                 MR. KATAEV:  Stop interrupting my

15         deposition.  When I finish asking my question,

16         I will give you an opportunity to make an

17         objection.  Stop interrupting my deposition.

18     BY MR. KATAEV:

19         Q    As I was saying, I'm presenting to you

20     Defendant's Exhibit AA which is a Memorandum of

21     Order by Judge Mann, the previous judge in this

22     case, and in this decision she's resolving a letter

23     motion filed by your attorneys to compel Defendants

24     to provide supplemental responses to Plaintiff's

25     interrogatories and document demands.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

247

1                    L. Stidhum

2               Do you see that?

3         A    Yes.

4         Q    Thank you.  If you would like to take a

5    second to read through this and tell me when to

6    scroll I will do so.

7                    (Witness perusing document.)

8         A    Okay.

9         Q    I don't have any questions about this, but

10   at your counsel's request, we are going to waste our

11   time reviewing the entire document.

12             MS. TROY:  If you don't have any questions

13         about it, we don't need to waste our time going

14         through the document.

15             MR. KATAEV:  Thank you, I'm so glad we

16         were able to achieve that.

17   BY MR. KATAEV:

18        Q    I'm highlighting a portion --

19             MS. TROY:  If you have a question --

20             MR. KATAEV:  I said I don't have a

21        questions about this portion.

22   BY MR. KATAEV:

23        Q    Back on the record.  Page two of

24   Document 37.  This is Defendants' Exhibit AA and I'm

25   highlighting, Nevertheless Plaintiff's ad hominem

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

248

1                          L. Stidhum

2      attacks are unwarranted; do you see that?

3          A    Yes.

4          Q    This is the second reference in which your

5      attorneys are being accused of making personal

6      attacks against me.

7                          Are you aware of that?

8          A    No.

9          Q    It says in here that while the judge in

10     the Southern District of New York did, in fact,

11     criticize me for quote/unquote making frivolous

12     requests in that case, the firm, Troy Law PLLC,

13     which represents the Plaintiff in the instant action

14     has been sanctioned, punished in literally dozens of

15     cases, too numerous to recount in both this district

16     and the Southern District of New York.

17                          Are you aware, Ms. Stidhum, that the

18     law firm that you hired has been sanctioned,

19     punished in dozens of cases too numerous recount?

20          MS. TROY:  I'm going to make my objection

21          to this question.  Irrelevant to the case and

22          we are going to motion to strike that question

23          and response and we are going to move for costs

24          and fees to that question.

25          MR. KATAEV:  Your objection is noted.

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

249

1                         L. Stidhum

2      BY MR. KATAEV:

3           Q    Please answer the question.

4           A    No.

5           Q    I have one final exhibit and this

6      deposition is over.

7                     Ms. Stidhum, are you aware that there

8      was an appeal of the decision denying the motion to

9      dismiss?

10          A    Yes.

11          Q    Are you aware that that appeal has been

12     withdrawn?

13          A    Yes.

14               MR. KATAEV:  I believe I'm done.  I will

15          be right back.

16                     (Short recess taken.)

17     BY MR. KATAEV:

18          Q    Ms. Stidhum, do you have a recollection as

19     to when Ali came to first work at Hillside Auto

20     Outlet?

21          A    I don't really remember.  It was between

22     sometime in mid November to early December.  Isaac

23     was trying to train him for when he leaves to kind

24     of handle what he handles while he was on vacation.

25          Q    When did Isaac go on vacation?

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

250

1                    L. Stidhum

2      A    Early December.  Maybe mid December.

3      Q    It wouldn't be outside the realm of reason

4  for Ali to have come to begin work in the beginning

5  of December, correct?

6          MS. TROY:  Objection as to form.  She may

7      answer.

8      A    I'm sorry.  I don't understand.  I don't

9  understand.

10     Q    You wouldn't find it hard to believe that

11  Ali began working in the beginning of December 2018,

12  correct?

13     A    No.  That's what I just stated.

14     Q    Okay.  You disclosed to everyone that you

15  were pregnant in late November of 2018, correct?

16     A    Correct.

17     Q    The conversation about a sales manager

18  promotion happened after Ali started working there,

19  correct?

20     A    That's incorrect.  That happened prior.

21     Q    That conversation happened between

22  yourself, Ali and Isaac; did it not?

23     A    No.

24     Q    You're saying that Isaac had an

25  independent conversation with you first without Ali

The Little Reporting Company
646.650.5055 | www.littlereporting.com

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

251

```
1                         L. Stidhum
2      present?
3           A    Ali was never in the equation when we had
4      that managerial talk.
5                MR. KATAEV:  Give me one second.
6                     Last question.
7                MS. TROY:  You have like five last
8           questions already.
9                MR. KATAEV:  Congratulations for noting
10          that.
11     BY MR. KATAEV:
12          Q    If the first conversation you had about
13     the promotion occurred with Ali present, then it
14     is --
15               MS. TROY:  Objection.  Mischaracterizes
16          witness testimony.  You can continue to ask
17          your question.
18               MR. KATAEV:  You can't object in the
19          middle of my question.  I'm going to rephrase
20          the question.
21     BY MR. KATAEV:
22          Q    If it is, in fact, true that your
23     conversation with Isaac about a promotion occurred
24     with Ali present, then it is true that that
25     conversation occurred after you told everyone you're
```

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

252

1                           L. Stidhum

2      pregnant, correct?

3                MS. TROY:  Objection.  Mischaracterizes

4           witness testimony.  That's not what she said.

5           A    I just said Ali was not present for that

6      conversation at all.  In fact, I thought that the

7      month of November me exceeding expectations of every

8      other month was going to push me into that position

9      even more because it was already a conversation

10     prior to me doing the max cars I ever did at that

11     dealership.

12               MR. KATAEV:  Thank you for your time

13          today.  I have no further questions.

14

15               (Time noted: 4:57 p.m.)

16               _____

17               LETICIA F. STIDHUM

18

19     Subscribed and sworn to before me this _____ day

20     of _____ 2023.

21     _____, Notary Public.

22

23

24

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

253

1                          L. Stidhum

2                         I N D E X

3     WITNESS

4     LETICIA FRANCINE STIDHUM

5

6     EXAMINATION BY                          PAGE

7     MR. KATAEV                               4

8

9     COUNSEL REQUESTS                        PAGE

10    Dates in Florida                         20
      Childcare assistance                     29
11    Response to Interrogatory 7             157
      Response to Interrogatory 19            158

12

13                        E X H I B I T S

14

      DEFENDANT'S            DESCRIPTION       PAGE
15

16    Exhibit A              Kissimmee Police   21
                             Department record
17    Exhibit 2              Complaint          81
      Exhibit C              Plaintiff's Initial 143
18                           Disclosures
      Exhibit D              Damage calculations 148
19    Exhibit E              Response to        154
                             Interrogatories
20    Exhibit F              Monthly sheets     162
      Exhibit G              Monthly sheets     170
21    Exhibit H              Cap sheet          172
      Exhibit I              Declaration of     173
22                           Serge
      Exhibit J              Bates-stamped      184
23                           D151-D157
      Exhibit K              Bates-stamped      187
24                           D249-254
      Exhibit L              Bates-stamped      190
25                           D288-D293

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

254

1                        L. Stidhum

2

3               E X H I B I T S (Continued)

4

     DEFENDANT'S              DESCRIPTION          PAGE

5

6    Exhibit M              Bates-stamped        194
                            D397-D402
7    Exhibit N              Bates-stamped        197
                            D522-D527
8    Exhibit O              Bates-stamped        202
                            D633-D636
9    Exhibit P              Bates-stamped        203
                            D804-D806
10   Exhibit Q              Bates-stamped        206
                            D812-D814
11   Exhibit R              Bates-stamped        207
                            D815-D820
12   Exhibit S              Bates-stamped        209
                            D842-D847
13   Exhibit T              Bates-stamped        211
                            D1165-D1167
14   Exhibit U              Bates-stamped 1186   213
     {TR        Exhibit V          Bates-stamped
15                          D1186-D1250
     Exhibit X              Decision by Judge    235
16                          Gonzalez
     Exhibit Y              Audio recording      241
17   Exhibit Z              Order by Judge Mann  244

18

19   Attorney Kataev has retained all exhibits.

20

21

22

23

24

25

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

255

C E R T I F I C A T I O N

I, RUTHAYN SHALOM, a Court Reporter
and Notary Public within and for the State
of New York, do hereby certify:

That the witness whose deposition
is hereinbefore set forth, was duly sworn
by me, and that the within transcript is a
true record of the testimony given by such
witness.

I further certify that I am not
related to any of the parties to this action
by blood or marriage, and that I am in no way
interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto
set my hand this 6th day of March, 2023.


*Ruthayn Shalom*

RUTHAYN SHALOM

Case 1:21-cv-07163-OEM-LB  Document 102-11  Filed 03/27/24  Page 257 of 294 PageID #: 2367
STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

256

ERRATA SHEET


NAME OF CASE: STIDHUM v HILLSIDE AUTO et al.
DATE OF DEPOSITION: February 17, 2023
NAME OF DEPONENT: Leticia Stidhum
PAGE  LINE(S)          CHANGE              REASON
_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____
                LETICIA F. STIDHUM

Subscribed and sworn to before me
this _____ day of _____, 2023
_____, Notary Public.


_____

        MY COMMISSION EXPIRES:

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 258 of 294 PageID #: 2368

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

257

**A**

**a.m** 1:12 186:17
**AA** 245:7 246:20 247:24
**abide** 26:25
**ability** 9:13 41:17 46:10,24 66:25
**able** 45:20,22 98:22 98:25 114:11 144:3 170:19 177:17 187:7 207:7 212:10 237:5 238:7 241:17 247:16
**absolutely** 74:5,9 75:7 181:9 187:5
**accept** 138:22 174:19
**access** 45:16 46:9,20 47:7,11 62:11,18 63:8 69:2 82:20 91:24 103:9 105:8 106:5 146:4 163:15 175:21,23 176:15 177:16 197:5 235:17,22 237:14 238:21
**account** 47:24 117:14 146:6
**accounted** 85:8,11,25
**accurate** 34:17 158:19 168:2,4,8,9 168:17 169:2 170:9 172:3 193:21,23,25 196:24 204:22 205:17 213:8 217:16
**accused** 248:5
**achieve** 247:16
**achieved** 68:11
**acknowledge** 46:19 110:17 237:23
**acknowledging** 108:3
**acting** 242:4,4,14,15
**action** 7:12 15:9 236:4 248:13 255:13

**actions** 7:19 96:21 235:21
**active** 80:15 200:18
**activities** 162:13
**activity** 134:12
**actual** 21:6 37:23 82:5 136:13 145:15 150:16 164:6 166:15 167:2
**ad** 52:17 56:4 244:17 247:25
**add** 79:13 165:7 169:7
**additional** 171:11 179:24
**address** 4:5 16:18 65:10 130:15,17,20 149:8 155:23 190:8
**Aditia** 185:13
**administrative** 26:15 27:7
**admit** 105:7
**advance** 194:16 196:13
**adverse** 235:20 236:4
**advertise** 118:16
**affect** 9:13
**affidavit** 11:14
**affirmation** 11:16
**afloat** 93:8
**aftermarket** 164:9
**Afternoon** 143:12
**afterward** 242:24
**against-** 1:5
**agency** 26:15,18 27:7
**ago** 15:23 18:17 24:8 102:5 129:20 171:8 171:24 172:9 193:14 207:3 220:19 243:15
**agree** 4:9 175:16 178:7 193:22 236:22
**Agreed** 3:2,7,11 4:11
**agreement** 17:10

**ahead** 14:8 23:7 24:15 36:4 42:6 149:22 228:16 240:23 242:9
**airport** 33:7
**al** 256:4
**alarming** 128:11
**Alco** 30:9
**alcohol** 9:11
**Ali** 49:17 50:3 55:10 93:21,23 94:20 97:23 98:8 139:8 144:14 155:12,14 155:17 249:19 250:4,11,18,22,25 251:3,13,24 252:5
**Ali's** 50:2
**allegations** 235:17
**allege** 83:13 191:20
**alleged** 112:9,17 139:10,14 141:5,10 141:14 142:10,15 156:24 236:25
**alleges** 109:4
**alleging** 35:9 92:7 109:24 230:22
**alleviated** 115:8,15
**allow** 8:9
**allowed** 104:24 200:8
**alternating** 37:19
**ambiguous** 13:6 72:11 73:12,16 124:3,6 125:20
**amend** 144:20
**America** 18:9
**amount** 79:22 83:22 99:8 111:6 120:12 157:13 158:24 159:10,13 165:14 166:6,24 168:23 172:7 178:3,11,13 180:20 195:14 214:8 239:11
**amounts** 90:11 101:15 168:10

**and/or** 57:19 59:4 67:20
**Andris** 1:9 5:6 6:12 6:12 36:25 46:12 57:25 60:4,11 62:8 63:4 64:10,12 66:21 66:25 67:4,20 69:5 69:12 70:18 71:3,10 73:6 75:5 78:2,17 78:20,24 80:10 82:11 87:2 88:2,20 91:7,11 92:8 95:15 95:18,21,24 96:4 99:23 100:25 106:7 107:14,16 110:17 161:11 170:24 171:6 174:7 179:12 186:6 207:12,15 212:13 232:11 236:9 237:24 238:5 238:23 239:6,14
**Angeles** 133:22
**animosity** 179:6
**announced** 71:8 72:3 72:10 79:2,7 82:25 96:25 98:4 150:21 150:25 179:13 200:22,25 201:14 224:9 237:3
**announcement** 70:17 73:3 93:14 97:19 103:16 105:22,22 105:23,24 179:9
**announcing** 73:23 201:16
**annual** 158:24
**answer** 8:7,10,18 9:6 14:13 18:17 20:16 23:5,6,7,22 24:10 27:4 36:4 39:17 40:7 41:16,17,23,25 42:3,4 46:15 48:25 49:5,8 65:10,22 66:7 72:12 73:13,17 76:22 77:6 81:13

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 259 of 294 PageID #: 2369

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

258

88:24,25 89:10 90:21 91:21 93:20 93:22 95:5 99:11,13 103:11 106:6 107:8 108:16 109:7,22 110:6,7 113:12,18 115:10 116:2,3,6,13 119:2,21 120:3,10 120:25 121:4 123:3 124:8,24 125:21 127:5 131:6 132:9 132:22 133:19 134:2,14 138:8 148:3,16 149:20,21 149:22 152:14 153:19 154:4 156:10,17 160:15 161:16,20 163:5 175:14 177:6 182:3 189:7 191:17 193:20 199:18 207:14 210:8 226:21 227:16 238:11,17,18,22 242:8,21 243:3 249:3 250:7

**answered** 41:24 76:21 77:6 136:25 178:25

**answering** 6:25 81:6 161:18 181:24

**answers** 8:25 9:17 74:23 104:2

**Antonio** 188:5,14,15

**antsy** 78:10

**anxiety** 112:12,15 117:5

**anybody** 16:7 41:6 48:2 105:25 128:10 196:16

**anybody's** 195:18 236:18

**anymore** 90:19 117:10 225:15

**anyone's** 141:2

**apologize** 224:25

**appeal** 228:22 229:9 229:21 249:8,11

**application** 48:20,23 49:11,22 55:7,12,14 56:5,6 62:15 87:6 88:6 104:12 106:8 174:11 176:18 177:8 194:6,10,11 196:12,19,20,23 204:15

**applications** 63:10 64:22 65:25 67:2 69:14 82:12 83:7 87:22 88:2 97:8,12 106:12,16 130:3 161:12,13 197:5 235:20 237:24

**applied** 28:6 29:4 55:21 127:19 135:24 136:8 137:3 137:9 159:5

**applies** 211:16 228:18

**apply** 28:10,17 29:20 62:23 135:14,21 137:16 236:16

**applying** 137:15

**appointment** 85:23 170:13 190:4 195:2 197:10 200:3 202:20 203:21

**appointments** 85:5

**appreciate** 68:9

**apprized** 241:20

**approaching** 222:23

**appropriate** 104:3,12 208:7

**approval** 206:13

**approvals** 175:15 176:25 177:11 180:9

**approved** 177:18,18 181:14 206:19

**approximately** 51:13

136:11 176:9 213:15 214:11,15 214:23 216:4,15,19 216:23 224:19 241:5

**April** 53:20 54:20 227:18,21 228:3,3

**area** 126:9 233:6

**arguing** 73:24

**argument** 71:21 73:21 89:13,24 178:10 179:13 201:4

**Argumentative** 41:22 88:23 99:10 103:10 115:9 161:15 175:13 181:2,21 191:16 193:19 197:3 199:14,17 202:5 210:7 238:10

**Argumentive** 65:21 118:25

**arithmetic** 151:6,22

**arrest** 24:6,7

**arrested** 20:21 23:9 23:15

**arrives** 202:25

**ascertain** 195:20

**aside** 63:6

**asked** 7:16 14:11 21:25 41:24 49:8 61:17 76:21 77:5 108:25 136:25 137:3 146:17 152:6 154:18,19 178:25 197:23 202:24 208:12,17,19

**asking** 6:24 12:14 23:22 109:20 162:21 183:7,13 205:3 208:5 212:22 231:3 238:5 245:19 245:23 246:4,15

**asks** 156:14

**aspect** 45:4 60:14 171:7 244:7

**aspects** 45:6

**asserted** 154:21

**assigned** 227:20

**assist** 87:22 194:13

**assistance** 29:5,10,19 29:23 253:10

**assume** 8:18 122:23

**Assuming** 45:22

**assumptions** 89:16

**asymptomatic** 68:16

**attacks** 244:17,21 248:2,6

**attempt** 87:25

**attend** 29:25 30:10 30:16

**attended** 139:4

**attending** 134:25

**attention** 81:3 231:9

**attorney** 4:17 5:4 10:2,2,20 15:13 111:15 145:16 153:18 154:3 229:15 241:21 242:7 244:20 254:19

**attorney/client** 9:24 148:7

**attorneys** 2:3,8 3:3 16:4,8 147:5,6,20 147:21,23,24 148:17 152:25 229:18,19 242:3,14 246:23 248:5

**Audi** 127:23 128:6 129:25

**audio** 240:20 241:4 241:11 254:16

**August** 43:18,20 44:3 60:8,10 64:15,17 132:23 176:3 220:14,15,15,17

**authority** 95:16

**authorization** 174:3

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

259

**Auto** 1:7,7,7,8 5:5,6,8
5:9,11,12,25 6:2,3
11:17 12:4,9,18
13:12,16,16,22,23
13:23 14:6,9,12
33:19,21,24 34:7,10
34:11,14,21,21,22
34:24 35:2,5,6,7,13
35:16 36:7,13,22
48:6 50:9 55:14,22
57:12 66:24 74:20
77:8 97:20 107:24
116:22 117:2 118:8
118:19,24 120:14
121:9,14,22,25
122:5,15,18,22
124:17 125:14
127:24,25 128:19
128:22 129:25
130:2 131:17,19,22
134:21 138:4
146:22 156:15
157:23 158:7,21,25
159:25 160:5,19
182:13 210:20
231:23 237:15
249:19 256:4
**automobile** 33:25
34:5 126:2,3 131:18
**available** 118:7 174:2
190:9
**Ave** 1:7 5:5,8
**Avenue** 2:9
**average** 150:21,25
180:10 237:2,10
**averaged** 150:13
**averages** 214:12
**avoid** 194:17
**aware** 31:5 40:12
42:13 138:16
228:22,25 229:4,8
229:11,20 230:5,15
234:8,22 241:24
243:6 244:20,24
248:7,17 249:7,11

**B**

**B** 80:25 151:8 253:13
254:3
**back** 19:13,17,24
20:2,8 22:14 24:19
24:22 32:7 35:22,23
40:14 46:15,16
51:14 53:16 66:9,10
67:7 68:4,21 81:10
81:20,23,24,24
82:22 83:21 84:10
91:16,17 93:10 97:5
99:15,16 102:12,13
103:13 105:3,4
108:18 115:12
118:10,11 120:7
122:13 126:25
138:10,11 142:18
156:20 163:7,25
164:8 165:5,14,22
167:6 168:12 175:5
176:24 177:4
179:17 186:24
189:4 192:25
195:22 198:6
199:20 200:7 203:6
212:16 217:14,25
218:9 226:18
227:17 228:13
233:12,16,24,25
234:4,5,6,16 238:14
247:23 249:15
**background** 107:14
**backpay** 119:19
120:8,12,23,25
121:18
**backtrack** 83:2 97:18
**backup** 146:2
**bad** 52:24 54:23,23
56:17
**bank** 39:13 66:5
177:4 181:8 239:8
239:12
**bankruptcy** 159:19
200:7,15,18 201:24

**banks** 64:25 65:6
67:17 174:19
196:21
**Baron** 1:8,9 5:7,7 6:6
6:15,16,20 127:25
128:22,23 129:3
130:2
**Barons** 6:19
**based** 50:21 56:4
92:9 109:25 113:24
120:25 123:16
150:16 168:13
169:7 171:20
174:18 175:6
179:20 182:6
190:24 204:22
205:3,4 216:2 218:6
218:18 225:8
231:23 238:2
243:21
**basic** 8:2 120:19,21
**basically** 37:3 208:4
220:21
**basis** 57:14 78:23
91:10 109:5,13
110:11 111:12
152:13 192:13
**Bates** 203:25
**Bates-stamp** 184:14
223:14
**Bates-stamped** 162:6
186:4 187:14
189:24 194:4 197:8
199:23 202:11
206:9 207:16
209:14 212:25
218:15,20 223:11
253:22,23,24 254:6
254:7,8,9,10,11,12
254:13,14,14
**BDC** 51:24 86:10
128:20 168:17
186:24 187:25
190:8,18,25 193:8,9
194:6 211:19

