**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

**LETICIA FRANCINE STIDHUM,**

                                                                                                               **Case No.: 1:21-cv-7163 (OEM) (LB)**

                     **Plaintiff,**

           -against-

**161-10 HILLSIDE AUTO AVE, LLC d/b/a**
**HILLSIDE AUTO OUTLET, HILLSIDE AUTO**
**MALL INC d/b/a HILLSIDE AUTO MALL,**
**ISHAQUE THANWALLA, JORY BARON,**
**RONALD M BARON, and ANDRIS GUZMAN,**

                   **Defendants.**
------------------------------------------------------------------X

## DEFENDANTS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MILMAN LABUDA LAW GROUP PLLC**
Joseph M. Labuda, Esq.
Matthew A. Brown, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
matt@mllaborlaw.com

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Plaintiff fails to raise a genuine dispute of material facts in order to avoid summary judgment. Plaintiff misconstrues the record, ignores dispositive evidence and disregards unfavorable precedent that forecloses her claims. Consequently, summary judgment must be granted.

**ARGUMENT**
**POINT I**
**PLAINTIFF'S OPPOSITION IS UNTIMELY**

Plaintiff failed to timely file her opposition to this motion by February 1, 2024 deadline. [See 1/2/24 ECF entry extending deadline]. Without notice or explanation, Plaintiff served her opposition a day late on February 2, 2024. [Dkt. No. 95].[1] Accordingly, the Court should reject her opposition out of hand. See Interglobo Customs Broker, Inc. v. Herschel Imports, Inc., 2015 U.S. Dist. LEXIS 73227, at *4 (S.D.N.Y. 2015)(defendant's summary judgment opposition "untimely"). See also Fed. R. Civ. P. 6 (regarding extensions).

**POINT II**
**PLAINTIFF WAS NOT SUBJECTED TO UNLAWFUL DISCRIMINATION**

A. **Title VII/PDA/NYSHRL Discrimination Claims Related to Pregnancy & Sex**

1. **Plaintiff Did Not Suffer An Adverse Employment Action**

Plaintiff argues that she suffered adverse employment actions, such as, (1) longer wait times for credit reports causing customers to walk out, resulting in lower commission payments, (2) a failure to discuss a previously promised promotion and (3) constructive discharge. To reiterate, in determining whether an adverse employment action has occurred, the Court must

---

[1] Troy Law has a history of non-compliance with Court orders, so Plaintiff's untimely opposition cannot be chalked up as a simple mistake. See e.g., Rodpracha v. Pongsri Thai Rest. Corp., 2021 U.S. Dist. LEXIS 53290, at *2 (S.D.N.Y. 2021)(finding Troy Law inadequate to class counsel and noting that the Court "shares the broader concern that has been expressed by other judges … that, regardless of its professed level of experience in wage-and-hour cases, Troy Law has shown a tendency towards prejudicial neglect of its clients' interests"); Guangqing Lin v. Teng Fei Rest. Grp. Inc., 2020 U.S. Dist. LEXIS 9122, at *3 (S.D.N.Y. 2020)(sanctioning Troy Law for repeated "noncompliance with court-ordered deadlines").

consider whether the action in question "is more disruptive than a mere inconvenience or an alteration of job responsibilities," and instead rises to the level of "a materially significant disadvantage with respect to the terms of the plaintiff's employment." Littlejohn v. City of New York, 795 F.3d 297, 311 n.10 (2d Cir. 2015)(internal quotation marks, alterations, citations omitted). Here, the alleged actions do not rise to the level of an adverse employment action.

For instance, the claim that increased wait times for customer credit applications caused a loss of customers which in turn resulted in lower commissions is conclusory and mischaracterizes the record. Plaintiff first clings to her own unsubstantiated and self-serving testimony that approximately two (2) out of three (3) potential customers she met with on a daily basis walked out due to longer wait times for credit applications. (CSMF ¶ 189). This is the epitome of speculation as to each customer's psychological state and is not supported by any evidence (i.e. customer testimony) as to why they left the dealership. Clarke v. JPMorgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264, *25 (S.D.N.Y. 2010)(plaintiffs' personal and ungrounded beliefs constitute wholly inadmissible evidence and a court "may not rely on conclusory allegations or unsubstantiated speculation.").

The record is also devoid of any evidence that such customers would have purchased a vehicle if the wait was shorter, or if there were other reasons for leaving (e.g. better price at a competitor). Nor is there evidence as to what percentage of customers that Plaintiff met with did not actually purchase a vehicle prior to announcing her pregnancy. Further undermining the claim, there is absolutely no substantiating evidence that wait times for customers of male employees was shorter than Plaintiff's customers.

