**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------**X**
LETICIA FRANCINE STIDHUM
*on her own behalf and on behalf of others similarly*
*situated*,                                    **Case No. 21-cv-07163**

                          Plaintiffs,

-against-
161-10 HILLSIDE AUTO AVE, LLC
        d/b/a Hillside Auto Outlet
HILLSIDE AUTO MALL INC
        d/b/a Hillside Auto Mall
ISHAQUE THANWALLA,
JORY BARON, and
ANDRIS GUZMAN

                          Defendants
-------------------------------------------------------------**X**

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**

                          TROY LAW, PLLC
                          John Troy, *esq.*
                          Aaron Schweitzer, *esq.*
                          Tiffany Troy, *esq.*
                          41-25 Kissena Boulevard, Suite 110
                          Flushing, NY 11355
                          Tel: (718) 762-1324
                          *Attorneys for Plaintiff*

## TABLE OF CONTENTS

LEGAL STANDARD ............................................................................................. 1

STATEMENT OF FACTS ................................................................................... 1

ARGUMENT ......................................................................................................... 6

   I.   Plaintiff's Title VII Claims for Sex Discrimination and PDA Claim for Pregnancy Discrimination Should Not be Dismissed .................................................................. 6

     A.   Defendants Admit that Plaintiff is a Member of the Protected Class and Was Qualified for the Position She Held .................................................................... 7

     B.   Adverse Action is Established .................................................................... 8

     C.   Causation is Established ........................................................................... 11

   II.   Plaintiff's NYSHRL Claim for Sex Discrimination Should Not be Dismissed .............. 16

   III.   Plaintiff's NYCHRL Claim for Pregnancy Discrimination Should not be Dismissed .. 17

   IV.   Claims against Hillside Auto Mall Should Not Dismissed ............................................ 19

   V.   Claims Against Baron, Guzman and Thanwalla Should Not be Dismissed .................... 20

Conclusion ......................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**

*Ahmad v NY City Health & Hosps. Corp.*, 2021 US Dist LEXIS 62986 [SDNY Mar. 31, 2021] 22

*Anderson v. Liberty Lobby, Inc.*, 4777 U.S. 242 (1986) ................................................................. 1

*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ........................................................ 20

*Cahill v. Northeast Sav., F.A.*, No. 91-CV-1278, 1993 U.S. Dist. LEXIS 11650, 1993 WL
     313633, *3 (N.D.N.Y. Aug. 16, 1993) .................................................................................. 16

*Campo v City of NY*, 2022 US Dist LEXIS 60288 [EDNY Mar. 31, 2022, No. 19-CV-04364
     (NGG) (SJB)] ........................................................................................................................ 22

*Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 U.S. Dist. LEXIS 198655,
     2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) ............................................................ 14

*Celotex Corp.*, 477 U.S. 317, 323 (1986) ....................................................................................... 1

*Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (WO), 2013 U.S. Dist. LEXIS
     76208, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013) ................................................ 17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d
     356 (2020) ............................................................................................................................. 12

*Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 U.S. Dist. LEXIS 235002, 2020 WL
     7364116, at *10 (S.D.N.Y. Dec. 14, 2020) ........................................................................... 12

*Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y. 2020) ......... 11

*Feingold v. New York,* 366 F.3d 138, 157 (2d Cir. 2004) .............................................................. 21

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994) ......................... 1

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015) .................................. 21

*Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) ............................................................... 19

*Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, No. 16 Civ. 4897, 2017 U.S. Dist. LEXIS 77710, 2017 WL 2258374, *5 n.8 (S.D.N.Y. May 22, 2017) ............................................................ 17

*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62 (2d Cir. 2001) ........................................................ 1

*Howard v. City of New York*, 302 F. Supp. 2d 256, 260 (S.D.N.Y. 2004), aff'd, 363 F. App'x 805 (2d Cir. 2010) ........................................................................................................................... 6

*Hsieh Liang Yeh v. Han Dynasty*, Inc., No. 18-CV-6018, 2019 U.S. Dist. LEXIS 24298, 2019 WL 633355, at *4 (S.D.N.Y. Feb. 14, 2019) ...................................................................... 19

*Hu v. City of N.Y.*, 927 F.3d 81, 96-97 (2d Cir. 2019) ................................................................ 13

*Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) ............................................................ 14

*Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) ................. 17

*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US Dist LEXIS 54339 (SDNY Mar 29, 2023) ................................................................................ 12, 14

*Kirkland-Hudson v Mount Vernon City Sch. Dist.*, 2023 US Dist LEXIS 54339 [SDNY Mar. 29, 2023, No. 21-CV-695 (KMK)] ....................................................................................... 9

*Lazaar v. Anthem Companies, Inc.*, No. 22-CV-3075, 2023 U.S. Dist. LEXIS 13027, 2023 WL 405016, at *4 (S.D.N.Y. Jan. 25, 2023) ................................................................................ 20

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) ..................................................... 12

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) ........................................................... 11

*LeTtieri v Anti-Defamation League Found.*, 2023 US Dist LEXIS 141914 [SDNY Aug. 10, 2023] .................................................................................................................................... 18

*Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 346 (W.D.N.Y. 2012) ...................... 17

*Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ................................................... 16

*Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ................................................... 13

*Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ............................................................ 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) . 6, 7, 17

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ...................................................... 14

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 75 (S.D.N.Y. 2020) ........................ 22

*McMyler v Bank of Utica*, 2021 US Dist LEXIS 124703 [NDNY July 2, 2021, No. 6:19-CV-812 (MAD/ATB)] ............................................................................................................................. 17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013).......... 18

*Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996)...................................................................... 19

*Osekavage v Sam's E., Inc.*, 619 F Supp 3d 379 [SDNY 2022] .................................................... 7

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)....................................... 19

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) .................................................................... 16

*Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ....................... 9

*Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir. 1995)........................................................... 6

*Raji v. Societe Generale Ams. Sec. LLC*, No. 15 Civ. 1144 (AT) (ILC), 2018 U.S. Dist. LEXIS 36715, 2018 WL 1363760, at *7 (S.D.N.Y. Feb. 28, 2018).................................................... 17