**bearing** 184:14
209:14 218:14,20
**began** 250:11
**beginning** 16:19 37:5
38:15,17 48:18
63:25 64:22 66:19
72:24 114:13,16
250:4,11
**belief** 91:11
**believe** 17:11,18
18:16 31:22 56:2
57:17 70:12,13
78:23 79:17 80:12
89:6 92:5,13,18
96:7,11 97:8,13,21
98:9,24 99:18 100:9
100:14 101:4,11
102:2 103:5 105:20
107:4 108:5 110:16
118:21 132:7 136:9
136:15 137:24
147:19 148:4 159:8
168:4 173:8 186:4
197:8 200:24
210:13 227:8 230:9
242:3,14 243:12
249:14 250:10
**bell** 38:20
**benchmark** 217:23
**benefit** 29:21 235:22
**benefits** 122:17
135:12 136:7,19,20
136:23 137:3,4,4,7
137:10,16
**Benjamin** 30:12
**Bermuda** 132:15
**best** 8:21 9:2 41:17
56:11 87:15 118:17
158:23 219:16
224:3,7 226:11
**bet** 240:17
**better** 114:16,17,19
158:20
**beyond** 8:24 189:6
**bickering** 179:17

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 261 of 294 PageID #: 2371

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

260

**big** 154:14
**bigger** 154:13
**bills** 114:24 126:10
**birth** 17:7,13,17
  50:25 51:4 54:5
  55:18 100:20
  126:21,24 131:4
  134:18,22 135:14
**birthdate** 17:2,3
**birthday** 201:16
**bit** 67:8 87:12 144:3
  217:9 226:11
**blank** 96:10
**blanket** 207:23,25
  208:12 209:18
  211:15 228:18
**blatantly** 232:8
**blood** 255:14
**blue** 76:7
**board** 80:2,8 169:13
  169:22
**boat** 132:14
**body** 8:8
**bonus** 42:23,25 50:18
  50:19 61:13,15,20
  75:9,13,19,25 76:3
  76:5,6 105:18,18
  157:3,4,6,8,13
  164:19,21,22,24
  166:5,8 167:9
  206:20 226:13
  227:11,13 236:25
**bonuses** 106:5
**book** 187:2
**born** 17:25 19:10
  135:20,22,25
**bother** 129:18
**bottom** 185:12 186:8
  190:3 199:23
  206:12
**bought** 142:7 203:12
**Boulevard** 2:4 33:9
  48:10 53:10
**box** 149:13
**brain** 151:23

**break** 9:4,7 22:17,23
  24:13,15 39:2 81:7
  81:10,19,25 82:4,4
  145:14 162:20,21
  214:16 226:4
  232:22
**Brianna** 98:7 100:13
  100:16 139:9
  144:13 194:20,25
  195:23 197:9
  202:15,24 203:6,22
  207:5 208:24
  210:24 211:3
**brief** 144:16
**bring** 126:13 172:14
  189:4 200:7
**bringing** 99:3 115:14
  206:4
**broker** 125:23,25
  126:2,4 135:10
**brought** 49:14,23
  55:11 93:21 210:21
**brushed** 44:8
**bucks** 172:15
**budget** 200:8
**bummed** 56:15
**bunch** 85:14 94:13
  193:16 194:4 226:2
**busiest** 85:13
**business** 33:25 52:2
  62:24 85:4,19 97:16
  97:18 99:7 124:14
  125:5,7 127:9
  131:19 167:11
  193:15
**busy** 64:6,8 67:9 88:8
**buy** 211:19,22 238:25
**buyer's** 212:17
**buying** 180:20
  188:11

—————————————
**C**
**C** 2:2 4:2,2 143:14,14
  143:19,20 151:9
  208:3 253:17 255:2

255:2
**calculated** 150:9
  152:17 168:13
**calculating** 166:2
**calculation** 10:24
  145:8 150:20,24
  153:13,15 154:20
  222:2
**calculations** 149:4,10
  154:24 155:3
  253:18
**calculator** 165:25
  222:16
**California** 133:10,15
  133:17
**call** 13:7 26:25 35:19
  56:3,8 86:14,17,19
  157:16 158:12
  188:21 203:6
**called** 53:7 56:4,17
  60:18 173:5 193:24
  229:22 241:21
**calling** 68:9 151:24
  152:3
**calls** 9:24 23:4,20
  24:24 36:2 92:11
  110:4 119:20
  230:25 238:16
**calm** 97:25
**Camp** 229:22,25
  230:5
**cap** 136:16 173:5
  253:21
**capital** 206:13,21
**capitalizing** 101:22
**capped** 136:15 159:9
  159:12
**car** 31:14,15 39:5,5,8
  50:13 60:17 75:16
  83:23,23 89:21
  118:8 128:8,14
  160:9,11,13 163:20
  164:10,16,20 165:9
  169:16 171:15
  180:21,22 182:18

182:25 189:10
  195:18 196:2
  197:22,24 198:4,18
  198:25 199:4
  203:13 205:20
  221:7 226:19 234:4
**car-buying** 181:18
**Cardozo** 30:12
**care** 40:4,16 89:4
**cared** 98:24
**carefully** 13:3
**carried** 219:9,14
  222:21
**carrying** 214:22
  215:2 221:3
**cars** 34:14 36:17
  39:15 42:17 48:8
  49:12 50:6,24 51:12
  52:4 53:6,13,14,16
  54:18 55:10 61:21
  76:8 77:16 79:13,15
  79:17,18,19,21,22
  79:25 87:14 90:11
  99:5 109:2 115:5
  121:10,12,21
  123:15,17 124:13
  125:6 127:7 136:4
  137:24 155:18
  157:14 162:5
  167:25 168:2,7,10
  168:14,15,23
  169:17 170:6,15,20
  170:22 171:11,19
  171:22 172:3,5,6,7
  172:11 199:8
  214:11,12,15,19,23
  215:3,7 216:4,15,15
  216:19,23 217:7,16
  218:21,23,24 219:6
  219:10,12,22,25
  220:4,9,22 221:2,3
  221:10,12,17,20,23
  222:7,10,13,15,18
  222:20 223:2,5,8,15
  223:19,23 224:4,13

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

261

224:16,19,23 225:5
225:8,13,22,24
226:16,17,25 227:3
227:6,13 252:10
**case** 1:2 5:4 7:10,17
11:18,20 12:5,7,21
15:6 16:9 17:10
23:23 34:16 35:16
39:23 41:5 62:17
80:22 106:10
111:10 119:19
120:23 121:18
129:14 141:24
144:25 149:13,14
150:2,2 156:7,9
162:22 194:18
195:16 214:10
227:21,25 228:7,23
228:25 234:23
238:19 239:4 240:6
244:6,21 245:10
246:22 248:12,21
256:4
**cases** 248:15,19
**cash** 211:19,22
233:19,21 236:16
**categories** 154:20
**caught** 226:10
**caused** 64:25 67:5
69:4,13
**caution** 24:23
**cease** 51:20
**ceased** 52:4
**cellphone** 40:24
86:18 145:19
**center** 52:2 70:9 85:5
**centralized** 130:6
**certain** 47:18 87:22
97:12 98:23,25
146:4 178:13
195:14 196:9
**certification** 4:13
31:3,6
**certifications** 128:12
128:13,15

**certify** 255:6,12
**chance** 239:18
**chances** 46:2
**change** 47:20 76:24
95:22,25 128:8
222:19 256:5
**changed** 45:17 47:18
74:14
**changes** 4:23
**changing** 141:24
**characterization**
140:13
**charge** 21:6 24:10
233:24,25 234:4,6
**charged** 21:8 160:25
234:16
**charges** 21:4,12
**Charles** 184:19
**chart** 152:24 169:21
**Charter** 147:13,18
**check** 38:3,4 46:13
172:12 176:21
187:25 191:5
196:13 200:16,20
201:5 202:4 203:18
209:5 214:7 217:7
236:9
**checked** 168:7 191:9
191:24 192:4
237:17
**checks** 214:6
**Chen** 227:19
**child** 115:13,16,18
116:7,17,18 126:22
126:25 131:4
134:18,22,24
135:20,22,25
**child's** 116:14,16
**childcare** 29:4
253:10
**childhood** 211:3
**children** 16:23,24
18:22 55:19 74:17
74:19 78:21 131:10
**children's** 139:23

**choose** 64:11
**chose** 148:19
**chosen** 174:12,15
175:5,18 178:3
**Christmas** 142:5
225:4
**circle** 70:7
**Circuit** 227:24 228:2
229:21
**circumstance** 69:7
102:2
**circumstances**
124:18 125:9
138:13 179:21
**Civil** 4:20
**claim** 27:22 28:3
102:9 110:10
120:15 147:17,21
**claimed** 191:23
**claiming** 119:18
120:22 121:17
**clarification** 157:22
**clarified** 34:13
**clarify** 14:8,13 18:13
19:5 24:5 91:10
166:12
**clarifying** 50:17
227:16
**Clark** 184:19
**class** 199:9
**classes** 135:2
**clear** 4:19 8:6 12:24
25:17 79:10 95:5
98:18,20 125:2
**client** 68:14 104:20
151:21 181:22
183:9,12,17,22,24
204:6 229:13
**clock** 162:14
**close** 33:10,13 72:21
129:23 148:19
238:8 239:15
**closely** 179:4
**closer** 119:9
**closing** 237:25

**Club** 27:23 51:25
52:12 55:8 137:18
**clue** 78:22
**coach** 26:21 119:22
**coaching** 26:24
103:25
**cold** 79:15,16
**Collado** 165:17
**colleagues** 235:23
**college** 30:16
**combination** 44:20
44:25 112:13
**combining** 123:20
**come** 42:13 44:5
47:21 49:25 56:13
56:14 85:11,22
89:20 108:22 122:4
128:10 142:18
185:6 186:25
187:25 190:8 205:5
205:6,9 216:6
232:18 233:12
250:4
**comes** 65:5 85:2
166:2
**comfortable** 148:21
**comforting** 100:16
**coming** 128:10
153:16,25 197:6
205:11 237:17
**commentary** 154:15
183:3,8
**comments** 73:7
**commission** 40:17
50:12 88:12,15,18
90:20 94:21 107:9
109:2 166:15
210:12 214:8
216:18 217:7
218:23 221:6 225:8
234:5 256:23
**commissionable**
164:5 167:6
**commissions** 42:12
42:15 88:22 214:6

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 263 of 294 PageID #: 2373

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

262

216:3 218:17 219:5
220:25 225:12
**common** 186:22
**communicate** 187:7
**communicating**
62:19
**communication** 9:24
229:14
**communications**
131:23 241:25
**comp** 136:22
**companies** 12:11,11
**company** 13:19 43:16
213:2
**compared** 170:11
**comparison** 218:16
**compel** 25:6,7,23,24
246:23
**compelled** 243:7
**compensation** 28:4
37:4 39:2 43:5 45:4
50:8,11 60:25 75:8
75:12
**compensatory**
153:10 155:3
**competition** 87:12
**complain** 96:20
140:7
**complained** 140:23
156:14 161:10
194:17
**complaint** 7:2 11:9
11:11 15:19,21
26:14,18 27:7,10,14
27:16 69:10,12
80:21 81:9 82:2
83:9,13 86:12
102:18 109:4,10
111:5 156:16
157:14 220:16
238:4 239:5 253:17
**complete** 8:9 83:16
128:17 178:18
**completed** 128:15
**completely** 51:22

85:9 104:9 138:20
177:24 178:4
**complied** 238:5
**comport** 173:19
**comports** 174:6
**computation** 145:11
**computer** 82:17,20
104:14
**concerned** 68:14
**concerning** 7:9 11:16
139:9 180:9
**concerns** 184:18
**conclusion** 23:5 36:2
92:12 110:5 119:21
231:2
**conditions** 95:25
231:24
**conduct** 7:18 27:2
156:15 184:5,6
**confer** 241:22
**conference** 1:18
138:18 139:2,4
148:4 229:23,25
230:2,5,8,16
**confidential** 17:8,17
17:22
**confidentiality** 17:9
**confirm** 34:17 169:6
206:4
**confirmed** 166:23
**confirming** 24:18
**conflict** 71:16
**conflicts** 71:10,25
**confront** 78:3 96:18
**confronted** 96:16
**confusing** 13:17,20
13:21 216:24
**confusion** 5:17,22
226:11
**congratulations**
51:10 70:20,23
251:9
**conjecture** 238:17
**consent** 241:15
**considered** 39:8

**consistent** 17:14
101:15,17
**consisting** 11:3
**constantly** 78:5,7
86:14
**constitute** 235:20
236:4
**constructively**
230:23
**consult** 147:23
**consumed** 9:11
**contact** 79:5 155:25
188:23 212:18
232:12
**contacted** 195:15
206:2 210:2
**contents** 15:24 178:8
**continue** 13:5 95:14
251:16
**continued** 43:23 63:3
120:13 122:22
143:18 211:6 254:3
**control** 177:25 178:4
178:7 179:21
**conversation** 10:3
14:21 16:7 56:12,21
61:23 71:4 83:24
90:8 108:11,23
110:24 145:15
156:18 157:9,12
231:12 250:17,21
250:25 251:12,23
251:25 252:6,9
**conversations** 16:3
78:11,14 82:6
144:15 241:17
**convertible** 199:7,7,8
199:10
**convertibles** 199:11
**convicted** 20:23
**conviction** 24:6,7
**convictions** 21:12
**copies** 38:11 40:25
41:4
**coplaintiff** 12:20 15:8

**copy** 4:16,21 81:8
108:8,9 234:25
**corporate** 5:15
**corporation** 5:15
**correct** 4:18,19 7:11
7:13 10:24 15:9,10
15:11,25 17:4 23:10
23:12,25 25:21
27:11,25 28:12,13
28:15,24 29:2,17,18
30:14,15,22 33:19
33:20,22 34:2,5,6,8
34:12 35:2,7,11,16
35:20 36:8,9,10,14
36:17 37:15,22 38:5
39:6 40:5,11 41:15
42:10 43:8,21,22,24
44:18 45:24 46:3,21
46:24 47:4,9 48:4
48:16 49:19 50:21
50:22 51:13 52:5
53:15 55:15,19,23
57:10,12,21 58:2,5
58:10,14,17,24
59:25 60:5,12,13,21
60:22 61:3,6,9,12
62:23 63:4,13 64:2
64:3,10 65:2,15,25
66:5,14,17,18,21
67:2,3,6,21 69:5,6,8
69:9,15,19 71:22
73:7,15 74:14,20
75:6,10,14,17,19
76:14,16,20,25 77:4
78:14 80:11,12
83:11,16 85:3,4
87:20,23 88:12 90:3
91:14,22 92:10 94:4
95:4,9,16,19,22
96:2,13 105:9,12
106:8,13,20 108:14
109:6 110:18
111:10 113:20
115:4,8 116:19
119:13,16 121:7,15

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 264 of 294 PageID #: 2374

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

263

122:2 124:2 125:15
126:19,22 130:15
133:15 136:14
137:7,10 138:17,19
139:2 140:21
144:25 145:5,8,12
146:10,19,23 149:8
149:11,15 150:3,7
150:14,18,22,25
151:20 152:18,22
152:25 153:4,7,13
154:4,21,24 155:18
155:19,21 156:4,18
156:24 157:25
158:2,9 159:23
160:3,7,8 161:7
164:6,11,14,17,20
165:2,7,14,17,19,23
166:3,19,24 168:23
168:24 170:7,17
171:12,16,17
174:21,22 175:11
175:21 176:4,7
177:15 178:20,23
185:2,9,13 186:6
187:19 188:12,17
188:25 189:5,18,20
190:14,22 191:2,6,9
191:12 193:18
194:14,18,23 195:6
195:12 196:13,17
197:11,17,24
198:18,23 199:2,5
200:9,20 201:2,6
202:21,25 203:7,8
203:13,19 204:4,11
204:16 206:14
207:8,10,13 209:6
209:20,23 210:22
210:25 211:4,7,20
211:23,24 212:2,5,8
212:11,14 213:12
213:15,25 214:4,11
214:15 215:4,7
216:4,16,20,23

217:11 218:21
219:7,12,22,25
220:5 221:2,13,17
221:20,23 222:7,8
222:10,13 223:2,11
223:15,19,23 224:4
224:10,13,16,20,23
225:5,9,13,16,17
227:14,15 229:2
230:10,11,13,23
231:10,16,24
232:11,16,23
233:14 235:5
236:10,11,14,23
238:3,9 239:2,9,12
239:16,17,20,21
250:5,12,15,16,19
252:2
**correction** 244:12
**correctly** 53:12 96:7
    164:23 167:13
**corresponding**
    215:10
**cosigner** 188:8
    204:15 205:12
    206:4
**cosigners** 236:19
**costs** 242:23 248:23
**cough** 68:19
**coughing** 68:6
**counsel** 4:8 20:17
    24:18 29:8 82:7
    103:19,25 104:5,23
    139:5 157:20
    158:15 244:13,16
    244:18 253:9
**counsel's** 80:24
    247:10
**counselor** 24:13
    123:11 183:6 184:8
    242:18
**country** 18:5 132:11
    132:14
**couple** 20:8 36:24
    37:10 38:15,18

39:25 44:22 45:15
54:9 58:20 61:21
62:14 64:18 84:11
101:19 111:24
114:19 121:23,24
126:5 128:9 129:20
144:2 147:3 161:2
193:16 239:22
243:14,16
**course** 40:18 42:20
    55:16 65:20 71:18
    82:21,23 99:18
    100:23 101:19
    103:15 113:25
    114:16,22 126:14
    138:14 163:11
    179:10,11 180:6
    200:17 202:6
    210:19 217:20
    226:24 239:3
**courses** 31:10 135:4
**court** 1:1 7:7 8:7,8,11
    12:20 13:8 15:8
    17:12 26:3,7 27:2
    151:24 152:3,5,7
    192:11 227:22,23
    228:5 236:3 240:14
    255:4
**courtesy** 8:11 22:10
**courtroom** 139:6
**courts** 241:16
**Covid** 52:23,24 55:20
    122:7,8,11,14 126:7
    134:6 137:25
**coworkers** 12:19
    237:4
**Craigslist** 56:2,4
    130:11,14,21
**crazy** 72:14
**cream** 114:13
**credit** 46:13 62:16,22
    67:8,11,15,16,24
    82:18 88:5,6 89:12
    89:20,23 94:11,12
    174:4,10,18,21

175:6 176:17,21
177:8 178:2,12
181:7,9 191:9,24
192:4 193:6 196:10
196:20,22 200:2,15
200:20 201:5,12
202:4 203:18 209:4
209:8 233:20,22
235:19 236:9,18
237:12
**creditworthiness**
    89:16 191:5
**cried** 74:3,7
**crime** 20:23
**criticize** 248:11
**CRM** 84:18,20 85:25
    162:5 163:16,19
    209:25 210:6
**cruise** 132:15 134:4,9
**cry** 74:3 98:2
**crying** 73:25 74:11
**current** 16:18 147:24
**currently** 18:18,22
    28:9,20 29:12 74:16
    131:14 134:25
**customer** 39:11
    62:16 65:13 66:13
    66:16 67:11 78:7
    80:16 84:20 85:2
    87:5,5 89:11 97:12
    128:18 160:25
    170:13 174:18
    178:20,22 179:19
    179:22 180:16,19
    180:25 181:4,5,10
    181:13 185:21
    186:10 187:4,18,25
    188:10 189:4
    190:14,21,25 191:4
    192:7 193:13 194:5
    194:21 195:15,23
    196:12,17 197:16
    197:21 198:10,14
    198:17,19 199:5,25
    200:6,12,19 201:6

Case 1:21-cv-07163-OEM-LB  Document 102-11  Filed 03/27/24  Page 265 of 294 PageID #: 2375

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

264

201:23 202:4,16,24
202:25 203:6,20
204:23 205:4,6,9,11
208:24 209:9,19
211:18 212:22
232:9 233:5 235:19
238:24
**customer's** 173:25
174:4,11 175:6
178:12 236:9 237:4
**customers** 45:21,23
46:7,11 64:23,23
78:5 79:8 80:11,17
82:12 83:15 84:8,15
85:7,7,10,17,21
86:14,24 89:8,15
106:2 115:5 120:5
161:13 174:20
178:13 179:18
180:8 181:16 182:9
182:23 187:2
191:23 192:8,13
193:16 194:13
202:8 232:21
236:19 237:2,10,12
237:16,17,19,21
**customers'** 102:4
**cut** 204:19

### D

**D** 4:2 143:14 148:23
148:24 253:2,18
**d/b/a** 1:7,8
**D1165-D1167** 254:13
**D1186** 213:20
**D1186-D1250** 254:15
**D1187** 213:19
**D1193** 215:15 216:9
**D1197** 218:6,15
**D1198** 217:23 218:20
**D1199** 218:3,7
**D1200** 218:15
**D1223** 222:4
**D1230** 223:11
**D1232** 223:14

**D1250** 213:20
**D151** 184:15,22
**D151-D157** 253:23
**D157** 184:15 185:12
**D2** 162:6 163:3
168:18
**D201** 186:4,5
**D206** 186:4
**D249** 187:14
**D249-254** 253:24
**D254** 187:14
**D288** 189:24
**D288-D293** 253:25
**D293** 189:24
**D397** 194:4
**D397-D402** 254:6
**D402** 194:4
**D522** 197:8
**D522-D527** 254:7
**D527** 197:9
**D536** 199:23
**D543** 199:23
**D62** 170:5
**D633** 202:11
**D633-D636** 254:8
**D636** 202:11
**D65** 170:15
**D66** 171:10
**D67** 170:5 171:14
**D804** 203:25
**D804-D806** 254:9
**D806** 204:2
**D812** 206:9
**D812-D814** 254:10
**D814** 206:9
**D815** 207:16
**D815-D820** 254:11
**D818** 208:23
**D820** 207:17
**D842** 209:14
**D842-D847** 254:12
**D847** 209:15
**D9** 162:6 163:3
**dad** 93:6 188:4 189:9
189:10,15,16 201:8