Moreover, there is no evidence that Plaintiff's commissions actually suffered due to the increased wait times. At best, Plaintiff argues in a conclusory fashion that as a direct result of the

wait times, she went from top saleswoman to selling near the least amount of cars. (CSMF ¶¶ 87, 172). Clarke v. JPMorgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 33264, at *25. Additionally, there is no evidence (aside from Plaintiff's own inadmissible conclusory statements) to support that the fluctuation in weekly commissions resulted from the longer waiting times. In fact, various factors contributed to such fluctuations and as per the evidence, the number of cars Plaintiff sold changed on a weekly basis. Of critical importance, Plaintiff cites no evidence accompanying the commissions earned by any other employees and her, let alone those outside of her protected class.

Plaintiff also avers that the Court should not consider her average weekly commissions ("AWC") from all weeks prior to December 18, 2018, but only consider the change in her AWC from September 4, 2018 to December 17, 2018 against the time period starting December 18, 2018. The Court should reject this argument for multiple reasons.

First, Plaintiff admits that she announced, and Guzman was aware of, her Pregnancy on November 23, 2018. (CSMF ¶ 80). Plaintiff provides no legal or factual basis to utilize December 18, 2018 as an inflection point as opposed to her pregnancy announcement date of November 23, 2018.

Second, coupling Plaintiff's failure to include AWC earned prior to September 2018 and use of December 18, 2018 as an inflection point only serves to mischaracterize and skew the evidentiary record to show a 40% decrease in AWC during her last few weeks of employment. In reality, Plaintiff's AWC after announcing her pregnancy on November 23, 2018 was $690.63. While Plaintiff argues without any evidentiary support that she did not work in Week 12 when she earned no wages, excluding that week increases her AWC prior to November 23, 2018 from

$710 to $734.40. In sum, the difference in AWC after announcing her pregnancy was a measly $47.77 (i.e. less than 1/3 of a car sale per week based on $150 per car commission).[2]

Third, Plaintiff cites no evidence as to why her sales figures were higher in November and early December compared other weeks before or after her pregnancy announcement. Similarly, she fails to account for the reality that auto sales fluctuate on a weekly basis due to various factors (i.e. sales programs, seasonal changes, holidays, etc.). In fact, the end of December and early January are a holiday season when millions of Americans travel.

In addition, the fact that Plaintiff was not yet provided with a previously promised promotion at her time of separation cannot give rise to an adverse employment action considering the totality of the circumstances. Although Thanwalla denies promising her a promotion, this claim is solely premised on Plaintiff's subjective belief that she would not be promoted. Devastating her claim, Plaintiff concedes that Thanwalla never denied the promotion or stated she would not be promoted. Instead, she speculates that because Thanwalla made her wait to discuss the promotion after he returned from vacation, it was tantamount to a failure to promote. (CSMF ¶¶ 123-124). Yet Plaintiff admits other key facts that undermine her position. Specifically, she admits Thanwalla told her he would discuss the promotion with her later and that she quit due to her did not want to wait longer for a decision. (CSMF ¶¶ 119-121).

Finally, Plaintiff argues that her voluntary resignation was a constructive discharge because any reasonable person would have quit as a result of the "intolerable work atmosphere" caused by the complained of conduct.[3] Specifically, she claims that she was "pregnant, tired, and

---

[2] Plaintiff's argument that she earned base pay of $200 in week 34 is a red-herring because (1) she admitted this was a bonus, not base pay. (See Dkt. No. 1, ¶ 57) and (2) the claim centers around commissions, not changes to base pay.

[3] A "constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Walsh v. Scarsdale Union Free Sch. Dist., 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019). Working conditions are intolerable when, viewed as a whole, they are "difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Lowe v. Cusa, LLC, 2011 U.S. Dist. LEXIS 172700, at *10 (S.D.N.Y. 2011).

not making any money." However, this conclusory position is belied by the evidence as outlined above. Further, such a fact is insufficient to establish a constructive discharge. See Stetson v. NYNEX Serv. Co., 995 F.2d. 355, 361 (2d. Cir. 1993)(holding no claim for constructive discharge where employee was dissatisfied with his compensation, assignments, and criticisms of his work, but rank and salary was never reduced). Moreover, the alleged conduct lasted for approximately (4) weeks before she quit, shortly after Thanwalla returned from vacation, holidays ended and before Thanwalla was able to discuss a promotion. Even worse, Plaintiff even texted Baron that she and David Manrique ("Manrique") a male employee, quit for the same reason (i.e. non-payment of compensation).

Based on the facts most favorable to Plaintiff, she simply cannot establish that she suffered any adverse employment action.

## 2. **Plaintiff Has Not Raised An Issue of Fact Concerning Causation**

Plaintiff there is causation between the pregnancy announcement and i) decrease in sales because of increased credit application approval times and ii) lost access to Dealer Track; both are unavailing.