*Richards v. Dep't of Educ. of City of N.Y.*, No. 21 Civ. 338 (LJL), 2022 U.S. Dist. LEXIS 19674, 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022) ................................................................. 18

*Saks v. Franklin Covey Co.*, 316 F.3d 337, 343 (2d Cir. 2003)................................................... 16

*Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ................................... 8

*Shimanova v TheraCare of NY, Inc.*, 2017 US Dist LEXIS 35031 [SDNY Mar. 10, 2017].......... 7

*Sutter v. Dibello*, No. 18-CV-817, 2021 U.S. Dist. LEXIS 46312, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) ...................................................................................................... 13

*Syed v S&P Pharm. Corp.*, 2023 US Dist LEXIS 49653 [EDNY Mar. 23, 2023, No. 21-CV-6000 (AMD) (PK)] ................................................................................................................... 20

*Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ........................................ 18

*Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) ...................................................................... 9

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) .......................................... 21

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ........................................................................................................................................ 11

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) ................................ 17

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013). 7

*Williams v. NYC. Hous. Auth.*, 61 A.D.3d 62, 73, 872 N.Y.S.2d 27 (2009) ................................ 18

*Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) .............................................. 18

*Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) ...................................................................... 6

*Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 U.S. Dist. LEXIS 7909, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) ................................................................................... 21

**Statutes**

§1981 ............................................................................................................................................. 12

42 U.S.C. § 2000e(k) ..................................................................................................................... 16

**Rules**

N.Y. Exec. Law § 296(1) ............................................................................................................... 21

N.Y.C. Admin. Code § 8-107(1)(a) .............................................................................................. 18

**LEGAL STANDARD**

In the summary judgment context, the evidence adduced must be construed in the light most favorable to Plaintiff LETICIA STIDHUM, as the non-movant. *See, e.g., Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001). Summary judgment is appropriate only where there exists no genuine issue of material fact, and the onus to establish the absence of such factual issues falls squarely upon Defendants as the moving parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon such showing, the onus shifts to Stidhum to present evidence sufficient to satisfy every element of the claim. In so doing, Stidhum is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." Id. at 324. But in assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in Stidhum's favor. *Anderson v. Liberty Lobby, Inc.*, 4777 U.S. 242, 249-50 (1986). In discrimination cases, the merits typically turn upon an employer's intent, necessitating abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id*. (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

**STATEMENT OF FACTS**

Plaintiff respectfully refer this Court to Plaintiff's Local Civil Rule 56.1 Counter-Statement of Undisputed Facts for a complete recitation of the undisputed facts and counter-statement of facts in the record. Below, Plaintiff highlights the most salient facts:

"Plaintiff worked at Hillside Auto Outlet as a salesperson and her sole responsibilities was selling cars." Exhibit 13 Plaintiff's Counter-Statement of Undisputed Material Facts (hereinafter "CSUMF") ¶ 23 (Plf Dep. Dep. 36:12-20; Thanwalla Dep. 81:23-82:4; Guzman Dep. 80:4-12). Her "responsibilities included showing customers vehicles, meeting and greeting customers, and taking a credit application and documentation from the customer in anticipation for making a sale." In addition, Plaintiff was responsible for "running and reading the credit of customers, before her DealerTrak access was taken away in December 2018 after the announcement of her pregnancy in November 2018." *See i.d.* ¶ 27 and Resp. ¶ 27 (Plf. Dep. 94:6-94:14). Plaintiff's compensation structure at Hillside Auto Outlet consisted of a $300.00 weekly salary, $150.00 flat commission for each car sold (even if it was sold at a loss)." *See* Response to 56.1 Statement 33. A bonus of 5% was paid until "Jeanique left in July or August 2018." *See i.d.* Resp. ¶ 33 (Plf Depo. 75:8-78:15).

At Hillside Auto Outlet, Plaintiff was the only female salesperson for the first four months of her employment. *See i.d.* Resp. ¶ 90 (Plf Dep 96:4-10). Thereafter she was one of two female salespeople at Hillside Auto Outlet. *See i.d.* ¶ 191 (Plf Aff. ¶ 35). Plaintiff was the top saleswoman and made the most sales in the store in November 2023 directly preceding the pregnancy announcement, and was accorded a $1000 bonus a result, but became the bottom salesperson in the store in late December 2023 after Guzman took away the credit card application and purposefully delayed the application. *See i.d.* Resp. to ¶¶ 87 (Plf Dep 78:23-79:13), 113 (Plf Dep 78:23-79:13), 114 (Plf Aff. ¶ 39), ¶ 199 (Plf Depo. 78:23-79:13).

Dealertrack is a dealership management system used by Hillside Auto Outlet; it stores customer information that is sensitive, which is why access to it is limited, and serves as a liaison with banks that provide financing for vehicles.  *See i.d.* Resp. ¶ 40 (Thanwalla Dep. 54:11-19,

145:6-146:19; Baron Dep. 53:9-18; Guzman Dep. 62:7-63:15, 84:9-86:6; Guzman Decl.). In 2018 prior to Thanwalla's trip to Pakistan in late December 2018, it "was mostly up to Isaac and Guzman" to run the credit, and when Ishaque Thanwalla was away between late December 2018 and January 2019, Guzman was the only one who was responsible for running the credit. *See* CSUMF ¶ 177 (Plf Dep 67:4-67:22). When Ishaque Thanwalla was away in December 2018 and January 2019, Guzman was the only one who was responsible for running the credit. *See i.d.* ¶ 178 (Plf Dep 67:4-67:22). Serge Zanan qualified a customer only very rarely. *See i.d.* ¶ 179 (Plf Dep 67:23-25).