201:9,18
**daily** 58:16 80:15
192:16
**damage** 10:24 145:8
149:3 253:18
**damages** 111:5,13
145:11 149:10
153:3,10,12,21
154:21,24 155:3,4
**Darell** 165:10
**data** 169:21 177:19
**date** 53:11 213:3,3
217:24 218:2
220:15 256:4
**dates** 20:14 64:20
198:6 220:20
253:10
**David** 13:15 14:3,4,5
14:14,15,18 15:5,7
16:8 70:9,11 87:13
87:13 97:23 98:17
129:4,10,11,19
139:8 144:9
**day** 51:8 56:3,6,8,14
56:17,19,22 57:5,7
59:17 66:14 70:5,15
79:10 95:6 123:6
131:3 133:7 170:17
170:20,22 190:13
190:13 192:20
194:25 197:10
198:20 202:8,21
232:2 252:19
255:17 256:20
**days** 37:20,21 62:4
62:14 190:17 193:8
198:22 212:4,7
227:2,24
**deal** 41:18 43:2,12
67:17 84:3 98:11,15
115:2 129:9 164:13
166:18 167:21
176:21,23 177:4,17
177:20 180:16
182:11,25 214:20

218:24 220:11
236:17
**dealership** 11:17
16:9 31:2 40:15
43:24 47:3 50:6
54:8,11,24 57:9
58:2,17,19 59:2,5
62:21 64:23,24
69:18 74:14 76:13
77:22 79:25 82:15
84:17 91:8 93:7
98:24 99:7,20
100:21 105:15
107:20 110:18
114:25 136:3,14
139:19 140:3,20,21
140:22 156:4,5
160:2,6 162:5
163:13,17 169:11
179:25 180:7
197:23 198:13,20
201:8,18 211:6,10
213:15 227:6,7
234:3 252:11
**dealership's** 179:21
**dealerships** 31:13
35:6,10 85:14,20
89:15,25 107:17
122:19 157:22,25
158:20
**Dealertrack** 45:16
46:10,20 47:12,24
63:6,8 91:24 103:9
103:16 105:8 106:4
175:21,23 176:15
177:17,20 235:18
237:13 238:21
**dealing** 151:25
**deals** 218:25
**dealt** 193:16 231:8
234:6
**December** 23:15 52:5
62:4,6 68:24 77:25
78:3 79:14,23 86:13
134:7 140:17 142:4

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 266 of 294 PageID #: 2376

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

265

150:6 170:4,6,17
171:12,15,19,22
172:8 176:6 185:22
185:23 190:4,5,24
191:11 193:11,11
201:22 202:15
204:4,12,14 209:20
211:25 222:5 224:7
224:9,15,19,22
225:4,5 226:12
227:11 244:4 245:8
249:22 250:2,2,5,11
**decent** 138:15
**decide** 6:3,22
**decided** 52:24 54:25
83:19 108:13 126:9
229:8
**decides** 187:25
**deciding** 64:4
**decision** 45:6 57:20
58:4,13,23 95:4
125:4,10 227:24
228:3 229:9 231:13
235:2,12 245:8
246:22 249:8
254:15
**decision-maker**
110:18
**decisions** 110:20
111:2,4
**declaration** 11:15
173:12 253:21
**declares** 175:4
177:23
**declined** 128:25
**decrease** 10:23 92:2
101:7,13 103:17
114:23 236:3,7
**decreased** 236:25
**decreasing** 237:5
**defendant** 26:9
**Defendant's** 21:15,17
80:20,25 143:19,20
148:23,24 154:7,10
162:2 169:24 170:2

172:17,18 173:8,9
184:16 186:3
187:13,15 189:23
189:25 194:3,8
197:7,12 199:22
202:10,12 203:24
206:8,10 207:16,18
209:13,16 211:12
211:14 212:24
213:6,21,22 226:9
235:8,9 240:25
243:24,25 245:7
246:20 253:14
254:4
**defendants** 1:10 2:8
5:4 7:2,17 15:11
27:11,25 144:9
225:20,25 234:22
236:25 237:9 241:3
243:7 246:23
**Defendants'** 154:8
161:25 225:23
244:13 247:24
**Defendants's** 184:13
**Defense** 244:18
**definitely** 48:15 55:8
55:9 70:4 71:23
73:4 77:20 93:9
94:7 111:2,25
114:25 126:8 128:7
168:17 219:13
226:17
**definition** 121:2
**delay** 65:14,25 66:3
**delayed** 66:4
**delays** 64:24 65:5
**delete** 104:14
**deleted** 104:15 119:5
141:23
**delivered** 39:9
189:11
**delivery** 171:3
**demands** 246:25
**denied** 25:7 158:9
**Denise** 38:17,18

**deny** 206:5
**denying** 235:2 249:8
**department** 21:21
86:8 100:3 147:3
253:16
**depend** 138:13
**dependent** 178:2
**depends** 187:24
196:9 232:21 233:4
**DEPONENT** 256:5
**deposed** 7:21
**deposition** 7:18 8:3,4
9:20 10:7,13 11:12
15:14,17,20 16:5,19
21:24 22:9 25:13
26:4 68:12,13,20
74:24 75:3 104:3
151:11,16 152:4,11
155:9 162:16
183:15,20 184:4,7
240:7,10,22 245:2,4
245:23 246:6,12,15
246:17 249:6 255:7
256:4
**depressed** 111:19
112:3,24
**depression** 117:3
**deprived** 235:17
**describe** 37:3 111:16
**described** 235:21
**Description** 22:25
253:14 254:4
**designated** 233:6
**designed** 162:13
194:12 230:2
**desire** 90:17 94:18
**desk** 47:21 233:7
**desks** 86:20
**detail** 21:3 154:19
**development** 52:2
85:5
**diagonal** 86:20
**Dianna** 38:20
**diary** 141:8
**difference** 79:6

121:17 151:3,18
152:16 167:15
216:2
**different** 29:20 51:22
51:23 87:3 127:21
128:7 135:17,18
158:3,4,4 170:16
174:19,20,20
180:21 203:13
238:8
**difficulty** 174:25
**Dina** 38:22,23
**diploma** 30:13
**direct** 23:21 181:22
229:13
**directed** 154:23
**directly** 34:11 73:6
183:12,17
**disability** 109:25
110:3 135:12,15
136:7,19 159:16
**disagreement** 71:20
**discard** 41:12
**discarded** 41:13
**discharged** 230:23
**discipline** 95:16
**disciplined** 77:8
**disclosed** 69:14,17
82:10 83:9 91:14
250:14
**disclosing** 106:11
**disclosures** 143:21
144:21 253:18
**discovery** 22:22
160:24 163:11
**discretion** 40:11
**discretionary** 75:19
**discriminated** 92:9
92:14 102:9 109:5
109:11,14,16,21,25
110:10
**discrimination** 7:10
44:21 45:3 92:6
93:13 97:22 98:9
100:15 101:5,12

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 267 of 294 PageID #: 2377

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

266

102:19,25 107:24
108:4 111:18 112:6
112:10,17 139:10
139:14 141:6,11,14
142:10,15 150:13
157:2,2,15 191:20
201:17
**discriminatory** 97:9
97:13 102:2 156:15
**discuss** 15:5 25:12
82:6 93:11 111:14
139:14 140:6
145:15 154:2
**discussed** 83:15
112:20,23 114:9
123:23 125:11,19
140:4 144:13
153:18 155:20
156:7
**discussing** 230:3
**discussion** 44:14
54:16 81:21 93:3,25
94:3,6,8,16 95:12
126:16 140:14,18
156:24,25 210:17
218:12 228:12
230:19 231:16
234:20
**discussions** 141:4
**dishonestly** 18:17
**dismiss** 234:23 235:3
249:9
**dismissed** 229:2,4
**dispose** 141:19
**disposing** 141:21
**dispute** 175:10 180:3
180:11
**distinction** 180:24
181:6
**district** 1:1,1 17:15
248:10,15,16
**divide** 216:14 222:9
222:25
**divided** 220:10 222:6
**division** 220:7

**divulge** 229:13
**divulging** 82:5
145:14
**DMV** 100:3
**doc** 154:11
**docket** 227:23 228:4
228:7
**document** 11:15
21:15,20,23,24 22:2
22:5,6,17,18,21
23:14 24:24 25:2,3
25:18,19,20 42:8
65:6 66:5 81:5
108:2 143:23,25
144:4 149:5,16
154:9 162:9 163:12
168:6,16 173:4,13
184:14 186:12,20
188:11 190:11,20
197:13,19,25 203:2
203:9,15 204:8,18
204:19 205:2,22
206:17 207:21
208:4,7 209:11
212:25 226:18
240:4 241:13 244:9
245:13,14,17,21
246:25 247:7,11,14
247:24
**documentation**
179:24
**documenting** 142:15
**documents** 10:16,18
10:21 11:3,6 24:25
41:10 65:8 101:4,7
101:9 144:24 145:3
170:11 194:2 195:7
208:2 240:20
**doing** 5:19 15:16
38:17 51:23 59:10
61:17 63:4 73:25
93:19 96:5 104:6,24
104:25 125:23
127:22 135:10
142:19 157:13

180:18 194:6 237:3
252:10
**Dollar** 32:8,12,15,21
32:23
**dollars** 83:22 111:6
111:10 118:24
146:19 147:3
153:22
**door** 84:7 182:15
**double** 94:20
**doubled** 50:12
**dozens** 248:14,19
**drastic** 101:13
**draw** 50:15,16
**dressed** 89:22
**drive** 33:14
**drop** 101:19
**Dropbox** 143:4
240:19
**drugs** 9:11
**due** 44:24 134:21
163:10
**duly** 4:3 143:15
255:8
**duties** 76:15

**E**
**E** 2:2,2 4:2,2 143:14
143:14 154:7,10
199:9 253:2,13,19
254:3 255:2
**E43** 199:7,11
**earlier** 14:11 123:23
146:16 155:21
174:6 232:14
**early** 48:15 52:23
53:20 62:4,6 117:25
249:22 250:2
**earn** 126:3 158:24
**earned** 233:19
**easier** 142:25 196:25
197:5 222:17
**Eastern** 1:1 17:15
**easygoing** 8:4
**eat** 232:24,25 233:2,3

233:6,7,9,15,16
**economic** 153:3
**edification** 80:24
**education** 30:18
**educational** 29:23
107:13
**EEOC** 27:5,6,10
229:5
**effort** 110:23 126:24
**efforts** 127:4
**eight** 175:4 213:15
221:2
**either** 26:22 37:20
59:6 66:25 73:22
89:3 90:12 107:10
185:6 199:11
237:23
**electronically** 177:2
**else's** 48:3
**email** 14:24 22:5,8
130:14,17,20
141:13
**emails** 141:16,19
142:10 189:3
**Emanuel** 2:10 5:3
24:23 151:5 155:6
214:17 215:8 223:7
239:24
**emanuel@mllabor...**
2:10
**emotion** 74:10
**emotional** 112:5,19
112:23 113:22
115:8
**employed** 51:18 91:8
126:19 213:14
**employee** 14:6 34:12
58:2 106:19 108:5
210:21
**employee's** 100:11
**employees** 12:4,18
13:12 14:12 51:23
103:6 105:19
106:23 144:8
**employer** 27:21

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 268 of 294 PageID #: 2378

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

267

35:11 137:16
**employers** 26:15
35:19 127:15
**employment** 11:16
27:24 36:6 43:23
48:20 49:11,22
52:17 55:2,7,12,13
59:15 66:23 95:25
123:23 125:22
128:6 134:17
161:12 210:19
213:11 219:17
237:15
**Emporium** 127:25
128:22 130:2
**ended** 36:7 38:17
147:22 187:5
**ends** 187:14
**engaging** 244:17,21
**enter** 126:25
**entered** 139:5
**entering** 224:6
**entire** 5:16 38:5
247:11
**entirely** 80:18 121:5
209:7 210:13,15
**entirety** 81:5 245:12
245:17,20
**entitle** 17:21
**entitled** 8:25 25:4
88:18 119:18
120:13 167:9
245:16
**entity** 5:15
**environment** 71:14
128:8
**equal** 85:18 151:9
165:6
**equals** 222:25
**equation** 251:3
**equivalent** 85:16
**erasing** 169:21
**ERRATA** 256:2
**error** 126:8,8
**especially** 42:21

193:15 198:11
**ESQ** 2:5,10
**estate** 125:25
**esteemed** 80:23 81:8
**estimate** 158:23
**et** 256:4
**evaluation** 77:14
**evening** 232:19
**event** 101:25
**events** 8:22,23 9:2
**everybody** 70:25
80:3 87:17 96:12
179:5 201:9
**evidence** 104:7,12
144:18 195:21
**exact** 53:8,11,24
64:20 220:20
**exactly** 5:18 20:6
21:6 47:6 77:19
93:11 136:4 191:25
196:21 222:25
**examination** 1:16 3:4
3:8 4:15,25 143:17
253:6
**examined** 4:6 143:16
**example** 31:5 60:16
118:2 124:12 125:3
125:5,8 170:24
**examples** 236:12,15
236:18
**exceeded** 79:19
**exceeding** 252:7
**excited** 70:25 167:20
**exclusive** 63:10
**Excuse** 6:18 102:11
**exhibit** 21:16,17 22:3
22:14 80:20,25
143:19,20 148:23
148:24 154:7,10
161:25 162:2 163:6
169:25 170:2
172:17,18,23,25
173:8,9 184:16
186:3,3 187:13,15
189:23,25 194:3,8

197:8,12 199:24
202:10,12 203:24
206:8,10 207:16,18
208:3,23 209:14,16
211:12,14,16
212:24 213:6,19,21
213:22 226:9
227:17 228:19
235:8,9 240:25
241:3 243:24,25
245:7 246:20
247:24 249:5
253:16,17,17,18,19
253:20,20,21,21,22
253:23,24 254:6,7,8
254:9,10,11,12,13
254:14,14,15,16,17
**exhibits** 142:19,22
226:2 239:22
243:13,14,17
254:19
**existing** 53:14
**expect** 181:15
**expectations** 252:7
**expecting** 42:21
**experience** 34:4
55:15,18 86:10
107:17,19 112:11
114:2 118:19
123:17 175:20
182:6
**experienced** 117:3
191:15
**experiences** 175:19
**EXPIRES** 256:23
**explain** 42:24 65:4
120:8 123:24 135:9
226:22 229:25
234:2
**explanation** 83:4
120:19,20,21
**expressly** 95:8
**extended** 68:25
**extent** 5:21 7:15 9:23
20:11 23:6,22 25:2

29:19 35:25 65:13
148:6 246:8
**extra** 43:5 75:16 76:9
**eyes** 96:10

**F**

**F** 4:2 143:14 161:25
162:2 252:17
253:20 255:2
256:18
**F&I** 47:3,5 173:16
**face** 237:25
**Facebook** 117:9,22
118:6,22,24 146:16
**fact** 10:3 20:19 58:7
73:11 97:7,11
105:17 108:11
115:7 118:7,23
179:11 241:21
248:10 251:22
252:6
**factors** 45:13
**facts** 23:23
**factually** 155:6
**fail** 210:11
**failed** 25:22 158:8
**failure** 179:22
**fair** 63:3 83:3 90:5
102:18,24 107:13
108:10 114:4
125:13 140:9 157:4
171:18 180:24
218:7
**fake** 172:10
**false** 166:25
**familiar** 31:2 84:16
84:23 154:8
**family** 92:25 135:16
135:19 136:6,10
139:21
**far** 8:14 32:7 36:25
57:19 58:5,7,9,22
73:3 92:7 102:8
159:21 177:19
188:10 190:20,21

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 269 of 294 PageID #: 2379

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

268

201:11 209:8
219:16 224:3
**fast** 82:16 215:9
**fastest** 182:10
**father** 74:16,19
116:15,16 139:24
147:6 188:9 189:17
**father's** 189:11
**favorable** 160:19,20
160:23
**favorably** 103:6
105:12,15,20,25
106:4,20,24 107:2
**fear** 128:22
**February** 1:12 48:14
48:16,18 191:2
193:10,12 256:4
**fed** 94:24
**federal** 4:9,20 139:6
192:11,11,12
**feel** 62:12 71:6 74:25
90:18 92:2 97:4
148:21
**feelings** 111:25
**fees** 248:24
**felt** 80:13 89:5,7 95:5
96:20 108:11,24
112:2 116:14
**fifth** 23:24 24:3,11
171:15
**file** 17:19 26:18 27:6
27:21 228:6 240:20
**filed** 7:12 15:25
26:14 27:10,19 28:3
80:22 119:7 159:19
200:6 228:4 229:2
229:21 234:22
245:10 246:23
**filing** 3:8 4:13 147:17
227:23
**filings** 17:12
**fill** 48:20 49:11,21
55:6,12 94:3,9
100:19
**filled** 55:13 136:5

**filling** 49:13
**final** 224:22 225:3
231:13 249:5
**finally** 171:14 180:6
193:6 225:7
**finance** 63:17 67:12
93:19 123:7 169:14
176:19 177:9
**financial** 45:6
**financially** 116:18
**financing** 62:21,23
63:10 64:22 67:2
69:13 82:12 106:8
106:16 161:5,12
170:25 171:7
194:13 196:8,13
198:15 205:17
207:12 211:23
212:14 235:19
**find** 197:23 198:4,18
250:10
**finding** 129:13
**finds** 236:3
**fine** 36:6 53:21 141:3
143:7 145:23
209:13 245:18
**finish** 245:19 246:15
**finished** 244:14
**fire** 95:19
**fired** 32:17 37:11
43:5 55:3 79:5
129:2,9 220:20
**firing** 129:13
**firm** 148:8 229:8
245:11 248:12,18
**firm's** 149:7
**first** 4:3 7:24 8:6
15:22 31:18,24
33:18,24,25 37:5,10
60:3 62:14,20 68:23
70:6 79:3 89:5 91:3
93:3 101:19 111:24
121:13,23,24
128:17 134:24
135:20,24,25

137:18 139:5
148:20 154:18
159:14 168:12
170:5 212:18
213:18 214:10
217:17 219:20
223:13 224:6
226:12,16 249:19
250:25 251:12
**five** 37:20 171:18,22
176:12,14 214:11
217:2 221:17,19
222:13,15,19,20
224:13 225:8 251:7
**fix** 92:16
**flashy** 89:22
**flat** 37:8,13 39:3
42:19 167:16,22
**Florida** 19:9,10,17,23
19:25 20:2,12,15,18
30:4 31:17 32:10,11
132:23 133:11,15
253:10
**fluctuate** 101:15
**Flushing** 2:4 4:6
30:12
**focus** 45:4,7 81:3
85:5 244:6 245:15
**focusing** 18:7
**folder** 87:7 177:9
181:15 195:16
**follow** 17:23 20:10,15
25:6,22 29:7 67:11
108:21,24,25
157:18 158:14
200:9 202:17 212:7
**followed** 108:13
212:4
**following** 81:4 131:4
171:10 175:2 179:3
194:25 195:12
197:10 202:21
214:14 216:18
217:15 218:4 219:4
219:11,20 221:5,9

221:12,19 222:9,12
223:4,10 224:2,12
**follows** 4:7 143:16
**food** 28:6,10 29:19,20
233:12
**forced** 179:19
**Ford** 31:6,6
**forensic** 104:6,12
**forged** 23:2,3,16
**form** 3:12 4:14 27:15
38:10 40:6,21,23
48:24 49:3 66:6
72:11 77:5 91:19
108:15 114:21
148:15 160:22
250:6
**format** 142:15
**forth** 19:13 154:19
179:17 238:3 255:8
**forum** 149:14
**forward** 42:21
**found** 103:24 104:13
199:20 202:15
232:4 241:16
**four** 38:25 82:22
101:8 117:22 144:9
167:25 168:2 171:8
176:12,14 180:7
192:9 193:14
206:25 207:3 216:4
216:15,19,23 217:2
222:10 224:16
226:16 227:13
**four-figure** 219:20
**Fourth** 8:16
**Francine** 1:3,17
16:12 253:4
**Franklin** 52:14
**Freddie** 129:4,5
**free** 74:25
**frequently** 80:10
**fresh** 158:10
**Friday** 37:15,25
68:17
**friend** 97:25 100:16

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 270 of 294 PageID #: 2380

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

269

211:3
**friends** 129:6,24
**frivolous** 248:11
**front** 70:9 74:4,5,7
  85:20 163:25 164:4
  164:5,25 165:5,14
  165:21 167:6
  179:17 186:25
**frustrated** 84:6 192:4
**full** 6:20 13:19 50:2
  82:2,3 136:16 159:4
  159:6 169:5
**funded** 39:16,19,21
  39:24 40:10,16
  218:25,25
**funding** 40:2
**funds** 39:12
**further** 3:7,11 66:4
  143:16 178:2
  231:15 252:13
  255:12

---

**G**

**G** 169:25 170:2
  253:20
**Gantt** 163:21
**gap** 30:18
**gaps** 55:17
**Gateway** 30:6
**GED** 30:9,14 31:17
  31:23
**gender** 109:6,17
**general** 15:21 47:5
  67:10 76:2 103:3
  139:19,20 141:5
  142:13 180:20
  181:18 206:2
  230:21
**generally** 31:15
  37:15 47:2 67:18
  83:6,20 111:9
**gestures** 8:8
**getting** 13:20 39:18
  41:18 42:18 54:24
  64:12 78:10 82:14

91:3 92:21 101:20
  105:17 182:15
  194:13 203:18
  231:18
**gift** 142:6,8
**girl** 38:13
**give** 8:10 34:15 38:13
  45:19 46:10 47:16
  56:24 57:23 60:16
  62:15 69:2 76:9
  82:20 88:9 90:19
  91:25 95:6 119:6
  156:10 158:23
  172:10 177:9 231:5
  238:23 246:16
  251:5
**given** 38:9 40:20
  47:13 77:17 90:24
  95:7 103:8 108:9
  166:22 235:22
  255:10
**gives** 46:4
**giving** 47:23 67:12
  95:9 127:11
**glad** 247:15
**glances** 103:20
**GM** 129:4
**go** 5:25 8:2 14:8
  20:18 23:7 24:15
  36:4 38:8 42:6
  45:17 51:14 53:16
  56:12 60:2 62:14,22
  64:4,4,8 66:25
  67:19 69:8 83:20
  87:21,25 93:11
  100:24 127:12,21
  133:21 137:17
  149:22 163:7
  180:13 183:2
  187:13 192:25
  198:6 202:10
  215:20,21 216:11
  217:25 218:2
  226:18 228:15
  230:18 233:5,8,15