With respect to increased wait times, Plaintiff relies solely on speculation. Here, there is ample evidence that outside parties could have affected application times (e.g. response times from third parties and financial institutions, failure from customers to provide required information right away, etc.). Additionally, as Plaintiff asserts, Guzman was solely "responsible for running credit" as of late December 2018. In fact, as the records shows the slowdown related to Thanwalla, the General Sales Manager, taking a vacation, which caused Guzman to have double the amount of work to do in Thanwalla's absence.

Despite the factual shortcomings of her claims, Plaintiff peddles a theory without evidentiary support that Guzman intentionally delayed her customer's applications due to her pregnancy but did not delay her co-workers' applications. In reality, there is absolutely no evidence as to the wait times for other salespersons as of December 18, 2018 or that the time for the outside third parties to respond to credit applications was different or other salesperson.

In addition, she argues that the delays in credit processing caused a "statistically-significant decrease" in her car sales "immediately after she announced her pregnancy" because she went from top saleswoman in November 2018 to the bottom salesperson in late December 2018. But, this contradicts the evidence on this motion demonstrating there was no material change in her commissions and that her claim of that her sales decreased "immediate" afer announcement belies the discovery production showing a decrease a month later. Plaintiff's additional attempt to support the claim that wait times caused an impact is nothing more than useless speculation.

Moreover, as described above in Section 1, there was a nominal change in AWC after her pregnancy announcement, but no evidence directly connecting it with the complained of conduct as opposed to outside factors. Moreover, as noted above, Plaintiff does not present evidence concerning the amount of commissions earned by comparators.[4] Similarly torpedoing the claim

---

[4] Plaintiff's last-ditch argument to avoid summary by claiming spoliation of weekly salesperson commission is unavailing. First, Plaintiff never previously raised such alleged spoliation or sought related relief. Second, commission earnings performance is based on many variables so the complained of "spoliation" does not foreclose summary dismissal. Third, any additional documents on this point are superfluous and no inference against Defendants should be taken because Defendants produced weekly paystubs for all salespersons from the relevant time period that include a separate line-item for commission payments. (See Troy Aff. in Opp. Exhibit 10).

Plaintiff also relies upon her "fact" that many coworkers observed and commented on the drastic decrease in Plaintiff's sales after her pregnancy announcement. Such comments are inadmissible hearsay that should not be considered. See Fraser v. MTA Long Island Rail Rd., 2018 U.S. Dist. LEXIS 55422, *38 (E.D.N.Y. 2018)(holding that a party cannot sustain its burden in opposing summary judgment by relying on inadmissible hearsay evidence.).

that she was treated less well than males is Plaintiff's text to Baron that she quit for the same reason as Manrique (i.e. failure to pay wages).

With respect DealerTrack, Plaintiff does not dispute with evidence the fact that no salespeople had access to DealerTrack. Plaintiff cannot show with evidence that Guzman had knowledge of Plaintiff's alleged access to DealerTrack or that he was authorized to provide her the password and still refused Plaintiff. Plaintiff concedes that Guzman's refusal to provide access occurred weeks after her announcement, which undercuts her claim of an "immediate" access impediment. Plaintiff does not credibly contradict the fact that Thanwalla, not Guzman gave her such access, and the delay was only because Thanwalla was out on vacation and could not log in to the system for Plaintiff. Further, there is no evidence that Guzman gave Dealertrack access to Plaintiff's co-workers or treated Plaintiff differently concerning Dealertrack.

Also weighing against any inference of discrimination, Plaintiff readily admits that Guzman never made any comments about her pregnancy. (CSMF ¶ 94). Yet, without any support she argues that Guzman's conduct alone is enough. See Lizardo v. Denny's Inc., 270 F.3d 94, 104 (2d Cir. 2001)(finding no inference of race discrimination where "[n]o comment or statement made by the defendants had any racial content or overtone").

Further undermining any discriminatory animus is Plaintiff's admission that she had interpersonal conflicts with Guzman pre-dating her pregnancy announcement. (CSMF ¶ 93). While Plaintiff claims they worked professionally, this is of no moment as she cites no facts to support this position, nor any evidence of Guzman's psychological state.