In December 2018 after Plaintiff's pregnancy announcement through the end of Plaintiff's employment in January 2019, Guzman made the customers of Leticia Stidhum wait much longer in running and reading the credit that despite having become *faster* in running Dealertrack since taking the helm of finance manager in July or August 2018, Guzman in fact processed Leticia's customer's applications *more slowly*, despite Leticia Stidhum inquiring about the status of the credit applications multiple times. Thus, it was "clear as day" that there is no rational basis for Guzman making her wait longer. *See i.d.* Resp. ¶ 85 (Plaintiff Dep. 78:2-12; 78:23-79:13; Plf. Aff. ¶¶ 8-9). When Plaintiff brought this issue to Adris Guzman, Andris had no clear response as to why this was happening but just stated to plaintiff that she had to wait. Prior to the pregnancy announcement, 40 to 50 percent of the time, [Plaintiff] can get customers in and out of the door within an hour or less; therefore, the time it takes a customer to purchase a vehicle is predictable. *See i.d.* Resp. ¶ 43 While previously, the wait time was around 20 minutes to handle these applications the wait time increased to 40-60 minutes, or longer. This led to customers walking out. *See i.d.* ¶ 198 (Plf. Dep. 182:15-23, 78:1-12, 83:3-17). After the pregnancy announcement, of the two to three people who Plaintiff was seeing daily, on average two customers walked out (roughly 2/3 of the customers)

3

walked out due to the longer wait time caused by Guzman's targeted and intentional delay in running and reading the credit applications. *See i.d.* ¶ 189 (Plf Dep. 192:10-192:21).

"[F]or the most part" because the sales procedure is to "get [the] ID, the most recent two paystubs, and that proof of address if needed," the verification process is instantaneous and conducted not by any employee of Hillside Auto Outlet but by the banks. *See i.d.* ¶ 181 ((Plf Dep. 64:21-65:12, Plf. Aff. ¶¶ 19-20). The sales manager did not have to contact the employer to verify that the paystubs are legitimate. Instead, the sales manager simply deploys a heuristic to quickly determine by sight whether the paystubs are legitimate to upload for the banks. *See i.d.* ¶ 182. ((Plf. Aff. ¶ 21). The dealerships' determination would never take twenty to thirty minutes or hours. Rather, the determination is for the most part instantaneous. *See i.d.* ¶ 183 (Plf. Aff. ¶ 22). Fraud alerts on Hillside Auto Outlet customer's profiles occurred rarely. *See i.d.* ¶ 182 (Plf. Aff. ¶ 23). Additional verification on the part of credit bureaus occurred rarely and does not require one or two days to update. *See i.d.* ¶ 185 (Plf. Aff. ¶ 24). Guzman intentionally delayed the credit applications of Plaintiff's customers despite Plaintiff asking Guzman multiple times about the status of the credit applications after her pregnancy announcement in late November 2018 and Ishaque Thanwalla's trip to Pakistan in late December 2018. *See i.d.* ¶ 186 (Plf. Aff. ¶ 25).

Plaintiff's average total pay from September 4, 2018 to December 17, 2018 is $1,145.00, while the average commission is $845. In contrast, the average total pay from December 18, 2018 to January 14, 2019 as $781.25 and the average commission is $506.25. The difference in total pay is $363.75 per week, representing a 31.8% decrease in total pay, while the difference in commission is $338.75, representing a 40% decrease in commission. *See i.d.* Resp. ¶ 106 (Troy Aff ¶¶ 5-8; see Exhibit 8 D1187-1250).

Plaintiff stated: "[Guzman making Plaintiff wait longer] happened only right after I announced my pregnancy, that would be the first reason why, and not to mention, like I said before, he was my point of contact once Jay was fired so I can tell the difference in, you know, from that time and after I announced my pregnancy. It wasn't -- I had customers waiting so long after Jay quit. From that time after my pregnancy, I know it's clear as day that that's what was going on. I was a top saleswoman at a point and I went from being the top salesperson to being the one with the least cars out. *It doesn't add up* (emphasis added)." Plaintiff meant that pregnancy discrimination was the only possible reason for Guzman's slowness; all other reasons do not "add up." *See i.d.* Resp. ¶ 87 (Plf Dep 78:23-79:13.)

Each of the members of Hillside Auto Outlet, Josh Aaronson, Jory Baron, The Estate of David Baron, and Ishaque Thanwalla, had the power to hire and fire at Hillside Auto Outlet. *See i.d.* ¶161 (Jennings Dep. 38:12-39:5). Jory Baron was present at the dealership a couple of times each month; as a result, he knew of the Plaintiff, including her identity, her schedule and compensation at the time when she reached out to him in January 2019. *See i.d.* ¶ 163 (Stidhum Aff. ¶¶ 3-4; Plf Dep. 58:19-21; 59:4-7). When there was an issue that goes beyond the responsibilities of Isaac or Jay, she would report to Jory Baron "Only when there was an issue." *See i.d.* ¶ 164 (Plf Dep. Dep 59:21- 60:15). Guzman was a sales manager at Hillside Auto Outlet from Plaintiff's hiring through July or August 2018. *See i.d.* ¶ 165 (Stidhum Aff. ¶5). Thereafter, from September 2018 through Plaintiff's termination in January 2019, Guzman was the financial manager. *See i.d.* ¶ 166 (Stidhum Aff. ¶7). As the financial manager, Guzman was part of the "team effort" and was "involved [in employment] decisions" even while not having the sole authority to hire, fire, or discipline. (Plf Dep. 110-17:111:4). For instance, Plaintiff was hired only after the general manager Ishaque Thanwalla conferred with the financial manager

5

Jeanique. *See id.* ¶ 167 (Plf Dep. 56:21-57:6). Guzman was not the general sales manager. *See id.* ¶ 168 (Stidhum Aff. ¶11). The general manager was Ishaque Thanwalla. *See id.* ¶ 169 (Guzman Dep. 68:14-15.) At all relevant times, Deanna Jennings worked concurrently for Hillside Auto Outlet and Hillside Auto Mall. *See id.* ¶ 170 (Jennings Dep. 17:9-14). At the time, Aaronson said he "was opening another store and he wanted me to be controller until they found a full-time person for the position." *See id.* ¶ 171 (Jennings Dep. 20:7-20). Plaintiff, a saleswoman, is expressly given authorization to access to Dealertrack by general manager Ishaque Thanwalla. *See id.* ¶ 172 (Plf Dep. 46:19-22).