240:23 242:8
  249:25
**goal** 172:13
**goes** 92:4 187:24
  189:6 195:16
**going** 4:9,21 8:2,22
  13:7,8,18 17:6,12
  21:3,14,22 22:16,22
  23:21 24:23 25:15
  25:16 26:3,25 34:15
  42:23 45:2,7 49:4
  59:11 74:22 75:13
  78:6 79:11 80:16,22
  81:9,19 89:12 90:10
  90:12,14,19 91:4
  93:11 94:3,9 95:14
  98:5,20 100:17
  101:24 103:21
  104:8 108:12,22,23
  113:13 114:14
  115:2,13 120:6,8
  128:7,13,21,23
  133:19 138:23
  140:8 148:22
  151:15,22,25
  152:10 157:15,16
  158:12 169:24
  172:10 177:11
  179:16 181:16,22
  186:8,25 188:4
  189:15 195:22
  197:7 207:25
  208:25 209:6
  212:21,21,24 217:4
  217:14 227:17
  229:12 235:7
  240:11 241:4 242:5
  244:25 245:15
  247:10,13 248:20
  248:22,23 251:19
  252:8
**Gonzalez** 235:2,12
  254:16
**good** 5:3,25 40:3
  97:16 105:2 114:3

142:17 152:12
**Google** 148:12
**gotten** 182:17
**grab** 64:7 128:17
  182:8 187:2 233:5
**graduate** 30:8,21
**graduated** 30:7
**grand** 161:2
**grandmother** 139:23
**granular** 45:5
**grass** 111:22 114:15
**gratuitous** 244:17
**great** 54:12,13,19
  55:9 69:22 114:2
  127:13 137:20
  219:15 242:22
**great-grandmother**
  146:15
**greater** 238:7
**greener** 111:23
  114:15
**greet** 80:17
**greeted** 195:6
**gross** 43:13 164:4
  167:6 216:2,10
  217:6,14,15,24
**ground** 8:3,13 9:9
**grounds** 13:4 26:22
  109:14 151:12
  183:19
**GROUP** 2:8
**grow** 91:4 97:17
**growth** 97:15
**guarantee** 239:19
**guess** 8:25 40:8 44:23
  71:2 105:17 109:23
  144:19 171:20
  185:10 195:10
  198:24 203:14
**guesstimate** 142:21
**Guzman** 1:9 5:6 6:12
  36:25 45:18 57:25
  60:4,11 62:8 67:15
  70:4,8 74:4,7 75:6
  78:17,20,24 80:10

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 271 of 294 PageID #: 2381

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

270

82:11,23 83:5 86:14
86:22 87:2 88:2,7,9
88:9,17,20 91:7,11
92:8 93:18,23 95:15
95:18,21,24 96:4
100:25 102:4 106:7
107:14 110:17
170:24 171:6
179:12 186:6
212:13,18 232:11
237:24
**Guzman's** 88:4 99:24
107:16

**H**

**H** 4:2 143:14 172:17
172:18,25 253:13
253:21 254:3
**half** 148:18
**hall** 158:8
**Hampton** 170:24
**hand** 88:4,4 92:4,5
109:18,18 255:17
**handle** 83:7 92:23
174:7 249:24
**handles** 249:24
**handwrite** 196:23
**handy** 66:14
**hang** 90:15 101:20
**happen** 20:25 39:19
72:9 86:21 93:12
114:14 129:10,11
140:14 182:20
192:8,13,14 201:17
**happened** 37:11
39:25 40:13,13 44:6
61:23,24,24 72:6
73:20,21 74:8 78:10
79:2 84:11 87:10
91:13 97:6 98:3
140:24 146:7
152:20 185:9 187:6
191:11 193:14
200:25 202:9
205:16 219:3

250:18,20,21
**happening** 87:2 97:2
201:20
**happens** 114:3
**happy** 61:18 123:5
207:5
**hard** 19:15 65:10
79:19 88:25 89:10
90:25 93:20 110:23
154:14 188:13
193:13 196:20
216:24 222:22
250:10
**hated** 72:14
**header** 80:23
**health** 68:15
**healthcare** 113:2
116:24
**hear** 41:25 199:15
242:13
**heated** 243:5
**held** 1:17,18 41:9
44:14 54:16 81:21
95:12 123:9 126:16
140:18 210:17
218:12 228:12
230:6,19 234:20
**help** 8:11 53:14 87:2
116:16 120:9
201:25 202:4
214:20
**helped** 115:2 170:25
171:6
**helps** 116:15
**Henston** 171:5
**hereinbefore** 255:8
**hereto** 3:4
**hereunto** 255:16
**Hey** 84:5
**HG** 1:2
**hiccups** 73:5
**high** 29:25 30:6,11,12
30:13,19 31:21
239:9,12
**high-end** 128:16

**higher** 59:25 167:10
**highlighting** 247:18
247:25
**Hillside** 1:7,7,7,8 5:5
5:5,8,8,11,12,25 6:2
6:3 11:17 12:4,9,18
13:12,16,22,23,23
14:6,9,12 33:19,21
33:24 34:7,10,11,14
34:21,21,22,24 35:2
35:4,6,7,13,15 36:7
36:12,22 48:6 50:9
55:14,22 57:12
66:24 74:20 77:8
85:14 97:20 107:23
116:22 117:2 118:8
118:19,24 120:14
120:18 121:9,14,22
121:25 122:5,15,18
122:21 124:17
125:14 131:19
134:21 138:4
146:22 156:14
157:23 158:21,25
159:25 160:5,19
182:13 210:20
231:23 234:12
237:15 249:19
256:4
**hire** 57:20 58:5,13,23
100:21 147:20
208:25 213:3
**hired** 37:5 57:15,17
57:25 58:12 59:15
59:18 63:17 76:6
209:6 213:9 248:18
**histories** 174:21
236:10
**history** 174:18 201:5
**hit** 52:23 76:9 99:4,4
122:8
**hold** 41:7,19 84:5
92:18
**holding** 193:11
**holiday** 225:4

**home** 131:10 172:14
**hominem** 244:17
247:25
**honest** 167:12
**honestly** 20:9 24:8
47:17 56:23 71:5,12
71:17 72:13 73:23
75:22 77:18 79:17
85:12 88:25 96:9
97:4 118:4 120:4
121:5 129:18 134:3
134:15 144:2,15
146:13 148:17
153:17 157:11
158:10 170:10
175:15,19
**hoping** 61:21 142:20
**hospitalized** 113:4
**hotel** 33:2,3,16,18
56:16
**hour** 7:12 15:8 26:7
175:7,16,17,19
181:12 182:16,19
188:3 198:25
**hours** 9:12 10:8,12
113:14 128:9
180:10,14 181:19
182:23 186:17,23
187:5,23 199:4
207:2 232:2
**Housekeeping** 33:6
**housing** 29:10
**hundred** 112:12
**hundreds** 84:14
**hurdle** 237:25
**hypothetical** 123:2

**I**

**iCloud** 146:2,6
**ID** 65:9
**idea** 32:4 38:2 78:19
91:9 124:4 188:21
206:24
**identification** 21:17
80:25 143:19 146:5

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 272 of 294 PageID #: 2382

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

271

148:24 154:10 162:2 170:2 172:18 173:9 184:16 187:15 189:25 194:8 197:12 202:12 203:24 206:10 207:18 209:16 211:14 213:6,22 235:9 240:25 243:25
**identified** 158:17
**identify** 102:8 105:14 105:19 144:5,8,24 155:12 158:7
**identity** 155:13
**ignore** 246:8
**ignored** 232:8 246:10
**ignoring** 232:10
**immediately** 70:7 114:12 181:13,24
**important** 192:10
**impossible** 167:19,23
**impressive** 182:24 183:2
**in-person** 231:12
**inaccurate** 201:6
**inappropriate** 104:10 208:9
**inbound** 185:12
**incidents** 72:20 73:9 73:11 179:12
**include** 12:19 147:24 158:8
**included** 35:15
**including** 136:19
**income** 28:11,15,23 29:15 125:15,17 126:3,11 136:2,13
**incorrect** 25:25 120:20,25 121:2 155:7 177:16 189:13 201:7 214:5 250:20
**incorrectly** 158:7
**increase** 45:19

**increased** 46:2 114:25 237:9 239:18
**increases** 46:4
**increasing** 237:2
**independent** 177:14 250:25
**indicate** 203:20
**indicates** 200:15
**indication** 203:17
**indications** 103:21
**individual** 67:5 99:20 144:9 155:25 163:21 170:25 171:6 184:18,20 199:5 203:12 206:13
**individual's** 210:24
**individuals** 46:21 47:4,8 65:17 69:17 84:13 139:13
**industry** 34:5
**Infiniti** 160:10
**inform** 44:2
**information** 11:3 17:21 28:11,14,23 29:2,14,17 47:19 64:25 66:14,17 82:19 87:3 136:2 145:5 156:16,17,23 165:13 173:25 178:19,23 179:23 180:8 185:23 197:22
**initial** 143:21 144:20 157:14 253:17
**initially** 62:21 121:21 123:17
**injuries** 111:16 112:5 112:9,16,19,23 113:2,5,8,23 114:5 114:8 115:8
**injury** 159:16
**input** 168:17
**inquiry** 196:20

**insistence** 163:2
**Instagram** 117:11,23
**instance** 102:3 170:23 197:21 209:4
**instances** 102:19,25 182:17
**instant** 175:16 176:25 177:12 248:13
**instantly** 177:4
**instructing** 115:25 152:14
**instruction** 104:9 120:24
**instructions** 104:2
**instruments** 23:2,3 23:16
**insurance** 135:12 136:20 137:7,10,16 164:10 181:11,17
**intend** 24:25
**interact** 59:5
**interacted** 61:5
**interaction** 59:8
**interactions** 61:11
**interest** 202:20
**interested** 186:10 202:16 203:7 255:15
**internet** 130:7
**interpersonal** 71:10 71:15,25
**interrogatories** 11:23 154:8 246:25 253:19
**interrogatory** 20:11 102:22,24 154:18 155:13 156:13 157:18 158:6,14,18 243:6,9 253:11,11
**interrupt** 68:13,20 152:3,10 155:9 161:17 245:4,24
**interrupted** 245:24

**interrupting** 151:7 151:10 183:15,20 184:3 240:6,9,21 245:22 246:6,12,14 246:17
**interview** 32:24 57:9 58:10 64:19 127:21 129:7
**interviewed** 49:25
**interviewing** 37:6
**intolerable** 231:22 232:5
**intriguing** 131:8
**involved** 72:4 80:13 111:2 131:18,19 147:9
**Iris** 38:18 139:18 140:4,6 144:13 155:20,20 156:3
**irrelevant** 74:23 127:5 162:22 248:21
**Isaac** 6:10 32:24 36:23 37:6 44:10,11 45:16 46:12 47:15 49:14 56:10,19,22 57:19,22 60:2 61:2 61:24 63:14,15,25 64:10,11,21 66:20 66:21,25 67:15,20 68:23 69:4 70:2,5 70:14 74:6 80:12,14 82:16 87:18,22 90:5 92:3,13 93:25 94:15 96:20 101:3 108:11 111:3,21 123:4 156:18 161:10 176:19 201:8,11,18 207:10 231:8,12 249:22,25 250:22 250:24 251:23
**Isaac's** 46:9 48:2 91:24 232:13
**Ishaque** 1:8 2:13 5:6 6:9

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

272

**issue** 60:15 76:19
   77:9 78:6 92:16
   200:20
**issued** 228:2
**issues** 203:18 231:9
**issuing** 227:24
**item** 190:16
**items** 164:9

———————

**J**

**J** 184:13,16 186:3
   227:19 253:22
**Jamaica** 46:6
**January** 8:24 18:8,15
   20:13 34:8,23 36:7
   44:16 48:11,16,17
   54:6,7 60:20 61:3
   76:16,19 77:4 86:13
   90:6 94:2,15 124:18
   125:3 149:4 150:6
   150:18 186:9,15,17
   187:17,22 188:16
   188:24 193:12
   194:20 195:5,22
   196:11 197:10,16
   198:22 202:19,23
   203:5 207:4 213:12
   225:7,11
**Jay** 36:23 37:10 43:5
   43:7,15 56:25 57:24
   60:2,7,8 62:13,22
   63:3,9,10,15,18,23
   63:25 64:9,13,15,21
   66:20 67:19 75:9,14
   79:5,9 167:12
   173:21 175:25
   220:17
**Jay's** 82:14 139:18
**Jenneque** 36:23 37:7
   43:8 57:3,5,20 62:7
**Jennings** 38:20,22
**job** 36:13 40:3 48:19
   54:18,19 56:15,15
   56:16,17,18 57:7
   67:10 74:13 88:4

114:12 120:16
   121:6 122:24 123:9
   124:11 127:19,23
   128:18,23 130:3
   131:2 134:11
   159:22
**jobs** 55:3,6 125:13,14
   125:18
**John** 165:17
**joint** 35:19
**Jory** 1:8 5:7 6:6,6,18
   58:12,16,19 59:4
   60:13 61:7 156:18
**journal** 141:8
**judge** 104:13 183:11
   192:12 227:19,19
   227:20 235:2,12
   240:6 244:4,5,16
   245:9 246:21,21
   248:9 254:15,17
**July** 43:18,20 44:3
   51:3,4 60:8,10
   64:15 176:3 217:4,5
   217:10,10,17
   218:19,19
**jump** 84:2
**jumping** 201:19
**June** 19:21,21,25
   133:9,10,12,23
   134:10 143:23
   215:6,6,13,13
   216:10

———————

**K**

**K** 187:13,15 253:23
**Kataev** 2:10 4:8,12
   4:24 5:2,3,18,24 6:5
   6:21,23 7:15,20
   11:20 12:7,13,15,22
   13:2,7,10,21 14:2
   17:9,18,24 19:7
   20:10 21:14,18,25
   22:7,13,20,24 23:24
   24:2,4,12,15,22
   25:5,12,18,21 26:2

26:5,21 27:3,15,18
   29:7,9 35:22 36:3
   42:5 44:13,15 46:14
   46:18 49:4,7 54:15
   54:17 66:9 68:3,5,7
   68:11,18 74:25 75:4
   81:2,19,22 91:16,20
   95:11,13 99:15
   102:12 103:18,24
   104:11,19 105:2,6
   113:15,17 115:23
   115:25 116:4,5
   118:10 119:22
   120:2 121:3 124:5,7
   124:21,23 126:14
   126:17 133:20
   137:2,5 142:17
   143:3,8,18 144:22
   144:23 145:24
   149:2,19 151:7,10
   151:14,17,24 152:7
   152:12,15 154:15
   154:17 155:8,11
   157:16,21 158:12
   158:16 161:17,19
   161:22 162:3,12,23
   162:25 163:4,9
   170:3 172:19,24
   173:2,3,7,10 174:24
   175:3 182:2 183:5
   183:10,14,18,23
   184:3,10,11,17
   185:20 186:2
   187:16 190:2
   202:13 203:11,25
   204:3,9,10,20,21
   206:11 207:22
   208:9,14,16,21,22
   210:16,18 211:17
   213:7,23 215:11,18
   216:8 217:11,12,20
   217:23 218:5,11,13
   225:21,25 226:7
   228:11,13,20
   229:16 230:18,20

231:4 234:13,14,19
   234:21 235:10
   238:13 240:2,5,9,13
   240:17,21 241:2,14
   241:18 242:12,17
   242:20 243:2,16,21
   244:2 245:3,5,14,18
   245:22 246:5,10,14
   246:18 247:15,17
   247:20,22 248:25
   249:2,14,17 251:5,9
   251:11,18,21
   252:12 253:7
   254:19
**keep** 8:6 40:19 79:24
   80:3,5,10 141:8,17
   169:12
**keeping** 80:7
**kept** 34:25 71:13,14
   141:15 169:16
   177:20 179:15
**kid** 91:3
**kids** 52:25 131:15
**kind** 13:17 19:15
   24:9 31:9 32:20
   34:13 35:13 44:7
   49:24 56:14 64:13
   65:10 79:19 82:15
   87:11,15,17 88:3
   90:21 92:13 93:6,17
   93:19 95:5 98:10
   110:22,22 140:7
   157:6,7 167:11
   233:15 249:23
**Kissena** 2:4
**Kissimmee** 21:21
   253:16
**knew** 98:22 120:5
   156:9 237:19
**know** 5:22 12:22
   20:14,19 21:6 24:10
   26:24 37:11,23 38:2
   38:17 41:16 42:16
   42:17,20 46:25 47:6
   50:2,7 58:5,7,8,9,23

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

273

| | | | |
|---|---|---|---|
| 61:18,24 62:16,25 | 20:1 21:1 22:1 23:1 | 174:1 175:1 176:1 | 163:11 192:11 |
| 70:4,15 73:18 77:20 | 24:1 25:1 26:1 27:1 | 177:1 178:1 179:1 | **lawsuits** 26:11 |
| 79:6,10,24 81:7 | 28:1 29:1 30:1 31:1 | 180:1 181:1 182:1 | **lawyer** 81:8 |
| 83:18 95:17,20 | 32:1 33:1 34:1 35:1 | 183:1 184:1 185:1 | **layman's** 231:5 |
| 97:15 104:16 107:5 | 36:1 37:1 38:1 39:1 | 186:1 187:1 188:1 | **laziness** 86:8 |
| 107:8,11,12,13,15 | 40:1 41:1 42:1 43:1 | 189:1,23,25 190:1 | **LB** 1:2 |
| 107:16,19 120:4 | 44:1 45:1 46:1 47:1 | 191:1 192:1 193:1 | **lead** 84:16,18 184:18 |
| 128:24 129:15,17 | 48:1 49:1 50:1 51:1 | 194:1 195:1 196:1 | 185:5,7,9,21,22 |
| 134:3 141:25 | 52:1 53:1 54:1 55:1 | 197:1 198:1 199:1 | 186:5 187:11 |
| 144:16 146:14,25 | 56:1 57:1 58:1 59:1 | 200:1 201:1 202:1 | 188:14,25 189:12 |
| 148:14 153:19 | 60:1 61:1 62:1 63:1 | 203:1 204:1 205:1 | 193:12 195:11,16 |
| 154:4 159:21 | 64:1 65:1 66:1 67:1 | 206:1 207:1 208:1 | 197:9 204:4,12 |
| 166:21 167:8 168:6 | 68:1 69:1 70:1 71:1 | 209:1 210:1 211:1 | 205:21,24 206:2 |
| 169:9 171:8 172:10 | 72:1 73:1 74:1 75:1 | 212:1 213:1 214:1 | 209:22 211:18 |
| 174:15 176:2 | 76:1 77:1 78:1 79:1 | 215:1 216:1 217:1 | 236:20 |
| 177:19 178:8 | 80:1 81:1 82:1 83:1 | 218:1 219:1 220:1 | **leads** 11:3 |
| 180:25 181:4,5,13 | 84:1 85:1 86:1 87:1 | 221:1 222:1 223:1 | **learn** 148:8,11 |
| 188:19 189:7 | 88:1 89:1 90:1 91:1 | 224:1 225:1 226:1 | 234:15 |
| 194:22 197:23 | 92:1 93:1 94:1 95:1 | 227:1 228:1 229:1 | **learned** 55:25 72:21 |
| 201:11 205:13 | 96:1 97:1 98:1 99:1 | 230:1 231:1 232:1 | 73:2,10 82:23 83:5 |
| 206:6 208:18 209:8 | 100:1 101:1 102:1 | 233:1 234:1 235:1 | 89:19 |
| 211:11 212:21 | 103:1 104:1 105:1 | 236:1 237:1 238:1 | **learning** 82:15 |
| 215:19 219:8 231:2 | 106:1 107:1 108:1 | 239:1 240:1 241:1 | 101:21 |
| 231:18 234:4 | 109:1 110:1 111:1 | 242:1 243:1 244:1 | **leave** 18:9,11 45:21 |
| 238:18,25 243:4,5,9 | 112:1 113:1 114:1 | 245:1 246:1 247:1 | 52:24 54:25 81:18 |
| 243:10 244:7 | 115:1 116:1 117:1 | 248:1 249:1 250:1 | 94:19 100:21 |
| **knowledge** 78:17,20 | 118:1 119:1 120:1 | 251:1 252:1 253:1 | 120:14 124:2 |
| 88:14,17 91:7 | 121:1 122:1 123:1 | 253:24 254:1 | 135:17,19 136:6,10 |
| 107:23 143:25 | 124:1 125:1 126:1 | **L-e-t-t-y** 16:14 | 191:4 192:5 193:8 |
| 147:16 169:11,23 | 127:1 128:1 129:1 | **LABUDA** 2:8 | 232:19 |
| 170:9 177:14 | 130:1 131:1 132:1 | **LaGuardia** 33:2 | **leaves** 249:23 |
| 199:10 200:14 | 133:1 134:1 135:1 | **Lake** 2:9 | **leaving** 42:22 56:16 |
| 204:7,25 205:4 | 136:1 137:1 138:1 | **lasted** 187:22 | 60:7 85:21 111:22 |
| 206:16 207:20 | 139:1 140:1 141:1 | **lasting** 186:17 | 118:14 123:4 |
| 208:6 211:9 213:8 | 142:1 143:1,14 | **late** 53:19 69:24 | 124:11 198:8 |
| **known** 200:18 | 144:1 145:1 146:1 | 250:15 | **led** 125:9 |
| **knows** 23:6 26:20,23 | 147:1 148:1 149:1 | **latest** 145:19 | **left** 18:4 19:23 24:18 |
| 123:5,7 129:17 | 150:1 151:1 152:1 | **laughed** 161:23 | 27:24 51:21 60:8 |
| 151:23 191:8 231:2 | 153:1 154:1 155:1 | **law** 2:3,8 148:8,11 | 62:7 63:3,18,23 |
| | 156:1 157:1 158:1 | 149:7 229:8 245:11 | 64:9,13,15 67:20 |
| **L** | 159:1 160:1 161:1 | 248:12,18 | 68:23 75:9,14 99:9 |
| **L** 4:1,2 5:1 6:1 7:1 | 162:1 163:1 164:1 | **lawsuit** 26:6,7,8 | 100:6 110:13 |
| 8:1 9:1 10:1 11:1 | 165:1 166:1 167:1 | 117:21 119:8 | 118:18 119:7,9,11 |
| 12:1 13:1 14:1 15:1 | 168:1 169:1 170:1 | 146:19,21,23 147:6 | 121:9 123:22 |
| 16:1 17:1 18:1 19:1 | 171:1 172:1 173:1 | 147:10,12,17,25 | 124:14 125:14 |