Lastly, with repesct to the delay in promotion theory, as discussed above, Plaintiff concedes that Thanwalla never denied the promotion or told her she would not be promoted. Instead, he stated that he was simply not prepared to discuss the issue with Plaintiff at the

specific time she raised it. Plaintiff chose to quit shortly thereafter before she could be promoted. Her explanation that she was "tired of being given the runaround and not making money" does not provide an inference of discrimination, as there is nothing connecting the failure to promote to her protected class. (CSMF ¶¶ 119-121). Also, the mere fact that Thanwalla knew she was pregnant is also not enough to create an inference of discriminatory animus.[5]

In sum, there is no evidence that raises a question of fact to defeat summary judgment. Plaintiff's federal and state pregnancy/sex discrimination claims must be dismissed.[6]

### B. NYSHRL Disability Discrimination Claim

Plaintiff waived her NYSHRL claim for disability discrimination for failure to oppose it Johnston v. Town of Orangetown, 2013 U.S. Dist. LEXIS 40517, at *7 n.3 (S.D.N.Y. 2013)(claim dismiss for failure to respond to summary judgment. Thus, Plaintiff's disability discrimination claim should be dismissed.

### POINT VI
### AUTO MALL CANNOT BE HELD LIABLE FOR THE COMPLAINT OF CONDUCT

To the extent any discrimination claims survive dismissal, which should not be the case, there is simply no evidence that Auto Mall is liable for any unlawful discrimination. In her opposition, Plaintiff alleges that Auto Mall is held liable because it "constituted a single integrated enterprise" with Auto Outlet, her direct employer. However, this argument wholly misses the mark. Instead, as discussed in Defendants' initial moving papers, Plaintiff must still establish that Auto Mall, the alleged joint employer, knew or should have known of the

---

[5] Similarly, Plaintiff's unsubstantiated assertion that another pregnant employee in a different position quit months prior after being disciplined (CSMF ¶ 202) is irrelevant, especially where there is no evidence as to who disciplined her, whether the purported discipline was unfounded as opposed to discriminatory animus.

[6] Under the NYCHRL's more liberal standard, Plaintiff's discrimination claim still fails for the same reasons, as there is no evidence that Plaintiff was treated "less well" than non-pregnant or male employees. In addition, Plaintiff never asserted a claim for NYCHRL sex discrimination in the Complaint, so any arguments regarding such a claim should not be countenanced.

discriminatory conduct and failed to take corrective measures within its control. Yet, Plaintiff failed to address or otherwise oppose this branch of the motion on this basis, which is again tantamount to waiver. See Johnston, 2013 U.S. Dist. LEXIS 40517, at *7 n.3. Even worse, Plaintiff admits critical facts undermining her position (i.e. she only worked for Auto Outlet and Auto Mall had no control over her daily employment activities). (CSMF ¶¶ 21-23, 147). Thus, summary judgment dismissing the Complaint against Auto Mall is appropriate.

## POINT VII
## THE INDIVIDUAL DEFENDANTS ARE NOT LIABLE

As to Guzman, assuming Guzman did assist Thanwalla in running day-to-day operations at Auto Outlet as the financial manager on site and was "involved [in employment] decisions", there is no dispute that Guzman had authority to hire/fire/discipline. As such, the claims fails. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365 (SDNY 2012).

Guzman's alleged participation in the alleged discrimaintory (e.g. access to DealerTrack and "purposeful delay") did not occur as established above. White v. Pacifica Found., 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013) (noting that where a plaintiff "has not demonstrated a primary violation, there can be no liability for aiding and abetting")

As to Thanwalla, Plaintiff premises liability on allegedly not taking corrective action against Guzman's alleged discrimination. However, Plaintiff does not cite to any evidentiary support for this position. (See P's MOL p. 23-24). Therefore, Plaintiff cannot defeat dismissal of the claim for aiding and abetting with respect to Thanwalla. White, 973 F. Supp. at 378.

Concerning Baron, Plaintiff presents several bases for aiding and abetting liability – being present at the dealership, speculation about the meaning of being Plaintiff's point of contact at the dealership, a text message and call 10 days after she quit where she referenced wages - but none establish that he 'actually participated in the conduct' as is required to impute

liability. Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("Employees may be held personally liable under the NYSHRL and the NYCHRL" if they participate "in the conduct giving rise to a discrimination claim."). Such facts, even if true, are inadequate to establish that Baron knew about or participated in the alleged conduct during Plaintiff's employment to attach liability. Accord Deveaux v. Skechers USA, 2020 U.S. Dist. LEXIS 63356, at *3 (S.D.N.Y. 2020)("Individual liability may be imposed on an 'employer' who 'actually participates in the conduct giving rise to the discrimination.'")

In sum, there are no facts that any of the individual Defendants held the requisite authority and/or aided and abetted the purported discrimination. Accordingly, summary judgment dismissing the claims against these individuals is appropriate.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant the instant motion dismissing the complaint in its entirety, or in the alternative, dismissing the complaint against Auto Mall and the individual defendants, and awarding such other relief as deemed just and proper.

Dated: March 27, 2024                **MILMAN LABUDA LAW GROUP PLLC**

By:   /s/ Joseph M. Labuda, Esq.
Joseph M. Labuda, Esq.
Matthew A. Brown, Esq.