## ARGUMENT

### I. Plaintiff's Title VII Claims for Sex Discrimination and PDA Claim for Pregnancy Discrimination Should Not be Dismissed

"Claims of discrimination under Title VII are analyzed at the summary judgment stage under the burden-shifting test announced by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Howard v. City of New York*, 302 F. Supp. 2d 256, 260 (S.D.N.Y. 2004), aff'd, 363 F. App'x 805 (2d Cir. 2010). Phase one of the McDonnell Douglas test places upon the plaintiff the burden of establishing a prima facie case of discrimination by alleging that: "(1) [s]he is a member of a protected class; (2) [her] job performance was satisfactory; (3) [s]he was subject to an adverse employment action; [and] (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on [sex]." *Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802). Under Title VII and the NYSHRL, discrimination on the basis of a woman's pregnancy is discrimination on the basis of sex. *Young*, 135 S. Ct. at 1343 ("The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir. 1995) (noting that the NYSHRL

"provides the same sort of protection" regarding pregnancy discrimination as Title VII). At summary judgment, Plaintiff's claims alleging discrimination under Title VII and NYSHRL are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Young*, 135 S. Ct. at 1353-54 (applying McDonnell Douglas framework to Title VII pregnancy discrimination claim); *Walsh*, 828 F.3d at 74-75 (applying McDonnell Douglas framework to NYSHRL sex-based discrimination claim). (*Shimanova v TheraCare of NY, Inc.*, 2017 US Dist LEXIS 35031 [SDNY Mar. 10, 2017]).

If the plaintiff sets forth a prima facie case of discrimination, "the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013), aff'd, 586 F. App'x 739 (2d Cir. 2014) (quoting *McDonnell Douglas*, 411 U.S. at 802-03). "If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima facie case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). (*Osekavage v Sam's E., Inc.*, 619 F Supp 3d 379 [SDNY 2022])

### A. Defendants Admit that Plaintiff is a Member of the Protected Class and Was Qualified for the Position She Held

Defendants admit that the first and second factors of *McDonnell Douglas* are satisfied, namely that Plaintiff is a member of the protected class and was qualified for the position she held. Defendants argue that Plaintiff fails to establish a *prima facie* case for Title VII and PDA Claims for Pregnancy Discrimination, the third and fourth factors of *McDonnell Douglas,* because the "trivial complaints" in additional waiting time does not constitute an adverse action giving rise to

an inference of discriminatory action and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on sex.

### B.  Adverse Action is Established

Defendants' arguments as to whether Plaintiff is subject to adverse employment actions is flawed on two grounds: first, Defendants improperly concludes that Plaintiff does <u>not</u> claim that she is constructively discharged when her resignation was in fact involuntary as a result of coercion and duress. *See* CSUMF Resp ¶117 (Plf Depo. 230:22-232:9). In describing why she ultimately left employment at Hillside Auto Outlet, Plaintiff described the workplace as "intolerable" and how she was "pregnant, tired, and not making any money" as a result of pregnancy discrimination in the form of the longer wait time. *See i.d.* Resp ¶117 (Plf Depo. 230:22-232:9). Second, rather than "trivial complaints," Plaintiff can show that Defendants had created "an intolerable work atmosphere that forces an employee to quit voluntarily" and that the working conditions she was put under are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006) (quoting *Chamblee*, 154 F.Supp.2d at 675). *Cadet v. Deutsche Bank Sec., Inc.*, 2013 U.S. Dist. LEXIS 87328, at *30 (S.D.N.Y. June 18, 2013).

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The Second Circuit has instructed that: To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Id.* (quoting *Sanders*, 361 F.3d at 755); *see also*

*Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (holding similarly). "Moreover, while there is no exhaustive list of what constitutes an adverse employment action, courts have also held that denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions" under certain circumstances. *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (quotation marks and citation omitted). (*Kirkland-Hudson v Mount Vernon City Sch. Dist.*, 2023 US Dist LEXIS 54339 [SDNY Mar. 29, 2023, No. 21-CV-695 (KMK)]). Here the court should find that there was an adverse action against the plaintiff in the form of a demotion evidenced by a decrease in her salary that she received.

Defendants cite to *Sealy v. State Univ. of N.Y. at Stony Brook*, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019), for the proposition that "wait time" does not constitute an employment action. However, unlike Sealy, who was required to wait for 45 minutes to access the supply room on one occasion, Plaintiff lost customers due to the increased wait time from walk outs, translating to lower commissions and lower wages. Indeed, "[o]f the two to three people who Plaintiff was seeing daily, on average two customers walked out (roughly 2/3 of the customers) walked out due to the longer wait time caused by Guzman's targeted and intentional delay in running and reading the credit applications." *See* CSUMF Resp. ¶189 (Plf Dep. 192:10-192:21). *Batchelor v. City of N.Y.*, No. 11-CV-2058 (MKB) (VMS), 2014 U.S. Dist. LEXIS 46921, at *28 (E.D.N.Y. Feb. 16, 2014) is similarly inapposite because the wait time for the employee to "claim" a locker by bringing a locker from home is uncorrelated with the actual pay. Furthermore, unlike the "normal administrative delay" involved in a merit promotion in *Evans v. City of N.Y.*, the

targeted delay resulted in a statistically significant decrease in car sales. 2003 U.S. Dist. LEXIS 18281, at *32 (S.D.N.Y. Oct. 9, 2003)

At the time of Plaintiff's pregnancy announcement, she was a "top saleswoman." *See* CSUMF ¶ 195 (Plf Depo. 77:21-25). As a result of the increased waiting time, Plaintiff "went from being the top salesperson to being the one with the least cars out." *See* CSUMF Resp. ¶¶ 87 (Plf Dep 78:23-79:13), 113 (Plf Dep 78:23-79:13), 114 (Plf Aff. ¶ 39), ¶¶ 172 (Plf. Dep. 46:19-22), 199 (Plf Depo. 78:23-79:13).  The adverse employment action—in the form of increased waiting time—directly correlates and *caused* a decrease in sales and a corresponding *decrease in pay*. That is because Plaintiff's compensation structure at Hillside Auto Outlet consisted of a $300.00 weekly salary, $150.00 flat commission for each car sold (even if it was sold at a loss)." *See i.d.* Resp. ¶  33 (Plf Depo. 75:8-78:15).