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

274

134:21 149:7
173:22 176:2
188:10 197:22
201:9,18,23 211:7
220:20
**legal** 23:4 35:19 36:2
92:11 110:5 119:20
230:25
**lender** 175:6,18
176:24 177:7 178:4
178:11 179:23,24
**lender's** 179:25
**lenders** 174:12,16
176:14,16
**let's** 24:16 37:14 39:2
63:6 128:6 173:7
181:17 185:11
187:13 189:23
194:3 199:22
202:10 226:4
**Leticia** 1:3,17 16:12
184:23 187:18
193:7 204:11
205:12 252:17
253:4 256:5,18
**letter** 200:7 227:23
228:4,6 245:10
246:22
**letting** 104:16
**Letty** 16:13
**level** 72:2 87:11
**lie** 171:24
**lieu** 166:15 167:9
**life** 18:24 19:7,8,14
123:12 137:12
**liked** 179:5
**Lily** 100:12 156:9
**limited** 175:20
**line** 103:23 104:9,18
229:17
**LINE(S)** 256:5
**lines** 94:14
**link** 143:6
**LinkedIn** 117:13,23
**list** 4:22 55:14 102:25

144:12 153:6 157:9
167:5 169:14
**listed** 149:8,15
150:10,17 153:3
165:9,16 185:2,24
186:6,9 194:21
217:24
**listen** 241:6
**listing** 168:22 186:16
**lists** 102:18 150:2
213:3
**literally** 248:14
**little** 45:3 67:7 70:14
72:17 73:5,21 82:24
87:12 106:3 144:3
173:21 205:8 217:9
220:9 226:11
**live** 16:21 18:22 19:2
19:19 33:13
**lived** 18:24 33:10
**living** 19:2 74:16
**LLC** 1:7 5:5
**local** 17:14
**located** 35:5
**location** 85:19 130:6
**locations** 158:3,4
**log** 86:3 163:15
168:19 169:18
170:12 185:8,11
187:3,8 188:2,21
190:16 226:19
**logged** 86:4 187:2
**logging** 86:5,6 187:6
**long** 18:16 24:8 33:17
34:16 79:9 82:11
84:10 86:14,22
122:23 132:24
161:11 171:24
172:9 175:16
177:14,20 180:13
182:25 192:3
220:19 241:5
**long-term** 135:11
**longer** 43:15,21 44:2
67:6 69:4,13 78:2,5

78:24 80:11 83:12
83:14 91:6,12,13,23
97:8,12 102:16
106:15 126:18
131:25 178:15
182:4 192:18 201:5
201:19 225:15,24
235:18 236:9
**longest** 123:8 180:15
**look** 13:2 54:25 90:17
96:10 131:7 168:12
170:12,14 185:11
189:23 194:3 197:7
198:11 199:19,22
203:22 208:23
216:9 235:16
**looked** 61:18 130:23
168:6
**looking** 8:21 40:14
42:21 70:24 80:14
89:11,16 170:15
196:21 197:22
212:22 213:18
221:16
**looks** 200:21 214:18
220:12 224:24
226:24
**Los** 133:22
**lose** 128:23 146:4
198:14
**losing** 56:15,15
**loss** 164:14 195:16
**lost** 25:23 185:2,5,7
185:22 187:11
188:25 189:13
193:12 195:11,13
198:17,19 205:21
205:24 206:2
209:22 210:4
236:13,21
**lot** 46:7 73:25 79:17
103:20 112:11,15
114:2 128:8,13
182:8 199:8,11
208:5

**lots** 31:14,15
**loud** 8:6
**Louis** 195:6
**low** 128:21
**Lsticia3@Gmail**
130:19
**lunch** 142:18 145:14
162:20,21 232:22
233:5,17,18
**Luncheon** 143:10
**luxury** 27:23 51:24
52:11 54:22 55:8
124:13 125:6 127:8
128:16 136:4
137:18 157:24

---

**M**

**M** 1:9 4:2 5:7 6:15
143:14 194:3,8
254:6
**magistrate** 244:5
245:9
**main** 33:8 85:13
114:22
**maintain** 155:24
**maintained** 34:25
**Major** 107:21
**making** 46:2 78:2,5
90:24 94:20 95:2
104:11 110:20
115:11 121:6,14
122:8 125:4 166:10
183:8,14 231:13
232:6 237:11
239:18 248:5,11
**Mall** 1:8,8 5:6,11,12
6:2,3 12:9,18 13:12
13:16,23,23 14:6,10
34:11,12,14 35:2,7
35:13,16 127:24
128:19 130:2 158:7
**manage** 89:19
**management** 84:16
84:18,21 110:25
**manager** 38:12 45:18

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

275

47:3,5,6 49:14
51:24 53:17 54:19
63:17 67:10,12
83:24 84:4,5 86:10
89:18,24 90:14,18
90:21 92:4 93:16,18
94:4,7,10,17 123:7
128:20 131:24
174:2 177:25 178:5
178:8 186:5 212:20
250:17
**manager's** 67:10
**managerial** 251:4
**managers** 179:8
**Mann** 244:4,16 245:9
246:21 254:17
**manners** 246:3
**Manrique** 14:4,5,14
14:15,18 15:7 16:8
26:7 87:13 98:17
144:9
**Manuel** 195:6
**March** 18:8 52:23,23
53:3 134:6 185:13
203:12 255:17
**Marco** 33:2
**Marcus** 2:9
**marijuana** 21:5,7
24:7
**marijuana-related**
23:10
**mark** 17:21 21:15
80:5 169:24 173:7
239:25
**marked** 17:7,17
21:17 80:20,25
143:19 148:23,24
154:7,10 161:25
162:2 170:2 172:17
172:18 173:9
184:13,16 187:15
189:12,25 194:8
195:11,13 197:12
202:12 203:24
206:10 207:18

209:16,22 210:6
211:14 213:6,21,22
226:9 235:8,9
240:25 243:24,25
245:7
**marriage** 255:14
**married** 18:18,20
78:18
**math** 176:11
**matter** 21:19 22:9
255:15
**max** 252:10
**maximize** 99:8
**McDonald's** 31:25
32:5,9,17
**mean** 13:15 23:2
39:14 41:18 42:3
45:23 49:2,20 57:16
57:22 59:23 62:24
65:5,23 69:23 73:18
75:24 76:12 78:15
86:17,19 98:19
99:21 101:6 103:3
103:15 105:17,21
108:20 109:18
110:19,22 111:19
111:20 113:21
115:3 122:7 127:20
160:21 164:22
171:3 175:12,15
182:15 185:4 188:7
189:21 193:21
195:25 206:19
212:16 214:21
225:21 231:17,25
233:19 239:15
**meaning** 12:20 51:8
84:20
**means** 39:11 160:23
189:10,16 195:14
207:7 211:22
213:14 219:5,12,22
219:24 221:2,6,9
222:12 223:5,15,19
223:22 224:3,16

225:12
**meant** 138:21 174:15
**media** 117:7
**mediate** 72:4
**mediation** 169:8
**Medicaid** 28:18
**medical** 112:25
**Medicare** 28:17
**Medicare/Medicaid**
28:22
**medication** 9:12
113:7
**meet** 24:16 38:23
241:22
**meeting** 10:11,15
24:19 57:24
**Memorandum**
246:20
**mental** 116:24
**mention** 44:7,9 79:4
92:2 99:25 206:4
**mentioned** 45:15
61:18,19 127:7,13
200:2 202:7 210:3
**mess** 93:22
**message** 14:24 60:19
190:7 193:8,9
202:24 203:5
**messages** 142:9 194:5
**met** 10:8 56:19
**mid** 52:19 249:22
250:2
**middle** 72:25 76:8
169:4 201:24
223:17 251:19
**mile** 148:18
**milestones** 99:4
**million** 111:6,9
118:23 147:3
153:22
**millions** 146:18
**MILMAN** 2:8
**mind** 23:2 157:11
158:11
**mine** 97:25

**minor** 68:18
**minus** 151:8
**minute** 210:16
**minutes** 69:24 83:6
83:11 131:7 175:7
180:9 181:12 241:5
243:15,17
**Mischaracterizes**
132:8 145:23 165:3
177:5 251:15 252:3
**misrepresentations**
244:12
**missing** 60:17
**mistake** 176:21
**mistaken** 27:5 79:20
137:23 198:20
**mistreated** 41:7
**mitigation** 120:16
**model** 145:19
**mom** 131:14,17
**Monday** 37:15,24
108:23
**money** 42:11,14
44:21 90:24 95:2
101:23 114:24
115:3,7,11 120:12
121:12,20 122:14
128:20 157:13
158:24 190:25
191:8 193:10 195:2
195:24 196:4,7
232:3,6 233:19
**Monica** 170:24
**month** 20:7 32:2,14
33:15 51:21 53:11
53:18 58:21 62:2
76:8 79:15,18,21
85:10 93:6 128:14
133:5 140:14 168:5
168:15 169:4,5,5,12
169:17,20,21,22
172:5 175:24
195:12 226:25
227:4,9,10 252:7,8
**month-long** 87:19

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 277 of 294 PageID #: 2387

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

276

**monthly** 40:22 50:19
162:4 200:8 239:7
253:20,20
**months** 36:25 37:10
51:13 75:20,23,25
76:11,13 82:22
97:15 101:20
110:15 111:24
114:17,18,20
121:13 128:15
169:6 176:9,12,14
205:25 209:24
210:3 213:15
219:16 236:21
**moot** 68:7,19
**morning** 5:3 68:6
232:18
**mother** 16:22 139:23
142:8 147:9,12,16
148:9
**mother's** 133:6
146:23 201:15
**motion** 25:6,7,22,23
74:25 104:3 234:23
235:2 242:22
244:25 245:3,10
246:23 248:22
249:8
**Motor** 27:23 48:8
49:11 50:5,23 51:12
51:25 52:4,12 53:6
53:13,14,16 54:12
54:18,19 55:8,10
121:10,12,21
123:15,17 124:13
125:6 127:7 136:4
137:18,20,24
155:18 227:6
**Motors** 54:22 127:8
127:14 129:12
**mouth** 141:2
**move** 19:12 25:14,14
152:13 182:6
226:10 242:23
248:23

**moving** 25:24 169:6
220:24
**multiple** 74:5 78:10
87:4 104:20 128:25
142:24 152:21
167:20 184:25
208:11 236:12
**mumbling** 8:9
**Murray** 4:5
**mystery** 42:20

---

**N**

**N** 2:2 4:2,2 143:14,14
197:8,12 253:2
254:7 255:2
**name** 5:3,16,20,23
6:20 13:19 16:11
21:6 30:5 50:2
70:12 80:4 98:6
100:11,12 128:23
149:7,14 150:2
156:9,11 157:24
189:11 195:18,19
210:24 256:4,5
**named** 163:21 184:19
194:5
**names** 16:16 84:12
**nature** 59:8 62:8
71:15 129:21 243:4
**navigate** 82:23
**near** 148:17
**necessarily** 36:20
45:23 46:4 65:18
85:4 101:17 206:19
232:24
**necessary** 80:11
179:23 196:12
239:15
**Neck** 54:12,13,19
55:9 127:13 137:20
**need** 5:9 9:6 12:24
13:2 34:13 68:8
83:22,23 92:2
108:24 116:14
149:17 152:10

154:15 176:10
183:3 194:13
236:17 239:23
245:15 247:13
**needed** 41:2 53:13
65:7,10,12,14 188:8
190:25
**needing** 236:19
**needs** 191:8 193:10
200:7
**negative** 163:25
**Neither** 69:7
**never** 21:23,25 22:4,5
34:11 41:9 48:2
60:13 61:5,8 66:16
69:4 73:6 74:14
75:5 78:13 89:25
99:4 108:13 130:23
159:21 169:17
180:13 199:8
233:10,11,12 234:6
240:3,12 251:3
**Nevertheless** 247:25
**new** 1:1,20 2:4,9 4:5
4:6 17:15 18:12,24
19:3,12,17,24 30:11
32:10,13 50:6 53:7
53:9,13 62:24
120:16 128:8
141:22 145:25
146:8 169:21
188:14 237:16
248:10,16 255:6
**newest** 141:23
**news** 69:22
**night** 205:13
**nine** 177:23 219:12
220:4,9,22 223:19
**nonpregnant** 237:4
**normal** 196:3,7
**North** 129:12
**Northern** 33:9
**notary** 1:19 3:5 4:4
4:16 252:21 255:5
256:20

**note** 47:21 189:8,21
190:3 200:15
204:22 205:4
206:20,23,25
208:24 240:11
244:10
**noted** 104:21 116:4
151:14 203:11
204:9 207:5 211:19
212:15 240:13
242:20 246:7,8,13
248:25 252:15
**notes** 104:21,23
141:3 142:14
236:20 244:16
**notice** 1:18 125:5
**noticed** 125:6
**notify** 227:22 228:5
**noting** 240:23 251:9
**November** 52:5,19
62:5,6 79:20 93:4
93:10 173:16
199:24 200:3,5,21
200:23 201:14
223:13,18,22,25
224:8 226:14,18
227:10 249:22
250:15 252:7
**number** 77:16 79:25
80:7 85:23 149:14
150:2,9 151:19,20
153:16,25 155:13
155:24 156:13
157:18 158:18
164:24 168:11,19
168:25 179:19
217:21 221:25
227:25 237:5 243:6
**numbered** 203:25
**numbers** 94:13 98:19
98:19 99:3 131:8
151:4 168:12 169:7
169:7 172:10,22
184:14 209:14
216:7 217:19

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 278 of 294 PageID #: 2388

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

277

218:15 238:2,24
239:7,7,15
**numerical** 154:20
**numerous** 248:15,19
**NY** 54:22 127:8
**NYC** 48:8 49:11 50:5
50:23 51:12 52:4
53:6,13,14,16 54:18
55:10 121:10,12,20
123:15 127:7
137:24 155:17
227:6

**O**

**O** 199:22 202:10,12
254:8 255:2
**oath** 7:6 11:16
**object** 21:22 104:8,17
183:18 242:5,6,6,7
242:8 251:18
**objected** 25:5,21
103:19
**objecting** 183:21
242:17,19
**objection** 9:23 13:4,6
19:4 23:20 26:22
27:13,15 35:25 40:6
41:22,24 48:24 49:3
65:21 66:6 72:11
73:12,16 76:21 77:5
88:23 91:19 92:11
99:10 103:10,23
108:15 109:7,22
110:4 111:8 113:11
113:15 114:21
115:9,21 116:4,12
118:25 119:20
120:22,24 121:4
122:25 124:3,5,19
125:20 131:5
132:21 133:18,25
134:13 140:12
145:22 147:15
148:2,6,15 149:16
151:12,13,14,21

152:13 153:5
155:10 160:14,22
161:9,15 165:3
175:13 176:10
177:5 178:25 181:2
181:21,23 182:12
183:5,10,23 185:17
185:18 186:12,20
189:6 190:11
191:16 193:19
195:7 196:14 197:3
197:13,19,25
199:14,17 202:5
203:2,9,11,15 204:5
204:9,18,24 205:22
206:15 207:19,24
208:2,7,10,13 210:7
211:15 228:17,18
230:25 238:10,16
240:11,13,24 242:9
242:20 246:2,17
248:20,25 250:6
251:15 252:3
**objections** 3:12 4:14
13:5 23:4 25:13
27:17 152:9 209:17
228:15
**observe** 86:25 103:20
**observed** 104:20,22
**obtain** 12:3,17 13:11
13:14 14:11 28:22
52:15 66:4 104:6
115:18 116:7
125:18 147:2
160:18 178:19
180:8
**obtained** 47:11
125:15 145:25
151:19
**obtaining** 146:18
**obvious** 167:14
231:18
**obviously** 91:23
236:17
**occasion** 210:20

**occasions** 78:11 87:4
167:20
**occur** 87:8
**occurred** 8:23 76:24
236:8 251:13,23,25
**October** 51:16,17
222:24
**off-the-record** 44:14
54:16 81:21 95:12
126:16 210:17
218:12 228:12
230:19 234:20
**offense** 23:10
**offer** 31:15 59:14
127:23 128:5,19
138:3,14,16,25
**offered** 31:12 76:12
94:20 127:24 128:3
128:25 129:3,7
**offering** 44:3 98:11
**offers** 31:6
**office** 80:2 82:18
**okay** 5:9,12 6:7,10,13
6:16 8:4,5,19,20 9:2
9:3,7,8 11:24 27:17
34:18,19 36:6 45:8
68:2 81:12,16 82:9
96:4 104:19 110:8,9
114:4 116:21
120:10 137:19
138:20 142:22
144:22 163:8
172:25 178:18
184:10 185:14
188:6 207:6 220:18
222:23 225:18
226:15,21,22 230:4
235:14,15 239:22
241:19 247:8
250:14
**old** 16:24 90:25 91:3
146:9,12
**once** 45:16 60:25
64:13 72:14 79:5

80:14 83:5 137:10
146:4 174:10
181:15
**one-hour** 232:22
**one-off** 191:14,19
**ones** 83:20 112:24
**onwards** 208:3
**opening** 53:7,9,13
**opportunity** 46:5
82:2 246:16
**option** 64:9 233:13
**order** 28:22 39:8
48:19 62:21,22
120:9 178:18
196:23 205:16
212:17 227:18,21
244:4,15 246:21
254:17
**ordered** 227:22
**original** 68:3 119:8
238:4
**outbound** 188:17,20
190:16 193:7,9
**outcome** 255:15
**Outlet** 1:7 5:9 6:2
11:17 12:4 13:16,22
14:13 33:19,22,24
34:7,21,22,22,24
35:5,6,13 36:7,13
36:22 48:7 50:9
55:14,22 57:12
66:24 74:20 77:9
97:20 116:23 117:3
118:8 121:9,14,22
121:25 122:5,15,18
122:22 124:17
125:14 131:20
134:21 138:4
146:22 156:15
158:21,25 159:25
160:5,19 182:14
210:20 231:23
237:16 249:20
**Outlet's** 107:24
**outlined** 75:13

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 279 of 294 PageID #: 2389

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

278

outside 75:6 177:24
178:4,7 179:21
250:3
overall 180:22 194:2
overlap 7:16
overwhelmed 88:5
owed 42:11,14,16,18
44:21 109:2
owner 53:6,12
owners 128:24 158:5

**P**

P 2:2,2 70:12 203:24
204:2 254:9
p.m 143:10,12 187:22
232:20 252:15
packet 108:5
page 80:23 163:7
168:18 170:5,15
171:10,14 185:12
235:16 247:23
253:6,9,14 254:4
256:5
pages 11:2 142:25
162:10 168:13
217:18 218:14
245:13
paid 34:22 37:7 38:9
39:15,18,20,24 40:9
41:11,14,18,21 42:9
42:18 43:2 44:22
85:6,7 109:3 120:6
120:17 135:16,19
136:6,10 166:24
167:13,15 210:12
210:14 214:6
218:23,24
Pamela 227:19
paper 82:20
paragraph 86:12
173:15,23 174:10
175:4 177:23 178:9
235:13
paragraphs 81:4,16
179:2

parenthesis 168:19
parlance 35:19 234:3
Parsons 87:13
part 25:3,18,19 26:12
64:13 65:7,11 67:9
92:3 96:14 99:23
110:19 111:3
130:10 133:17
157:7 178:16,16,18
178:19 182:5
192:10 213:18
220:18 229:15
241:13 244:15
partially 68:25 82:13
101:3 114:11
178:10 191:25
239:17
participate 58:4,13
58:23 230:8
particular 162:7
164:13,20 165:21
166:18 170:23
185:21 186:5
187:11 197:21
202:14 208:23
209:4,9 211:18
214:10 221:22
235:13
parties 3:4 255:13
partner 56:25 57:2
party 26:8
password 45:17
47:18,20,22,23
91:25
Pathfinder 199:25
pay 10:23 60:18
76:18 95:22 101:8
101:13,19 103:17
114:23,24 128:21
150:13 158:19
167:2 212:22
213:24 214:3
218:16 219:2
220:15 224:8
233:18 236:4,8

paying 126:10
payment 194:22
239:8,11
payroll 38:13,18
213:2
paystub 101:7 167:4
167:7 213:18
215:13,23 217:14
218:19
paystubs 37:10 43:6
65:9,19 101:11,14
101:24 145:4
150:16,17 168:14
169:8 190:9 215:10
218:6
peaches 114:12
penalty 7:6 15:3
pending 9:5 171:2
people 8:12 35:14
38:19 64:18 78:8,10
89:14,20,22 90:2
140:4 142:11,12
144:13 148:20
170:16 182:17
190:8 192:16,17,20
percent 37:9 42:23
42:25 43:3,21 44:3
44:6 45:10 48:14,22
49:3,10 50:18 59:19
75:9,13 76:3,19,24
112:12 138:2
164:24 166:6,14,17
167:3,9 168:14
182:22 214:13,22
215:2 216:25
220:13 240:8,15
percentage 136:13
perception 182:25
perfectly 68:15
performance 77:13
performed 209:5
performing 200:19
period 20:13 36:24
47:19 91:23 93:24
103:3 123:8 137:25

150:5,10 159:7,17
213:24 214:3 222:4
224:8 229:5
periods 192:19
perjury 7:6 15:3
permissible 10:4
persisted 244:16
person 10:9,11 43:7
56:19,22 63:11 89:4
92:8 96:10 131:9
140:18,21,22 194:6
230:10 232:10
person's 98:6 196:10
personal 71:24 99:21
99:23 107:6,15
204:7,25 205:3
206:16 207:20
208:6 244:21 248:5
personality 71:6
perusing 244:9 247:7
phone 140:19 141:23
142:3 145:25 146:2
146:9,12 155:23
230:3
phonecall 56:6
185:12 188:17,20
190:24 192:25
193:5,7,9 195:23
212:4 242:4,13,15
phonecalls 190:17
phones 141:22,24
physical 112:16
physically 74:4 86:17
237:16
pick 177:11
Picked 233:12
picture 70:2 169:22
pictures 40:23 41:3
piece 89:23
pieces 38:11
pinpoint 102:17
pissed 61:19
place 31:24 57:9
80:19 91:4 100:19
100:22 127:13