Defendant's computation of average commission for the 26 weeks before she announced her pregnancy was $710.00 per week and for the eight (8) weeks after she announced her pregnancy was $690.63 per week is flawed because Defendants incorrectly put the base pay for the last week as $300, rather than $200.00 base pay for Week 34 and further improperly included a $0 pay per week for Week 12, rather than excluding it as an outlier. In contrast, Plaintiff's calculation shows that the average total pay from September 4, 2018 to December 17, 2018 is $1,145.00, while the average commission is $845. In contrast, the average total pay from December 18, 2018 to January 14, 2019 as $781.25 and the average commission is $506.25. The difference in total pay is $363.75 per week, representing a 31.8% decrease in total pay, while the difference in commission is $338.75, representing a 40% decrease in commission. *See i.d.* ¶¶ 186 (Plf. Aff. ¶ 25), 187 (Plf Dep. 69:12-69:16), *i.d.* Resp. ¶¶ 105-108 (Troy Aff ¶ 4; *see* Exhibit 8 D1250 (showing a salary of

10

$200, not $300); D1187-1250 paystubs during the relevant period), 109 (Exhibit 10 Jennings Jackson Aff.; Troy Aff ¶ 11).

Plaintiff was also promised a promotion to a manager position by Thanwalla. Thanwalla's actions—making Plaintiff wait, and then wait some more—made it clear to Plaintiff that she would not be promoted. *See i.d.* Resp. ¶ 123 (Plf Dep. 92:7-25, 95:3-7). Plaintiff was "was promised that when [Thanwalla] return[ed] that [she] was going to be promoted to sales manager" When Thanwalla came back, his refusal to discuss about the promotion was "clear as day" a denial of the same. *See i.d.* Resp. ¶ 124 (Plf Dep. 90:8-90:15, 92:7-25, 95:3-7).

### C.  Causation is Established

Defendants' argument as to causation is flawed as well because there is a clear causal connection in the temporal proximity of Plaintiff's pregnancy announcement and her decrease in sales due to the increased wait time. "Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that 'the causal link between injury and wrong is so close that the injury would not have occurred but for the act.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)). "So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Lenzi, 944 F.3d at 107 (emphasis omitted) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)). "The necessary inference may be derived from a variety of circumstances, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]'" *Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 U.S. Dist. LEXIS

11

235002, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). However, under § 1981, to "prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). (*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US Dist LEXIS 54339 (SDNY Mar 29, 2023)).

Defendants first advance the unavailing argument that "Guzman took too long to process credit applications *before* [Ms. Stidhum's] pregnancy." In fact, however, Guzman was trained in and became trained in using DealerTrack for a period of less than a month in August 2018. *See* CSUMF Resp ¶ 178 (Plf Dep 67:4-67:22). This misses Plaintiff's contention which is that between late December 2018 through the end of Plaintiff's employment in January 2019, Guzman made the customers of Leticia Stidhum wait much longer in running and reading the credit that despite having become *faster* in running Dealertrack since taking the helm of finance manager in July or August 2018, Guzman in fact processed Leticia's customer's applications *more slowly*, despite Leticia Stidhum inquiring about the status of the credit applications multiple times. Thus, it was "clear as day" that there are no rational basis for Guzman making her wait longer. *See i.d.* ¶ 185 (Plf. Aff. ¶ 24). When plaintiff brought this issue to Adris Guzman, Andris had no clear response as to the cause of the delay, only telling Plaintiff that she had to wait. Plf Dep. 78:1-12.

Defendants' other argument that "any delays in processing credit applications was not attributable to Defendants but rather, the response times from financial institutions or other third party involved in the verification process" is similarly unavailing. It is unavailing because notwithstanding the variables that go into a car sale, the running of the credit by Mr. Guzman is an integral part of most transactions as most customers require a loan to finance the purchase. *See*

12

Plf Depo Tr, 82:9-83:2. The fact is the timing of the taking away of Ms. Stidhum's DealerTrack access and the *increase* in wait time targeted for Ms. Stidhum came *after* Plaintiff's pregnancy announcement, resulting in a statistically-significant decrease in cars sold and take-home pay, which is based in part on commissions. *See* CSUMF Resp ¶ 70 (Plf Dep. 69:12-69:16). Specifically, between December 2018 through the end of Plaintiff's employment in January 2019, when Guzman "was the only one responsible for running the credit" *See i.d.* ¶ 178 (Plf Dep 67:4-67:22). Guzman intentionally delayed the credit applications of Leticia Stidhum's customers despite Leticia Stidhum inquiring about the status of credit applications multiple time." *See i.d.* ¶ 202 (Plf. Dep. 100:13-84:11). The temporal proximity between Plaintiff's pregnancy announcement in November 2018 and the immediate increase in wait time and decrease in car sales and take-home pay based upon commissions demonstrate the inverse relationship between wait time and cars sold.

The targeting of Plaintiff right after her pregnancy announcement—while leaving other car salesmen alone—is a showing of disparate treatment, a recognized method of raising an inference of discrimination for the purpose of making out a prima facie case. Ruiz, 609 F.3d at 493 (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted)). "[A] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's 2023 U.S. Dist. LEXIS 54339 F.Supp.3d 2023 WL 2691622 at 55 and comparator's circumstances . . . bear a reasonably close resemblance.'" *Sutter v. Dibello*, No. 18-CV-817, 2021 U.S. Dist. LEXIS 46312, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting *Hu v. City of N.Y.*, 927 F.3d 81, 96-97 (2d Cir. 2019)). The alleged comparator must be similar enough "to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263

F.3d 49, 54 (2d Cir. 2001); *see also Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (summary order); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 U.S. Dist. LEXIS 198655, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020). (*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US Dist LEXIS 54339 (SDNY Mar 29, 2023)).

The statement that "Guzman took the same time to process credit applications for all salespeople so Plaintiff was treated no differently" is simply belied by both the increased wait time and decrease in car sales and by the fact how many coworkers who were car salesmen observed and commented upon the drastic decrease in numbers after Plaintiff's pregnancy announcement, which made other salespeople that didn't sell that many cars look successful. *See* Plf. Depo Tr. 86:25-87:17 (Other Co-Workers Witnessing Discrepancy in cars for Plaintiff) 98:17-23 (Co-Worker Explaining Discrepancy in cars).