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

279

130:12 148:22
153:4,4,4 232:2
233:16 235:7
**placed** 161:24 172:16
226:8
**places** 127:6,18,19,22
128:10 130:5
153:22 225:23
**placing** 154:6 184:12
243:23 245:6
**plaintiff** 1:4,16 2:3
4:3 24:3,18 26:9
104:4 154:21
157:17 158:13
162:14 173:24
179:3 227:22 228:4
228:6,15 235:21
236:24 248:13
**Plaintiff's** 24:17
103:19,25 143:21
163:2 235:16 236:3
244:16 246:24
247:25 253:17
**plans** 41:6
**plausibly** 236:24
**play** 109:18 162:17
212:13 241:4
**played** 91:4 92:3
110:19 157:6
241:11
**playing** 108:12
**plays** 88:3
**pleading** 23:24 24:11
**pleasantries** 59:12
61:6,12
**please** 5:9 8:7 13:23
27:4 49:8 68:19
91:16 102:12 104:6
113:18 119:22
152:12 155:9
161:17 181:22
183:19 184:5
208:21 240:6 242:8
242:21 243:3 245:4
245:23 246:11

249:3
**pleased** 104:13 201:9
**pled** 24:3
**PLLC** 2:3,8 248:12
**plus** 166:10 172:12
**podium** 70:9 86:20
96:18
**point** 20:12 43:20
48:12 68:7,13,19
72:2 79:5,11 81:15
82:21 84:6 87:12
90:23 91:6 92:15
93:12 94:25 95:7
98:23 99:2 103:7
108:20 138:22
159:25 198:11
201:20 212:18
231:17 232:12
235:12
**points** 110:20
**Police** 21:21 253:16
**policy** 107:24 108:3
**pop** 58:20
**portion** 247:18,21
**position** 33:5 36:13
44:23 45:3 52:15
55:21,25 64:14 77:3
89:3,18 91:2 94:17
94:20 95:6,9 98:11
127:25 128:20,25
129:3,8 158:17
252:8
**positions** 114:2 128:2
130:3 158:9
**positive** 20:20
**possession** 39:11
146:10
**possibility** 168:6
219:14
**possible** 167:17
189:18,20 193:4
205:19
**possibly** 138:6,15,23
189:14 192:24
221:8,11

**post** 118:6,18,22
146:16,21,22,25
**posted** 117:21 118:3
119:4 146:17
**potential** 85:2 179:17
238:7,24
**potentially** 242:23
**power** 95:18,21,24
**prefill** 176:18 235:19
**prefilled** 177:8
**prefilling** 82:12
**pregnancy** 44:21,24
45:2 71:9 72:3,10
73:3,7,23 76:25
78:14,25 79:3,7,10
80:10 82:11,25
83:10 91:12,14 92:5
92:9,19 93:13,14
96:22,24 98:4
106:11 107:7
108:12 109:15
110:14 150:21,25
157:2,5,7,15 179:10
179:14 200:22
201:2,4,14,16 224:9
237:3
**pregnant** 61:22 69:15
69:18 72:22 73:2,10
90:25 96:5 99:22
100:2,3,10,18
107:12 109:19
110:2 112:14 113:9
137:21 232:2
250:15 252:2
**preparation** 11:12
15:20 16:4
**prepare** 9:20,22 10:6
10:12
**prepared** 173:12
212:17
**preparing** 93:5
**prequalification**
194:11 196:19,25
197:4
**presence** 70:7

**present** 2:12 21:14
58:16,19 59:2 69:21
69:23 96:15 230:13
251:2,13,24 252:5
**presented** 21:23
138:14
**presenting** 246:19
**presided** 244:5 245:9
**press** 78:6
**pretty** 10:21 19:13
20:4 33:14 40:3
54:5 59:13 61:7
62:13,17 72:8 82:16
94:5,10 106:14
108:6 123:5 130:11
131:14 140:5
141:22 142:12
146:7 182:7 238:20
**prevent** 66:3
**prevented** 114:9
159:16
**previous** 89:25
219:14 246:21
**previously** 137:15
139:8 143:15 172:4
244:5 245:9
**primarily** 6:21
**primary** 36:16
**Prince** 171:5
**prior** 18:7 19:2 21:24
34:5 38:5 67:11
71:8 72:9 73:10
76:24 79:21 80:9
82:10 99:5 105:22
116:22 117:2
118:13 123:4,9,22
125:4 129:6 132:19
132:20 133:2,8,23
134:9 146:2 150:13
172:8,8 179:12
197:6 215:14,20
216:11 217:5,25
220:3 227:20
228:23,25 231:13
250:20 252:10

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 281 of 294 PageID #: 2391

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

280

prioritized 89:6
  237:22
prioritizing 237:12
privilege 148:7
probably 38:24 48:17
  52:16 53:19 60:24
  68:23 72:13 79:22
  100:4 118:16 123:5
  123:6 129:20
  141:23 172:2
  180:17 182:16
  209:5 212:17
problem 4:24 18:14
  22:7 184:5
procedure 4:20 65:8
proceed 25:9 26:3
  151:15 228:8
process 63:7 65:15
  106:16 161:11
  181:18 194:16
  196:4
processed 106:11
  182:11 237:24
processing 106:7
procure 199:12,16
produce 25:2,19
produced 41:4 145:4
  149:4 240:3,5,12,14
  240:16 241:13
producing 145:3
  241:3
production 24:24
  25:3,20 143:5
  215:24 240:4
  241:14
professional 30:21
  71:13,13,14 179:16
  184:9 242:4,15
professionals 116:24
profile 174:4,11
  178:2
profit 43:13 164:5
  165:22 167:6,18
program 84:23,25
  185:8 235:18

programs 31:3,7
promise 142:21
promised 44:23 76:6
  90:13 92:20 231:19
promote 92:4 94:18
promoted 90:14
promoting 90:17
  92:14
promotion 92:17
  93:2 231:18 250:18
  251:13,23
promptly 106:3
  107:3
proof 65:9 190:8
proper 27:2
properly 38:9 41:14
  41:21 42:10 83:6
  89:19 176:11
  178:14 238:19
proposed 228:7
prospective 64:23
  174:3
protection 164:10
prove 104:7
provide 4:21 9:13,17
  14:16,18 28:11,23
  29:2,14,17 87:3
  115:13 136:2
  156:16,23 179:22
  195:21 243:8
  246:24
provided 5:20 10:21
  16:18 28:14 105:8,9
  110:7 137:15 145:8
  145:11 173:25
  239:6,14
provides 17:19
  116:18 156:17
prying 148:7
psychological 112:9
public 1:19 3:5 4:4
  4:16 21:20 22:2
  23:14 252:21 255:5
  256:20
publicly 17:20

Puerto 133:6,13
pull 174:3
pulled 174:11 181:7
  181:9 201:12
pulls 177:25
punished 248:14,19
punitive 153:21
  155:4
purchase 83:16 84:9
  160:9 161:3 174:12
  180:23 190:21
  207:5
purchased 160:2,6
  185:7 189:17
Purely 122:25
purpose 94:11 230:2
purposefully 67:5
purposely 88:21
pursuant 1:17 4:20
pursue 147:21
pursuing 147:22
push 252:8
pushed 24:9 237:20
pushing 157:8
put 47:20 80:5 85:23
  89:3,21 90:20 91:2
  131:10 140:25
  143:4 151:25
  188:22 194:22
  205:25 222:16
puts 120:22
Putting 22:14

_____

Q

Q50 160:10
qualification 10:7,19
  225:19
qualified 62:16 89:9
  181:10
qualify 45:20,22 46:8
  46:10,21 47:4 49:4
  83:21 89:11 174:17
  176:17 189:17
qualifying 174:17
  178:13 234:11

Queens 48:10 53:10
  127:24,24 128:6,19
  129:25,25 158:7
question 6:22 8:9,16
  8:19 9:5,6 12:9,14
  12:16,25 13:9 14:3
  18:11 19:15 23:6,7
  23:8,18 27:4 34:13
  34:16 35:23 41:16
  46:14 49:5,6,8
  58:22 65:11 66:8,10
  68:4,21 72:12 75:22
  82:9 89:10 91:17
  93:20,22 99:12,16
  102:13,21 103:12
  103:13 105:3,4
  108:17,18 110:6,21
  113:12,18 118:11
  120:3,9 124:8,22,24
  124:25 138:9,11,21
  149:21,23,24
  153:21 156:20
  161:23 170:21
  172:20 181:24
  183:4,7,13,22
  199:15 207:14
  216:13 217:10
  218:18 220:21
  228:21 231:6
  238:14,18,22 242:8
  242:10,11,21 243:3
  245:19,23,25 246:6
  246:11,15 247:19
  248:21,22,24 249:3
  251:6,17,19,20
questioning 229:17
questions 3:12 6:4,25
  7:16 9:18 22:15,19
  22:22 23:23 45:5
  63:7 74:23 81:14,14
  81:25 146:17
  162:22 163:5
  228:14 230:21
  235:13 241:6,19
  247:9,12,21 251:8

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 282 of 294 PageID #: 2392

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

281

252:13
**quick** 22:16 25:16
  62:13 81:10 182:5
  182:21 226:4
**quicker** 64:12 82:24
**quickly** 40:2 182:7
  237:24 238:6
**quit** 32:18,22 36:10
  37:11 44:16,19 45:6
  45:9,12 48:6 52:7,9
  60:21,25 79:9
  108:14 125:4,10
  225:16 230:22
  231:7,14,21
**quite** 15:23 20:8
  43:17 127:20
**quote/unquote**
  248:11

**R**

**R** 2:2 4:2 143:14
  207:16,18 254:11
  255:2
**R-a-s-k-e-s-n-i-a**
  155:14
**raggedy** 89:20
**raise** 94:19 231:20
**raising** 231:9
**ran** 177:8 178:12
**ranges** 175:7
**rare** 67:23 69:7
  182:22
**Raskesnia** 50:4
  155:14
**rate** 75:8
**ratio** 192:13
**RAV4** 202:16,20
**reach** 60:18 61:14,16
**read** 5:23 13:3 35:22
  35:23 46:15,16 66:9
  66:10 68:4,21 91:16
  91:17 94:12 99:15
  99:16 102:12,13
  103:13 105:3,4
  108:18 118:10,11

138:10,11 156:20
  176:20 204:8 205:2
  206:17 207:21
  208:4 235:5 238:13
  238:13,14 244:6
  247:5
**reading** 188:11 244:8
**ready** 75:2 81:13
  131:3 163:5 191:2
  193:10 241:8
  243:20
**Real** 125:25
**realistic** 187:9
**realistically** 123:4
  187:4 192:15
**realize** 8:22 100:20
**really** 24:9 31:4
  38:23 41:2 52:24
  60:6 61:18,21 62:18
  67:16,20 73:25 84:2
  85:17 89:2,4 90:4
  90:12,18 91:5 92:13
  93:22 97:19 105:24
  107:7,10 108:7,13
  117:14 124:13
  127:22 144:17
  163:18 193:13
  209:12 215:9
  219:15 226:16
  233:15 236:16
  238:21 249:21
**realm** 250:3
**rear-ended** 160:16
**reason** 9:5,16 35:15
  41:13,19 42:8 44:19
  55:17 68:25 69:11
  79:3 86:5 87:21
  100:9 109:20
  128:18 129:9 157:7
  161:11 175:10
  179:20 180:3,11
  191:8 201:5 231:7
  231:14 232:4 234:9
  250:3 256:5
**reasons** 114:3 236:13

238:9
**recall** 11:22 31:20
  44:12 55:10 56:21
  59:14 60:6 70:19,20
  70:22 72:5,20 73:14
  77:10,19 78:15 87:9
  94:23 95:10 96:17
  98:14 119:3,12,15
  132:4 136:7 139:10
  140:2,16,25 141:16
  142:9 159:9,12
  171:2,5,21 195:19
  198:9 200:14 201:7
  207:3 218:9 220:19
  226:13
**receipt** 108:3 234:25
**receive** 37:9 60:25
  77:13 88:12,15
  115:16 159:6
  164:19,24 166:18
  166:25 167:22
  172:12 175:5 217:6
  219:2
**received** 38:2,4 39:12
  105:18 120:17
  135:11,19 136:10
  136:16,18,22 137:3
  137:4,6 138:3
  158:19,21 159:14
  164:16 168:12
  214:3 219:4 227:11
  227:12 235:22,23
**receiving** 37:12 43:4
  44:23 45:9 59:14
  157:13 160:24
  214:13 220:13
**recess** 24:21 143:10
  226:6 249:16
**recognize** 143:23
  149:5 162:8 184:19
**recollection** 8:21 9:2
  56:11 172:8 173:19
  187:10 249:18
**reconvene** 226:5
**record** 4:12 21:20

22:11,12 23:14 24:2
  24:17 25:16,17 27:9
  28:10 44:13 54:15
  68:5,8 81:15,20,23
  95:11 103:18
  126:15 143:8
  151:15 152:2
  161:22 162:4,12,18
  162:25 183:25
  185:20 210:16
  215:20 218:11,19
  220:4 228:11,13
  230:18 234:19
  241:12,17 243:18
  244:11 246:9
  247:23 253:16
  255:10
**recorded** 120:5
  241:15
**recording** 241:4,20
  254:16
**records** 77:19 141:4
  141:15 193:17
**recount** 248:15,19
**recovered** 113:25
**recruiters** 130:23
**redact** 17:20
**redacted** 17:14,22
**reduce** 214:8
**refer** 5:8,11 6:6,9,12
  6:15 57:2 115:3
**reference** 162:15
  248:4
**referred** 35:23 43:7
  46:16 66:10 68:21
  91:17 99:16 102:13
  103:13 105:4
  108:18 118:11
  138:11 156:20
  166:21 238:14
**referring** 5:14,19
  194:10
**refers** 164:4,8
**reflect** 22:11 24:2,17
  43:6 103:18 161:22

Case 1:21-cv-07163-OEM-LB Document 102-11 Filed 03/27/24 Page 283 of 294 PageID #: 2393

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

282

162:12,18,25 167:3
167:7 183:25
185:20 241:12
244:11
**reflected** 37:9
**refused** 45:19 91:25
**regard** 25:8,24
105:11
**regarding** 156:8
193:5
**regardless** 239:4
**registered** 182:18
**regular** 218:16
**reinstatement** 138:4
138:17,25
**reiterated** 202:19
**rejected** 128:5
138:25
**related** 7:2 45:6
74:20 81:15 255:13
**relates** 27:10
**relating** 71:21
**relation** 64:16 106:7
**relationship** 62:9
66:24 75:5 84:20
129:21
**relatively** 40:2 182:5
182:21
**relevance** 113:16
116:12 131:5
132:21 133:18,25
134:13 147:15
148:2,16 160:14
161:9 185:18
242:18
**relevant** 113:12,13
115:22,23,24
144:25 242:16
**remain** 229:5
**remained** 75:9,14
76:15,18 77:3
**remains** 217:6,25
**remember** 11:24
20:6,9 21:4 31:24
32:2,7,14 33:15

38:16 43:19 47:17
49:13,18,19,21 53:8
53:11,18,24 55:11
56:9,13,23,23 62:2
64:16,18 69:24 70:2
70:10,11 71:17
72:13,23 73:4,5,8
73:22 84:12 94:23
97:4 100:8,12
107:21 120:6
124:14 133:5 134:3
134:4,15 141:2
148:17 161:4,14,21
167:19 171:25,25
188:23 192:9
193:13 195:9 198:9
200:11 201:15,16
206:24 219:18
227:9 234:6,10
249:21
**remembering** 96:6
**remote** 68:12
**rent** 16:19,20
**rep** 187:25 190:18,25
193:8,9 195:17
**repeat** 12:16 13:9
23:8 49:9 103:12
124:9 161:20
199:15 242:10
**repeatedly** 162:15
**repeating** 207:22
**rephrase** 8:17 49:6
99:12 100:5 125:2
251:19
**rephrasing** 99:13
**replaced** 142:2
**report** 59:21,23 60:4
62:9 170:4
**reported** 59:24 60:13
61:8
**reporter** 8:7,8,11
35:24 46:17 66:11
68:22 91:18 99:17
102:14 103:14
105:5 108:19

118:12 138:12
156:21 238:15
255:4
**reporting** 60:11 62:7
**represent** 21:19
80:20 143:21 144:4
149:3 173:11
184:13 212:25
213:17 215:12
219:19 220:16
227:18,20 235:11
244:3 245:7
**representative**
173:16 188:22
**representing** 4:17
147:5,7 245:11
**represents** 248:13
**reproduced** 145:4
**request** 20:17 24:24
25:3,18,20 29:8
157:20 158:15
163:2 238:6 246:7
246:13 247:10
**requested** 25:17
178:3 179:24
**requests** 155:13
248:12 253:9
**required** 196:4,7
239:8,11
**research** 127:22
**reserve** 7:17
**reserved** 3:13 4:14
**resolved** 114:6
**resolving** 245:10
246:22
**respect** 93:2 102:21
106:6 110:13
117:20 123:25
124:12,17 128:2
137:14 158:17
170:23 200:19
201:6 232:14
**respective** 3:3
**respectively** 165:22
**respond** 181:15

**responded** 92:23
**response** 49:5 94:22
96:8,11 97:3 154:23
155:12 156:13
157:10,17 158:6,13
158:18 177:21
180:2 229:15
241:14 248:23
253:11,11,19
**responses** 102:22,25
154:7 246:24
**responsibilities** 36:19
36:20 74:13
**responsibility** 36:16
47:2
**rest** 124:6
**restaurant** 233:14
**restaurants** 233:8
**restore** 146:2
**result** 83:14 111:17
112:5,9,17 124:2
**results** 85:3 193:5
**resume** 56:7 130:3,11
**resumed** 143:15
**retained** 254:19
**return** 51:15 53:2
66:16 90:13 131:3
138:7
**returned** 90:6 94:2
94:15 123:18 138:5
185:22 234:5,9
**returning** 19:25
24:19
**review** 4:22 10:16,18
11:7,9,11 15:19,20
22:18 81:5 82:2
218:18 245:16,20
**reviewed** 154:24
218:14
**reviewing** 247:11
**Rico** 133:6,13
**ridiculous** 152:8
**right** 4:10 7:18 11:4
15:12 22:20 23:11
23:13 28:2,16,20,21

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 284 of 294 PageID #: 2394

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

283

29:15 33:8 34:9
35:12,17 36:15,18
39:3,9,10,13 40:17
41:21 43:14 44:17
45:25 47:10,12
49:23 51:14 54:8
55:20,24 57:8 60:2
60:11 61:4,10 62:12
62:24 63:5 64:11
66:22 76:3,4 79:2
81:17 83:12 84:21
88:8,15 93:15 99:24
99:25 105:13 106:9
109:11 111:6
120:16 122:9,10,12
123:20,21 126:19
127:16 130:24
131:14 136:11,16
140:4 141:18
144:10 145:2,6,13
145:21 146:3,20
150:10,20 154:25
155:4,5 156:22
158:10 165:15
166:4,7,8,16,24
168:11,11 171:13
174:8,9 176:9,24
177:10 178:17,21
178:24 179:9
181:19 185:3 190:5
190:9,18,19,23
191:24 192:5,6
194:19,24 195:3,4
197:18 198:15
199:20 204:20
207:9,11 211:8
212:3,6,9,12 213:16
214:2,14,24 215:5
217:2 219:13,23
220:2,6 221:3
222:11 223:12,16
223:20,24 224:14
224:17,21 225:6,10
225:14,25 233:7
244:7 249:15

ring 38:20
rings 66:19
rise 72:2
Road 54:13
Robert 163:21
role 82:15 94:3,9
  108:12 212:13
rolling 226:17
Ron 58:22 59:4 61:14
Ronald 1:9 5:7 6:15
  6:16,19,21 59:2
  61:8 156:24 157:10
room 169:14
ropes 82:16 101:21
Roughly 122:16
routine 80:15
rule 5:24 13:3,24
  17:19,23 208:10
rules 4:20 8:3,13 9:9
  17:14
run 35:13 53:9 62:15
  62:22 64:22 67:2,7
  67:8,10,14,15,23
  69:13 82:18 87:25
  88:4,7 94:11 162:14
  176:17 193:6
  196:22 235:18
  236:17 237:11
runaround 90:24
running 89:12
Ruthayn 1:19 4:4
  255:4,21

_____

S

S 2:2 4:2 143:14
  209:14,16 253:13
  254:3,12
S's 206:21
salary 39:4 50:16
  214:4,7
sale 45:24 46:3 71:21
  85:3 88:11 107:9
  164:5 165:21
  166:10 173:25
  186:23 207:8 238:2

238:8 239:16,19,20
sales 38:12 47:6
  49:14 53:17 54:19
  65:8 67:10 80:3,6
  83:24 84:4,5 88:22
  89:18,24 90:14,18
  90:20 92:3,4 93:16
  93:18 94:4,7,10,16
  99:8 174:2 177:25
  178:5,8 179:7
  212:20 236:13
  237:5 250:17
salespeople 31:7
  46:23 47:8 69:23
  70:24 87:3,8 89:7,8
  169:15 179:7
  214:21 233:3
salesperson 34:20
  36:14 46:20 47:4
  55:22 59:24 70:11
  77:22 79:12 83:25
  87:15 100:22
  101:22 103:9 105:9
  173:24 187:7
  214:19
salesperson's 80:4
salespersons 179:5
saleswoman 79:11
sanction 104:4
sanctioned 248:14,18
sanctions 183:14
Sanitation 147:4
sat 82:17 128:9 192:7
  202:7
satisfied 41:14,21
  42:9
Saturday 37:25
  195:2
Saturdays 85:12
saw 80:14 82:16
  123:24 124:11,13
  187:6 224:25
saying 8:12 14:5 41:9
  43:10 51:7 56:24
  67:18 70:20,22 83:2