In contrast, Plaintiff can show that delays in *putting in* credit applications was drawn solely from Guzman's treatment of Plaintiff after the pregnancy announcement. During Plaintiff's deposition, there was a lengthy discussion regarding Plaintiff's pay before and after her pregnancy announcement, which demonstrated that Plaintiff was selling far fewer cars at the end of her employment (close in time to her pregnancy announcement) than during the middle period of employment. *See* Depo Plf 171:18-172:6; 213:24-225:17. Indeed, Ms. Stidhum experienced a statistically-significant decrease in the number of car sales made in credit card applications immediately after she announced her pregnancy: Plaintiff was the top saleswoman and made the most sales in the store in November 2023 directly preceding the pregnancy announcement but became the bottom salesperson in the store in late December 2023 after Guzman took away the credit card application and purposefully delayed the application. *See i.d.* Resp. to ¶¶ 87 (Plf Dep 78:23-79:13), 113 (Plf Dep 78:23-79:13), 114 (Plf Aff. ¶ 39), ¶ 199 (Plf Depo. 78:23-79:13).

Plaintiff was also the only female salesperson for the first four months of her employment and one of two female salespersons during the remainder of her employment at Hillside Auto. *See i.d.* Resp. ¶¶ 90 (Plf Dep 96:4-10); 191 (Plf Aff. ¶ 35). Defendants attempt to show that the cause of the delay and targeting of Ms. Stidhum is due to personal animus, as there were two (2) prior interpersonal conflicts with Guzman. However, nothing became of these isolated arguments and Plaintiff and Guzman maintained a professional relationship. *See* Plf Depo Tr. 71:8-72:8. Similarly, the lack of verbal comments about her pregnancy is belied by the actions taken by Guzman in sabotaging Plaintiff's employment at Hillside Auto Outlet.

Rather than address Ms. Stidhum's concerns, Mr. Thanwalla instead delayed a promised promotion opportunity to Ms. Stidhum. Thanwalla's refusal to discuss a promotion suggested to Plaintiff that she was "being given the runaround" and "getting played." *See i.d.* Resp. ¶ 120 (Plf Dep. 90:23- 91:6). Thanwalla knew of Stidhum's pregnancy. *See i.d.* ¶ 192 (Jennings Dep. 62:19-63:3; Decipher Chat Excerpt between Defendant Ishaque Thanwalla and Ali Raskesnia about Plaintiff Leticia Stidhum's pregnancy (Ali: "Your daughter is having a baby [pregnant woman emoji]" Thanwalla: "Which one" Ali: "Leticia" Thanwalla "I know"). This is not the first or isolated incidence in which a pregnant woman—while pregnant—is forced to leave the employ of Hillside Auto Outlet. In fact, previously, the DMV clerk Lilly a/k/a Lily was also required to leave. *See i.d.* ¶ 202 (Plf. Dep. 100:13-84:11).

The Court should also take judicial notice of Defendants' loss of weekly commission sales sheets identifying Plaintiff and her comparators in car sales between November 2018 and January 2019. *See* Troy Dec. Ex. 11 Jennings Jackson Affidavit. It is widely accepted in the Second Circuit that parties should not benefit from spoliation, and the district court may impose sanctions, such as an adverse inference instruction at trial under Rule 37(b) or pursuant to "its inherent power to manage its own affairs" when a party destroys evidence. *See Residential Funding Corp.*, 306 F.3d at 107; *see also*

*Zubalake IV*, at \*216. Here, Defendants noticeably failed to produce the sales records for the relevant period of time which would establish the actual cars sold by Plaintiff versus her comparators. Instead, Defendants claim that the payroll records of Hillside Auto Outlet are stored in tandem with the payroll records of Hillside Auto Mall and were lost. *See* Dkt. Nos. 73-1–73-4 (June 12, 2023). The evidence submitted is clear that there still is an issue of material fact regarding plaintiff's discrimination clears for Defendants' evidence submitted is inconclusive and plaintiffs can sufficiently meet the four parts it takes to prove discrimination. Thus, in the light most favorable to the Plaintiff, should be considered to be beneficial to the Plaintiff. Said evidence—if it hadn't been "lost" or "destroyed"—would have corroborated Plaintiff's account, which is that business *did not* slow during the subsequent weeks following the implementation of the delayed by Guzman. That is because, relative to her and in fact relative to their own performance, her colleague in fact earned *more commission* while she earned *less*.

## II.  Plaintiff's NYSHRL Claim for Sex Discrimination Should Not be Dismissed

As an initial matter, the Court notes that the same standard is used when analyzing Title VII and NYSHRL claims. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citations omitted); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citation omitted). Additionally, "[t]he Pregnancy Discrimination Act amends Title VII's definition of discrimination 'because of sex' to include discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 343 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e(k)). "[A] claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *Cahill v. Northeast Sav., F.A.*, No. 91-CV-1278, 1993 U.S. Dist. LEXIS 11650, 1993 WL 313633, \*3 (N.D.N.Y. Aug. 16, 1993) (collecting cases); *Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, No. 16 Civ. 4897, 2017 U.S. Dist. LEXIS 77710, 2017 WL 2258374, \*5 n.8 (S.D.N.Y. May 22,

16

2017). Discrimination claims under Title VII are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

"[T]he plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *McDonnell Douglas*, 411 U.S. at 802. It is the plaintiff's burden to establish a prima facie case of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted); *Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp. 2d 336, 346 (W.D.N.Y. 2012) (citation omitted). (*McMyler v Bank of Utica*, 2021 US Dist LEXIS 124703 [NDNY July 2, 2021, No. 6:19-CV-812 (MAD/ATB)]). As established in Point I, plaintiff has sufficiently prove that she can establish a prima facie case for discrimination against defendants due to her pregnancy. As stated in Point I, the evidence does not suggest that plaintiff was not discriminated against as defendants would like the court believe. The evidence at best shows that there is an issue of material fact for the court to find out and that plaintiff's claims do have merit.