94:23 100:25
101:14 109:13,16
109:21 123:16
150:12 166:5
168:25 177:3
178:15 189:12
193:23,25 201:13
203:6 209:10
215:16 222:17
227:7 231:22 236:7
246:19 250:24
says 13:3 22:25 23:15
  69:10,12 163:20,24
  163:25 170:6
  173:15,23 174:10
  179:2,19 180:6
  184:22 186:16
  187:18,21 188:3,16
  188:24 189:9,14
  190:13 195:17,24
  199:6,24 200:5
  201:22 202:14,23
  204:14 205:11
  206:12 207:4
  227:21 228:2
  235:16 236:2,24
  248:9
scared 91:2 111:20
  111:25 112:4,24
  117:4
schedule 37:14,17
scheduled 229:22
school 19:14,14
  29:25 30:6,11,12,13
  30:19,22,24 31:21
  135:2
schools 30:10
scores 89:21 235:19
screen 80:19 81:18
  103:20 104:2,24
  142:23 148:22
  154:6 161:24
  165:25 172:16
  184:12 222:3,17
  226:8 235:7 243:23

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

284

245:6
**scroll** 80:22 144:3
  154:11 162:10
  205:8 245:12 247:6
**scrolled** 163:3 167:24
**scrolling** 215:8
**seal** 4:13
**sealing** 3:8
**Sean** 70:10 87:10,10
**search** 131:3 134:12
  148:13
**season** 225:4
**second** 8:7 119:24
  126:12,21,25 131:4
  134:18,22 135:21
  163:7 201:23
  224:15 225:11
  227:24 228:2
  229:21 247:5 248:4
  251:5
**second-to-last** 87:16
**securing** 146:18
**Security** 136:18,19
**see** 23:16 46:5 51:7
  86:3,15 87:5 108:7
  124:18 128:10
  131:8 144:6 148:5
  149:24,25 153:10
  153:23 155:15
  163:22 164:2
  165:11 167:5,17
  168:20 173:17
  174:4,13 175:8
  177:10,17 178:5
  184:23 185:15
  186:18,24 188:5
  194:7 198:11 199:6
  200:3 201:25
  202:17 205:14
  206:21 208:25
  209:2,6 213:4
  215:12,25 224:25
  226:3 228:9 235:24
  236:5 237:7 239:23
  244:15 247:2 248:2

**seeing** 154:14
**seek** 111:5 112:25
**seeking** 11:9,12
  114:9 118:23
**seen** 22:5,17 38:24
  89:20 90:2 97:15,16
  163:12 172:21
  173:4,13 180:13,15
**self-employed** 65:18
  135:7
**self-incrimination**
  23:21
**sell** 31:6 42:17 118:7
  128:14 167:18
  168:15 170:19
  198:25 199:4
  212:10 217:7 218:7
  218:20,22 220:21
  224:22 226:19
**selling** 36:16 79:15
  87:14 164:16
  171:25 172:2
  205:20
**sells** 131:17
**send** 142:25 143:6
**sending** 141:16 142:9
**sense** 82:25 91:5
  97:19 100:24 131:9
**sensitive** 47:19
**sent** 4:17 22:11 56:5
  60:18 136:5 143:22
  189:3
**sentence** 236:2
**separate** 7:12,18 24:6
  157:24 214:6
**separated** 213:11
  214:8
**September** 18:6
  51:16 132:4,16,19
  221:16,16
**Serge** 63:20,21 64:16
  66:21,25 67:8,14,16
  67:23 69:7 70:13
  87:25 88:5,7,14
  106:10,11 167:20

173:12,15 175:4
  176:19 177:23
  207:15 212:16
  253:22
**Serge's** 80:2
**Series** 199:7,9,11
**Serrano** 155:20
**served** 173:16
**session** 143:12
**set** 63:6 134:10
  154:19 162:7
  169:17 188:14
  190:5 194:25 197:9
  200:2 202:20 208:2
  232:25 255:8,17
**sets** 11:6
**settlement** 143:5
  230:3
**seven** 77:18,20
  113:13 172:5,6,11
  172:11 174:10
  221:22 222:25
  223:2,5,8 227:23
  235:16
**sex** 109:6,17
**Shalom** 1:19 4:4
  255:4,21
**sheet** 163:20 166:22
  166:23 167:5 173:5
  253:21 256:2
**sheets** 162:4 253:20
  253:20
**Shore** 129:12
**short** 5:20 24:21
  36:24 42:14 93:23
  226:6 249:16
**short-lived** 125:24
  126:6
**short-term** 135:12,15
  136:7
**shorted** 42:12
**shortfall** 152:22
**shot** 56:24 57:23
**show** 70:15 77:19
  80:23 101:7,14

150:17 187:24
  215:9 217:18
**showed** 82:18 90:10
  167:2 168:7,16
  236:15,16,18
**showing** 94:11
  110:14 217:13,14
**shown** 236:12
**showroom** 186:16,22
  187:21 188:4
  197:17 207:2
  209:19 211:25
**shows** 101:13 150:5
  168:15 170:12,14
  196:21 210:3,4,14
  214:5 215:20,22
  216:10
**shut** 183:24 184:2,9
**sick** 52:25
**side** 111:23 237:20
**sign** 11:14 15:2 108:2
**signed** 173:12
**signing** 11:25
**similar** 73:11
**similarly** 88:14
**simply** 179:24
**single** 84:25 86:2
  127:9 170:20 177:4
  192:7
**sir** 13:19 22:4 49:6
**sister** 139:18
**sit** 70:8 171:24
  192:15 231:25
  233:8
**sites** 118:20
**sitting** 87:7 239:24
**situation** 37:12 54:23
  61:13,15 98:2
  142:13 144:16
  196:3,6
**situations** 65:24
  191:14 196:9
**six** 37:20 51:13 80:23
  170:22 173:23
  186:17,23 187:5

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

285

219:6,10 222:6,6
223:15
**six-month** 159:7
**skimmed** 82:3
**skip** 172:22 185:19
**Skipping** 226:2
**slash** 93:18
**slightly** 154:13
**slipped** 157:11
**slow** 54:10 79:14
97:17 217:9
**slower** 174:23
**smooth** 8:4
**Snapchat** 117:18,23
156:6,7
**sned** 144:21
**social** 117:7 136:18
136:19
**sold** 34:14,25 35:5,10
39:6,9 40:20 43:11
75:16 77:17 79:17
79:20,22,25 99:5,5
115:5 162:5 163:15
163:20,24 164:9,13
165:9,10,14,16
167:25 168:2,8,10
168:19,23 169:12
169:16 170:6,16,22
171:3,11,15,18,21
172:5,7 195:19,20
206:3,6 210:5
214:11,14 216:3,15
216:19 217:16
219:5,12,22 220:25
221:2,6 222:6,10,13
222:20 223:2,5,15
223:19 224:4,24
225:5,7,12,15,22,24
226:19,24 227:2,3
234:8
**sole** 36:13
**solely** 78:24 81:15
91:12 106:6
**solve** 42:20
**somebody** 46:12

97:24 100:2,18
108:21
**sonogram** 70:2,16
145:5
**soon** 59:21 176:2
**sooner** 98:22 100:6
173:21
**sorry** 11:10 23:8
32:25 35:21 42:7
52:8 60:24 67:7
75:11 91:15 97:10
102:11,23 112:21
118:9 119:14 125:2
127:7 145:9 156:19
159:11 160:17
161:12 181:3
189:19 199:13
222:14 237:21
238:12 250:8
**sort** 72:7 123:24
**sought** 116:23
**soul** 127:9
**source** 125:17 126:11
**Southern** 248:10,16
**speak** 10:4 12:3,17
13:11 15:13 72:15
84:4 91:9 108:22
174:23 183:16
195:7
**speaking** 8:22 13:5
27:17 37:6 86:9
105:21 180:22
182:6 246:2
**speaks** 149:16 186:12
186:20 190:11
197:13,19,25 203:2
203:9,15 204:18
205:22 208:8
**special** 103:8
**specific** 154:20
205:13
**specifically** 14:10
21:5 147:2 198:10
**Specify** 182:12
**Spectrum** 131:23

147:13,18
**spell** 50:3
**spends** 244:20
**spent** 131:2
**split** 12:11,13 214:20
220:11
**spoke** 56:25 57:5
90:5 128:12 129:19
142:12 148:20
156:3,6
**Sports** 54:12,20
127:14 137:20
**spot** 54:23 85:22
**spread** 10:22
**Square** 52:14
**squibbles** 72:17
**stamps** 28:6,10 29:20
**stand** 177:10
**start** 42:16 48:11,13
52:18 59:17 125:3
125:23 128:6
142:19 162:19
168:5 181:11
243:19,20
**started** 31:18 32:3,15
33:16,18,21 37:12
50:5 59:22 60:3,11
62:7,20 64:16 78:2
114:23 120:17
162:19 167:11
169:4 173:20
186:16 187:21
188:4 207:2 250:18
**starting** 169:20
185:11 190:3 222:4
**starts** 70:12 213:24
**state** 1:19 4:4 12:20
15:8 18:11 26:7
113:23 145:7,10
158:19 183:19
192:6,24 204:23
205:17 206:18
255:5
**stated** 169:13 250:13
**statement** 11:15

14:18,20 96:7 180:4
180:12
**statements** 12:3,17
13:11,14 14:12,16
71:3 97:21 100:14
139:9
**states** 1:1 17:25 18:9
191:13 220:16
**stating** 4:5
**status** 15:6 184:25
185:4
**statuses** 184:25
**statutory** 229:5
**stay** 33:17 91:6
122:23
**stayed** 51:3 93:8
133:22
**staying** 233:13
**step** 228:7
**stepfather** 16:22
146:24 147:2
**steps** 115:18 116:7
198:4
**stereotype** 89:15
**stereotypes** 90:3
**sticky** 47:21
**Stidhum** 1:3,17 4:1
5:1 6:1 7:1,22 8:1
9:1 10:1 11:1 12:1
13:1 14:1 15:1 16:1
16:12 17:1 18:1,2
19:1 20:1 21:1 22:1
23:1 24:1 25:1 26:1
26:6 27:1 28:1 29:1
30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1
38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1
46:1 47:1 48:1 49:1
50:1 51:1 52:1 53:1
54:1 55:1 56:1 57:1
58:1 59:1 60:1 61:1
62:1 63:1 64:1 65:1
66:1 67:1 68:1 69:1
70:1 71:1 72:1 73:1

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

286

74:1 75:1 76:1 77:1
78:1 79:1 80:1,21
81:1,23 82:1 83:1
84:1 85:1 86:1 87:1
88:1 89:1 90:1 91:1
92:1 93:1 94:1 95:1
96:1 97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1,6 111:1
112:1 113:1 114:1
115:1 116:1 117:1
118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1,22
144:1 145:1 146:1
147:1 148:1 149:1
150:1 151:1 152:1
152:16 153:1 154:1
155:1 156:1 157:1
158:1 159:1 160:1
161:1 162:1,8 163:1
163:10 164:1 165:1
166:1 167:1 168:1
169:1 170:1 171:1
172:1 173:1 174:1
175:1 176:1 177:1
178:1 179:1 180:1
181:1 182:1 183:1
184:1 185:1 186:1
187:1 188:1 189:1
190:1 191:1 192:1
193:1 194:1 195:1
196:1 197:1 198:1
199:1 200:1 201:1
202:1 203:1 204:1
205:1 206:1 207:1
208:1 209:1 210:1

211:1 212:1 213:1
214:1 215:1 216:1
217:1 218:1 219:1
220:1 221:1 222:1
223:1 224:1 225:1
226:1 227:1 228:1
228:22 229:1 230:1
231:1 232:1 233:1
234:1 235:1 236:1
237:1 238:1 239:1
240:1 241:1,20
242:1 243:1 244:1
245:1 246:1 247:1
248:1,17 249:1,7,18
250:1 251:1 252:1
252:17 253:1,4
254:1 256:4,5,18
**stips** 4:9
**STIPULATED** 3:2,7
  3:11
**stop** 13:24 27:16
  50:23 52:22 53:23
  54:4 104:6,24 126:9
  142:18 151:7,10,11
  183:19 184:4
  201:20 208:14,16
  208:20,21 240:6,9
  240:14,21 245:22
  246:5,5,6,11,14,17
**stopped** 45:9 220:12
  220:17
**store** 51:22 53:7,9,10
  53:13,14 61:17
  79:22 107:11 182:7
  199:21
**stores** 128:8,16
**storming** 100:8
**story** 127:21
**strategy** 98:21 100:9
**street** 4:6 33:8 85:21
**stress** 112:24
**stressed** 111:20 112:4
  114:13,24 117:4
**strike** 74:22 242:23
  245:2 248:22

**strip** 85:13
**structure** 37:4 50:8
  50:11,20 75:12
**stuck** 111:21
**stuff** 41:8 61:22
  64:19 68:10 100:19
  102:5 164:11
  193:21
**stupid** 32:20 68:8,10
**subject** 7:5 120:15,21
  121:4 151:22
**subjects** 7:3
**submission** 177:21
  177:24
**submissions** 176:13
  176:16
**submit** 65:24 66:5
  67:16 88:6 130:2
  176:21,23 177:3,7
  177:13
**submitted** 15:22
  130:10,13 174:12
**submitting** 175:17
  181:8
**Subscribed** 252:19
  256:19
**subsequent** 86:9
  122:19
**subsequently** 209:22
  241:15
**subtract** 151:19
**Success** 2:9
**sucks** 161:13
**sued** 12:12
**suffer** 112:4,14,16
**suffered** 88:21 112:8
  191:20
**suggest** 5:22 6:19
  97:21 101:5,11
**suggested** 100:14
**suggestion** 98:9
**suing** 34:10
**Suite** 2:4,9
**summer** 43:19
**Sunday** 37:24 232:16

**Sundays** 37:19
**super** 54:9 128:21
**superfluous** 124:6
**supervising** 45:18
**supervisors** 36:21
  37:2
**supplement** 157:17
  158:13 226:21
**supplemental** 246:24
**support** 115:16,19
  116:7
**supporting** 131:12,15
**supposed** 184:6
  243:19
**sure** 18:14 22:7 24:9
  29:6 31:19 36:5
  40:14 43:17 48:13
  48:14,22 49:3,10
  50:3 53:25 57:18
  59:19,20 64:20 70:5
  70:14 80:6 81:9
  93:8 96:23 108:6
  111:14 112:11
  118:5 119:11 120:4
  121:5,19 136:4
  138:2 146:15,25
  148:5 156:11 159:3
  162:12 163:18
  164:21 167:13
  169:10 170:10
  171:23 172:10
  174:24 176:20
  193:3 198:7,10
  199:19,19 201:13
  219:2 229:12,24
  238:21 240:15
  243:4
**surprised** 234:15
**suspended** 77:11
**sustained** 111:17
**swearing** 15:2
**sworn** 3:5 4:3,15
  143:15 252:19
  255:8 256:19
**symptoms** 112:20,22

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 288 of 294 PageID #: 2398

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

287

114:5,8
**system** 84:17,18
85:25 162:6 163:16
195:13,17 205:24
209:24 210:4,6

**T**

**T** 4:2,2 143:14,14
211:12,14,16
253:13 254:3,13
255:2,2
**take** 8:8 9:4,6 22:23
24:11,12,15 26:2
40:4,23 41:2 81:7,9
81:19 82:11 83:6,10
89:5 100:22 107:2
110:7 113:7 128:18
132:20 142:18
152:20 155:8
169:22 181:11
182:4,4 198:4 226:4
234:5 247:4
**take-home** 236:3,8
**taken** 24:21 31:9
92:17 96:21 103:17
106:2,2 115:18
116:6 132:17 135:4
176:6 214:9 226:6
234:16 237:20,21
249:16
**takes** 177:21 181:19
182:25 198:25
**talk** 90:22 94:24 97:5
97:6 251:4
**talked** 45:3 55:4
113:23 114:5 141:5
146:16
**talking** 11:18 12:5
13:15 14:9 19:5
82:22 93:5 118:13
119:9 124:4 132:10
139:19 145:18
146:25 162:11
180:17,19,20,21
183:8,12,22,24

194:2 217:21
221:24,25 230:10
**tally** 80:5 169:15
**taught** 63:2
**taxes** 214:9
**team** 110:23
**telephone** 155:24
**telephonic** 241:22
**tell** 8:17 9:25 10:4,19
12:23 15:16 45:14
70:4 78:7 79:5
81:14 83:21 84:8
86:23 95:8 96:4
135:18 146:13
152:5,7 167:15
183:11 188:11
190:20 191:7
209:12 229:18
247:5
**telling** 10:5 61:2 67:4
94:9 98:10,15 129:6
157:3 183:16 184:8
195:18 209:11
230:16
**tells** 108:21
**ten** 175:7 181:12
224:4 232:2
**Ten-minute** 33:14
**ten-pounder** 167:21
**tend** 107:2
**tended** 106:3
**tenor** 241:24
**term** 124:19,21
**terminated** 159:22
**termination** 134:17
136:20 213:3
**terms** 39:18 67:19
73:9 95:25 113:22
145:3 160:19,20,23
231:5
**territory** 131:24
**test** 151:6,22
**testified** 4:7 44:16
102:8 124:10
126:18 132:3 137:6

139:8 143:16 192:3
232:14
**testify** 172:4 204:6,25
206:16 207:20
208:6
**testifying** 7:7
**testimonial** 243:21
**testimony** 7:5 9:13
46:16 82:7 85:24
88:20 91:10 123:24
124:15 132:9
137:14 139:11
145:16,23 165:4
174:6 177:6 251:16
252:4 255:10
**text** 14:24 60:19
141:13 142:9 190:7
193:9 202:23
**texted** 92:22
**texts** 141:16,20
**Thank** 27:9 50:17
154:16 155:10
227:16 241:10
247:4,15 252:12
**Thanks** 51:11
**Thanksgiving** 224:2
**Thanwalla** 1:8 2:13
5:6 6:9
**therefor** 13:4
**thing** 57:24 59:3 72:7
99:21 114:22,23
135:10,16 156:8
244:6
**things** 44:20,22,25
59:11 62:25 65:18
68:8 80:17 98:16
100:24 101:20
144:5 180:21
193:18 201:20
243:5
**think** 9:16 13:2,19
25:4 29:22,24 41:6
53:25 71:5,24 75:21
85:11 96:5 100:17
101:10 108:20

110:2 112:7 130:25
133:3 136:12
142:20 144:17
182:24 208:3
214:12 218:9 224:2
**third** 8:9 165:16
215:3 224:18
**Thomas** 165:11
**thought** 91:4 98:21
138:21 173:21
252:6
**thousand** 76:10
126:5
**thousands** 84:15
**three** 10:8,12 16:25
38:11,24 110:15
129:8 139:13 140:4
142:11 144:13
153:22 167:25
180:9,13 182:9
192:16,17,20,22
198:22 202:7
205:25 209:24
210:2 214:23 218:6
219:22 221:10,12
223:23 224:19
227:2 236:21 241:5
243:12 245:24
**threw** 41:20 42:8
166:23
**Thursdays** 38:3,4
**Tiffany** 2:5 151:7
186:9 194:6 211:19
**time** 7:24 8:13 9:4
15:23 18:4,7,17
19:16 20:2,12 21:2
24:8 28:8 31:18
33:11 34:5,24 35:4
35:21 36:12,24
39:22 45:18 46:5,6
46:11,24 47:19 53:8
57:25 58:12 60:5
62:13,20 64:12 66:8
67:13 71:8 72:10,21
72:21 73:10 79:6,9

Case 1:21-cv-07163-OEM-LB  Document 102-11  Filed 03/27/24  Page 289 of 294 PageID #: 2399

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

288

79:14 82:10,11,21
82:23,24 83:5 85:13
86:25 87:18 91:15
92:24 93:3,16,17,24
94:24,25 97:10,24
99:14 100:22
101:21,23 103:19
108:17 110:13
118:15 119:7,9,11
119:24 122:4,9
123:8 125:9 127:10
129:19 131:2 132:3
132:20 134:19
135:24 138:21,23
139:5 142:2,17
143:2 144:17
149:17,22 150:5,10
154:14 156:3,19
159:14,17,24,25
160:4 162:14,15
167:14 169:15
171:24 172:9
175:20 177:3,4,10
178:12,14 179:3
181:14 182:9
186:11 191:18
192:18 195:14
196:5 198:12
201:23 205:14
207:10,23 216:5
220:12,19 229:6
232:12,18,19,25
233:5 237:2,10
238:12 239:4
243:21 244:21
247:11,13 252:12
252:15
**timeframe** 18:8,13
18:14 19:4,5,18
53:24 119:6 123:10
131:10 134:5
137:11 138:8 175:5
177:24 182:12
185:17 206:2
232:25

**timeframes** 101:18
**timely** 239:14
**times** 20:8,18 38:25
39:15,25 45:12,14
45:15,20 58:20 59:4
68:25 72:9 74:5
77:24 83:14,19
84:11 102:9,16
104:21 128:25
129:8 159:6,7,15
172:11 180:18
191:21 208:5,11
245:25
**tired** 90:23 184:4
232:2
**title** 36:13
**titled** 149:10
**titles** 47:6
**today** 6:25 7:5,9,10
8:22 9:14,18 15:14
15:17 55:4 85:24
155:21 202:17
228:3 252:13
**today's** 9:20
**told** 23:9 37:7 53:8
56:13 57:22 68:16
69:21 90:10 92:23
93:10 94:12,18
96:24 98:18 107:21
111:21,22,22 129:5
129:16 181:10
183:25 203:22
251:25
**tomorrow** 186:10
204:15 205:12
**ton** 130:5
**top** 22:3,25 77:22
79:11,12 87:7 149:7
167:9 168:18
187:17 220:3
**total** 79:25 150:9,12
165:5 166:2,6,9
168:23 169:12
170:6 180:20 216:3
**totaled** 160:16