**III. Plaintiff's NYCHRL Claim for Pregnancy Discrimination Should not be Dismissed**

Under the NYCHRL, "[t]he standards for discrimination and hostile work environment are the same." *Raji v. Societe Generale Ams. Sec. LLC*, No. 15 Civ. 1144 (AT) (ILC), 2018 U.S. Dist. LEXIS 36715, 2018 WL 1363760, at *7 (S.D.N.Y. Feb. 28, 2018); *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (same); *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (WO), 2013 U.S. Dist. LEXIS 76208, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013) ("Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims; rather, there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on

gender." (internal quotation marks omitted)). "Section 8-107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-107(1)(a)) (brackets and ellipses omitted). To allege discrimination under the NYCHRL, a plaintiff need only allege that she was "treated 'less well' . . . because of a discriminatory intent." Id. at 110 (citing *Williams v. NYC. Hous. Auth.*, 61 A.D.3d 62, 73, 872 N.Y.S.2d 27 (2009)). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.* (quoting Williams, 61 A.D.3d at 79); *see also Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) ("To state a claim for discrimination, a plaintiff must only show differential treatment of any degree based on a discriminatory motive."). However, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive," and "[i]t is not enough that a plaintiff has an overbearing or obnoxious boss." *Richards v. Dep't of Educ. of City of N.Y.*, No. 21 Civ. 338 (LJL), 2022 U.S. Dist. LEXIS 19674, 2022 WL 329226, at *20 (S.D.N.Y. Feb. 2, 2022). Because the NYCHRL standard is more liberal than the corresponding federal and state law standards, courts must analyze NYCHRL claims "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109; *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021). (*LeTtieri v Anti-Defamation League Found.*, 2023 US Dist LEXIS 141914 [SDNY Aug. 10, 2023]). Applying this standard, to establish a pregnancy discrimination claim, "the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent." *See Mihalik*, 715 F.3d at 110. Under NYCHRL, Plaintiff can show that she is treated less well as compared to her

18

non-pregnant coworkers after late-December 2018 because her customers were made to wait for a longer period of time, resulting in a loss of customers and commissions from sales. But for her gender, she would also have been promoted. As set forth above, Plaintiff has provided sufficient evidence throughout their opposition to clearly show that due to her pregnancy announcement, plaintiff was discriminated against.

## IV. Claims against Hillside Auto Mall Should Not Dismissed

The court should find that plaintiff's claim against defendant Hillside Auto Mall should not be dismissed because both corporate defendants engaged in a single integrated enterprise. To prevail in an employment action against a defendant who is not the plaintiff's direct or joint employer, "the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (internal citations omitted). "The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (citation and internal quotations omitted).

A court determining whether a plaintiff has pleaded single integrated enterprise liability considers: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018, 2019 U.S. Dist. LEXIS 24298, 2019 WL 633355, at *4 (S.D.N.Y. Feb. 14, 2019). "Although no one factor is determinative[,] . . . control of labor relations is the central concern." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996) (citations omitted). (*Syed v S&P Pharm.*

*Corp.*, 2023 US Dist LEXIS 49653 [EDNY Mar. 23, 2023, No. 21-CV-6000 (AMD) (PK)]).

Further "[w]hether two related entities are sufficiently integrated to be treated as a single employer

is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown v. Daikin*

*Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *see also Lazaar v. Anthem Companies, Inc.*, No. 22-

CV-3075, 2023 U.S. Dist. LEXIS 13027, 2023 WL 405016, at *4 (S.D.N.Y. Jan. 25, 2023) ("It is

rarely appropriate to determine joint employer status at the summary judgment stage, let alone on

a motion for judgment on the pleadings, because of the [inquiry's] fact-intensive character."

(internal quotation marks and citation omitted)). (*Syed v S&P Pharm. Corp.*, 2023 US Dist LEXIS

49653 [EDNY Mar. 23, 2023, No. 21-CV-6000 (AMD) (PK)]).

Plaintiff can sufficiently show that Hillside Auto Outlet and Hillside Auto Mall constituted

a single integrated enterprise. As to interrelation of operations, while Plaintiff worked directly only

for Hillside Auto Outlet, Plaintiff sold cars from Hillside Auto Mall as well. *See* Response to 56.1

Statement 141; *see also* Plf Depo Tr. 34:10-35:17. As to central control of labor relations, the

Comptroller Deanna Jennings worked at the same time for Hillside Auto Outlet and Hillside Auto

Mall, and "maintain the books, payrolls, bills, sales tax" for both locations at the Hillside Auto

Mall office. *See* Jennings Depo Tr. 17:9-18:5. Hillside Auto Outlet and Hillside Auto Mall shared

owners: Josh Aaronson and the Estate of David Baron, who hold 50% of the stocks, and common

management. *See* Plaintiff's 56.1 Statements 3 and 20. Deana Jennings was the person in charge

of both corporate Defendants' payroll, which show that there was common financial control for

both defendants. *See* Deana Jennings Depo. Tr. 22:2-25; 25:25-31:25.

In light of this, there is a statement of material fact that still needs to be decided regarding

corporate defendant Hillside Auto Mall.

**V.   Claims Against Baron, Guzman and Thanwalla Should Not be Dismissed**

"The NYSHRL [also] allows for individual liability." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 U.S. Dist. LEXIS 7909, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020). There are two available theories of liability: where the individual defendant is considered an "employer," N.Y. Exec. Law § 296(1), or aided and abetted the unlawful discriminatory acts of others, id. § 296(6); *see Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015). An individual defendant is liable as an "employer" under § 296(1) "when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others," i.e., the power to hire or fire. *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (emphasis added) (internal quotations and citation omitted). "A supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to the discrimination." *Feingold v. New York,* 366 F.3d 138, 157 (2d Cir. 2004) (cleaned up) (quoting Tomka, 66 F.3d at 1317).

Aiding-and-abetting liability is available under the NYSHRL, provided that the principal—the employer—has been found liable for discriminatory conduct. *Xiang*, 2020 U.S. Dist. LEXIS 7909, 2020 WL 248941, at *5. To make out an aiding and abetting claim, a plaintiff must allege that "[defendant] 'actually participate[d] in the conduct giving rise to a discrimination claim.'" *Id.* (quoting *Feingold*, 366 F.3d at 158). The Second Circuit has held that "a co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158 (internal quotation marks and citation omitted). "This extends to personal liability 'for aiding and abetting allegedly unlawful discrimination by [an] employer even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability,' so long as the employer's conduct has also been found to be discriminatory under the

21

NYSHRL." *Xiang*, 2020 U.S. Dist. LEXIS 7909, 2020 WL 248941, at *5 (alteration in original) (citations omitted).