**touched** 87:6
**tougher** 128:9
**TR** 254:14
**track** 40:19 79:24
80:3,5,8 84:25
169:12,16
**tracked** 188:19
**trade** 196:2 199:25
**trade-in** 195:3,24
196:6
**Trader** 131:17,22
**traffic** 54:24 128:11
182:8
**train** 249:23
**trained** 64:13
**training** 135:4
**transaction** 182:11
**transcript** 4:16,22
17:16 255:9
**transferring** 82:19
**transpired** 73:4
230:15
**travel** 134:6
**treated** 103:5 105:11
105:15,20,25
106:20,23,25 179:6
232:8
**treatment** 112:25
116:23
**Tree** 32:8,12,15,21
32:23
**trial** 1:16 3:13 4:15
126:7
**triplicate** 166:22
**trouble** 200:2
**Troy** 2:3,5 4:11,19
5:14,21 6:18 9:23
11:18 12:5,10,19,24
13:6,18 17:6,11
19:4 21:22 22:4,16
23:4,20,25 24:14,23
25:10,15,25 26:20
27:13 35:25 40:6
41:22,24 42:2 48:24
49:2,6 65:21 66:6

68:5,9,14 72:11
73:12,16 74:22
75:21 76:21 77:5
88:23 91:19 92:11
99:10,12 102:11
103:10,23 104:8,17
104:25 108:15
109:7,22 110:4
111:8 113:11
114:21 115:9,21,24
116:3,8,12 118:9,25
119:14,20 120:20
120:24 122:25
123:10 124:3,19
125:20 126:12
127:5 131:5 132:8
132:21 133:18,25
134:13 136:25
137:11 138:8
140:12 142:24
143:7 144:20
145:22 147:15
148:2,6,11,15
149:16,21 151:5,8
151:13,21 152:5,9
153:5 154:11,13
155:6 160:14,22
161:9,15 162:10,17
162:24 163:7 165:3
172:22,25 174:23
174:25 175:13
176:10 177:5
178:25 181:2,21
182:12 183:3,7,11
183:16,21,25 184:8
185:17 186:12,20
189:6 190:11
191:16 193:19
195:7 196:14 197:3
197:13,19,25
199:14,17 202:5
203:2,9,15 204:5,18
204:24 205:22
206:15 207:19,25
208:12,15,17

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

289

209:17 210:7
211:15 214:16
215:8,16 216:6,13
217:9,18,21 220:7
222:2,16 223:7
225:19,22 228:17
229:12 230:25
234:2,11 238:10,16
239:24 240:3,8,11
240:15,19,23
241:12 242:5,10,16
242:19,22 243:14
243:18 244:10,25
245:12,16,20 246:4
246:7,13 247:12,19
248:12,20 250:6
251:7,15 252:3
**troylaw2troypllc.c...**
2:5
**true** 32:25 65:17
66:19 79:14 80:9,18
82:9,13 83:4 85:9
89:14 118:22 119:4
121:20 161:10
179:8 189:22
196:18 200:22
202:3,6 209:7 210:5
210:11,13,15
231:11 251:22,24
255:10
**trustee** 200:8
**truth** 95:3
**truthful** 9:13,17
**truthfully** 93:23
**truthfulness** 21:9
**try** 34:15 97:25
118:16 143:3 189:3
**trying** 12:10,13 25:10
53:25 64:7 90:15
166:12 201:19
218:9 249:23
**turn** 38:12
**turned** 127:23
**twice** 72:14 77:6
**Twitter** 117:16

**two** 8:12 10:8,11 11:6
12:11 16:22 26:11
51:21 55:18 62:4
65:9 72:4,6,17,20
73:9,20 111:6,9
118:23 127:15
128:15 129:8
130:11 132:25
137:22 151:3
153:22 157:24
158:3,4,8 159:15
165:7 166:2 170:15
170:16,19 171:10
172:3 176:9 179:12
180:21 182:9 185:2
190:9,17 192:16,16
192:17,17,20 193:7
198:21 202:7 212:4
212:7 214:6,15,23
214:25 215:3,9
217:18,19 218:16
218:17 219:16,25
224:24 225:5,12
236:18 243:12
247:23
**two-and-a-half**
123:13,16 214:19
**two-factor** 146:5
**type** 47:22 52:17
57:24 72:7 76:3
170:4 231:20
233:16
**typed** 158:7
**types** 98:16 174:20
174:20
**typically** 172:5 174:7
185:8
**typing** 104:2,23

**U**

**U** 4:2 143:14 212:24
213:6 254:14
**Uber** 208:25
**Uh-huh** 120:11
**Um** 36:20 139:16

145:22
**unable** 193:8
**unavailable** 134:16
134:20
**underlying** 23:23
**understand** 7:3,7
8:13,16 9:9 25:10
25:15 34:16 53:12
70:6 83:3 89:2
90:12 92:7 94:14
102:7 107:10 109:8
116:21 120:9 121:8
138:20 164:23
170:21 192:12
221:5 226:22 250:8
250:9
**understanding** 35:12
35:18 57:14 77:21
106:22 168:22
191:22
**understands** 119:21
119:23
**understood** 8:18
19:16 32:21 57:19
67:18 75:21 109:4
138:3 156:10
**unemotional** 96:9
**unemployed** 131:13
**unemployment** 27:19
27:22 137:7,9,15
159:5,6
**uniform** 209:25
210:4
**uniformed** 209:18
**unique** 235:22
**United** 1:1 17:25
18:9
**unknown** 155:24
**unlawful** 111:17
**unnecessarily** 244:22
**unrelated** 35:6
**unwarranted** 248:2
**upgraded** 142:5
**upset** 73:25 98:2
100:8 111:19 112:3

117:4 172:2 201:23
**use** 6:20,21 13:18
24:25 25:4 117:7,9
117:14,22 145:25
163:18
**useful** 144:18
**username** 47:24
**usual** 4:9
**usually** 70:13 98:19
172:13
**utilizing** 147:24
**uttering** 22:25 23:3
23:16

**V**

**v** 213:21,22 254:14
256:4
**vacation** 20:4 45:17
87:19 90:6 92:23,25
93:6 132:4,20
133:24 238:10
232:13 249:24,25
**vacations** 132:17
133:23 134:10,11
134:12
**valid** 68:15
**variety** 238:8
**vehicle** 39:12,20,23
40:9 43:11 160:2,6
160:18 161:3,7
164:6 165:10,16
174:12 188:12
189:17 190:21
200:9 207:8 210:5
212:10 239:2
**vehicles** 31:6 34:25
35:5,10 39:18 40:19
167:18 169:12
218:8 225:16 234:8
234:16
**venting** 140:9
**verbal** 101:6
**verification** 178:3
**verified** 15:24
**verifying** 38:8

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum --- February 17, 2023

290

**versus** 86:6 181:7
**violating** 13:24
**violation** 208:10
**visit** 59:5 186:16,22
 187:21 188:4
 197:17 207:2
 211:25
**visited** 133:12 209:19
**vocational** 30:24
**voice** 8:6
**volume** 50:21 51:24
 85:16,17 114:22,25
 115:3,5

**W**

**W** 226:9 227:17
**wage** 7:12 15:8 26:7
**wait** 46:12 56:25 67:5
 68:25 69:4,13 78:2
 78:5,8,8,24 83:14
 83:19 86:15,23 88:9
 88:21 91:11,23 95:3
 97:7,11 102:16
 137:23 176:24
 177:10 179:20,25
 180:16,17 181:22
 192:18 196:16
 231:8,11,15 236:8
 237:2,10,11 246:2
**waited** 48:13 91:13
 180:8
**waiting** 45:12,14,20
 79:8 80:11 102:5
 181:7 182:23 191:5
 191:21 198:15
 208:25 209:5
 237:18
**waived** 3:9 4:13
**walk** 83:15,19 127:9
 128:11 192:22
 193:4
**walk-in** 85:7,7,10
 170:13 182:8
**walk-ins** 85:24
 210:15

**walked** 191:23
**walking** 84:6 192:18
**wall** 123:25 124:12
 124:20
**want** 8:24 13:8 14:13
 18:17 19:21 20:14
 24:12 25:14 32:7
 40:17 45:4 51:16
 59:19 69:2 70:6
 71:6 77:18 81:3,24
 84:2,9 90:18 94:25
 96:6 99:8 100:18
 112:12 117:24
 123:13 129:2,4,8
 152:8 162:17
 171:24 175:25
 182:8,21 184:4
 185:6 196:2 208:18
 208:18 212:21
 215:19 226:2,3,21
 231:15 235:12
 238:25 246:5
**wanted** 53:9 56:16
 64:25 68:11 80:6
 89:5 94:19 95:6
 107:11 162:18,20
 198:5,18 228:15
 231:19,19 233:14
**wanting** 92:3
**wants** 194:21 199:6
 231:25
**warned** 208:11
**warning** 104:5,22
**warranty** 164:11
**wasn't** 40:12 41:2
 42:19,20,25 44:23
 54:24 73:24 76:5
 78:9 79:8 80:14
 91:23 94:8 102:15
 108:24 111:23,24
 114:12,15 125:7
 126:10 128:21
 141:21 156:11,25
 158:10 189:22
 231:18 243:19

**waste** 46:11 67:12
 95:2 143:2 149:17
 162:13 207:23
 247:10,13
**wasting** 46:5,6
 149:22 181:14
**watched** 97:17
**watching** 93:7 201:19
**water** 126:13
**water-under-the-b...**
 72:7
**waving** 69:25
**way** 10:12 14:22
 17:19 49:19 51:10
 66:3 73:15,18,22
 74:2,20 77:21 81:13
 89:11,19 93:12
 95:16 96:12 100:24
 106:13,19 119:13
 119:15 162:18
 172:14 176:18
 184:6 186:8 187:8
 224:7 227:2 232:7
 237:23 239:19
 242:3,14 255:14
**ways** 105:14
**websites** 117:7,20,22
 118:3
**Wednesdays** 37:18
 232:15
**week** 10:8,15 37:20
 37:24 38:5,6,9 39:3
 39:3 40:20 51:3
 68:23 77:17 100:4,6
 100:7 101:8 172:3,6
 172:11,13 214:7,10
 214:14 215:3,6,14
 215:15,17,20,21
 216:9,11,18,22
 217:4,5,8,13,15,17
 217:17,25 218:4,8
 218:17,21 219:4,8
 219:11,15,16,20,20
 219:24 220:3,14,22
 220:24 221:5,9,12

 221:15,19,22 222:7
 222:9,12,20,23
 223:2,4,6,10,13,18
 223:21,25 224:3,6,7
 224:12,15,18,22
 225:3,11 226:11,12
 226:17
**week's** 85:16
**weekend** 85:12,15
**weekly** 37:7 38:10
 42:17,18 50:15
 150:12 214:4
**weeks** 54:9 121:23,24
 127:10 129:20
 132:25 136:11
 150:9 152:21
 218:16,17 219:15
**weight** 115:12
**weird** 93:18
**welcome** 81:23
**went** 19:17 20:2
 52:11 56:17 64:21
 79:12 82:22 100:21
 106:14 121:10
 122:13 127:7
 128:20 129:7
 132:10,14,14,23
 133:6,10,11 134:3
 152:24 153:12
 155:2,17 168:7,13
 188:13 189:9,10,14
 189:16 217:5 227:6
 232:24 233:17
**weren't** 108:9 122:8
**WHEREOF** 255:16
**willing** 56:24 57:23
 231:8 240:17
**win** 89:4
**wins** 89:4
**withdrawn** 69:11
 128:4 225:2 243:11
 249:12
**witness** 4:18 5:21
 23:5 26:21 42:4
 103:25 119:23

Case 1:21-cv-07163-OEM-LB   Document 102-11   Filed 03/27/24   Page 292 of 294 PageID #: 2402

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

291

132:8 145:23
161:23 165:4 177:6
189:7 237:16 241:6
244:9 247:7 251:16
252:4 253:3 255:7
255:11,16
**witnessed** 87:13,17
**witnesses** 144:5,12
155:14 194:21
**woman** 90:25
**women** 100:10
109:19
**word** 102:6,6 167:12
168:18 175:5
**worded** 61:19 178:14
**words** 8:7 42:24
50:13 96:23 140:25
**work** 32:6,23 33:5
34:20 37:18,23 48:7
53:23 54:8,9,20
55:18 59:17 75:6
77:11 86:7 89:15
90:19 98:22,25
107:16,19 114:10
121:10 127:8,12
131:4 134:16,20
143:3,5 159:4
181:17 182:5,21
210:21 231:23
232:5 233:16
249:19 250:4
**work-related** 71:18
71:23 77:9 102:16
**workday** 232:21
**worked** 31:13,14,20
32:5,9 33:2,25 34:7
34:11,21,24 35:4
36:12,21 37:14,20
40:5 53:10 63:9,13
66:20 71:13 97:14
105:16 107:21
118:15 120:16
121:21 122:19,21
127:18 131:23
157:23 159:24

160:5 163:16 179:3
179:4 182:13 189:4
200:6 205:12
**workers'** 28:3 136:22
**workforce** 53:2
122:13 127:2
**working** 31:18,24
33:16,19,21 48:6,11
49:15 50:5,23 51:20
52:4,20,22 54:2,3,4
59:22 62:9,20 66:21
76:12 92:20 97:24
99:4,6 100:2,7,7
107:20 114:9
116:22 117:2
118:19 120:13
122:22 125:22
126:9 127:11
129:12 147:3
159:17 163:12
173:20 180:7
181:11 184:22
187:8 195:5 200:11
211:6,9 220:17
250:11,18
**works** 17:19 131:25
**workweek** 232:15
**world** 107:22 115:14
**world's** 182:25
**worried** 112:14
114:14
**worry** 115:12
**worth** 85:16 218:16
**worthiness** 175:7
**wouldn't** 79:16 84:2
84:4 87:11 98:15,25
99:7 108:20 115:11
115:14 128:14
129:23 140:25
166:8,25 189:21
191:2 198:19
218:24 250:3,10
**write** 8:12 141:10
189:15 206:23
**writing** 20:10,15 29:7

123:25 124:11,19
157:19 158:14
**writings** 142:14
**written** 14:22 59:14
103:4 141:4 169:18
206:25
**wrong** 25:5
**wrote** 236:21

**X**

**x** 1:2,11 83:22 157:13
178:11 235:8,9
253:2,13 254:3,15
**XX-XX-1998** 17:5
**XY** 96:25
**XYZ** 15:3

**Y**

**Y** 240:25 241:3
254:16
**Yanes** 188:5
**yeah** 65:23 67:14
98:3
**year** 17:7,13,17 20:7
32:2,14 33:15 48:15
54:5,6 62:3 140:15
159:4 217:24 218:2
**year-to-date** 215:21
216:10
**years** 90:25 91:3
102:5 113:24,25
120:7 123:13,16
171:8 180:7 192:9
193:14,16 207:3
**yes-and-no** 39:16
**York** 1:1,20 2:4,9 4:5
4:6 17:15 18:12,24
19:3,12,17,24 30:11
32:10,13 248:10,16
255:6
**young** 32:20

**Z**

**Z** 96:25 243:24,25
254:17

**zero** 224:25
**Zoom** 1:18

---

**0**

---

**1**

**1** 187:17
**1,000** 48:22 49:3,10
105:18 168:13
226:13 227:11,12
240:8,15
**1,050** 172:13 222:24
223:4
**1,197** 217:25
**1,200** 220:25
**1,238.64** 150:13
151:19 152:17
**1,375** 223:17
**1,400** 219:11,21
**1,450** 220:4,10
**1,505** 215:21 216:11
**1,600** 224:2,8 226:12
227:12
**1,628** 165:22
**1,857** 165:22
**1:21-cv-7163** 1:2
**1:30** 142:18
**1:51** 143:12
**10** 190:5 245:13
**10,000** 89:21 167:21
240:18
**10:00** 186:11 232:20
232:20
**10:05** 24:16,20,22
**10:45** 186:17
**100** 48:14 59:19
138:2
**100,000** 153:9,13,15
**103** 2:4
**10th** 170:17 190:4
197:16
**11:14** 81:10
**11:30** 81:11,20
**11042** 2:9
**11354** 4:6

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

292

**11355** 2:4
**1165** 211:12
**1167** 211:13
**1186** 212:25 254:14
**1198** 217:10
**11th** 186:9
**12** 136:11 179:2
215:6 228:3
**12,600** 163:24
**12:58** 143:10
**12th** 186:15,17 195:5
209:20 215:13
216:10 223:14
**13th** 223:18
**14** 158:18 179:2
**143** 253:17
**148** 253:18
**14th** 150:6 198:22
213:12 220:15
**150** 37:8,13 39:5
42:19 43:3 75:16
164:16 166:9,10,15
166:17,19 167:10
167:10,16,22
172:12 216:14
220:10 221:6 222:6
222:10,25
**154** 253:19
**157** 253:11
**158** 253:11
**15th** 190:24 193:11
**16** 193:12
**161-10** 1:7 5:5,8 6:2
13:22
**162** 253:20
**17** 1:12 20:2 185:13
256:4
**170** 253:20
**172** 253:21
**173** 253:21
**174.25** 166:6,9,11,13
166:19 167:15
**18** 33:22 34:8,23
64:15 76:16,19 77:4
78:3 86:13 150:6,18

168:3 170:6 171:22
172:8 176:4,7 190:4
199:24 200:23
204:14 215:6
221:16 222:24
**184** 253:22
**187** 253:23
**18th** 215:13
**19** 8:24 18:8,15 20:13
34:8,23 36:7 44:17
48:12,16 60:20 61:3
76:16,19 77:4 86:13
90:6,25 91:3 94:2
94:15 150:6,18
158:6 179:19
187:22 188:16
196:11 197:11
207:4 225:7 253:11
**190** 253:24
**194** 254:6
**197** 254:7
**19th** 223:18
**1st** 150:6 171:15
187:22 227:21

---

**2**

**2** 80:20 155:13 207:4
253:17
**2,000** 11:2
**2,165** 215:22 216:10
**2,755.54** 152:22
**2:00** 186:11
**20** 76:8 83:6 180:9
253:10
**20-something** 51:4,7
226:25
**2010** 199:25
**2011** 163:25
**2017** 19:22 21:2
23:12,15
**2018** 8:23 18:8,15
19:21 20:13 43:21
60:9,10 77:25
140:17 162:7
163:21 165:10,11

165:19 167:25
168:23 169:3 170:5
170:17 171:15,19
173:17 175:24
185:22,23 191:11
193:12 202:15
204:4,12 209:20
213:9,25 217:17
222:5 224:7 250:11
250:15
**2019** 51:6 52:5,19
124:18 125:4 186:9
186:15 187:17
194:20 195:22
213:12
**202** 254:8
**2020** 18:6 51:5 53:3
53:18 54:21 132:4,6
132:13,16 134:7
**2021** 133:4,9,9,10,11
133:12,24 134:10
185:13
**2022** 54:7 132:13,19
143:23 227:18,22
228:3,4,6 244:4
245:8
**2023** 1:12 149:4
252:20 255:17
256:4,20
**203** 254:9
**206** 254:10
**207** 254:11
**209** 254:12
**20th** 204:14 220:14
223:22
**21** 253:16
**21-1653** 227:25
**211** 254:13
**213** 254:14
**21st** 143:23
**22** 187:23 245:8
**22nd** 213:9,24
**235** 254:15
**23rd** 200:23 201:14
**24** 9:12 220:17

221:16
**241** 254:16
**244** 254:17
**24th** 165:19 199:24
220:15
**25th** 165:11 200:3
225:4
**26th** 188:24 200:5
223:22
**27** 163:21 227:8
**27th** 201:22 224:8
**28** 203:12 227:8,18
228:3
**2815** 4:5
**28th** 213:25
**29** 202:15 253:10
**2nd** 222:5

---

**3**

**3** 217:10
**3,000** 37:8 43:2,3,10
164:25 166:16
**3,435** 217:24 218:2
**3,485** 166:3
**3,500** 164:25
**3:00** 142:20
**3:59** 226:4
**30** 13:3,24 76:9 149:4
208:10 227:5
243:15,17
**30-minute** 162:20
**300** 37:7 39:2,3 50:13
50:15 172:12 214:3
214:7 218:17
219:24
**3000** 2:9
**30E** 4:21 5:25
**31st** 193:11 225:5
**33** 227:5
**35** 81:16
**350** 225:2,11
**36** 170:6 199:4
**37** 247:24
**38** 81:16
**3rd** 217:4 218:19

STIDHUM v. 161-10 HILLSIDE AUTO AVE, et al.
Leticia Francine Stidhum  ---  February 17, 2023

293

**224:9** 227:11
**3W8** 2:9

**4**

**4** 253:7
**4.4** 216:15
**4:05** 226:5
**4:15** 187:22
**4:30** 239:25
**4:40** 243:18
**4:57** 252:15
**40** 83:10 182:22
**40/60** 85:15
**4125** 2:4
**428.64** 151:18 152:17
 152:20
**45** 79:18
**45-minute** 162:21
**450** 219:21 221:9,13
 223:22
**46** 168:19
**4th** 197:10 202:19
 228:6

**5**

**5** 37:9 42:23,25 43:3
 43:21 44:3,6 45:10
 50:18 75:9,13 76:3
 76:19,24 164:24
 166:6,14,17 167:3,9
 168:14 214:13,22
 215:2 216:25
 220:13
**5.2** 214:12
**5:15** 188:3
**50** 182:22
**50/50** 85:15
**500** 101:8 224:18
**53** 86:12
**586** 163:25
**5th** 194:20 196:11
 202:23

**6**

**6** 171:12 195:22

199:7,9,11 244:4
**6.43** 150:10 152:21
**60** 79:18 83:10 159:3
**600** 227:13
**615** 216:19
**625** 224:15
**65** 79:19
**655** 216:22
**660** 216:3,12,14
**6th** 203:5 223:14
 226:20 255:17

**7**

**7** 156:13 157:18
 253:11
**70,000** 159:3
**700** 136:15 222:9
**750** 221:16,19
**780** 214:5

**8**

**8** 171:12 188:16
**8:00** 232:20
**800** 89:20 172:14
 222:12,17
**81** 253:17
**810** 151:20 152:17
**825** 224:12 225:8
**8th** 23:15 211:25
 222:5

**9**

**9** 217:5,10 243:6
**9.67** 220:10
**9:00** 162:19 232:20
 243:19,20
**9:23** 1:12
**9:30** 162:19
**900** 172:14 219:4,9
 221:22 222:6
 223:14
**9th** 218:19