As the Second Circuit has held, "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL [and NYCHRL] if he actually participates in the conduct giving rise to a discrimination claim." *Francis*, 992 F.3d at 81. "This extends to personal liability 'for aiding and abetting allegedly unlawful discrimination by [an] employer even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability,' so long as the employee's conduct has also been found to be discriminatory under the NYSHRL." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 75 (S.D.N.Y. 2020) (emphasis in original). (*Campo v City of NY*, 2022 US Dist LEXIS 60288 [EDNY Mar. 31, 2022, No. 19-CV-04364 (NGG) (SJB)]).

As set forth below, each of the three individual Defendants ANDRIS GUZMAN, ISHAQUE THANWALLA, JORY BARON is liable under NYSHRL and NYCHRL for aiding and abetting the discriminatory conduct.

At the time of Ms. Stidhum's pregnancy announcement, Ishaque Thanwalla was in Pakistan. During this period of time, Andris Guzman assisted Thanwalla in running the day-to-day operations at Hillside Auto, being the financial manager on site. *See* CSUMF ¶ 176 (Plf. Dep. 64:15-20; 68:23-69:3; 175:20-176:8). As the financial manager, Guzman was part of the "team effort" and was "involved [in employment] decisions" even while not having the sole authority to hire, fire, or discipline. (Plf Dep. 110-17:111:4). For instance, Plaintiff was hired only after the general manager Ishaque Thanwalla conferred with the financial manager Jeanique. *See i.d.* ¶ 167 (Plf Dep. 56:21-57:6). GUZMAN actively and actually participated in the conduct giving rise to a discrimination claim. While Ms. Stidhum was one of two female salespeople at Hillside Auto

Outlet, GUZMAN, while the general manager intentionally took away the credit card application and purposefully delayed the application, leading to a statistically significant decrease in Ms. Stidhum's salary. *See i.d.* Resp. to ¶¶ 87 (Plf Dep 78:23-79:13), 113 (Plf Dep 78:23-79:13), 114 (Plf Aff. ¶ 39), ¶ 199 (Plf Depo. 78:23-79:13).

ISAHQUE THANWALLA, as shareholder of Hillside Auto Outlet and the general manager, had the power to hire and fire, and discipline employees. *See i.d.* Resp. to ¶ 161 (Jennings Dep. 38:12-39:5). He denied a promotion that was initially promised to Ms. Stidhum prior to her trip to Pakistan. *See i.d.* Resp. to ¶¶ 4 (Stidhum Aff. ¶ 25); 161 (Jennings Dep. 38:12-39:5). Defendants' argument that Thanwalla treated Ms. Stidhum better than any other employee at the dealership cuts against their argument that Thanwalla was not engaged in aiding and abetting the discriminatory conduct. Ms. Stidhum was poised for a promotion based on her exceptional performance as a salesperson before Thanwalla found out about Stidhum's pregnancy. When Thanwalla came back, his refusal to discuss about the promotion was "clear as day" a denial of the same. *See i.d.* Resp. ¶ 124 (Plf Dep. 90:8-90:15, 92:7-25, 95:3-7).

Thanwalla knew of Stidhum's pregnancy. (Jennings Dep. 62:19-63:3; Decipher Chat Excerpt between Defendant Ishaque Thanwalla and Ali Raskesnia about Plaintiff Leticia Stidhum's pregnancy (Ali: "Your daughter is having a baby [pregnant woman emoji]" Thanwalla: "Which one" Ali: "Leticia" Thanwalla "I know"). *See i.d.* ¶ 192 (Jennings Dep. 62:19-63:3; Decipher Chat Excerpt between Defendant Ishaque Thanwalla and Ali Raskesnia about Plaintiff Leticia Stidhum's pregnancy (Ali: "Your daughter is having a baby [pregnant woman emoji]" Thanwalla: "Which one" Ali: "Leticia" Thanwalla "I know"). When GUZMAN took away Ms. Stidhum's DealerTrak access and forced Ms. Stidhum to wait for a longer period of time, Thanwalla was informed and failed to take actions to cure Defendant GUZMAN's actions and

himself. Instead, previously Thanwalla has disciplined DMV Clerk Lilly was disciplined while pregnant and departed and she stormed out upset at Hillside Auto Outlet's treatment of her within a week of Plaintiff's start at Hillside Auto Outlet. *See id.* ¶ 202 (Plf. Dep. 100:13-84:11).

JORY BARON is one of the members and shareholders of Hillside Auto Outlet and the point person when "there was an issue that goes beyond the responsibilities of Isaac or Jay, she would report to Jory Baron (Plf Dep. Dep 59:21- 60:15). *See id.* Resp. to ¶ 161 (Jennings Dep. 38:12-39:5), ¶ 164 (Plf Dep. Dep 59:21- 60:15). Jory Baron was present at the dealership a couple of times each month; as a result, he knew of the Plaintiff, including her identity, her schedule and compensation at the time when she reached out to him in January 2019. *See id.* ¶ 163 (Stidhum Aff. ¶¶ 3-4; Plf Dep. 58:19-21; 59:4-7). Further, approximately ten (10) days after Plaintiff quit, Plaintiff texted Jory Baron that she "had not been paid." After Jory Baron called Plaintiff back, Plaintiff "calmly explained how [she] had been sabotaged, why [she] had quit, and THANWALLA still owed [her] money." At the time, "Jory Baron replied that Plaintiff should 'stop ranting.' Plaintiff is "sabotaged" as a result of her pregnancy. (Exhibit 7 Supplemental Response to Interrogatory 7.) *See id.* ¶ 126(Exhibit 7 Supplemental Response to Interrogatory 7.) The court should find that defendant Baron failing to sufficiently deal with plaintiffs claims of not receiving her pay, defendant Baron aided in plaintiff being discriminated against.

## **CONCLUSION**

For the above-stated reasons, Defendants' Motion for Summary Judgement should be denied in its entirety.

Dated: January 30, 2024
       Flushing, NY

                                         Respectfully submitted,

                                         /s/ John Troy
                                         John Troy